PRO SE OFFICE

*U.S. DISTRICT COURT*
*FILED*
*OCT 2 9 2008*
*S. D. OF N.Y.*

#10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EKATERINA SCHOENEFELD,

 Plaintiff,

  v.

STATE OF NEW YORK, ET AL.,

 Defendants.

    CIVIL ACTION No.:  08-cv-3269 (NRB)

    ORAL ARGUMENT REQUESTED

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER THE MATTER TO THE NORTHERN DISTRICT

---

Ekaterina Schoenefeld
3371 US Highway 1, Suite 105
Lawrenceville, New Jersey 08648
Tel: (609) 750-0330
Fax: (609) 750-0331
*Plaintiff Pro Se*

Ekaterina Schoenefeld, Esq.
On the Brief

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................................................................................ ii

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    PROCEDURAL HISTORY .......................................................................... 1

III.   STATEMENT OF FACTS ........................................................................... 2

IV.   LEGAL ARGUMENT ................................................................................. 3

      A.    The Southern District of New York is the proper venue for this action ............... 3

           (1)   Plaintiff's choice of venue meets the requirements of 28 U.S.C.
                  § 1391(b)(1) because the Attorney General's official residence
                  is in the Southern District of New York ................................... 4

           (2)   Plaintiff's choice of venue meets the requirements of 28 U.S.C.
                  § 1391(b)(2) because most of "the events or omissions giving rise
                  to the claims occurred" in the Southern District of New York ............... 11

      B.    The defendants failed to meet their burden to show that the circumstances
           of this case warrant a transfer under 28 U.S.C. § 1404(a) ................................... 15

      C.    The defendants' request for an additional sixty days to answer plaintiff's
           complaint ........................................................................................................ 20

V.    CONCLUSION................................................................................................ 21

# TABLE OF CITATIONS

**Cases**                                                                                     **Page**

Berry v. N.Y.S. Dept. of Corr. Serv.,
808 F. Supp. 1106 (S.D.N.Y. 1992) ................................................................................... 6

Birnbaum v. Blum,
546 F. Supp. 1363 (S.D.N.Y. 1982) ................................................................................... 5

Breeden v. Tricom Bus. Sys., Inc.,
244 F. Supp. 2d 5 (N.D.N.Y. 2003) ................................................................ 16, 17, 18, 19

Buffalo Teachers Fed'n, Inc. v. Helsby,
426 F. Supp. 828 (S.D.N.Y. 1976) ................................................................................. 5, 6

Cheeseman v. Carey,
485 F. Supp. 203 (S.D.N.Y. 1980) ......................................................... 5, 6, 7, 11, 14, 19, 20

Coker v. Bank of Am.,
984 F. Supp. 757 (S.D.N.Y. 1997) ................................................................................... 17

Constitution Reins. Corp. v. Stonewall Ins. Co.,
872 F. Supp. 1247 (S.D.N.Y. 1995) ................................................................................. 17

Daniel v. Am. Bd. of Emergency Med.,
428 F.3d 408 (2d Cir. 2005) ............................................................................................ 11

Don King Prod., Inc. v. Douglass,
735 F. Supp. 522 (S.D.N.Y. 1990) ................................................................................... 16

Excelsior Designs, Inc. v. Sheres,
291 F. Supp. 2d 181 (E.D.N.Y. 2003) ................................................................ 16, 17-18, 19

Factors Etc., Inc. v. Pro Arts, Inc.,
579 F.2d 215 (2d Cir. 1978) ............................................................................................ 18

Gras v. Stevens,
415 F. Supp. 1148 (S.D.N.Y. 1976) ................................................................................... 8

Gulf Ins. Co. v. Glasbrenner,
417 F.3d 353 (2d Cir. 2005) ............................................................................................... 3

Gulf Oil Corp. v. Gilbert,
330 U.S. 501 (1947) .............................................................................................. 15-16, 20

Karriem v. Am. Kennel Club,
949 F. Supp. 220 (S.D.N.Y. 1996) ............................................................................... 11

Kirk v. N.Y.S. Dept. of Educ.,
2008 U.S. Dist. LEXIS 24322 (W.D.N.Y. 2008) ............................................. 4, 12, 13

Lichtenstein v. Emerson,
674 N.Y.S.2d 298 (App. Div. 1998) ........................................................................... 14

Napatco, Inc. v. Lefkowitz,
394 N.Y.S.2d 11 (App. Div. 1977) ............................................................................. 10

Neville v. Dearie,
745 F. Supp. 99 (N.D.N.Y. 1990) ............................................................................ 5, 6

N.Y. County Lawyers' Ass'n v. Pataki,
188 Misc. 2d 776 (N.Y. Sup. Ct. 2001) .................................................................... 8, 9

People v. Romero,
91 N.Y.2d 750 (1998) ............................................................................................ 10, 11

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981) .................................................................................................... 15

Procario v. Ambach,
466 F. Supp. 452 (S.D.N.Y. 1979) ............................................................................... 6

Riso Kagaku Corp. v. A.B. Dick Co.,
300 F. Supp. 1007 (S.D.N.Y. 1969) ........................................................................... 18

Royal & Sunalliance v. British Airways,
167 F. Supp. 2d 573 (S.D.N.Y. 2001) ................................................................... 16, 18

Schertenleib v. Traum,
589 F.2d 1156 (2d Cir. 1978) ..................................................................................... 16

Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.,
774 F. Supp. 858 (S.D.N.Y. 1991) ............................................................................. 16

**Federal Statutes**                                                                 **Page**

28 U.S.C. § 1391(b) ............................................................................. 1, 3, 4, 6

28 U.S.C. § 1391(b)(1) ..................................................................... 1, 4, 10, 13

28 U.S.C. § 1391(b)(2) ..................................................................... 1, 4, 11, 13

28 U.S.C. § 1404(a) .................................................................... 1, 2, 15, 16, 19

28 U.S.C. § 1406(a) ................................................................................... 2


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(a)(1)(A)(i) ................................................................... 21

Fed. R. Civ. P. 12(a)(4)(A) ...................................................................... 21

Fed. R. Civ. P. 12(b)(3) ..................................................................... 2, 3, 4


**State Statutes**

N.Y. Jud. L. § 90 ................................................................................... 7, 8

N.Y. Jud. L. § 470 ............................................... 1, 2, 7, 8, 9, 10, 11, 12, 13, 14

N.Y. Jud. L. § 476-a(1) ............................................................ 8, 9, 10, 11, 14

N.Y. Jud. L. §§ 476-a-476-c ...................................................................... 8

N.Y. Jud. L. § 478 .................................................................................. 10

N.Y. Jud. L. § 485 .................................................................................. 10

N.Y. Jud. L. § 495 .................................................................................. 10


**State Rules and Regulations**

22 N.Y.C.R.R. §118.1(f) ........................................................................... 3

## I. PRELIMINARY STATEMENT

In their brief, defendants argue that the plaintiff's choice of venue is improper because no defendant resides in the Southern District of New York and because there is no connection between plaintiff's claims and her choice of venue. Both assertions are incorrect.

In this case, venue is proper in the Southern District of New York under subsection (1) of 28 U.S.C. § 1391(b) because one or more defendants, for instance, the Attorney General of the State of New York Andrew M. Cuomo, maintains his official residence in New York City. And, venue is also proper under subsection (2) of 28 U.S.C. § 1391(b) since the "events or omissions giving rise to the [plaintiff's] claims," as a result of which she is seeking a declaratory and injunctive relief, would occur in the Southern District of New York because, as a practical matter, that is the district where the actual harm to the plaintiff is occurring by reason of her disqualification from practicing law in the state courts in this district by § 470 of the Judiciary Law.

Finally, the defendants argument for transfer under 28 U.S.C. § 1404(a) must fail because they have not demonstrated the requisite factors that would outweigh the plaintiff's choice of venue or otherwise warrant transfer of this action.

## II. PROCEDURAL HISTORY

On April 1, 2008, plaintiff filed a lawsuit asserting that § 470 of the Judiciary Law is unconstitutional under the Privileges and Immunities Clause of the U.S. Constitution and seeking declaratory and injunctive relief against the State of New York. Subsequently, plaintiff amended her complaint to add several state agencies and state officials as defendants and to include

1

additional claims under the Equal Protection and Commerce Clauses of the U.S. Constitution. As of the date of this brief, all defendants have been served.[1]/

On September 29, 2008, defendants moved before this Court to dismiss plaintiff's complaint for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, to transfer this case to the Northern District of New York under 28 U.S.C. § 1404(a), in which case the defendants request an additional sixty (60) days in which to answer the complaint.  Plaintiff opposes the defendants' motion.

### III.  STATEMENT OF FACTS

Plaintiff is a 2005 law school graduate who is licensed to practice law in California, New Jersey, and New York, and is admitted to practice before this Court.  Burson Decl. Ex. A, Compl. ¶¶ 5-6;  Schoenefeld Decl. ¶ 2.  Plaintiff resides in Princeton, NJ and has her office in Lawrenceville, NJ, both locations being approximately one hour by car or public transportation from the New York State border and New York City.  Burson Decl. Ex. A, Compl. ¶ 6.  Plaintiff is an attorney who recently entered solo practice.  Schoenefeld Decl. ¶ 2.  In the past year, plaintiff has declined one or more cases which, if she was retained, would have required her to practice in the state courts of New York, including in New York City, in violation of § 470 of the Judiciary Law.  Schoenefeld Decl. ¶ 3.

The Attorney General of the State of New York is one of the defendants in this case.  The Office of the Attorney General has two Executive Offices: one located in New York City and the other in Albany.  Schoenefeld Decl. ¶ 4, Ex. 1.  The Attorney General, Andrew M. Cuomo, resides in New York City, which is approximately one hundred fifty (150) miles, or two hours

---

[1]/    The Albany defendants were served on October 7 and 8, 2008.  All defendants, including those located in Albany, are being represented by the State Attorney General from his office located at 120 Broadway, New York, NY.  Def. Notice of Mot.

and forty-five minutes by car, from Albany, New York.  Schoenefeld Cert. ¶ 4, Exs. 2-3.  And, as

evidenced by one of the letters written by Mr. Cuomo in his capacity as Attorney General, he

performs his official duties at the Attorney General's Executive Office at 120 Broadway, New

York, New York.  Schoenefeld Decl. ¶ 4, Ex. 4.[2]/

    Finally, in his registration filed with the New York State Office of Court Administration,

Attorney Registration Unit, Andrew M. Cuomo lists his business address as the Office of

Attorney General at 120 Broadway, New York, New York.  Schoenefeld Decl. ¶ 4, Ex. 5.  The

attorney registration form requires that, by signing the completed form, an attorney affirms that

the information provided is true.  Schoenefeld Decl. ¶ 4, Ex. 6.  The instructions that accompany

the attorney registration form state that if the attorney's "address or any other information

changes during the biennial registration period, [the attorney is] required to notify the Office of

Court Administration (in writing) within 30 days. §118.1(f)."  Schoenefeld Decl. ¶ 4, Ex. 6.

## IV.  LEGAL ARGUMENT

    The courts have held that where the court is asked to resolve a Fed. R. Civ. P. 12(b)(3)

motion based upon pleadings and affidavits, without an evidential hearing, "the plaintiff need

only make a *prima facie* showing of [venue]." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355

(2d Cir. 2005) (alteration in original).  Plaintiff respectfully submits that she has made the

requisite showing that the Southern District of New York is the proper venue for this case.

### A.  The Southern District of New York Is the Proper Venue for This Action.

    Plaintiff's complaint is based on federal questions of law and is, therefore, governed by

28 U.S.C. § 1391(b), which provides in pertinent part:

---

[2]/      Obviously, the content of this letter is not relevant to this case, but the letterhead
indicates the location of the office from which Attorney General Andrew M. Cuomo performs
his duties and, in that sense, it is relevant to this motion.

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in *(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred,* or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added).

In other words, there can be more than one venue, which is proper, under subsections (1) and (2) of 28 U.S.C. § 1391(b). In this case, the plaintiff had the choice to file either in the Southern District or in the Northern District of New York. The plaintiff chose the former.

(1) <u>Plaintiff's Choice of Venue Meets the Requirements of 28 U.S.C. § 1391(b)(1) Because the Attorney General's Official Residence Is in the Southern District of New York.</u>

In the instant case, venue is proper in the Southern District of New York under subsection (1) of 28 U.S.C. § 1391(b) because at least one of the defendants, New York Attorney General Andrew M. Cuomo, has his primary official residence in New York City.

Subsection (b)(1) of 28 U.S.C. § 1391 provides that an action can properly be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Thus, to satisfy venue requirements under § 1391(b)(1), and to successfully oppose the defendants' motion under Fed. R. Civ. P. 12(b)(3), plaintiff need only show that one of the defendants resides in the Southern District of New York. <u>Kirk v. N.Y.S. Dept. of Educ.</u>, 2008 U.S. Dist. LEXIS 24322, *9-10, n. 3 (W.D.N.Y. 2008) (noting that since all defendants resided in New York State, plaintiff needed to show that one defendant resided in plaintiff's chosen venue to satisfy § 1391(b)(1) requirements). Plaintiff respectfully submits that the New

York Attorney General's primary official residence is in New York City, which renders the Southern District a proper venue for the plaintiff's action.[3]/

It is well established that, in cases involving state officials, the term "residence" means the state official's "*official residence, that is where he performs his official duties.*" Birnbaum v. Blum, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (internal citations omitted) (emphasis in original); Buffalo Teachers Fed'n, Inc. v. Helsby, 426 F. Supp. 828, 829 (S.D.N.Y. 1976); Cheeseman v. Carey, 485 F. Supp. 203, 207 (S.D.N.Y. 1980); Neville v. Dearie, 745 F. Supp. 99, 102 (N.D.N.Y. 1990) (holding that the official residence of two federal Circuit Judges was in the Southern District because the Second Circuit Court of Appeals—where these judges performed their official duties—is located in New York City). In other words, the state official's official residence is the place where he actually performs his or her duties as a state official.

In the instant case, the Attorney General's official residence is in New York City. Although the Office of Attorney General has two Executive Offices – one in New York City and another in Albany, Attorney General Andrew M. Cuomo primarily uses the office in New York City, as evidenced by a sample of his correspondence on his official letterhead. Considering the location of his personal residence, one cannot seriously argue that the Attorney General commutes to and uses the Albany office as his primary official residence. Finally, the attorney registration form, in which Andrew M. Cuomo lists 120 Broadway, New York, New York as his business address, further confirms that his primary official residence is in the Southern District.

However, the defendants claim that "the Attorney General performs his official duties in Albany and thus officially resides there as well." Def. Br. at 6. Yet, the sole basis for this

---

[3]/     Since the Attorney General performs his official duties from the Attorney General's office in New York City, the Albany office can at best be considered a secondary official residence and it is, therefore, irrelevant for purposes of this motion.

assertion is the finding by the district court in the Northern District of New York which states in conclusory terms that "the defendant Attorney General of New York, Robert Abrams maintains *an* official residence in Albany, New York.  See e.g., Procario v. Ambach, 466 F. Supp. 452, 454 (S.D.N.Y. 1979)." Neville, 745 F. Supp. at 102 (emphasis added).

Although this is a correct statement of the law, it does not support the defendants' position.  The Neville court concluded that holding the Attorney General to answer a complaint filed against him in the Northern District of New York was proper—a position with which the plaintiff agrees—because he has "*an* official residence" there.  The law is, however, clear that a state official may have more than one official residence and may be sued in the district in which either his primary or secondary residence is located.  Procario, 466 F. Supp. at 453; Buffalo Teachers Fed'n, Inc., 426 F. Supp. at 829-30.  In point of fact, the Attorney General's primary official residence is in Manhattan and his secondary residence is in Albany.  He can, therefore, be sued in either location.  In fact, this Court in Cheeseman has already stated that the Attorney General's principal office is located in the Southern District of New York.  485 F. Supp. at 215 (noting that the defendant state officials "are represented by the State Attorney General whose principal office is in this district").

State officials—unlike their federal counterparts—may have more than one official residence for purposes of venue.  Id. at 207; Berry v. N.Y.S. Dept. of Corr. Serv., 808 F. Supp. 1106, 1109 (S.D.N.Y. 1992) (noting that where "a state defendant may have more than one official residence due to having branch offices where substantial amounts of official business are conducted, their residence for purposes of 1391(b) is one of these official residences") (internal citations omitted); Procario, 466 F. Supp. at 453 (holding that "when a state agency maintains a secondary office in which a significant portion of business is conducted, the agency and its

members may have more than one official residence"). In this case, the Attorney General's primary official residence is in New York City, and the Albany office—if it could be considered his residence at all—would be his secondary office which would not change the venue analysis in this case.

However, even assuming, *arguendo*, that the second residence analysis is applicable here, all factors weigh heavily in favor of the plaintiff's choice of venue. In deciding "whether any defendant has more than one official residence for purposes of the particular litigation," the Cheeseman court considered the following factors:

> (1) the defendant's presence in the district in which the plaintiff has sued;  (2) the extent of defendant's official activities in the district;  and (3) the relationship of the defendant's activities within the district to the cause of action asserted.

485 F. Supp. at 207.

The first and second factors – the Attorney General's presence and the extent of his official activities in the Southern District – are clearly satisfied since Attorney General Cuomo lives in New York City and performs his official duties at his office located at 120 Broadway in New York City, as stated above. Accordingly, the presence of the third factor turns upon whether there is a sufficient relationship between the plaintiff's complaint and the Southern District of New York. Plaintiff maintains that there is. See infra Part IV.A(2).

Finally, the defendants' argument that the Attorney General does not have the authority to individually enforce § 470 of the Judiciary Law is not supported by case law or statutory law and must, therefore, fail. Def. Br. at 7-8. Section 90 of the Judiciary Law addresses only the powers and authority of the Appellate Division and character committees; however, it does not

speak to the authority the Attorney General does or does not have.[4]/ N.Y. Jud. L. § 90. Further, the cases cited in the defendants' brief do not support their argument and, in fact, do not discuss, or even reference, the Attorney General's authority to enforce sections 470 or 476-a(1).

For instance, in N.Y. County Lawyers' Ass'n v. Pataki, plaintiff bar association filed a complaint against the State of New York and the Governor, challenging the compensation levels and limits for assigned private counsel. 188 Misc. 2d 776, 778 (N.Y. Sup. Ct. 2001). In that case, the defendants argued that the Governor was not a proper party "because he play[ed] no role in the implementation of the statutes governing the provision of assigned counsel to children and indigent adults." Id. at 787. In response, plaintiff bar association "point[ed] to the Governor's comments, reported in the media, coupled with the state constitutional provision that the Governor shall faithfully execute the laws." Id. The court dismissed the Governor from the lawsuit, finding that there was not a "sufficient nexus, independent of the general duty to enforce state laws, between the Governor and the statute alleged to be unconstitutional." Id. (citing Gras v. Stevens, 415 F. Supp. 1148, 1151-52 (S.D.N.Y. 1976) (holding that there was no nexus, other than the general duty to uphold the laws, between the state defendants and the plaintiff's action to enjoin defendant state judges from directing him to make any payments to his wife in a divorce proceeding that was pending in the state court)).

In other words, in N.Y. County Lawyers' Ass'n, aside from the Governor's general duty to faithfully execute the laws as required by the New York Constitution—which does not by

---

[4]/     In fact, powers given under § 90 to the Appellate Division and character committees and those given under § 476-a to the Attorney General are quite different – the Appellate Division and character committees have authority to admit and remove attorneys from practice for various reasons while the Attorney General has the authority to institute a civil action for injunctive relief against any person engaged in the unlawful practice of law. N.Y. Jud. L. § 90, §§ 476-a-476-c.

itself constitute the requisite nexus—the only support for plaintiff's claims against the Governor were his comments as reported in the media, which the court found to be insufficient. Id.

By comparison, in this case, the Attorney General has the specific authority to enforce the laws prohibiting the unlawful practice of law, including § 470. Section 476-a(1) of the Judiciary Law expressly authorizes the Attorney General to maintain an action against any person for the unlawful practice of law. N.Y. Jud. L. § 476-a(1). In defining what constitutes the "unlawful practice of law" under this section, the language of the statute clearly states that the "unlawful practice of law" is not limited to the acts or statutory provisions listed therein: "*The term 'unlawful practice of the law' as used in this article shall include, but is not limited to….*" N.Y. Jud. L. § 476-a(1) (emphasis added).[5] In other words, the acts that may constitute the unlawful

---

[5]  The complete language of this section—unlike defendants' abbreviated interpretation—states:

> The attorney-general may maintain an action upon his own information or upon the complaint of a private person or of a bar association organized and existing under the laws of this state against any person, partnership, corporation, or association, and any employee, agent, director, or officer thereof who commits any act or engages in any conduct prohibited by law as constituting the unlawful practice of the law.
>
> The term "unlawful practice of the law" as used in this article *shall include, but is not limited to,*
>
> (a) any act prohibited by penal law sections two hundred seventy, two hundred seventy-a, two hundred seventy-e, two hundred seventy-one, two hundred seventy-five, two hundred seventy-five-a, two hundred seventy-six, two hundred eighty or fourteen hundred fifty-two, or
>
> (b) any other act forbidden by law to be done by any person not regularly licensed and admitted to practice law in this state, or
>
> (c) any act punishable by the supreme court as a criminal contempt of court under section seven hundred fifty-B of this chapter.

N.Y. Jud. L. § 476-a(1) (emphasis added).

practice of law, for which the Attorney General is authorized to institute an enforcement action, are not limited to those listed in § 476-a(1).

Significantly, the Office of Attorney General has adopted a much broader interpretation of this section in other cases. For instance, using § 476-a(1), the Attorney General prosecuted and convicted the defendant for petit theft and the unlawful practice of law in violation of §§ 478, 485, even though neither of these sections (or sections listed therein) are mentioned in § 476-a. People v. Romero, 91 N.Y.2d 750 (1998).[6] Similarly, in Napatco, Inc. v. Lefkowitz, the Attorney General issued a subpoena *duces tecum* as part of his investigation of the defendant to determine whether the defendant was engaged in the unlawful practice of law in violation of § 495. 394 N.Y.S.2d 11, 12 (App. Div. 1977). Section 495 is also not specifically listed in § 476-a(1).

In short, the plain language of § 476-a authorizes the Attorney General to file a civil action for any act that constitutes the unlawful practice of law, which is broadly defined and not limited to the statutory provisions listed therein, as evidenced by the Attorney General's own conduct and case law. Thus, had the plaintiff in this case chosen to practice in the state courts of the State of New York in violation of § 470 of the Judiciary Law, the Attorney General would have had the full authority under § 476-a to institute a civil action seeking injunctive relief against the plaintiff.

Based on the above, it follows that venue is properly established in the Southern District of New York under subsection (1) of 28 U.S.C. § 1391(b) because one of the defendants, Attorney General Andrew M. Cuomo, maintains his primary official residence in New York

---

[6] On appeal, the Court of Appeals of New York reversed the conviction on the grounds that § 476-a authorized the Attorney General to institute only a civil action for injunctive relief,

City. Also, the Attorney General is a proper defendant in this case because he has the authority under § 476-a to enjoin the plaintiff from practicing law in the courts of New York, if plaintiff chooses to do so in violation of § 470.

(2) Plaintiff's Choice of Venue Meets the Requirements of 28 U.S.C. § 1391(b)(2) Because Most of "the Events or Omissions Giving Rise to the Claims Occurred" in the Southern District of New York.

Venue is also proper under subsection (2) of 28 U.S.C. § 1391(b) since the "events or omissions giving rise to the [plaintiff's] claims," as a result of which she seeks declaratory and injunctive relief, have occurred in the Southern District of New York.

Interpreting this subsection, the courts have held that § 1391(b)(2) permits suit in more than one district. Karriem v. Am. Kennel Club, 949 F. Supp. 220, 221 (S.D.N.Y. 1996); Cheeseman, 485 F. Supp. at 212. In Cheeseman, this Court noted that "[c]ourts have frequently found that claims arose in multiple districts because of substantial contacts with more than one forum, or because of a significant relationship with more than one district, or because of a substantial impact in more than one district." Id. And, as the Second Circuit explained, "[s]ection 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred...[,] contemplates that venue can be appropriate in more than one district and permits venue in multiple judicial districts as long as a 'substantial part' of the underlying events took place in those districts." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (internal citations omitted). In other words, depending upon the circumstances of a particular case, venue can properly lie in more than one district under § 1391(b)(2). In this case, proper venue is in at least two districts—the Southern District

_____

but not a criminal action. Id. at 754-55. In other words, had the Attorney General sought civil injunctive relief instead of a conviction, the case would not likely have been reversed on appeal.

and the Northern District of New York—with the former being the district with the stronger connection to plaintiff's claims.

There are four ways in which § 470 of the Judiciary Law affects the plaintiff's claims giving rise to this action, three of which occur in the Southern District of New York and only one in the Northern District. First, as a practical matter, the Southern District of New York is the district where actual harm is currently accruing to plaintiff because it is the closest district to the plaintiff's residence and the district, in which she would have practiced law but for § 470 of the Judiciary Law.

For instance, in Kirk, the plaintiff – a veterinarian and a citizen of Canada who had a temporary status which allowed him to live and work in the United States – alleged that the New York statute, which restricted the granting of professional licenses to U.S. citizens and permanent residents, was unconstitutional. 2008 U.S. Dist. LEXIS 24322. Shortly before the expiration of his temporary status, the plaintiff in that case filed his action in the Western District of New York because that was the district where he would be precluded from practicing veterinary medicine. Id. at *2. Like in the instant case, the defendant state agencies and officials moved to dismiss the complaint for improper venue, or to transfer it to the Northern District of New York, arguing that their official residences were in Albany and denying that a substantial part of the events or omissions giving rise to plaintiff's claim occurred in the Western District. Id. at *3-4. The plaintiff opposed the motion on the grounds that some defendants maintained offices in the Western District and that "'the principal effect of the [challenged provision of the statute] will be felt [in the Western District of New York], where [his] ability to practice [his]

12

profession is in jeopardy,' since he has lived and worked in the Western District of New York since 2002."[7]/ Id. at *4-5 (alteration in original).

The Kirk court agreed with plaintiff's arguments, holding that venue was appropriate in the Western District under both § 1391(b)(1) (finding that defendants resided in that district "by virtue of having offices here") and under § 1391(b)(2) (finding that plaintiff "has shown that a substantial part of the events or omissions giving rise to his claim occurred in the Western District" and that "it does not appear that there is any other district that has a stronger connection to Plaintiff's claim"). Id. at *9, 12-13.

In this case, considering that the plaintiff is a resident of West-Central New Jersey, it is implausible to suggest that she filed her complaint so that she could practice in the courts in Albany or Buffalo. That is precisely why the plaintiff sought to be, and was, admitted to practice before this Court but not the Northern District of New York. In other words—just as in Kirk— the current preclusive, harmful effect of § 470 of the Judiciary Law that gives rise to plaintiff's action is occurring in the Southern District of New York.

There are three other ways in which enforcement action could be taken if the plaintiff chose to practice law in violation of § 470 of the Judiciary Law. As the defendants acknowledge in their brief, "[e]nforcement of Judiciary Law § 470 lies [] with the court system either in disciplinary proceedings when a complaint is filed against an attorney in the appellate division where she is registered or when raised by opposing counsel." Def. Br. at 7, 8-9 (emphasis added). While it is true that the enforcement of § 470 in the form of a disciplinary proceeding

---

[7]/    Although the plaintiff in this case has never lived or worked in New York—which would have rendered her complaint moot—the Southern District is the district where she is effectively precluded from practicing law in the state courts because it is the closest district to her home or office and the place where she would be inclined to advertise and accept cases.

would occur in the Third Department (which is in the Northern District), the defendants mention, but fail to discuss, the other enforcement option: "when raised by opposing counsel." As already mentioned, if the plaintiff were to practice in the state courts of New York in violation of § 470, she would do so in the Southern District and that is the district where opposing counsel would seek to enforce the statute against her.[8]/  Finally, in the event of the plaintiff's violation of § 470—which, again, would have occurred in the Southern District—the Attorney General could enjoin her from practicing law in New York by invoking his authority under § 476-a, that is by filing a civil action in a court within this district.  See supra Part IV.A(1).

Some courts have reasoned that "the plaintiff must also show that this district may with approximately equal plausibility [...] . . . be assigned as the locus of the claim[... a]nd the plausibility of such an assertion must turn on availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant."  Cheeseman, 485 F. Supp. at 213.  In Cheeseman, like in this case, the defendant state officials sought to dismiss the plaintiffs' complaint or to have it transferred to the Northern District of New York on similar grounds.  Id. The Court noted that, although "all the officials who determined that plaintiffs' pay should be reduced reside in Albany and made their decisions there[, t]he effects of their decisions were profoundly felt in the Southern District, however."  Id. at 212.  Thus, the Court found that the Southern District "is not an inconvenient forum for defendants, since it is close to Albany, and since most state agencies have facilities and offices here [and that] location of the necessary evidence is insignificant in this case, since no issues of fact exist."  Id. at 213.

---

[8]/   Interestingly, to support their argument, the defendants cite Lichtenstein v. Emerson, 674 N.Y.S.2d 298 (App. Div. 1998), an enforcement action brought in the Appellate Division, First Department which is located in the Southern District of New York.

Like in <u>Cheeseman</u>, the state agencies and officials here will not be inconvenienced by having to litigate in this district because they are all represented by the Attorney General's office from its principal offices in New York City and because—unlike the plaintiff—the defendants would not likely be required to appear in person at trial or in other court proceedings in this litigation. Similarly, the location of evidence is unimportant because issues of fact requiring the production of voluminous records do not exist. Finally, as already stated, the plaintiff's claims have a stronger connection to this district because it is the district in which she is effectively precluded from practicing law.

In short, the Southern District of New York is the proper venue for this action for declaratory and injunctive relief because most of the "events or omissions" giving rise to plaintiff's complaint are occurring in this district.

To summarize, the defendants are unable to show that the Northern District is the <u>only</u> proper venue for plaintiff's action because at least one of the defendants resides in the Southern District of New York and because the "events or omissions" giving rise to plaintiff's claims have substantially occurred in this district.

## B.  The Defendants Failed to Meet Their Burden to Show That the Circumstances of This Case Warrant a Transfer Under 28 U.S.C. § 1404(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

However, it is well established that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 265-66 (1981). Thus, the defendant bears a heavy burden to show that plaintiff's choice of forum was improper. <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947) (holding that "unless the balance is strongly

in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"); Don King Prod., Inc. v. Douglass, 735 F. Supp. 522, 533 (S.D.N.Y. 1990) (holding that "[t]he moving party must make a clear showing to justify a change of venue). In deciding whether to transfer a case, the "courts engage in a two-part test: (1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing Schertenleib v. Traum, 589 F.2d 1156, 1161 (2d Cir. 1978)).

The plaintiff does not dispute that this action could have been brought in the Northern District. Thus, the issue is whether the transfer would promote convenience and justice such as to overcome the presumption in favor of the plaintiff's choice of venue. In making this determination, the courts have articulated a number of factors to be considered when deciding a motion to transfer under § 1404(a):

> (1) the plaintiff's choice of forum; (2) the convenience of parties; (3) the place where the operative facts occurred; (4) the relative ease of access to sources of proof; (5) the convenience of witnesses; (6) the availability of process to compel attendance of unwilling witnesses; (7) the forum's familiarity with the governing law; and (8) trial efficiency, means of the parties and the interest of justice.

Breeden v. Tricom Bus. Sys., Inc., 244 F. Supp. 2d 5, 8-9 (N.D.N.Y. 2003) (citing Viacom Int'l, Inc. v. Melvin Simon Prod., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991)).

The first factor—"the plaintiff's choice of venue"—"is entitled to significant consideration and [should] not be disturbed unless other factors weigh strongly in favor of transfer." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001).

The second factor—"the convenience of parties"—does not warrant a transfer in this case. All of the defendants are either state agencies or state officials being sued in their official capacities and, as evidenced by the defendants' motion, are represented by the Attorney General from his office in New York City. While it may appear that having to litigate in this district

might be inconvenient for some of the defendants, that is not likely to be the case because of the declaratory nature of this action and because none of the defendants—including those in Albany—are likely to testify at trial or appear in any other court proceeding in this case.

On the other hand, it would be highly inconvenient and would impose an undue financial burden on the plaintiff, a new solo practitioner who is building her practice, because of the additional costs involved, both in terms of time and the costs of travel and lodging in Albany, if she is required to litigate in the Northern District of New York.

The third factor—"the place where the operative facts occurred"—is, at best, a neutral consideration since either district is appropriate.  See supra Part IV.A(2).

The fourth factor—the relative ease of access to sources of proof—is similarly neutral. The courts have held that:

> access to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to [the moving party's proposed forum].

Constitution Reins. Corp. v. Stonewall Ins. Co., 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995) (alteration in original).

Furthermore, other courts have reasoned that "[i]n today's era of photocopying, fax machines and Federal Express, location of documents factor is neutral." Breeden, 244 F. Supp. 2d at 10 (quoting Coker v. Bank of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997)).  In short, this factor does not support the transfer of this case.

Likewise, the fifth factor—"the convenience of witnesses"—does not favor the transfer of this case.  The courts have stated that:

> The convenience of witnesses is probably the single most important factor in the transfer analysis.  Because of the importance of this factor, *the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.*

Excelsior Designs, Inc., 291 F. Supp. 2d at 185-86 (internal quotations and citations omitted) (emphasis added); Breeden, 244 F. Supp. 2d at 10 (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978)).

As the Breeden court explained, the party seeking transfer "must provide precise information, in affidavit form, about the witnesses it intends to call and the anticipated areas of their testimony, so that the court can intelligently weigh the factor of witness convenience." Breeden, 244 F. Supp. 2d at 10 (citing Riso Kagaku Corp. v. A.B. Dick Co., 300 F. Supp. 1007 (S.D.N.Y. 1969)).

In this case, the defendants have failed to specify any witnesses, let alone state the subject of their testimony. And, as previously stated, this case turns on purely legal issues that do not appear to require any witness testimony, at least on the defendants' part. Moreover, "[w]hen weighing the convenience of the witnesses, courts must consider the *materiality, nature, and quality of each witness, not merely the number of witnesses in each district*." Royal & Sunalliance, 167 F. Supp. 2d at 577 (emphasis added). In other words, even if there were witnesses to be called in this case, the mere number of Albany defendants is not indicative—or dispositive—of "the convenience of the witnesses" factor. In short, the defendants have failed to make the requisite showing under this factor because they did not specify the witnesses (nor the subject of their testimony) who would be inconvenienced by plaintiff's choice of venue.

The sixth factor—"the availability of process to compel attendance of unwilling witnesses"—does not favor the transfer because (1) no witnesses have been identified by the defendants and (2) even if they had been, this factor is entitled to no weight since both districts are located within the same state.

The seventh factor—"the forum's familiarity with the governing law"—does not favor transfer either because both districts are equally equipped to decide the legal issues in this case.

The eight factor—"trial efficiency, the means of the parties and the interests of justice"—does not favor transfer. There is nothing special about this case that would make the trial more efficient in one forum than another. On the other hand, the means of the parties weighs heavily against transfer. See Breeden, 244 F. Supp. at 11 (finding that the bankruptcy estate had limited resources and forcing the trustee to litigate in the proposed transferee district would impose an additional expense that otherwise would not have occurred); Excelsior Designs, Inc., 291 F. Supp. 2d at 186 (holding that the "court may consider the relative means of the parties 'where [an economic] disparity between the parties exist'") (internal citations omitted) (alteration in original). In the instant case, there could hardly be a greater economic disparity than that between the plaintiff—a solo practitioner with limited means—and the defendants—the state agencies and state officials who are represented by the Office of Attorney General with offices in both districts.

In its discussion of the last factor, "the interests of justice," this Court has previously observed that:

> Section 1404(a) poses little difficulty for courts resolved either to grant or deny motions for transfer. If a court is inclined to grant a transfer, it has available the established doctrine that the section was intended to prevent forum shopping. If a court is inclined to deny a transfer, it usually suffices to invoke the equally well established doctrines that a plaintiff's choice of forum is entitled to respect, and that a moving defendant has the burden of proving a case for transfer.

Cheeseman, 485 F. Supp. at 214-15.

The Cheeseman Court noted that "[a] court seeking reasons for choosing one or the other of these conflicting doctrines is inevitably led to . . . analysis of the doctrine of forum *non conveniens*." Id. at 215. In discussing which factors should be considered in determining whether there was forum shopping favoring a transfer under § 1404(a), the Court reasoned that "[a]ny competent lawyer chooses a forum with his or her client's interests in mind" and therefore

"the choice of forum must have been made 'with some harassment' in mind to have justified dismissal of the action." Id. (quoting Gulf Oil, 330 U.S. 501).

Finding that "[n]o substantial injustice is caused by plaintiff's choice," the Court further reasoned that:

> [T]he defendants here have offices in the Southern District, and are represented by the State Attorney General whose principal office is in this district, are also factors to which Justice Jackson would have given considerable weight. . . . Finally, Justice Jackson's analysis would incorporate the fundamental fact that this case does not require a trial in which the Albany based witnesses would need to appear.
> . . .
> Had plaintiffs selected this forum to avoid specific precedents in the Northern District, the case for a transfer would have been far stronger. . . . No such argument can be made here, however. . . . Under the circumstances, plaintiffs appear to be proceeding in this district for legitimate tactical considerations, and not for the purpose of harassing defendants. No substantial injustice is caused by plaintiff's choice.

Cheeseman, 485 F. Supp. at 215.

This case is similar in the sense that, as in Cheeseman, all defendants—even those located in Albany—are represented by the Attorney General whose principal office is in New York City, this case does not require a trial in which any witnesses will need to appear, there are no precedents that plaintiff seeks to avoid, and she did not file her complaint in this district for the purpose of harassing defendants. Thus, following the Cheeseman court's analysis, no substantial injustice is caused by plaintiff's choice of venue.

To summarize, there are no factors that would outweigh the presumption in favor of the plaintiff's choice of forum and, therefore, the defendants' motion to transfer this case should be denied.

## C. The Defendants' Request for an Additional Sixty Days to Answer Plaintiff's Complaint.

The defendants' request for an additional sixty days in which to answer is unreasonable but the plaintiff will not oppose it. Typically, the Federal Rules of Civil Procedure require that a

defendant must serve an answer within twenty (20) days after being served with a summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). However, where a motion was filed under this Rule and the motion was denied or its disposition was postponed, "the responsive pleading must be served within 10 days after notice of the court's action," unless the court sets a different time. Fed. R. Civ. P. 12(a)(4)(A).

In this case, the defendants have already had more than enough time to review the plaintiff's complaint and consider what their answer will be. The defendants were on notice of plaintiff's action for about four months, with the last defendant being served with the amended complaint on October 8, 2008. Regardless of the disposition of this motion, the defendants would have to file their answer either in the Southern District or in the Northern District of New York and, in either event, there would not be a change in counsel since all of the defendants are represented by the Office of Attorney General. In other words, the time that the defendants have already had, and will continue to have until this Court's decision on this motion, provides them with ample opportunity to answer the plaintiff's complaint. Nonetheless, plaintiff does not oppose the request, but leaves the determination of the time within the defendants must answer to the discretion of the Court.

## V. CONCLUSION

For the reasons stated, the defendants' motion to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer venue to the Northern District of New York should be denied.

Dated: October 29, 2008

Respectfully submitted,

By: *Ekaterina Schoenefeld*

Ekaterina Schoenefeld

21

Ekaterina Schoenefeld
3371 US Highway 1, Suite 105
Lawrenceville, NJ 08648
Tel:  (609) 750-0330
Fax:  (609) 750-0331
eschoenefeld@schoenefeldlaw.com

October 29, 2008

J. Michael McMahon
Clerk of Court
United States District Court for the
Southern District of New York                    **VIA HAND DELIVERY**
500 Pearl Street
New York, NY 10007

       Re:    <u>Schoenefeld v. State of New York, et al.</u>
               Civil Action No.: 08-cv-3269

Dear Mr. McMahon:

       I am a *pro se* plaintiff in this matter.

       Enclosed please find an original and copies of plaintiff's papers in opposition to Defendants' Motion to Dismiss the Complaint for Improper venue or, in the Alternative, to Transfer the Matter to the Northern District and for Related Relief.

       The opposition papers have been served on the defendants via overnight mail.  I am delivering a courtesy copy of the enclosed for Judge Buchwald as well.

       Please note that oral argument is requested.

       Thank you for your attention and consideration.

                    Respectfully yours,

                    *Ekaterina Schoenefeld*

                    Ekaterina Schoenefeld

ES/hs
Encls.

cc:     Kate Burson, Assistant Attorney General (via overnight mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Ekaterina Schoenefeld_

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

- against -

_State of New York, et al._

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

_08_ Civ. _3269_ (_NRB_) (___)

**AFFIRMATION OF SERVICE**

I, _Ekaterina Schoenefeld_, **declare under penalty of perjury** that I have
  *(name)*

served a copy of the attached _opposition papers (declaration + brief)_
  *(document you are serving)*

upon _Office of Attorney General_ whose address is _____
  *(name of person served)*

_120 Broadway, New York, NY 10271_
  *(where you served document)*

by _overnight mail_.
  *(how you served document: For example - personal delivery, mail, overnight express, etc.)*

Dated: _Lawrenceville_, _NJ_
  *(town/city)*   *(state)*

_October_ _29_, 20_08_
  *(month)*   *(day)* *(year)*

_Ekaterina Schoenefeld_
Signature
_3371 US Highway 1, Ste 105_
Address
_Lawrenceville, NJ_
City, State
_08648_
Zip Code
_(609) 750-0330_
Telephone Number

*Rev. 05/2007*