UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____
                                        :
EKATERINA SCHOENEFELD,                  :
                                        :
          Plaintiff,                    :       Case No.:  09-cv-0504 (LEK) (RFT)
                                        :
          v.                            :
                                        :       (Document Filed Electronically)
STATE OF NEW YORK, ET AL.,              :
                                        :
          Defendants.                   :
                                        :
_____:

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT IN ITS ENTIRETY**
_____

Ekaterina Schoenefeld
Bar Roll No. 515685

32 Chambers Street, Suite 2
Princeton, New Jersey 08542
Tel.: (609) 688-1776                    Ekaterina Schoenefeld, Esq.
Fax:  (609) 228-4099                    On the Brief
Email: eschoenefeld@schoenefeldlaw.com

*Plaintiff Pro Se*

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ............................................................................................ ii

I.     PRELIMINARY STATEMENT ...................................................................1

II.    PROCEDURAL HISTORY ..........................................................................2

III.   STATEMENT OF FACTS ...........................................................................3

IV.    LEGAL ARGUMENT ..................................................................................5

       A.    The Defendants' Rule 12(b)(1) Motion to Dismiss on the Grounds
             That the Case Is Not Ripe and the Court Lacks Subject Matter Jurisdiction
             Must Fail Because the Plaintiff's Complaint Presents a Controversy
             That Is Ripe for Adjudication ................................................................5

             (1)    Contrary to Defendants' Assertions, a Substantial Controversy Exists
                    Between the Parties .....................................................................7

             (2)    Contrary to Defendants' Claims, the Controversy Is Not Speculative or
                    Hypothetical as Judiciary Law § 470 Infringed, and Continues to
                    Infringe, Upon Plaintiff's Right to Practice Law in New York ...............8

             (3)    Contrary to Defendants' Claims, § 470 of the Judiciary Law Was and
                    Continues to Be Enforced by the State Courts of New York, Which
                    Prevents Plaintiff From Practicing Law in the State, Thereby Resulting
                    in a Substantial Hardship ......................................................11

       B.    The Defendants Motion to Dismiss the Plaintiff's Complaint Pursuant to
             Rule 12(b)(6) Based on the Eleventh Amendment Immunity Must Be Denied
             Under the *Ex Parte Young* Exception Applicable to Actions Seeking
             Prospective Relief ..............................................................................14

             (1)    Contrary to Defendants' Assertions, a Substantial Controversy Exists
                    Between the Parties ...................................................................15

             (2)    Defendants' Argument Asserting That There Must Be "Personal
                    Involvement" of the Named Individuals Against Plaintiff Is Misplaced
                    and Must Fail .........................................................................21

V.     CONCLUSION.............................................................................................23

i

## TABLE OF CITATIONS

**Cases**                                                                                  **Page**

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth et al.,
300 U.S. 227 (1937)................................................................................................6

Abbott Labs. V. Gardner,
387 U.S. 136 (1967)................................................................................................7

Barnard v. Thornstenn,
489 U.S. 546 (1989)................................................................................................4

Black v. Coughlin,
76 F.3d 72 (2d Cir. 1996) ....................................................................................22

Blyden v. Mancusi.
186 F.3d 252 (2d Cir. 1999) ................................................................................22

Conley v. Gibson,
355 U.S. 41 (1957)..............................................................................................15

Cooper v. Pate,
378 U.S. 546 (1964)............................................................................................14

Cox v. City of Dallas,
356 F.3d 281 (5th Cir. 2001) ................................................................................18

Crosetto v. State Bar of Wisconsin,
12 F.3d 1396 (7th Cir. 1993) ..................................................................................7

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
261 F. Supp. 2d 293 (S.D.N.Y. 2003) ...................................................................6

Dubuc v. Michigan Bd. of Law Examiners,
342 F.3d 610 (6th Cir. 2003) ................................................................................19

Edelman v. Jordan,
415 U.S. 651 (1974) ............................................................................................20

Ex Parte Young,
209 U.S. 123 (1908)..........................................................1, 15, 16, 17, 18, 19, 20

Fiedler v. State of New York,
925 F. Supp. 136 (N.D.N.Y. 1996) ......................................................................19

Frew v. Hawkins,
540 U.S. 431 (2004) ...................................................................................20

Idaho v. Coeur d'Alene Tribe of Idaho,
521 U.S. 261 (1997) ...............................................................................16, 19

In re Dairy Mart Convenience Stores, Inc.,
411 F.3d 367 (2d Cir. 2005) ...................................................................16, 17

In re Gordon,
397 N.E.2d 1309 (N.Y. 1979) .....................................................................4

In re Haas,
654 N.Y.S.2d 479 (App. Div., 3rd Dep't 1997) ....................................12, 17

In re Marin,
673 N.Y.S.2d 247 (App. Div., 3rd Dep't 1998) ....................................12, 17

Int'l Tape Mfrs. Ass'n v. Gerstein,
494 F.2d 25 (5th Cir. 1974) ........................................................................6

Kinder Morgan Energy Partners, LP v. Ace Am. Ins. Co.,
859 N.Y.S.2d 135 (App. Div., 1st Dep't 2008) ..........................................13

Lichtenstein v. Emerson,
674 N.Y.S.2d 298 (App. Div. 1998) ............................................................13

Mancuso v. New York State Thruway Auth.,
86 F.3d 289 (2d Cir.1996) ..........................................................................19

Marchi v. Bd. of Coop. Educ. of Albany,
173 F.3d 469 (2d Cir.1999) ........................................................................6-7

Miller v. Corbett,
676 N.Y.S.2d 770 (City Ct. 1998) ..........................................................13-14

Milliken v. Bradley,
433 U.S. 267 (1977) ...................................................................................20

Neal v. Energy Transp. Group,
744 N.Y.S.2d 672 (App. Div., 1st Dep't 2002) ...........................................13

New York State Bar Ass'n v. Reno,
999 F. Supp. 710 (N.D.N.Y. 1990) .........................................................9-10

Pennhurst State Sch. & Hosp. v. Halderman,
465 U.S. 89 (1984)......................................................................................18

Pollack v. Nash,
58 F. Supp. 2d 294 (S.D.N.Y. 1999) ...........................................................22

Scheuer v. Rhodes,
416 U.S. 232 (1974)...................................................................... 14-15

Seminole Tribe of Florida v. Florida,
517 U.S. 44 (1996)........................................................................ 18-19

Snider v. Dylag,
188 F.3d 51 (2d Cir. 1999) ...................................................................22

Spomer v. Littleton,
414 U.S. 514 (1974) .............................................................................22

Steffel v. Thompson,
415 U.S. 452 (1974)........................................................................6, 7

Students for Conservative America v. Greenwood,
378 F.3d 1129 (9th Cir. 2004) ...............................................................20

Supreme Court of New Hampshire v. Piper,
470 U.S. 274 (1985) ..............................................................................4

Supreme Court of Virginia v. Friedman,
487 U.S. 59 (1988) ...............................................................................4

Turner v. Olympic Reg'l Dev't Auth.,
89 F. Supp. 2d 241 (N.D.N.Y. 2000)......................................................14

W. Mohegan Tribe & Nation v. Orange County,
395 F.3d 610 (2d Cir. 2004)...................................................................19

Will v. Michigan Dep't of State Police,
491 U.S. 58 (1989).................................................................................21

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,
473 U.S. 172 (1985)................................................................................11

Whiting v. Inc. Village of Old Brookville,
79 F. Supp. 2d 133 (E.D.N.Y. 1999) .......................................................22

Wright v. Smith,
21 F.3d 496 (2d Cir. 1994) .....................................................................22

**U.S. Constitution**                                                             **Page**

Article III .............................................................................................................6

Commerce Clause ....................................................................1, 2, 4, 5, 18, 21

Eleventh Amendment ........................................................15, 16, 18, 19, 20, 21

Equal Protection Clause of the 14th Amendment ............................. 1, 2, 4, 5, 18, 20-21

Privileged & Immunities Clause of Article IV .......................................1, 2, 4, 5, 18, 21

**Federal Statutes**

28 U.S.C. § 1404(a) .............................................................................................3

28 U.S.C. § 2201 ..................................................................................................6

42 U.S.C. § 1983 .................................................................................1, 20, 21, 22

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) ...............................................................................1, 6, 11, 23

Fed. R. Civ. P. 15(b)(3) ........................................................................................3

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 14, 15, 23

Fed. R. Civ. P. 15(a) ............................................................................................2

Fed. R. Civ. P. 25(d)(1) ........................................................................................22

**State Statutes**

N.Y. Jud. Law § 90 .........................................................................................12, 17

N.Y. Jud. Law § 470 .........................1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 20, 21, 22, 23

N.Y. Jud. Law § 476-a .....................................................................................17, 18

N.Y. Jud. Law § 476-b.........................................................................................17

N.Y. Jud. Law § 476-c.........................................................................................17

N.Y. Jud. Law § 487 ......................................................................................10, 18

**State Rules and Regulations**

22 N.Y.C.R.R. § 806.3 ...........................................................................................................17

C.P.L.R. 9406 ..........................................................................................................................5

**Other Legal Authorities**

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (2008) ...................................16

## I.  PRELIMINARY STATEMENT

In this case, plaintiff filed an action for prospective declaratory and injunctive relief asserting that, despite being a licensed New York attorney, she is unable to practice in this State because of the ongoing enforcement of § 470 of the Judiciary Law, prohibiting her as a non-resident attorney to appear in state courts unless she maintains an office there, in violation of Privileges and Immunities Clause of Article IV, the Commerce Clause, and the Equal Protection Clause of the 14th Amendment.

The defendants filed a motion to dismiss plaintiff's complaint in its entirety.  In their brief, the defendants urge the Court to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), alleging that no controversy exists that is ripe for judicial review.  However, § 470 has been and continues to be applied to sanction non-resident New York attorneys or to void proceedings commenced by them.  Rule 12(b)(1) motion should be denied entirely because an actual and substantial controversy between the parties' legal rights exists which is ripe for adjudication.

In addition, the defendants move to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief can granted under Rule 12(b)(6), incorrectly asserting that, an action for violation of the Constitution and its amendments and 42 U.S.C. § 1983 for prospective declaratory and injunctive relief requires plaintiff to show the "personal involvement" against her by the individual defendants, even though they are named as parties in their official capacities, and thus cannot be sued under § 1983.  Moreover, as they are being sued in their respective official capacities for prospective relief to enjoin violations of constitutional protections and federal law, they are proper defendants both, as more fully explained below, under *Ex Parte Young* doctrine and § 1983.  Indeed, the Assistant Attorney General handling the case before its

1

transfer informed plaintiff that the Chairman of the Committee on Professional Standards was the proper defendants.  Needless to say, he is a defendant here.  Therefore, the defendants' Rule 12(b)(6) motion should be denied except as to the State of New York and those agencies that properly might be considered as the arms of the State.

## II.  PROCEDURAL HISTORY

On April 1, 2008, plaintiff filed a lawsuit in the Southern District of New York asserting that § 470 of the Judiciary Law is unconstitutional under the Privileges and Immunities Clause of the U.S. Constitution and seeking prospective declaratory and injunctive relief against the State of New York.  Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 1.  Shortly before the defendant's answer was due, opposing counsel informed the plaintiff that "the proper party for [her] action [wa]s the chairperson of the Third Department's Committee on Professional Standards." Schoenefeld Decl. Ex. B.  To avoid unnecessary motion practice—filing a Rule 15(a) motion to leave to amend—the plaintiff amended her complaint on July 8, 2008, before the defendant's answer was due, adding Thomas C. Emerson, the then-Chairperson of the Third Department's Committee on Professional Standards, several state agencies, and a number of other state officials as defendants, and included additional claims based on violations of the Equal Protection Clause of the 14th Amendment and Commerce Clause of the U.S. Constitution.[1]/ Schoenefeld Decl. Ex. A, Amend. Compl. ¶¶ 7-11.

---

[1]/      Plaintiff has added as additional defendants all Justices of Appellate Division, Third Judicial Department since they have the power to enforce the statute in question in two ways: (1) by imposing a disciplinary sanction upon an attorney who violates Judiciary Law § 470, and (2) by rendering judicial opinions on appeals involving application of § 470 in the lower state courts.  The latter is equally applicable to all judges and Justices of the state courts of New York, whom plaintiff did not to join in this action as unnecessary.

On September 29, 2008, defendants filed a Rule 12(b)(3) motion to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer the case to the Northern District of New York under 28 U.S.C. § 1404(a).  Plaintiff opposed that motion on the grounds that venue was proper, that the events giving rise to the suit arose to a larger extent in the Southern District of New York, and that, since there are no or few issues of facts, the plaintiff would suffer a greater hardship—economic and otherwise—than the defendants if she was required to litigate in Albany, New York.  Nevertheless, on April 16, 2009, the district judge ordered that the case be transferred to the Northern District of New York pursuant to 28 U.S.C. § 1404(a), finding that the convenience of multiple defendants warranted such a transfer but making no determination as to the defendants' 12(b)(3) argument.

On June 16, 2009, the defendants moved to dismiss the plaintiff's complaint in its entirety on the grounds that plaintiff failed to state a claim upon which relief can be granted and that no ripe controversy existed.[2]/  There has been no discovery to date.

### III.  STATEMENT OF FACTS

Plaintiff is a 2005 law school graduate who is licensed to practice law in New Jersey, New York, and California and is admitted to practice before this Court.  Schoenefeld Decl. Ex. A, Amend. Compl. ¶¶ 5-6.  Plaintiff's residence and law office are located in Princeton, New Jersey, which is approximately one hour by car or public transportation from the New York State border and New York City.[3]/  Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 6.  Plaintiff is an attorney who is in her second year of solo practice.  Schoenefeld Decl. ¶ 2.  Prior to opening her

---

[2]/    Plaintiff opposes this motion except as to the State of New York and those agencies that properly could be considered as the arms of the state.

[3]/    Since filing her lawsuit, plaintiff relocated her office from Lawrenceville, New Jersey to Princeton, New Jersey.

firm, plaintiff attended a continuing legal education course, entitled *Starting Your Own Practice*, which was offered by the New York State Bar Association in New York City, New York. Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 16.  At that seminar, plaintiff learned for the first time that, according to § 470 of the New York Judiciary Law which applies only to non-resident New York attorneys, she may not practice law in the State of New York unless she maintains an office there.  Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 17.  Thus, despite being a licensed New York attorney and in compliance with all other requirements, plaintiff is unable to practice law in the state courts of New York because of Judiciary Law § 470 that prohibits non-resident attorneys from practicing law in the State unless they maintain an office there.  Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 19.

Having taken the constitutional oath of office upon her admission to practice that required her to uphold the U.S. Constitution and the laws of the State of New York, plaintiff chose not to violate § 470 of the New York Judiciary Law.  Instead, she elected to challenge the its constitutionality in a federal forum since Judiciary Law § 470 severely impaired her right to practice law in violation of the Equal Protection Clause of the 14th Amendment, the Commerce Clause, and Privileges and Immunities Clause of Article IV of the U.S. Constitution, effectively circumventing several the U.S. Supreme Court's decisions holding that a state's residency requirement as a prerequisite for applying to admission to practice law in that state to be unconstitutional.[4]  Like the original complaint, the amended complaint alleges that the plaintiff

---

[4]        *Barnard v. Thornstenn*, 489 U.S. 546 (1989);  *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988);  *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985);  *In re Gordon*, 397 N.E.2d 1309 (N.Y. 1979).  Although these decisions dealt with the issue whether a state's residency requirement was a valid prerequisite to admission to practice in that state, plaintiff submits that her case is not that much different, since an ability to actually practice law is implicit in being admitted or licensed in a particular state.  Clearly, it is not likely that a non-resident applicant who does not intend to move his or her residence (or future office) to New

is precluded from practicing law in New York because of § 470 of the Judiciary Law. Schoenefeld Decl. Ex. A, Amend. Compl. ¶ 19.

Being respectful of the oath she took and her status as an officer of the court, because of Judiciary Law § 470 plaintiff has never advertised herself as practicing law in the state courts of New York and has never represented any clients in New York.  Schoenefeld Decl. ¶ 3.  In fact, when plaintiff occasionally received inquiries about potential representation in the state courts of New York—mainly from friends and former or current clients who were aware of plaintiff's being licensed in New York—she had to decline their representation because accepting these matters would have violated § 470 of the Judiciary Law.  Schoenefeld Decl. ¶ 4.

Consequently, plaintiff filed this action seeking prospective *declaratory* and *injunctive* relief on the grounds that § 470 of the Judiciary Law violates Privileges and Immunities Clause of Article IV, the Commerce Clause, and the Equal Protection Clause of the 14th Amendment. Schoenefeld Decl. Ex. A, ¶ 1.

## IV.  LEGAL ARGUMENT

**(A)**   **The Defendants' Rule 12(b)(1) Motion to Dismiss on the Grounds That the Case Is Not Ripe and the Court Lacks Subject Matter Jurisdiction Must Fail Because the Plaintiff's Complaint Presents a Controversy That Is Ripe for Adjudication.**

The defendants' argument that the plaintiff's claims do not involve a controversy ripe for

a judicial review has no merit and should be denied because the plaintiff has suffered, and absent

---

York would want to take a New York bar exam solely for the purpose of obtaining a Certificate of Admission to display on a wall in his or her office.
    Also, even though a non-resident attorney could—in theory—practice in New York by maintaining a full-time office in the State to comply with Judiciary Law § 470, the statute should still be held unconstitutional because it would effectively prevent an attorney from practicing law in more than one state.  *See In re Gordon*, 397 N.E.2d at 1312 (noting that "[o]ne who desires to engage in a multistate practice,… is effectively foreclosed from doing so" by CPLR 9406 (subd 2) that was then in effect, requiring a proof of six months residency in New York prior to admission to practice).

the Court's intervention, will to continue to suffer harm because of the continuing application of § 470 of the Judiciary Law.

In considering a "Rule 12(b)(1) motion, the Court may consider matters outside the pleadings." *Duane Reade, Inc. v. St, Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). In other words, plaintiff may submit additional matters for the Court's consideration in opposition to defendants' Rule 12(b)(1) motion to dismiss for lack of subject jurisdiction based on ripeness doctrine. The standard for ripeness is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc.*, 261 F. Supp. 2d at 295 (internal citations omitted).

The controversy requirement, which is derived from Article III of the Constitution, is applicable both to actions seeking declaratory and injunctive relief. *Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 27 (5th Cir. 1974); *Steffel v. Thompson*, 415 U.S. 452, 458 (1974) (stating that "an 'actual controversy,' [is] a requirement imposed by Art. III of the Constitution and the express terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201").

In cases seeking declaratory relief, the Supreme Court has held that "[i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth et al.*, 300 U.S. 227, 241 (1937) (internal citations omitted). In *Marchi v. Bd. of Coop. Educ. of Albany*, the Second Circuit noted that:

> The Supreme Court has instructed that the ripeness inquiry requires courts to consider both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration.

173 F.3d 469, 478 (2d Cir. 1999) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Similarly, in cases seeking injunctive relief, the courts have held that "[b]efore a plaintiff may obtain an injunction against a future enforcement he must show some substantial hardship— the enforcement must be certain and the only impediment to the case's ripeness is a delay before its eventual prosecution." *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1403 (7th Cir. 1993) (citing *Steffel*, 415 at 462).

To obtain declaratory and injunctive relief, plaintiff has to show that there is a substantial controversy between the parties interests, that there is an ongoing harm from enforcement of the statute in issue, or—in the case of a threat of a future enforcement—that the enforcement must be certain, albeit it might be delayed, and that the hardship will result absent the judicial intervention. All of these factors are present here.

(1) <u>Contrary to Defendants' Assertions, a Substantial Controversy Exists Between the Parties</u>

There is an actual and substantial controversy between the parties legal interests— namely, the plaintiff's ability to practice law in the state courts of New York and defendants' interest to preserve § 470 of the Judiciary Law. Having fulfilled all requirements, plaintiff was licensed to practice law as an attorney in the State of New York. In fact, the Certificate of Good Standing—that was issued on several occasions by the defendants, with the latest one dated May 13, 2009—expressly states, without any reservations or references to any residency or location of her office requirements, that:

> Ekaterina Schoenefeld was duly *licensed and admitted to practice by this Court as an Attorney and Counselor at Law in all courts of the State of New York* on the 25th day of January, 2006, is currently in good standing and is registered with the Administrative Office of the Courts.

Schoenefeld Decl. Ex. C (emphasis added).

Yet, despite plaintiff's right to practice law in state courts of New York—as evidenced by the document issued by the defendants—plaintiff is precluded from practicing law in the State because of § 470 of the Judiciary Law, which has not yet been repealed and is being applied and enforced on multiple occasions by the trial and appellate courts of the State.  Schoenefeld Decl. Ex. D;  *see infra* pp. 9-14.

In short, the plaintiff's assertion of her right to practice law in the State (as confirmed by her status as a New York licensed attorney) and the defendants' preservation and continuing enforcement of § 470 of the Judiciary Law which precludes her from practicing law in the State (as evidenced by the failure to repeal and the recurring application and enforcement of § 470 through the State's judicial system) constitutes an actual and substantial controversy within the meaning of Article III of the Constitution.

(2) <u>Contrary to Defendants' Claims, the Controversy Is Not Speculative or Hypothetical as Judiciary Law § 470 Infringed, and Continues to Infringe, Upon Plaintiff's Right to Practice Law in New York</u>

Strangely enough, for some unknown reason, the defendants appear to entirely miss the point of the plaintiff's lawsuit.  In their brief, defendants mischaracterized plaintiff's complaint as "nothing but speculation as to whether there will ever be a need to enforce §470 with respect to her" and misconstrued her complaint as a "request for the Court to issue an advisory opinion." Def. Br. at 6.  Defendants assert—contrary to the allegations of the amended complaint—that "plaintiff has not set forth any facts which demonstrate that there is any real or present likelihood that plaintiff will practice law in New York," that "it appears her only run with respect to Judiciary Law §470 has been an academic one at a CLE," and that "the Court and parties are simply left to guess whether plaintiff will offend §470 should she ever practice within the State." Def. Br. at 5-6.

First, it would have made no sense for the plaintiff to file this action—let alone to take and pass the New York bar exam and pay $350 registration fee every two years—had she not expected to be able to practice law in New York while living in New Jersey.[5]/  Second, the only reason why the plaintiff's "only run with respect to Judiciary Law §470 has been an academic one" is simply because plaintiff happens to be  respectful of her duties as attorney and the oath she took upon her admission to practice in New York three years ago.  Surely, plaintiff should not be criticized—or, even worse, precluded from asserting and defending her constitutional rights—solely because she chose to abide by the law, rather than to violate it, even though she is convinced that the law is unconstitutional.  In fact, the plaintiff's amended complaint expressly states that "[she] is unable to practice law in the state courts of New York because New York Judiciary Law § 470 prohibits non-resident attorneys from practicing law in the State unless they maintain an office there."  Pl. Amend. Compl. ¶ 19.

Third, the plaintiff's encounter with § 470 of the Judiciary Law is not merely "an academic one," but, in fact, a very real one because, contrary to the defendants' beliefs, its implementation is not limited to disciplinary proceedings against a non-resident attorney who was caught violating § 470.  There are other ways in which Judiciary Law § 470 is being applied and enforced.

One of them is the statute's prospective preclusive effect on the plaintiff's right to practice of law in the state courts of New York.  Unlike other plaintiffs challenging the constitutionality of state statutes in other cases, plaintiff in this case by virtue of her profession must follow and abide the law since, as an attorney, she is being held to a higher standard.  *New*

---

[5]/      Due to personal circumstances that existed in the past and continue to be present, plaintiff cannot change her place of residence, Princeton, New Jersey, by moving to any other place.

9

*York State Bar Ass'n v. Reno*, 999 F. Supp. 710, 716 (N.D.N.Y. 1998) (noting that "NYSBA members have an ethical obligation as attorneys to respect and uphold the law").

This is precisely what the plaintiff chose to do.  Even though the purpose of getting admitted in New York was to be actually able to practice there, plaintiff has not advertised or sought clients who were in need of legal services in New York solely because of § 470.  In fact, the several inquiries that the plaintiff got about such representation, had come from her friends and her present or former clients who knew that she is a New York licensed attorney.  However, not willing to break the law, plaintiff had to decline these matters, and it would be unconscionable to punish her for that by having her lawsuit challenging the constitutionality of § 470 dismissed without consideration on the merits.

Section 487 of the Judiciary Law is also worth mentioning since it provides in pertinent part that "[a]n attorney or counselor who [ i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party …. [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."  N.Y. Jud. Law § 487.  Thus, an attorney who is aware of his or her non-compliance with § 470 and nonetheless appears in New York state courts, would be essentially deceiving the court and his or her clients and be guilty of a misdemeanor enforceable by the Attorney General Cuomo and liable for treble damages (such as attorney's fees and time wasted by a client as a result of dismissal of the client's complaint due to the attorney's violation of § 470).

In short, once could hardly argue that a plaintiff who is also an attorney should be required to violate § 470 in order to be able to challenge its constitutionality in a federal court.

(3) <u>Contrary to Defendants' Claims, § 470 of the Judiciary Law Was and Continues to Be
Enforced by the State Courts of New York, Which Prevents Plaintiff From Practicing
Law in the State, Thereby Resulting in a Substantial Hardship</u>

In support of their 12(b)(1) argument, the defendants cite the Supreme Court case in

which a plaintiff challenged a zoning ordinance, alleging it to be an unlawful taking without just

compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,

473 U.S. 172 (1985). The defendants' extensive reliance on this case is utterly misplaced and, if

anything, supports the plaintiff's case. Unlike here, the *Williamson County Reg'l Planning*

*Comm'n* case involved plaintiff's claim of taking of property without just compensation,

essentially seeking monetary relief. However, even if we applied that case—as quoted in the

defendants' brief—to this one, the defendants' argument must fail. In *Williamson County Reg'l*

*Planning Comm'n*, the Supreme Court stated that:

> …a claim that the application of government regulations effects a taking of a property
> interest is not ripe until the government entity charged with implementing the regulations
> has reached a *final decision* regarding the application of the regulations to the property at
> issue.

*Id.* at 186 (emphasis added).

In this context, the "regulations" is Judiciary Law § 470 and, since it is a state statute (as

opposed to a zoning ordinance issued by a local government), the "government entity charged

with implementing the regulations" are the disciplinary committees and the state courts of New

York. It is the law. There is a "final decision regarding the application of the regulations." The

New York state courts have numerous decisions applying and upholding § 470.

As the defendants have previously acknowledged when they moved to dismiss or transfer

the case to the Northern District of New York, the enforcement of Judiciary Law § 470 lies with

the court system either in disciplinary proceedings when a complaint is filed against an attorney

in the appellate division where she is registered or when raised by opposing counsel. Since there

has not yet been any discovery in this case and it is unknown how often disciplinary proceedings were initiated and how many actually resulted in some kind of disciplinary sanctions as a result of § 470 of the Judiciary Law by the respective disciplinary entities of four Judicial Departments of the Appellate Division, the publicly available materials indicate that the Third Department's Committee on Professional Standards does enforce § 470 against non-resident attorneys.[6]

For instance, in *In re Marin*, the Third Department's Committee on Professional Standards charged a non-resident New York licensed attorney with six charges of professional misconduct, including failure to maintain a law office in the State as required by Judiciary Law § 470. 673 N.Y.S.2d 247 (App. Div., 3rd Dep't 1998). The panel of five Justices of the Appellate Division, Third Department upheld most of the charges—including the one under § 470— resulting in the attorney's suspension from practice for a period of six months. *Id.* at 248.

Likewise, in *In re Haas*, the panel of five Justices of the Appellate Division, Third Department sustained the Committee on Professional Standards' six charges of professional misconduct against a non-resident attorney—ordering censure and directing the attorney to make full refunds of the moneys paid by the clients for retainers and expenses. 654 N.Y.S.2d 479 (App. Div., 3rd Dep't 1997).

Clearly, in order to maintain her action, plaintiff in this case could not be required to violate Judiciary Law § 470, not only because it would be contrary to her personal and

---

[6]    Section 90 of the Judiciary Law provides in pertinent part that:

>    …any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential. However, upon good cause being shown, the justices of the appellate division having jurisdiction are empowered, in their discretion, by written order, to permit to be divulged all or any part of such papers, records and documents.

Judiciary Law § 90(10).

professional ethics but also because it could result in charges of professional misconduct, suspension as an attorney in good standing in New York and potentially in other states where she is licensed to practice (since she would be required to report such charges there), prejudicing her clients, causing irreparable harm to her reputation, and economic harm.

Furthermore, as the case law demonstrates, § 470 is applied regularly by all trial and appellate courts throughout the State, which provides another way of enforcement.  For instance, the New York state courts routinely dismiss complaints filed by non-resident New York attorneys who do not maintain an office in the State.  *Kinder Morgan Energy Partners, LP v. Ace Am. Ins. Co.*, 859 N.Y.S.2d 135 (App. Div., 1st Dep't 2008).  Discussing § 470, the state appellate court noted that since "the plaintiff's attorney did not maintain such an office, … 'institution [of the action] based on [the attorney's] license to practice … is a nullity.'" *Neal v. Energy Transp. Group*, 744 N.Y.S.2d 672 (App. Div., 1st Dep't 2002) (quoting *Lichtenstein v. Emerson*, 656 N.Y.S.2d 180, 183 (Sup. Ct. 1997), *aff'd* 674 N.Y.S.2d 298 (App. Div., 1st Dep't 1998)) (alterations in original).  It would not be surprising if clients whose actions were dismissed because of § 470 would become unhappy as a result of a delay and additional expenses caused by the necessity to retain another attorney, would refuse to pay and/or request a refund, file a disciplinary complaint, or even professional malpractice action, if the statute of limitation had run and their actions were foreclosed.

For example, in *Miller v. Corbett*, a plaintiff-attorney filed a lawsuit against his former client in a matrimonial matter for unpaid attorney fees.  676 N.Y.S.2d 770 (City Ct. 1998).  After the defendant failed to respond, the plaintiff-attorney filed an application for a default judgment, which the court denied because (1) the plaintiff-attorney failed to comply with § 470 of the Judiciary Law when he represented that client in the first place, imposing for that sanctions

against the attorney, and (2) he failed to give his former client an opportunity to arbitrate the fee

dispute. *Id.* Only after the plaintiff filed a motion to renew and submitted an affidavit from

another client, stating that he provided the plaintiff with an office space and a desk in New York

for the plaintiff's exclusive use, the court vacated that portion of the order relating to § 470. *Id.*

In short, the plaintiff's claims are ripe for a judicial review because an actual, substantial

controversy exists affecting the parties' legal rights, the plaintiff suffered and continues to suffer

an economic harm because she cannot advertise, seek clients and practice in the state courts of

New York. As a result, withholding a judicial review of the plaintiff's request for a declaratory

and injunctive relief would result in significant hardship to the plaintiff.

**(B)**      **Defendants' Motion to Dismiss the Plaintiff's Complaint Pursuant to Rule 12(b)(6) Based on the Eleventh Amendment Immunity Must Be Denied Under the *Ex Parte Young* Exception Applicable to Actions Seeking Prospective Relief.**

Federal Rule of Civil Procedure 12(b)(6) states that, in its defense, a party may file a

motion to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). "In reviewing the pleadings pursuant to Rule 12(b)(6), a

court looks only to the four corners of the complaint and evaluates the legal viability of the

allegations contained therein." *Turner v. Olympic Reg'l Dev't Auth.*, 89 F. Supp. 2d 241, 242

(N.D.N.Y. 2000). In deciding a motion to dismiss for failure to state claim upon which relief can

be granted, the allegations of the complaint must be taken as true. *Cooper v. Pate*, 378 U.S. 546

(1964). Interpreting this rule, the Supreme Court has further held that:

> When a federal court reviews the sufficiency of a complaint, before the reception of any
> evidence either by affidavit or admissions, its task is necessarily a limited one. The issue
> is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to
> offer evidence to support the claims.
> . . .
> In appraising the sufficiency of the complaint…, the accepted rule [is] that a complaint
> should not be dismissed for failure to state a claim unless it appears beyond doubt that the

> plaintiff can prove no set of facts in support of his claim which would entitle him to
> relief.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (internal quotations omitted).

Thus, in deciding the 12(b)(6) motion, the court should not dismiss the plaintiff's action unless no set of facts could possibly exist that would support the plaintiff's claims.  As discussed in detail below, plaintiff's complaint, as amended, is sufficient  to withstand the defendants' motion to dismiss the plaintiff's complaint and, therefore, the defendants' motion should be denied.

    (1) <u>Plaintiff's Claims Against Individual Defendants Seeking Prospective Declaratory and Injunctive Relief Fall Within the *Ex Parte Young* Exception to the Eleventh Amendment Immunity Doctrine</u>

In *Ex Parte Young*, the U.S. Supreme Court enunciated an exception to the Eleventh Amendment immunity that permits a plaintiff to sue an individual in his official capacity in actions seeking prospective declaratory and/or injunctive relief.  209 U.S. 123 (1908). Conducting an extensive analysis of the U.S. Constitution and applicable federal law, the Supreme Court found that the federal courts have power to "restrain a state officer from executing an unconstitutional statute of the State, when to execute it would violate rights and privileges of the complainant which had been guaranteed by the Constitution, and would work irreparable damage and injury to him. *Id.* at 152.  The Supreme Court further reasoned that "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of the [Eleventh] Amendment."  *Id.* at 154.  The reasoning behind the *Ex Parte Young* exception is that a state could not instruct its officer to act in an illegal way.  *Id.* at 159-60.  As the Second Circuit explained, "the purpose of this exception is to 'ensure that the

doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.'"  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)).

Interpreting and applying the *Ex Parte Young* exception to the Eleventh Amendment immunity doctrine, the subsequent abundant court decisions articulated the following six qualifications:

> (1) the state officer sued must have a duty to enforce the challenged state law;  (2) the action by the state officer under state law must constitute an alleged violation of federal law;  (3) the federal law allegedly violated must be the "supreme law of the land";  (4) *Young* will not apply if federal law provides such an intricate remedial scheme that the court concludes that Congress did not intend for cases under *Ex Parte Young*;  (5) *Young* will not apply if allowing suit would interfere with special state sovereignty interests; and (6) the Court has imposed significant restrictions on the remedies available under *Ex Parte Young*.

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (2008).

With respect to the first factor, the state official who is named as a party must have some connection with the enforcement of the statute in question.  As the Supreme Court clarified:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act . . .
> It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. . . . The fact that the state officer by virtue of his office has *some connection with the enforcement of the act* is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material as long as it exists.

*Ex Parte Young*, 209 U.S. at 157 (emphasis added).

For instance, applying this rule in the *Ex Parte Young* case which involved a lawsuit against the Attorney General of Minnesota, the Supreme Court found that "the Attorney General, under his power existing at common law and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the

State, including [] the act in question.  His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit" for injunctive relief.  *Id.* at 161.

Likewise, *In re Dairy Mart Convenience Stores, Inc.*, the Second Circuit applied the same standard, finding that the plaintiff has only to show that state official sued has "some connection with the enforcement of the [challenged] act," which may arise out of other statutes or the general law.  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372-73 (citing *Ex Parte Young*, 209 U.S. at 154, 157).

Here, plaintiff filed an action for prospective declaratory and injunctive relief against the Chairperson of the Committee on Professional Standards (as advised by the prior Assistant Attorney General), a number of officials of the Appellate Division, Third Department, and the Attorney General of the State of New York, all of whom have a duty and are authorized to enforce § 470 of the Judiciary Law.  For instance, pursuant to Judiciary Law § 90 and related regulations, Justices of the Appellate Division and members of its respective disciplinary bodies—including the Chairman of the Committee on Professional Standards—have a duty to consider and investigate allegations of professional misconduct by New York attorneys and impose sanctions, as appropriate.  N.Y. Jud. Law § 90;  22 N.Y.C.R.R. § 806.3.  Professional misconduct encompasses violations of Judiciary Law § 470, which is essentially an unauthorized practice of law.  *In re Marin*, 673 N.Y.S.2d 247 (App. Div., 3rd Dep't 1998);  *In re Haas*, 654 N.Y.S.2d 479 (App. Div., 3rd Dep't 1997).

Similarly, the Attorney General has the power to enforce the laws prohibiting the unlawful practice of law.  N.Y. Jud. Law §§ 476-a, 476-b, 476-c.  In defining what constitutes the "unlawful practice of law" under this section, the language of the statute clearly states that

the "unlawful practice of law" is not limited to the acts or statutory provisions listed therein:

"*The term 'unlawful practice of the law' as used in this article shall include, but is not limited to....*"  N.Y. Jud. Law § 476-a(1) (emphasis added).  In other words, the acts constituting the unlawful practice of law, for which the Attorney General is authorized to institute an enforcement action, are not limited to those listed in § 476-a(1) and would include violations of Judiciary Law § 470.  Moreover, to the extent violating § 470 is also a violation of Judiciary Law § 487, making the § 470 violation a misdemeanor, it would be the Attorney General who would prosecute.

In short, all individual defendants that are named in their official capacities satisfy the requirement of having "some connection" with the enforcement of the challenged statute.

The second and third qualifications are that the state officials must be "alleged to be acting in violation of federal law"—as opposed acting in violation of state law—and that the federal law must be the "supreme law of the land."  *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-05 (1984));  *Ex Parte Young*, 209 U.S. at 152.  Plaintiff clearly satisfied both requirements when she alleged in her amended complaint that Judiciary Law § 470, prohibiting her from practicing law in New York unless she maintains an office there, is unconstitutional because it violates the Equal Protection Clause of the 14th Amendment, Privileges and Immunities Clause of Article IV, and the Commerce Clause of the U.S. Constitution, which are the "supreme law of the land."

The fourth qualification, prohibiting the application of the *Ex Parte Young* exception to the Eleventh Amendment Immunity doctrine if Congress abrogated the state's immunity by providing an intricate remedial scheme, does not bar the plaintiff's suit.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996) (holding that "where Congress has prescribed a

detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*").  This does not appear to be the case here since the defendants do not allege that the State's immunity is abrogated by Congress.

The fifth qualification provides that the *Ex Parte Young* doctrine may not apply if the lawsuit would interfere with "special state sovereignty interests," such as the administration and ownership of state land or navigable waters.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997);  *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 23 (2d Cir. 2004); *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616-17 (6th Cir. 2003).  This case does not involve any "special state sovereignty interests" which could bar the plaintiff's action against the individual defendants.

The final qualification concerns restrictions on the remedies available under *Ex Parte Young*.  First, absent consent, waiver or abrogation, the case is barred against the State and a state agency, if the latter is considered to be an "arm of the State," regardless of the nature of requested relief.  *Fiedler v. State of New York*, 925 F. Supp. 136, 137 (N.D.N.Y. 1996);  In *Mancuso v. New York State Thruway Auth.*, the Second Circuit enumerated six factors to be considered in determining if a state agency is the "arm of the state" for the purpose Eleventh Amendment immunity:

> (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.

86 F.3d 289, 292-93 (2d Cir. 1996).

Plaintiff does not oppose dismissal of her amended complaint against the State and those agencies, to which the "arm-of-the-state" doctrine applies—except for the Committee on Professional Standards, which does not appear to meet that standard.[7]  However, her amended complaint against individuals in their official capacities remains valid and should not be dismissed because the individual defendants are "persons" under § 1983 and are not entitled to the Eleventh Amendment immunity.

Second, the *Ex Parte Young* exception to the Eleventh Amendment immunity limits plaintiff's remedies against individuals named in their official capacities to *prospective declaratory* and/or *injunctive* relief.  As the Supreme Court stated, "[t]o ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law" under the *Ex Parte Young* exception. *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Milliken v. Bradley*, 433 U.S. 267 (1977)).  However, suits against state officials seeking *retrospective* relief—even if relief requested is solely equitable—is barred by the Eleventh Amendment.  *Students for Conservative America v. Greenwood*, 378 F.3d 1129, 1130-31 (9th Cir. 2004) (holding that a lawsuit seeking an order requiring state officials to conduct new student election was retrospective and, as such, barred by the Eleventh Amendment).

In this case, plaintiff seeks the relief exactly within the four corners of the *Ex Parte Young* doctrine when she prays for a *prospective* declaring that Judiciary Law § 470 is unconstitutional as it violates her right to practice law in New York under the Equal Protection

---

[7]    Ironically, the disciplinary activities of the Committee are being funded through the $350 registration fee which all attorneys—including plaintiff—are required to pay every two years. Schoenefeld Decl. Ex. E.

Clause of the 14th Amendment, the Commerce Clause, and Privileges and Immunities Clause of

Article IV and to permanently enjoin the defendants from its future enforcement.

   (2) <u>Defendants' Argument Asserting That There Must Be "Personal Involvement" of the
        Named Individuals Against Plaintiff Is Misplaced and Must Fail</u>

 Finally, the defendants' argument that the plaintiff's complaint against the state officials

should be dismissed on the grounds that plaintiff failed to allege that any of the individual

defendants personally enforced the statute against her must fail.  The cases cited in defendants'

brief are distinguishable and irrelevant to this case and do not support the defendants' argument

because the plaintiff's action does not involve any claim for damages and is based on the

preclusive, "chilling" effect of § 470 due to its continuing enforcement through judicial system

and disciplinary sanctions, the consequences of which can be rather severe.

 Typically, the "personal involvement" requirement as a prerequisite for § 1983 liability is

found in cases where a plaintiff seeks—expressly or implicitly—some sort of legal remedy.

Since damages only can be recovered against defendants sued in their individual capacities based

on their personal liability in such lawsuits, the courts impose the "personal involvement"

requirement.

 Similar to the Eleventh Amendment, § 1983 prohibits lawsuits for legal damages against

states, their agencies, and state officials in their official capacities.  *Will v. Michigan Dep't of

State Police*, 491 U.S. 58, 71 (1989) (holding that a "suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office

[and a]s such, it is no different from a suit against the state itself").

 However, section 1983 claims for *declaratory* or *injunctive* relief against individual

defendants in their official capacity are not prohibited and do not require "personal

involvement."  Requiring a showing of the "personal involvement" in § 1983 actions for

21

prospective relief would run afoul Rule 25(d)(1) of the Federal Procedure, providing for automatic substitution of a public officer who is a party to an action in his official capacity and who ceases to hold office while the lawsuit is pending.  *See* Fed. R. Civ. P. 25(d)(1);  *Spomer v. Littleton*, 414 U.S. 514, 521-23 (1974) (discussing automatic substitution in the context of § 1983 action for injunctive relief).

The case law cited by the defendants is inapposite.  For instance, in *Whiting v. Inc. Village of Old Brookville*, a plaintiff alleged in a § 1983 lawsuit that he was discriminatorily discharged from his position, apparently seeking damages against three defendants who were sued in their *individual* capacities. 79 F. Supp. 2d 133, 135 (E.D.N.Y. 1999).  In *Snider v. Dylag*, a plaintiff-inmate filed a § 1983 action alleging that he was physically assaulted initially by two or three other inmates and then by a correctional officer, the conduct that could be properly classified as torts.  188 F.3d 51, 52 (2d Cir. 1999). Similarly, in *Blyden v. Mancusi*, inmates brought a class action suit alleging cruel and unusual punishment in violation of Eighth Amendment and seeking damages.  186 F.3d 252 (2d Cir. 1999).  In *Wright v. Smith*, an inmate alleged § 1983 violation of protected liberty, seeking damages.  21 F.3d 496 (2d Cir. 1994).  In *Williams v. Smith*, a state inmate alleged violations of § 1983, requesting $7,000 in damages. 781 F.2d 319 (2d Cir. 1986).  In *Black v. Coughlin*, a prisoner brought a § 1983 action against commissioner of state department of correctional services to recover "damages for his disciplinary confinement in violation of his due process rights."  76 F.3d 72, 73 (2d Cir. 1996). In *Pollack v. Nash*, plaintiff-father brought an action for damages on his own behalf and on behalf of his minor children alleging conspiracy and various state and federal claims, including a number of torts and legal malpractice.  58 F. Supp. 2d 294 (S.D.N.Y. 1999).

Clearly, all these cases are distinguishable from this action in that they all involved claims for damages which, absent a waiver, have to be brought against defendants in their individual capacities and would require a showing of "personal involvement."

In short, defendants' argument that plaintiff must make a showing of the "personal involvement" of the named defendants in the enforcement of § 470 against plaintiff in the context of plaintiff's amended complaint seeking prospective declaratory and injunctive relief must fail and, therefore, the defendants' Rule 12(b)(6) motion should be denied.

## V.  CONCLUSION

For the reasons stated above, the defendants' motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) should be denied.


Dated: August 28, 2009                          Respectfully submitted,


                              By:     /s/ Ekaterina Schoenefeld_____
                                      Ekaterina Schoenefeld
                                      Bar Roll No. 515685

                                      32 Chambers Street, Suite 2
                                      Princeton, New Jersey 08542
                                      Tel.: (609) 688-1776
                                      Fax: (609) 228-4099
                                      Email: eschoenefeld@schoenefeldlaw.com

                                      *Plaintiff pro se*