UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EKATERINA SCHOENEFELD,  :  Case No.:  09-cv-0504 (LEK) (RFT)
           :
 Plaintiff,     :  (Document Filed Electronically)
           :
   v.      :  **DECLARATION OF**
           :  **EKATERINA SCHOENEFELD**
STATE OF NEW YORK, ET AL.,  :  **IN SUPPORT OF MOTION**
           :  **FOR SUMMARY JUDGMENT**
 Defendants.    :
_____:

Ekaterina Schoenefeld, an attorney admitted to practice in the State of New York and before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the plaintiff in this lawsuit.  I submit this declaration in support of my motion for an Order granting summary judgment pursuant to Fed. R. Civ. P. 56, declaring Judiciary Law § 470 unconstitutional as violating the Privileges and Immunities Clause of the U.S. Constitution and permanently enjoining the defendants from enforcing Judiciary Law § 470.

2.  On or about July 24, 2010, I served defendants' counsel with three sets of discovery requests—interrogatories, document requests, and requests for admissions—directed to all, but one, of the defendants.

3.  On or about August 3, 2010, I issued two third-party subpoenas to produce documents and to take oral depositions pursuant to Rule 30(b)(6) to the State of New York and the Committee on Professional Standards, wherein I sought to elicit deposition testimony on the following subjects:

 (1) Past and current proceedings taken to enforce Section 470 of the Judiciary Law.

 (2) The State's substantial objectives or interests that are protected or advanced by Section 470 of the Judiciary Law.

(3) The manner in which the State's substantial objectives or interests are protected or advanced by Section 470 of the Judiciary Law.

4.      In the past, I have occasionally received inquiries about potential representation in the state courts of New York—mainly from my friends and former or current clients who are aware of that I am licensed in New York—I had to decline their representation because accepting these matters would have violated § 470 of the Judiciary Law.

5.      I have never appeared in or advertised myself as practicing law in the state courts of New York.

6.      Whenever I have received inquiries about potential representation in the state courts of New York, I have declined the representation because it would have violated § 470 of the Judiciary Law.

7.      The following documents are annexed hereto and are true copies of the documents or portions of documents which they purport to represent:

DOCUMENT                                                                                    EXHIBIT

Plaintiff's Amended Complaint ................................................................................ A

02/08/10 Memorandum-Decision and Order ........................................................... B

Transcript of telephone conference held on August 17, 2010 .................................. C

08/17/10 Discovery Order........................................................................................ D

Response to Requests for Admissions by John Stevens ........................................... E

Response to Document Requests by John Stevens.................................................... F

Response to Requests for Admissions by Justices of the Appellate Division .......... G

Response to Requests for Admissions by New York Attorney General ................... H

11/02/10 Discovery Order......................................................................................... I

Amended Response to Requests for Admissions by John Stevens............................................ J

Additional documents produced by the defendants ................................................. K

1917 N.Y. Op. Att'y Gen. 338 (Dec. 10, 1917)....................................................... L

Daniel C. Brennan, *Repeal Judiciary Law § 470*, 62 N.Y. St. B.J. (Jan. 1990) ...................... M

Opinion No. 175, NYSBA Comm. on Prof. Ethics (March 1, 1971) ...................................... N

Opinion No. 495, NYSBA Comm. on Prof. Ethics (Oct. 12 1978)........................................ O

Unpublished opinions pursuant to Local Rule 7.1(a) .............................................. P

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:   December 15, 2010

By:      /s/ Ekaterina Schoenefeld____
         Ekaterina Schoenefeld
         Bar Roll No. 515685

         32 Chambers Street, Suite 2
         Princeton, New Jersey 08542
         Tel.: (609) 688-1776
         Fax:  (609) 228-4099
         eschoenefeld@schoenefeldlaw.com

         *Plaintiff pro se*

# Exhibit A

Ekaterina Schoenefeld
3371 US Highway 1, Suite 105
Lawrenceville, New Jersey 08648
Tel: (609) 750-0330
Fax: (609) 750-0331
*Plaintiff Pro Se*



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EKATERINA SCHOENEFELD,      :

    Plaintiff,      :

       v.      :

STATE OF NEW YORK; ANDREW M. CUOMO :
IN HIS OFFICIAL CAPACITY AS ATTORNEY :
GENERAL FOR THE STATE OF NEW YORK; :
NEW YORK SUPREME COURT, APPELLATE :
DIVISION, THIRD JUDICIAL DEPARTMENT; :
ALL JUSTICES OF NEW YORK SUPREME :
COURT, APPELLATE DIVISION, THIRD :
JUDICIAL DEPARTMENT; MICHAEL J. :
NOVACK IN HIS OFFICIAL CAPACITY AS :
CLERK OF NEW YORK SUPREME COURT, :
APPELLATE DIVISION, THIRD JUDICIAL :
DEPARTMENT; COMMITTEE ON :
PROFESSIONAL STANDARDS OF NEW YORK :
SUPREME COURT, APPELLATE DIVISION, :
THIRD JUDICIAL DEPARTMENT AND ITS :
MEMBERS; AND THOMAS C. EMERSON IN :
HIS OFFICIAL CAPACITY AS THE :
CHAIRPERSON OF THE COMMITTEE ON :
PROFESSIONAL STANDARDS, :

    Defendants.      :

CIVIL ACTION NO.: 08-cv-3269

**AMENDED COMPLAINT**

Plaintiff, Ekaterina Schoenefeld, by way of Complaint against the above-named

Defendants, states as follows:

1

## JURISDICTION AND VENUE

1.      This is an action for a declaratory judgment and injunctive relief seeking a declaration that New York Judiciary Law § 470, as interpreted and applied so as to prohibit non-resident attorneys, who are admitted to practice in the State of New York, from actually practicing law in the courts of New York unless they establish a full-time office in the State, is unconstitutional.

2.      Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §§ 1331 and 1343(3), this being a lawsuit brought under 42 U.S.C. § 1983 for injunctive relief to secure rights guaranteed by Article IV, § 2, cl. 1 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

3.      Jurisdiction is also invoked under 28 U.S.C. §§ 2201 and 2202, this lawsuit being for a declaratory judgment that New York Judiciary Law § 470 is unconstitutional as interpreted and applied to New York-licensed non-resident attorneys.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff is a 2005 graduate of Rutgers University School of Law – Newark, a duly accredited law school, and is admitted to practice before, and is a member in good standing of, the highest courts of the states of New Jersey, New York, and California; the United States Court of Appeals for the Third Circuit; the United States District Courts for the District of New Jersey, the Southern District of New York, the Northern District of California; and the United States Tax Court.

2

6.    Plaintiff resides in Princeton, New Jersey and has an office in Lawrenceville, New Jersey, both locations being approximately one hour by car or public transportation from the New York state border and New York City.

7.    The Defendants in this action are the State of New York; Andrew M. Cuomo in his official capacity of Attorney General for the State of New York ("Attorney General"); New York Supreme Court, Appellate Division, Third Judicial Department ("Third Judicial Department"); all Justices of New York Supreme Court, Appellate Division, Third Judicial Department; Michael J. Novack in his official capacity as Clerk of the New York Supreme Court, Appellate Division, Third Judicial Department; the Committee on Professional Standards of New York Supreme Court, Appellate Division, Third Judicial Department ("Committee on Professional Standards") and its members; and Thomas C. Emerson in his official capacity as the Chairperson of the Committee on Professional Standards.

8.    The State of New York, with its legislative branch being responsible for the enactment and re-enactment—and its judicial branch for enforcement—of § 470 of the New York Judiciary Law and its predecessors in violation of the United States Constitution.

9.    The Attorney General is authorized to interpret and enforce New York Judiciary Law § 470.

10.    The Third Judicial Department, its Justices, and agents are responsible for admission, investigation, discipline, and removal from practice of New York-licensed attorneys.

11.    The Committee on Professional Standards, its members, and its Chairperson Thomas C. Emerson, are authorized to oversee, investigate and discipline attorneys who are admitted to practice, reside, have an office, or transact business in the Third Judicial Department.

## BACKGROUND

12.     On July 26 and 27, 2005, Plaintiff successfully sat for the July 2005 New York Bar Examination and was subsequently found to possess suitable qualifications by the Committee on Moral Character and Fitness of the Supreme Court, Appellate Division, Third Judicial Department.

13.     On January 26, 2006, Plaintiff was admitted to practice law in the State of New York.

14.     Plaintiff has registered and paid the $350.00 fee required by § 468-a of the New York Judiciary Law.

15.     Since her admission to practice law in the State of New York, Plaintiff has fulfilled all continuing legal education requirements necessary for practicing of law in the State of New York.

16.     On June 5, 2007, Plaintiff attended a continuing legal education course, entitled Starting Your Own Practice, that was offered by the New York State Bar Association in New York City, New York.

17.     At that seminar, Plaintiff learned for the first time that, according to § 470 of the New York Judiciary Law which is applicable to non-resident New York attorneys only, she may not practice law in the State of New York unless she maintains an office located in the State.

18.     New York Judiciary Law § 470 does not apply to resident New York attorneys.

19.     Thus, despite being licensed in New York State in compliance with all requirements applicable to New York attorneys, Plaintiff is unable to practice law in the state courts of New York because New York Judiciary Law § 470 prohibits non-resident attorneys from practicing law in the State unless they maintain an office there.

4

## COUNT I

20.     Plaintiff realleges the allegations in Paragraphs 1 through 19 of this Complaint.

21.     Section 470 of the New York Judiciary Law effectively imposes a residency requirement on non-resident attorneys admitted in New York State when it requires them to maintain a full-time office in the State of New York in order to practice law there.  N.Y. Jud. Law § 470.  There is no such requirement for resident New York attorneys.

22.     This policy serves no substantial state interest and results in Plaintiff being prevented from practicing law in the State of New York even though she otherwise meets all other requirements.

23.     Section 470 of the New York Judiciary Law, as interpreted and applied to non-resident New York attorneys, violates Plaintiff's right to enjoy the privileges and immunities of citizenship as guaranteed in Article IV, § 2 of the United States Constitution.

## COUNT II

24.     Plaintiff realleges the allegations in Paragraphs 1 through 23 of this Complaint.

25.     Section 470 of the New York Judiciary Law as interpreted and applied to non-resident New York attorneys sets a dual standard essentially requiring that, unlike resident attorneys, non-resident New York attorneys must have a full time office, i.e., an actual physical space maintained as an office, in order to practice law in New York.

26.     There is no such requirement for resident New York attorneys who—unlike non-resident New York attorneys—are not required to maintain commercial space for their offices and may practice law out of their homes, by using P.O. boxes, virtual offices, etc.

27.     This discrimination against non-resident New York attorneys serves no rational state purpose and denies Plaintiff her right to the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

## COUNT III

28.     Plaintiff realleges the allegations in Paragraphs 1 through 27 of this Complaint.

29.     Section 470 of the New York Judiciary Law, as interpreted and applied to non-resident New York attorneys, places a burden upon interstate commerce in violation of Article I, § 8 of the United States Constitution.

WHEREFORE, Plaintiff prays for the following relief:

A.     An order permanently enjoining Defendants, their employees and agents, from enforcing New York Judiciary Law § 470 and declaring it to be unconstitutional;

B.     An order awarding Plaintiff her reasonable attorney's fees and costs, as appropriate;

C.     For such other and further relief as this Court deems meet and just.


Respectfully submitted,

By:     *Ekaterina Schoenefeld*
Ekaterina Schoenefeld

Dated:     July 8, 2008

6

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EKATERINA SCHOENEFELD,

                              Plaintiff,

        -against-                                            1:09-CV-0504 (LEK/RFT)


STATE OF NEW YORK, *et al.*,

                              Defendants.


## MEMORANDUM-DECISION AND ORDER

Ekaterina Schoenefeld ("Plaintiff") filed this action for equitable relief pursuant to 42 U.S.C.

§ 1983 ("§ 1983") in the Southern District of New York on April 1, 2008, alleging that § 470 of the

New York State Judiciary Law[1] ("§ 470"), on its face and as applied, violates her rights under

Article IV, § 2 ("Privileges and Immunities Clause"), the Equal Protection Clause of the Fourteenth

Amendment ("Equal Protection Clause"), and  Article I, § 8 ("Commerce Clause") of the

Constitution of the United States.  See Compl. (Dkt. No. 1); Am. Compl. (Dkt. No. 4).  Plaintiff

brought this action naming thirty-seven defendants including: the State of New York; the New York

State Supreme Court, Appellate Division, Third Department ("the Appellate Division"); the

Appellate Division Committee on Professional Standards ("Committee on Professional Standards");

New York State Attorney General Andrew M. Cuomo; eleven Justices of the Appellate Division;

_____

[1]Section 470 provides, "A person, regularly admitted to practice as an attorney and
counsellor, in the courts of record of this state, whose office for the transaction of law business is
within the state, may practice as such attorney or counsellor, although he resides in an adjoining
state."

1

Appellate Division Clerk Michael J. Novack; and twenty-one members of the Committee on

Professional Standards.  See generally Am. Compl.  All individual Defendants were sued in their

official capacity only.  Id.  On April 16, 2009, the Honorable Naomi Reice Buchwald, acting

pursuant to 28 U.S.C. § 1404(a), granted Defendant's motion to transfer venue to the Northern

District of New York.  See Mem. and Order (Dkt. No. 17).  Presently before the Court is

Defendants' Motion to dismiss Plaintiff's Amended Complaint.  Dkt. No. 20.

## I.  BACKGROUND

Plaintiff is a 2005 graduate of Rutgers University School of Law and is admitted to practice

law in New York, New Jersey, and California.  Compl. ¶ 5.  She is a solo practitioner with a

residence and law office in Princeton, New Jersey.  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to

Dismiss the Am. Compl. in its Entirety (Dkt. No. 26) ("Pl.'s Mem").

Plaintiff alleges that while attending a continuing legal education course on June 5, 2007,

she "learned for the first time that, according to § 470 of the New York Judiciary Law which is

applicable to nonresident New York attorneys only, she may not practice law in the State of New

York unless she maintains an office located in the state."  Am. Compl. ¶ 17.  Though this provision

has never been enforced against Plaintiff, she has allegedly refrained from accepting cases that

would have required her to practice in New York courts due to her knowledge of, and respect for the

law.  Pl.'s Mem. at 5.

Plaintiff, appearing *pro se*, filed this suit alleging that § 470 violates her right to enjoy the

privileges and immunities of citizenship as guaranteed in Article IV, § 2 of the Constitution of the

United States.  She claims that § 470 "effectively imposes a residency requirement on nonresident

attorneys . . . when it requires them to maintain a full-time office in the State in order to practice law

there" and does not require the same of resident attorneys. Am. Compl. ¶ 21. Plaintiff further

alleges that § 470 violates her Fourteenth Amendment equal protection rights by imposing different

requirements on resident and nonresident attorneys, namely that nonresidents only are required

maintain a New York office in order to practice within the state. Id. ¶ 27. Finally, Plaintiff claims

that § 470 places burdens on interstate commerce in violation of Article I, § 8 of the Constitution.

Id. ¶ 29. Plaintiff claims that the each of the named Defendants, in his or her official capacity, has

"some connection with the enforcement of" § 470 and are thus susceptible to suit under 42 U.S.C. §

1983. Pl.'s Mem. at 18-20. Plaintiff seeks the following declaratory and injunctive relief: (1) an

order permanently enjoining Defendants from enforcing § 470 and declaring it unconstitutional; (2)

reasonable attorney's fees and costs; and (3) "such other and further relief as this Court deems meet

and just." Am. Compl. ¶¶ A-C.

Defendants have moved to dismiss Plaintiff's Complaint in its entirety pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendants assert that: (1) pursuant to

Rule 12(b)(1), the Court lacks subject matter jurisdiction on the grounds that the case is not ripe; (2)

pursuant to Rule 12(b)(6) Defendants State of New York, the Appellate Division, and the

Committee on Professional Standards do not qualify as "persons" within the meaning of 42 U.S.C. §

1983; and (3) pursuant to Rule 12(b)(6), Plaintiff has failed to plead sufficient facts linking the

named Defendants to the alleged constitutional violations. Mem. of Law in Supp. of Defs'. Mot. to

Dismiss the Am. Compl. in its Entirety (Dkt. No. 20-2) ("Defs.' Mem.") at 1.

## II.    DISCUSSION

### A.    Standard of Review

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1),

a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." <u>J.S. *ex rel.* N.S. v. Attica Cent. Schs.</u>, 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." <u>Id.</u>

When considering a motion to dismiss under 12(b)(6), a district court must accept the factual allegations made by the non-moving party as true and "draw all inferences in the light most favorable" to the non-moving party. <u>In re NYSE Specialists Sec. Litig.</u>, 503 F.3d 89, 95 (2d Cir. 2007). "The movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" <u>Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.</u>, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations omitted)). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> Next, if plaintiff provides well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

### B. Plaintiff's Claim is Ripe

Where defendants' move for dismissal under both Rule 12(b)(1) and Rule 12(b)(6), a court must consider the alleged lack of subject matter under Rule 12(b)(1) first. <u>Rhulen Agency, Inc. v.</u>

Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). Ripeness is a constitutional prerequisite to a federal court's exercise of jurisdiction. Fed. Election Comm'n v. Cent. Long Island Tax Reform Immediately Comm., 616 F.2d 45, 51 (2d Cir. 1980). A case must be ripe before a federal court has jurisdiction to grant either injunctive or declaratory relief. Williamson v. Village of Margarterville, 1993 WL 133719 at *1 (N.D.N.Y. April 23, 1993) (citing Int'l Tape Mfrs. Ass'n v. Gerstein, 494 F.2d 25 (5th Cir. 1974). Ripeness exists where the controversy is "definite and concrete, touching the legal relations of parties having adverse interests." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937). Where a plaintiff seeks a declaratory judgement, the Constitution requires "a real and substantial controversy admitting of specific relief through a decree of conclusive character." Id. at 241.

Defendants argue that Plaintiff has failed to show any likelihood of her practicing law in New York or of § 470 being enforced against her, and, therefore, claim Plaintiff has failed to demonstrate that any real, substantial dispute admitting of specific relief exists. Defs'. Mem. at 5.

Plaintiff correctly notes that she need not violate and be prosecuted for the violation of a statute in order to maintain an action challenging the statute's constitutionality. See Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (internal citations omitted). Plaintiff has alleged that she is in compliance with all requirements applicable to New York attorneys, has been solicited to take cases that would require her to practice in New York courts, and has refused to take these cases only because she does not have a New York office and does not wish to violate § 470. See generally Am. Compl.; Pl.'s Mem. She has alleged sufficient facts for the Court to find a "substantial controversy admitting of specific relief" exists. The Court thus rejects Defendants' contention that the case is not ripe and should be dismissed pursuant to Rule 12(b)(1).

5

### C.    Defendants' Amenability to Suit Under Section 1983

Defendants' move for dismissal of Plaintiff's claims under Rule 12(b)(6), alleging that she has failed to state a claim upon which relief may be granted.  Defs.' Mem. at 3.  Defendants argue that: (1) Plaintiff has included parties that are not "persons" within the meaning of § 1983 and which are immune to suit; and (2) Plaintiff has not alleged facts demonstrating that the named Defendants are personally involved in the alleged violations.  Id.

Section 1983 provides in part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

It is well settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  The rule prohibiting suit under § 1983 applies "to States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."  Id. at 70.

Plaintiff's admits that her claims against the State of New York and the Appellate Division are outside the scope of § 1983 and barred by the Eleventh Amendment.  Pl.'s Mem. at 20.  Furthermore, Courts in this Circuit have previously held that the Committee on Professional Standards is an arm of the state.  Aretakis v. Comm. on Prof'l Standards, 2009 WL 2229578 at *3 (S.D.N.Y. July 27, 2009).  Accordingly, Plaintiff's claims as to these Defendants are properly dismissed pursuant to Rule 12(b)(6).

Individual state agents acting in their official capacity and attempting to enforce an unconstitutional statute are not entitled to Eleventh Amendment immunity.  See Ex Parte Young,

6

209 U.S. 123 (1908). However, to be found liable under § 1983 state agents must be personally involved in the constitutional deprivations alleged. See Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991) citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1978). Thus, for Plaintiff to survive Defendants' Motion to dismiss her claims against the individual Defendants, she must provide specific factual allegations that these Defendants were personally involved in the alleged deprivation of her rights. McKinnon, 568 F.2d at 934.

An official, whose office is tasked with an express or general duty to enforce a statute alleged to be unconstitutional, is sufficiently connected to that statute to make him a proper party to a suit for injunctive relief. Ex Parte Young, 209 U.S. 157; In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372-73 (2d Cir. 2005). The Attorney General is tasked with enforcing laws prohibiting the unlawful practice of law. NY JUD. LAW §§ 476-a; 476-b, 476-c. Equally, the Justices of the Appellate Division and members of the Committee on Professional standards have the power and duty to investigate allegations of professional misconduct and enforce the rules governing such conduct. See, e.g., NY JUD. LAW § 90; 22 N.Y.C.R.R. §806.3. As such, all of these Defendants, when sued in their official capacity, have some connection to the alleged violation and are proper parties to Plaintiff's suit.

**D. Plaintiff's Claim Under the Privileges and Immunities Clause**

Courts have long given great deference to states in their regulation of the practice of law. See, e.g., Leis v. Flynt, 439 U.S. 438, 441-42 (1979); Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 (1975); see also Baccus v. Karger, 692 F. Supp. 290, 294 n.8 (S.D.N.Y. 1988). Plaintiff's claims regarding the constitutionality of § 470 require this Court to afford that same deference.

7

Nevertheless, a state's discretion in this area is not absolute.  See Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985) (New Hampshire rule excluding nonresident attorneys from the state bar violates the Privileges and Immunities Clause); Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988) (Virginia rule allowing attorneys to be admitted on motion on condition that they were permanent residents violated the Privileges and Immunities Clause).

A nonresident attorney, who passes a state's bar exam and otherwise qualifies to practice law within that state, has an interest in practicing law that is protected by the Privileges and Immunities Clause.  Piper, 470 U.S. 274.  Plaintiff has alleged sufficient facts to assert a protected interest in practicing law in New York.  See Am. Compl. ¶ 19.  Plaintiff then claims that she and other qualified nonresident attorneys are unlawfully deprived of this protected interest because § 470 subjects nonresident attorneys, but not resident attorneys, to an office requirement.  Id.  The Privileges and Immunities Clause, however, only "precludes discrimination against nonresidents where (I) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective."  Piper, 470 U.S. at 284.  In considering whether a substantial relationship exists between the regulation and the State's objective, a court should consider whether there are other, less restrictive means available.  Id.

In essence, Plaintiff's claim is that § 470 of the Judiciary Law imposes the equivalent of a residency requirement on the practice of law.  Am. Compl. ¶ 21.  Plaintiff correctly notes that the Supreme Court of the United States has held such requirements unconstitutional.  See e.g., Friedman, 487 U.S. 59.  Pl.'s Mem. at 4 n.4.  In Friedman, the Supreme Court found Virginia's residency requirement to be in violation of the Privileges and Immunities Clause because it

burdened a protected privilege, discriminated against nonresident attorneys, *and* the degree of discrimination imposed by the residency requirement did not bear a close relation to the achievement of substantial state objectives.  Id. at 70.  The Supreme Court recognized that Virginia had a substantial interest in ensuring that a nonresident attorney "has a stake in his or her professional licensure and a concomitant interest in the integrity and standards of the bar" and in "ensuring its attorneys keep abreast of legal developments."  Id. at 68, 69.  The discrimination resulting from the residency requirement  did not bear a close relationship to these interests because other legislative choices not implicating constitutional protections were available.  Id. at 69-70.

One such alternative was to require nonresident attorneys who had not passed the state bar and, therefore, not shown the "same commitment to service and familiarity with Virginia law." to practice full-time and maintain an in-state office.  Id. at 68.  The Supreme Court concluded that the "[t]he office requirement furnishes an alternative to the residency requirement that is not only less restrictive, but is fully adequate to protect whatever interest the State might have in the full-time practice requirement."  Id. at 70.  This language suggests an office requirement is constitutional when in service of law practice requirements applicable to nonresident attorneys who had not taken the state bar exam.  It does not, however, necessitate the same conclusion where the affected class is all nonresident attorneys, including those who have shown commitment and familiarity with state law by passing the state bar and complying with all other state requirements.

In Frazier v. Heebe, 482 U.S. 641 (1987) the Supreme Court invalidated a local rule requiring an attorney to be a resident of or have an office located in Louisiana.  Frazier considered only whether a district court was empowered to adopt this local rule.  The Frazier Court specifically refused to address any Constitutional concerns raised by the rule; rather the Court invalidated the

9

rule in an exercise of its inherent supervisory power to ensure district courts only adopt local rules that "are consistent with the principles of right and justice." Id. at 645 (internal quotations omitted).

Section 470 does not serve to facilitate a full-time practice requirement applicable only to attorneys admitted on motion. Nor is it a local rule adopted by a particular court. Rather, it is a state rule that applies to all nonresident attorneys, even those who have shown their commitment to service and New York law through attending CLE courses and passing the state bar exam. Plaintiff has alleged sufficient facts, which, if accepted as true, indicate that she has a protected interest in practicing law in New York. The state has offered no substantial reason for § 470's differential treatment of resident and nonresident attorneys nor any substantial relationship between that differential treatment and State objectives. Given this failure, and because case law does not necessitate dismissal of Plaintiff's claims as a matter of law, the Court denies Defendants' Motion to dismiss Plaintiff's claim that § 470 violates the Privileges and Immunities Clause.

### E. Plaintiff has Failed to State a Claim Under the Equal Protection Clause Upon Which Relief May be Granted

Plaintiff has failed to raise a plausible claim for relief when she asserts that § 470 violates her rights under the Fourteenth Amendment. Plaintiff, a licensed New York attorney living in New Jersey and seeking to practice law in New York without maintaining an office in that state is neither a member of a suspect class, nor invoking a fundamental right. See Frazier v. Heebe, 788 F.2d 1049, 1053 (5th Cir. 1986) overruled on other grounds by Frazier v. Heebe, 482 U.S. 641 (1987); see also Baccus, 692 F. Supp. at 293 n.7 ("strict scrutiny in bar-admissions cases is not warranted on a fundamental-right theory."). Plaintiff's equal protection argument is not based on her having an

10

immutable characteristic, nor her being a member of a group traditionally subjected to mistreatment. Accordingly, neither heightened nor intermediate scrutiny applies. Frazier, 788 F.2d at 1053. Thus, the Court need only inquire as to whether the restrictions contained in § 470 are rationally related to a legitimate governmental purpose. See Shapiro v. Cooke, 552 F. Supp. 581, 586 (N.D.N.Y. 1982).

While this Circuit has not specifically addressed the Constitutionality of § 470, other Circuits have found office requirements to have a rational basis. See, e.g., Tolchin v. Supreme Court of the State of New Jersey, 111 F.3d 1099 (1997) (finding a rational basis in the benefit of attorney accessibility for clients, courts, counsel, and other parties). Similarly, New York state courts have suggested a number of rational bases for the office requirement. See, e.g., Lichtenstein v. Emerson, 674 N.Y.S.2d 298, 299 (N.Y. App. Div. 1998) (office requirement ensures nonresident attorneys are amenable to service and contact with clients and other interested parties); White River Paper Co., 441 N.Y.S.2d 960 (N.Y. Civ. Ct. 1981) (office requirement puts resident and nonresident attorneys on equal footing by not according tax advantage to nonresident attorneys). Finally, in Friedman, the Supreme Court clearly indicated that an office requirement, at least as applied to certain classes of nonresident attorney was not irrational or arbitrary.[2]  Friedman, 487 U.S. at 70.

Given the numerous rational bases that exist  for a nonresident attorney to have an in-state office, Plaintiff's claim under the Equal Protection Clause does not plausibly give rise to an entitlement of relief.

### E.    Plaintiff has Failed to State a Claim Under the Commerce Clause Upon Which

---

[2]In Frazier the Supreme Court ultimately decided that a local rule requiring nonresident attorneys to have an in-state office was "unnecessary and irrational."  Frazier, 482 U.S. at 649. Importantly, however, the rule under consideration was adopted by a district court and applied only to attorneys practicing in front of that one court.

11

**Relief May be Granted**

Finally, Plaintiff has failed to state a plausible claim to relief under the Commerce Clause. A statute violates the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, 397 U.S. 137, 142 (1970); see also Tolchin, 111 F.3d at 1108. She has raised no theory by which New York's office requirement for nonresident attorneys can be said to be "clearly excessive" to the substantial interest New York has in ensuring that nonresident attorneys are familiar with New York law and maintain a stake in their New York license and interest in the integrity of the state bar. See Goldfarb v. Supreme Court of Virginia, 766 F.2d 856, 862 (4th Cir. 1985). Nor has Plaintiff raised a plausible theory by which the office requirement appears "clearly excessive" to the state's interest in ensuring nonresident attorneys are accessible to clients, courts, and other interested parties. See Tolchin, 111 F.3d 1099. Her claim under the Commerce Clause should, therefore, be dismissed.

## III. CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for dismissal (Dkt. No. 20) is **GRANTED** as to Defendants State of New York, Appellate Division and Committee on Professional Standards; and it is further

**ORDERED**, that Defendants' Motion for dismissal (Dkt. No. 20) as to all other Defendants is **DENIED** with respect to Plaintiff's claims under Article IV, § 2 of the Constitution of the United States, and **GRANTED** with respect to Plaintiff's claims under the Fourteenth Amendment and Article I, § 8 of the Constitution of the United States; and it is further

**ORDERED**, that a copy of this Memorandum-Decision and Order be served on all parties.

12

**IT IS SO ORDERED**.

DATED:  February 08, 2010
        Albany, New York

Lawrence E. Kahn
U.S. District Judge

13

# Exhibit C

```
1                          - - - - -

2              TELEPHONE CONFERENCE DISCUSSION

3                          - - - - -

4

5

6        EKATERINA SCHOENEFELD

7              VS.

8        STATE OF NEW YORK

9

10

11                     Docket Number 09cv504

12                            held

13                  Tuesday, August 17, 2010

14

15

16

17

18        Participants:

19                    Ekaterina Schoenefeld, Esquire

20                    Plaintiff

21

22                    Christina ROBERTS-RYBA, Esquire

23                    Assistant Attorney General

24

25
```

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

```
 1                    - - - - -

 2            P R O C E E D I N G S

 3                    - - - - -

 4

 5

 6         (Conference began 10:02:24 a.m.)

 7

 8

 9         THE COURT:  This is Schoenefeld vs.

10    State of New York, 09cv504.  May I have

11    appearances starting with the plaintiff

12    and then the defendant?

13

14         MS. SCHOENEFELD:  Ekaterina

15    Schoenefeld.

16

17         MRS. ROBERTS-RYBA:  Christina Roberts-

18    Ryba, Assitant Attorney General.  Also

19    with me here is Steve Cohen, Assistant

20    Attorney General.

21

22         THE COURT:  The Court received on

23    August 10, 2010 a letter motion with

24    exhibits in which the State defendants

25    raised that the discovery demands served
```

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1  upon them are essentially irrelevant and

2  some other impairment with the demands.

3  The Court received on August 12th a

4

5  response from the plaintiff as noted on

6  the dockets, docket number 47.  I presume

7  that both parties have seen docket 42 and

8  docket 47, is that correct?

9

10      MRS. ROBERTS-RYBA:  Yes, your Honor.

11      MS. SCHOENEFELD:  Yes.

12

13      THE COURT:  It's the intent of this

14  Court to address these issues and to rule

15  on the respective demands.  I assume that

16  the parties can forge ahead.  It's my

17

18  understanding that the discovery deadline

19  ends in approximately two or three weeks.

20  Give me one moment please.  I already have

21

22  the case docket and it appears that

23  discovery is supposed to end on December

24  1st.  Is that everybody's understanding, as

25  well?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MRS. ROBERTS-RYBA:  No, I think its

2    September 1st.

3    MS. SCHOENEFELD:  Yes, September 1st,

4    your Honor.

5

6    THE COURT:  December 1st?

7    MRS. ROBERTS-RYBA:  September 1st.

8    THE COURT:  Yes, that's what I said,

9    September 1st.  Discovery ends on September

10   1st.  The final date to file response

11   motions is September 30th.  Again, is that

12   everybody's understanding?

13

14   MRS. ROBERTS-RYBA:  Yes, your Honor.

15

16   MS. SCHOENEFELD:  Yes, your Honor.

17

18   THE COURT:  I'm not sure where to

19   begin here.  I think I'm going to make a

20   general statement and then hear from the

21   parties with regards to the challenge to

22   the constitutionality of judiciary law,

23   Section 470.  The Court has reviewed Judge

24   Kahn's memorandum decision and order.  I

25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    know that the district judge dismissed the

2    equal protection (indiscernible) and

3    causes of actions and allowed the

4

5    privilege and immunities clause of action

6    to survive.  I'm also presuming that the

7    plaintiff's discovery is directed at the

8
     privilege and immunities clause and the
9

10   constitutionality of the challenges of the

11   statute with the privilege and immunities

12
     clause.  Is that correct, Ms. Schoenefeld?
13

14        MS. SCHOENEFELD:  That's correct, your

15   Honor.

16
          THE COURT:  Now, what I'm not sure of
17

18   is whether or not this is a strict

19   statutory challenge or is there an applied

20
     constitutional challenge, as well.  Ms.
21

22   Schoenefeld, can you answer that?

23        MS. SCHOENEFELD:  I'm not sure I

24
     understand the question, your Honor.
25

          THE COURT:  Well, one in which you

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1  challenged the statute as being

2  unconstitutional on its face, you can

3  challenge the applied application of a

4
5  statute or contitutional application of a

6  statute.  I'm not really sure whether or

7  not that exists in your action.

8
9          MS. SCHOENEFELD:  Well, your Honor I

10  believe that the statute is

11  unconstitutional on its face and both as

12  applied to memorandum.  For the statute to

13
14  be constitutional it has to have a valid

15  state purpose for it to exist today.

16          THE COURT:  Yes, but that sounds like

17
18  a challenge as to the face of the statute

19  as opposed to saying that these defendants

20  are applying it unconstitutionally.

21
22          MS. SCHOENEFELD:  That's correct.

23  It's more (indiscernible)

24          THE COURT:  So, if it's on the face of

25  the statute, Ms. Schoenefeld it would just

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    seem to me -- but I'm going to hear from

2    you -- that many your demands for

3    discovery are -- I'm not going to say

4    misplaced but maybe irrelevant -- it would

5    seem to me that with the challenges in

6    discovery that maybe relevant here, is to

7    look at the legislature enacted 470 and

8

9    the basis upon which they enacted the

10   statute.  As I look at your demands, your

11   demands are directed at all of these

12   defendants, the Attorney General, the

13   judges of the Appellant Division, the

14   Committee of Professional Standards --

15

16   which is another separate issue -- but

17

18   here's my initial review and I'll have you

19   respond to it.  This statute was enacted

20

21   in 1909.  It was amended in 1945.  How

22   could possibly the judges from the

23

24   Appellant Division and the Attorney

25   General would be able to give facts and

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   even solid opinions with regards to the

2   underlined statutory basis in the

3   legislative history alone?  Ms.

4   Schoenefeld if you can respond to that.

5

6       MS. SCHOENEFELD:  Your Honor, the way

7   I see it, the reason for this statute

8   enactment in 1909 (indiscernible)

9

10  addressed the same issue, but in different

11  code (indiscernible) I feel that its more

12  relevant and the reason for its enforcment

13  today.  In 1985 a separate court did find

14  it's unconstitutional to impose residence

15

16  requirements for (indiscernible) to be

17

18  able to practice law in this state.  The

19  way I see this statute being enforced is

20  with the same result even after the

21

22  decision in 1985.  So, while it's true

23  that the defendants could not possibly

24  know why and how the statute came about in

25  1909 or 1862, they have to have a valid

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      reason to enforce it today.

2            THE COURT:  Mrs. Ryba is that your

3      understanding?

4            MRS. ROBERTS-RYBA:  No, your Honor.

5      The understanding is that the defendants

6      have to enforce the law because it's the

7      law.  They have no discretion and this

8      case should be on submission and the

9      discovery that Ms. Schoenefeld seeks is

10     not relevant.  There's no dispute that

11     Section 470 is enforced.  Plaintiff's

12     request for documents from 1985

13     (indiscernible) and adds nothing to the

14     argument.  Plaintiff is making facial

15     challenge to the contitutionality of 470.

16     Therefore, the particular opinion of the

17     defendants as to 470 and their

18     interpretation isn't relevant.  It hasn't

19     been enforced against her so; therefore

20     it's not a required challenge.  So, it's

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    really based on the legislative history

2    alone and the interrogatories document

3    demands, admission Andrew Coumo, the

4    eleven justices and Emerson are just not

5

6    relevant and they are overly burdensome.

7    So therefore, the case should really just

8    be on submission and legistlative history.

9

10        THE COURT:  Okay, well let me ask you

11   before I have Ms. Schoenefeld respond.  If

12   it has not been applied directly to Ms.

13   Schoenefeld, still can she seek and

14

15   declaratory judgement and injunctive

16   relief and rely upon as applied against

17   other?  As I read her complaint, her

18   complaint was saying that one of the

19   reasons why she did not take on clients in

20   New York State is because of her fear of

21

22   being disciplined, which we've made

23   through the discussions about the

24

25   Committee of Professional Standards who

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    could enforce the discipline rules

2    including Section 470.  So, in terms of

3    any disciplinary actions that may have

4
5    taken in the period prior to filing the

6    complaint, wouldn't that be at least

7    reasonable discovery?

8
9         MRS. ROBERTS-RYBA:  I don't believe it

10   would be, your Honor because there's no

11   dispute that its enforced.  So, we do

12
13   believe that it's been enforced since 1985

14   against nonresidents isn't irrelevant

15   because that's not a question.  If 470 is

16
17   unconstitutional then it should be found

18   to be unconstitutional based on

19   legislative history not based on the

20
21   individual enforcement because we know

22   that it's enforced.  That's not a question

23   here.  We're not claiming that 470 is not

24
25   enforced.  We know that it is and it has

     been since the rule has been in place

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    since 1909.  So, the discovery she's

2    seeking is overly burdensome because it

3    doesn't really matter how many times it's

4    been enforced (indiscernible) there's no

5

6    question there.  Her only question is, is

7    470 unconstitutional as applied; or

8    actually facially.  On its face not as

9

10   applied because it's really not relevant

11   to the constitutionality.

12        THE COURT:  Okay, well before we go to

13   Ms. Schoenefeld then would the defendants

14   then be prepared to give her a statement

15   then be prepared to give her a statement

16   of admission that the statute is enforced

17   as directed by the language with the

18

19   intent of making sure that it's not an

20   issue raised that she can't show that it

21

22   has not been enforced.  As I read some of

23   her demands, I got the sense that she

24   wanted to make that there is somewhat an

25   injury in fact here whether it's applied

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

to her as to others in terms of the

enforceability of this statute.  If you're

saying that it is's a given that it's

being enforced, then would you agree with

me or maybe you might disagree with me

that an appropriate request to admit as to

that or a response may resolve that issue?

MRS.ROBERTS-RYBA:  I think that would

be fair, your Honor.

THE COURT:  Ms. Schoenefeld, do you

understand the discussion I'm having with

Mrs. Ryba with regards to the

enforceability.  I can see in some of your

demands you seem to be leaning in that

direction.  Mrs. Ryba is saying with

regards to all of the defendants that

she's representing that it's going to be

an undo burden under Rule 26 and the

proportionality of what discovery should

be.  With that being said, it would appear

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   that the state defendants are prepared to

2   admit that, yes in fact it is enforced as

3   directed by the language and therefore, I

4   would think it would take away the real

5   burden of establishing that it is in fact

6   enforced or that in fact there is some

7   injury.  They would be admitting to the

8   fact that, yes people have either been

9   disciplined or let's say complaints filed

10  have been dismissed because a nonresident

11  lawyer brought it who did not have an

12  office in the state.

13      MS. SCHOENEFELD:  Yes, your Honor. In

14  fact a substantial part of my discovery

15  demands is addressing this issue.

16      THE COURT:  Well, I think it goes

17  beyond that that's why we're having this

18  discussion and I think what we're trying

19  to do is maybe narrow this down to a

20  reasonalbe smear of discovery that would

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    be necessary to address the facial

2    challenge to the statute.

3         MS. SCHOENEFELD:  Yes, your Honor, but

4    I also have concern because Judge Kahn

5    stated his opinion and also

6    (indiscernible) the standard includes

7    whether the state has a substantial

8    
9    reason, purpose or objective for that

10   statute and there's no way for me to

11   deduct the judicial reason.  Part of my

12   discovery request is addressing this

13   issue.

14        THE COURT:  Yes, but would'nt you get

15   the substantial objectives or interest of

16   
17   the statute from the legislative history,

18   if there's a legislative history.  Ms.

19   Schoenefeld, I've looked at some of the

20   legislative history in New York State and

21   some of it is the same.  Isn't what the

22   legislature intended not what some

23   
24   
25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    defendants who are obligated to enforce it

2    pinning on what it could've been in 1909,

3    1949 or what it could be right now?  As I

4    understand it, they're obligated to

5    

6    enforce it unless the statute itself has

7    been found unconstitutional.  What Mrs.

8    Ryba has been saying in the papers and I

9    guess what I'm asking you now is if you

10   

11   were to ask one these people what was the

12   substantial objectives in the interest of

13   the statute all they're going to give you

14   

15   is basically speculation.  They don't

16   know, they didn't write it.  So, don't

17   your answers come from the legislative

18   

19   history and any debate that took place on

20   the legislative floor as to what the

21   substantial objectives or interests are in

22   

23   enforcing the statute?

24          MS. SCHOENEFELD:  Well, my

25   understanding was that this statute was

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    part of the overall scheme that

2    nonresident attorneys should not be able

3    to practice law in New York yet, the

4    statute arised in 1985 in a court decision

5    that said that that's not constitutional.

6    So, there must have been some change in

7    purpose or objective for the statute to

8    continue to be on the books.  Based on my

9    review -- I didn't have access to case law

10   -- I did read every single case that has

11   been published and available on Lexis and

12   interpreted that statute and nowhere did I

13   see any kind of reason or purpose of that

14   statute other than the state court judges

15   who would say, no that's constitutional,

16   complaint dismissed.  It's all half a page

17   or one page or two without any

18   explanation.  That's why I did want to

19   know why the statute is available.  What

20   was the reason behind that statute's

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    existance in 1985?

2        THE COURT:  I don't disagree with you

3    that you would want to find out what the

4    reasonal rational basis behind statute.

5    The question and what Mrs. Ryba is saying,

6    I believe you're asking the wrong persons

7    or entities to provide that because all

8    they're doing is enforcing it.  How would

9    they know what the substantial objectives

10   or interests were of the legislature that

11   drafted this in 1909 and 1945, amended in

12   1945?  The amendment in 1945 was nominal

13   at best.  So that, I think is the crux of

14   our problem.  How are you going to find

15   out what the substantial objectives are

16   and where are you going to get that

17   information from?  I think what Mrs.

18   ROBERTS-RYBA is saying and I think what

19   the Court is saying is, doesn't that come

20   from the legislature not from the

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   Appellant Division because all they would

2   be doing is rendering an opinion.  They're

3   just speculating as to what the objectives

4   were.

5

6        MS. SCHOENEFELD:  Well, your Honor I

7   agree that that would be probably correct

8   with respect to the Committee of

9   Professional Standards and the Attorney

10  General but Appellant Justices are also

11  the ones who enforce that law and also

12  that's why I issued subpoenas to the state

13  of New York asking them to produce

14  (indiscernible) who could do it on behalf

15  of (indiscernible) and explain what's the

16  purpose and why it was enacted back in

17  1909 or 1862 and why it's still there.

18       THE COURT:  The Court can't tell the

19  legislature that they're not going to

20  enforce the statute until such time it's

21  found unconstitutional.  An issue has to

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     be raised within the context of some

2     litigation.  I'm a little troubled here

3     because I don't see how the judges on the

4     Appellant Division can do the rational

5     basis when they did not draft the statute

6

7     itself.  All the Court can do is to

8     interpret the law or the facts as to the

9     law as it's presented to them.  They can't

10    make up the law and they can't make up

11    rational basis.  What I'm hearing is that

12    I think you believe that, here's a

13    statute, you go to the Court and then you

14    ask the Court what's the rational basis

15    and they didn't participate in the process

16    of making the law.  That's not what a

17    court does.

18         MS. SCHOENEFELD:  I understand, your

19    Honor, but you mentioned that it hasn't

20    been raised before the judges on the issue

21    of constitutionality of the statute, but

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1  it has been.  There were several

2  occassions where plaintiff complaint was

3  about to be dismissed and (indiscernible)

4  raise the issue of constitutionality of

5  the statute and the judges would find it

6

7  constitutional.

8      THE COURT:  That's true.  They would

9  then grasp on the issue of what is

10  constitutional, but they don't have to go

11  find the rational basis.  It's the parties

12  that would hand it to them and the Court

13

14  would determine whether or not there's a

15  rational basis.  If there's a fundamental

16  right there's more heightened scrutiny of

17  it and they review that, but they turn to

18  the legislative history.  They don't turn

19  to an individual party here.  I just don't

20  see how if you pick one of those Appellant

21  Division judges and asked him what is the

22  rational basis of the substantial

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    objectives, they're going to shrug their

2    shoulders and say, "Give me the

3    legislative history."  Then they're going

4

5    to look at the legislative history and say

6    to you, "Here is what the legislative

7    history says.  That's your source for

8

9    whether or not there're substantial

10    objejectives or rational basis for the

11    statute."  It's true, I will agree with

12

13    you in all those cases in which the

14    constitutionality was challenged and the

15    Constitution was upheld, but there isn't

16

17    an extensive discussion as to the rational

18    basis.  Although, there is some mention in

19    one or two cases as to what it may be.  I

20

21    understand that, but here you're asking

22    these defendants to basically substitute

23    an opinion for what the state legislature

24

25    may have thought.  I think you're looking

    in the wrong place for what you're seeking

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   and I just don't see how the attorney

2   general or these judges can give you a

3   response.  Mrs. ROBERTS-RYBA let me ask

4   you this, in terms of you defending the

5   constitutionality of the statute, it's

6   showing that there is a substantial

7   objective and interest in enforcing the

8   statute what do you intend on using as an

9   underlined factual basis to support that?

10       MRS. ROBERTS-RYBA:  The legislative

11   history is what I plan on using.  I

12   believe that the only relevant information

13   that we have -- the legislative that past

14   the statute is long gone -- all we have is

15   the history and I plan to brief and do a

16   motion for a summary judgment based on the

17   legislative history alone.

18       MS. SCHOENEFELD:  Your Honor?

19       THE COURT:  Let me just ask her and

20   Ms. Schoenefeld you can respond.  In terms

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

of the legislative history, have you

offered to at least share that with Ms.

Schoenefeld?

MRS. ROBERTS-RYBA:  I requested the

legislative history from our librarian and

she is going to submit it to me when she

finishes doing the research and I will

provide that to Ms. Schoenefeld once I

receive that.

MS. SCHOENEFELD:  Your Honor?

THE COURT:  Yes, ma'am.

MS. SCHOENEFELD:  One thing I had an

issue why Mrs. ROBERTS-RYBA decided to

bring this motion and request a conference

because if the defendants were going to

rely on the legislative history, what

would be an appropriate answer or response

to my interrogatories?  I wasn't expecting

them to provide me, but they could have

said we intend to rely on, but have no

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   personal knowledge that's legislative

2   history because then they would be

3   precluded from bringing any kind of

4   factual basis for this to substantiate

5   this statute.  I don't want to be

6   surprised in my litigation if Mrs.

7   ROBERTS-RYBA decides to develop a

8   litigation strategy.

9        THE COURT:  Well, Ms. Scheonefeld you

10  hit on another good point and a very good

11  point and I do understand that.  I think

12  what we're going to try to work out are

13  appropriate responses so that you're not

14  met by some factual basis or that you're

15  not blindsided by another approach where

16  someone is given an affidavit basically

17  saying, here's the rational basis or

18  here's the substantial objectives, in the

19  like and you're not being able to defend

20  that.  What I hear from Mrs. ROBERTS-RYBA

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    is that that is not the intent, but I do

2    understand why you want to lock them in

3    with responses to either the

4    interrogatories or through document

5    production.  I think we may be able to

6    tailor some of your inquiries in order to

7    get exactly that type of response so that

8

9    again you are not surprised by whatever

10   the defense may put in, in terms of

11   defending the statute.

12

13       Now, I'm going to ask Mrs. Ryba on the

14   record, in terms of defending this as I

15

16   understand what you're representing to me

17   and what I believe would be the proper

18   course is that you intend on using the

19   legislative history and to some extent

20

21   even some presentment discussions in terms

22   of the constitutionality of the statute

23

24   (indiscernible) the privilege and

25   immunities clause, is that correct?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1          MRS. ROBERTS-RYBA:  Yes, your Honor.

2     I intend to use the legislative history

3     along with case law.

4          THE COURT:  With that being said,

5

6     isn't there some way that we can respond

7     to some of these interrogatories and

8     document production in such a way that Ms.

9

10    Schoenefeld can feel confident that she

11    has all that maybe used in defending this

12    case?

13

14         MRS. ROBERTS-RYBA:  Your Honor, the

15    reason why I requested the conference is

16    because the question asking about for us

17    to provide all the cases that has been

18

19    enforced since 1985 and it's directed

20    towards the Justices and it's directed

21    towards Andrew Cuomo, as well as, Thomas

22

23    Emerson and because the questions are

24    irrelevant, I don't really believe they

25    should have to respond to them.  I can

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   object to the questions so they have no

2   personal knowledge and sign on their

3   behalf, but I do believe it's over

4
    burdensome for them to have to review and
5
6   make responses to irrelevant questions

7   that have nothing to do with the

8
    legislative history.  They don't have that
9
10  knowledge and therefore I just really

11  believe that it's important to quash the

12
    discovery and limit it to just the
13
14  legislative history.  We should file

15  briefs and then a decision should be made.

16
         THE COURT:  Well, I'm going to
17
18  probably agree with Ms. Schoenefeld.

19  That's not how you respond to

20  interrogatories or reponses.  You

21
    basically are supposed to register your
22
23  objections whether its relevancy or

24  whatever to the extent you can provide an
25
    answer.  So, for the defendants here to at

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     least state that (indiscernible) plus

2     their objections (indiscernible) by saying

3     it's irrelevant to ask to each one of

4     those and that they do not have a response

5     to it, I think is the proper course so

6

7     that she knows exactly what she's going to

8     be confronted with later.  To the extent

9     that there could be a response such as,

10    this is all based upon the legislative

11    history or whatever else you're going to

12

13    use and its disclosed then you're not

14    going to have any problems here.  I

15    wouldn't have any problems with that.

16

17         MRS. ROBERTS-RYBA:  What about her

18    request for all the cases that's been

19    enforced since 1985?

20

21         THE COURT:  Well, that's a different

22    challenge here.  I went through and I

23    believe some of them can be answered much

24

25    to the extent that you has stated, but if

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     push comes to shove, you would basically

2     have to say, all the cases from 1985 -- if

3     that's what is requested -- is not

4     relevant.

5

6         Secondly, you're asking for matters

7     purely of law.  That's your objection.

8     She at least would be able to say that as

9     opposed to coming here to the Court and

10    what the Court is supposed to do is

11    determine whether those objections are

12

13    reasonable and whether or not you can give

14    a proper response.

15

16        MRS. ROBERTS-RYBA:  Okay, I can

17    respond to them and object.  With regard

18    to the service of the nonparties of the

19

20    subpoena, I have concerns, one that's

21    pursuant to (indiscernible) the service

22    was supposed to made upon the State by

23

24    delivery of the summons to the Assistant

25    Attorney General and a subpoena is served

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   in the same way and here the plaintiff

2   served on behalf of the State, Ronald

3   House, who is a (indiscernible) in the

4   Appeals and Opinions Bureau, he's not an

5   Assistant Attorney General and then upon

6   the nonparties Committee of Professional

7   Standards.  The plaintiff served Ken

8   Kruger who's a secretary in the Appeals

9   and Opininos Bureau and he is also not an

10  Assistant Attorney General and the

11  questions that she's going to ask at the

12  depositions are not relevant.  In

13  addition, she served me with a subpoena to

14  produce documents and indicated that I

15  needed to produce these in New York City

16  and New York City is not jurisdiction of

17  this law suit.  Again, the documents that

18  she's requesting are public knowledge and

19  I do intend to provide her with the

20  legislative history.  So, therefore I

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   thinkt the subpoena for the documents

2   should be nullified, as well as, the two

3   depositions that are seeking irrelevant

4   information and that was not proper

5   served.

6        THE COURT:  I think that those are all

7   reasonable basis that should be shared

8   with her somehow, someway in terms of the

9   responses.

10       MS. SCHOENEFELD:  Your Honor?

11       THE COURT:  Yes, Ms. Schoenefeld.

12       MS. SCHOENEFELD:  Your Honor, I

13  disagree that there was not proper

14  service.  I did it just like the way it's

15  done.  I sent through a professional

16  server in Albany, New York, which is

17  (indiscernible) that do it professionally.

18  I did provide the service.  Service could

19  be on the state or authorized agent.  If

20  the server shows up at the Capital and

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   present (indiscernible) on behalf of the

2   state.  That should be acceptable service.

3   With respect to the Committee of

4   Professional Standards, the postal server

5   did go in there and they refused to accept

6   service.  I do have the -- unfortunately

7   the server did not put their comment on

8   the proof of service form -- I do have

9   certification and an email that I got from

10  them and that's why there were subsequent

11  requests for production of documents.  The

12  address was correct for service of The

13  Committee of Professional Standards, but

14  since they don't accept service and

15  refused to accept service it was served on

16  the Attorney General's office.  Also, she

17  was authorized to accept service on behalf

18  of the Attorney General's office.  So, I

19  really don't understand I'm asking what

20  would then constitute proper service if

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

that's not?

1

2          THE COURT:  Let's say that there is an

3      issue with regards to proper service.  The

4      larger issue is whether or not the

5      depositions of these persons is going to

6      lead to relevant evidence.  As we've been

7      discussing in a larger context, I don't

8      believe it's going to because all that

9      these parties would be speculating as to

10     the rational basis and legislative history

11     is going to be the best in all these

12     sources as I see it in terms of what

13     you're seeking.  I think what I would like

14     to do, quite frankly, if we pull up these

15     demands right now and I'm prepared to go

16     down through them and to advise what I

17     believe should be answered and what

18     possibly could be answered and what the

19     defendants could respond to and see if we

20     can move along.  I am prepared to say that

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   these depositions are not going to lead to

2   relevant information.  This is a document

3   case, at best because it's a facial

4   challenge and not an applied challenge.

5

6        MS. SCHOENEFELD:  Your Honor, I will

7   respectfully disagree because even

8   documents for example, case law and

9   legislative history, case law that

10  interprets that statute is not consistent

11  with each other.  All the requirements or

12  what constitutes (indiscernible) has been

13

14  all over the place based on this case law.

15  So, I did find it relevant to at lease

16  have some kind of explanation of what does

17  this statute mean and what its purpose is.

18       THE COURT:  Well, that's exactly my

19  point.  You're going to ask some other

20  people to add an opinion where other

21  courts may not be consistent in terms of

22  the underlined basis.  All you're asking

23

24

25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   is for an opinion and the opinion is not

2   relevant.  The statute is supported upon

3   the legislative intent; the legislative

4   intent, not somebody else's intent.

5   That's the whole reason why we have this

6   discussion this morning.  I just do not --

7   I guess I'm repeating myself -- I just

8   don't know how -- the Attorney General he

9   can apply it all he wants, it doesn't mean

10  anything. It's not admissible with regards

11  to the facial challenge, I mean, the

12  facial support of the statute, it's the

13  legislative history.

14       MS. SCHOENEFELD:  Okay, but the

15  history of enforcement of the statute that

16  is relevant because it does have

17  admissible evidence.  It does bear a

18  relationship to whether the reasonal

19  purpose and objective of the statute is

20  substantial.  That is not publicly

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    available because it wasn't available.

2    The published cases are like a small

3    fracture.

4        THE COURT:  Yes, but I thought we had

5    come to a resolution on that and this

6    Courts feelings were that if you made a

7    proper request to admit with regards to

8    the enforcement of the statute or the

9    State defendants are actually going to

10   admit that it is true, they enforce the

11   statute to the letter of the law would

12   save this undo burden that maybe created

13   by seeking each and every enforcment for a

14   period going back as far as 1985.  I don't

15   think that part is really necessary.  You

16   could put this matter back before Judge

17   Kahn, but what I do think you would need

18   in order to know that there is in fact

19   enforcement is an admission to that fact.

20   As I heard Mrs. Ryba, the State's

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   defendants are prepared to make that

2   admission that they have in fact enforced

3   this.  I don't think you need to know each

4   and every case.  The Court will accept the

5   admission and the whole purpose of

6   admission is quite frankly, to reduce

7   issues within the litigation.  This is

8   actually going to save you time and save

9   the State defendants' time by getting this

10  admission and I would permit that request

11  for admission.

12      MS. SCHOENEFELD:  Would that be

13  admission on behalf of each defendant?

14      THE COURT:  Well, you could it from

15  each state defendant.  I don't see any

16  real problems with that.  Mrs. Roberts-

17  Ryba?

18      MRS. ROBERTS-RYBA:  I don't think it's

19  necessary.  If one defendant admits that

20  it's enforced then that is admissible and

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      then she can rely upon that and then the

2      legislative history can be used to brief

3      it.  I don't see why --

4          THE COURT:  Well, that maybe the

5      easier way out.  If I was representing the

6      plaintiff I would want to make sure that

7      the defendants will all agree to this and

8      that there wouldn't be any surprise that

9      there wouldn't be this admission.  I know

10      that there had been some discussion

11      between the parties, especially with

12      regard to the judges that if one of the

13      judges provided a response or admission

14      that it would be binding in law.  We had

15      an agreement to that.  I'm sure Ms.

16      Schoenefeld would be comfortable with

17      that.  I would think that the Attorney

18      General could at least provide a response

19      that would enlist his obligation to uphold

20      the statute and that's what you're going

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    to be doing.  Mr. Emerson, who I'm

2    presuming is with the committee, is that

3    correct?

4         MRS. ROBERTS-RYBA:  Yes, your Honor

5

6    he's the chairman of the committee.

7         THE COURT:  I would think that he

8    could provide a response because he got a

9

10   separate set of demands and she could

11   serve separate demands as to all of the

12   defendants.  We're just trying to save

13

14   some time and resources here.  I would

15   think that these three respective

16   defendant groups could give a response to

17

18   an admission directed to them.

19        MRS. ROBERTS-RYBA:  So, it would be an

20   admission from Cuomo, Emerson and one from

21

22   the Appellant Divisions?

23        THE COURT:  Yes, If Ms. Schoenefeld is

24   prepared to accept one admission from the

25

     Appellant Division.  I thought that in

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     some of your corresponses that you'd

2     exchange that that was a possibility. Ms.

3     Schoenefeld, is that still a possibility?

4

5          MS. SCHOENEFELD:  Yes, your Honor.

6          MRS. ROBERTS-RYBA:  Okay, I think that

7     would be reasonable.

8

9          THE COURT:  Alright, to my

10    understanding we have this one admission

11    that we're going to deal with and the

12    sharing of legislative history.  It is my

13

14    view that these depositions are totally

15    irrelevant and I would be prepared to

16    issue a protective order with regards to

17    the deposistions.  I'm also prepared right

18

19    now while I have you both on the phone, if

20    we could go down through some of these

21    demands maybe there might be some other

22

23    document or some other response that could

24    be disclosable here.  I'm prepared to do

25    that.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MS. SCHOENEFELD:  Your Honor, how

2    would we deal with the purpose or

3    objective for the state?  As you mentioned

4    before that's perfectly acceptable if

5    Mrs. Roberts-Ryba would provide the entire

6    purpose and objective that's all stated in

7    the legislative history and there would no

8    outside, no later developments or no later

9    substantiations for upholding this

10   statutue or something like that.

11        THE COURT:  Okay, I misunderstood you.

12   Could you repeat yourself Ms. Schoenefeld?

13        MS. SCHOENEFELD:  With respect to the

14   objective or purpose of the statute, Mrs.

15   Roberts-Ryba indicated that she intends to

16   rely solely on the legislative history at

17   the time when the statute was enacted.

18        THE COURT:  Yes, that's what I heard,

19   as well.

20        MS. SCHOENEFELD:  So, how could I

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    obtain some kind of response on behalf of

2    the defendants that that would be the

3    entire basis for upholding the statute?

4         THE COURT:  If you're asking to make

5    sure that you're verifying that that's

6    what they're relying upon I would think

7    another request to admit would be

8    sufficient.  I'm taking Mrs. Ryba's word.

9    She's basically relying upon the

10   legislative history alone.  I'm sure her

11   memorandum of law is going to have some

12   case cites, but that's her own research.

13   In terms of the validity of the statute,

14   she's relying upon the legislative

15   history.  If you wanted to make sure that

16   that's all she's relying upon, I think a

17   request to admit would be sufficient.

18   Mrs. Ryba?

19        MRS. ROBERTS-RYBA:  I think that would

20   be fine, that would be sufficient,

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    definitely.

2         THE COURT:  Ms. Schoenefeld?

3         MS. SCHOENEFELD:  That's fine.  So, I

4    can then do requests of admission.  One

5    would be regarding the purpose of the

6    

7    statute and the other one would be the

8    enforcement.

9         THE COURT:  Well, you're not framing

10   it in such a way that you're asking to

11   admit that this was the purpose of the

12   law.  I think what you request is that the

13   defendants, in terms of establishing the

14   validity of the statute is relying upon

15   the legislative history alone.  I think

16   that's what you're trying to confirm.

17   

18        MS. SCHOENEFELD:  Yes that they're

19   relying on the reasons for that statute

20   that caused that legislative history.

21   

22        THE COURT:  I'm a little lost as to

23   what you're referring to.

24   

25   

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MS. SCHOENEFELD:  It is my

2    understanding that there would be no

3    argument that, yes the purpose for

4    enacting the statute would not be any

5    longer relevant, but there aren't any

6

7    facts why they wish to uphold this law.

8    THE COURT:  I understand your concern

9    and that's what we've been trying to get

10   at.  What I hear from Mrs. Ryba is that

11   she's not asserting any other facts or any

12

13   other argument in support of the statute.

14   That's why your request to admit would

15   solidify that and you wouldn't have to be

16

17   concerned about being confronted with

18   something that you never even got a chance

19   to discover or review.  Mrs. Ryba you're

20

21   not arguing that there's another set of

22   facts here or there's another set of

23   rationality to support the statute other

24

25   than the legislative history?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MRS. ROBERTS-RYBA:  That's exactly the

2    case.  I'm just relying on legislative

3    history and case law.  That's all I have

4    and that's all I believe the case should

5

6    be based upon.

7    THE COURT:  Okay.  So, in the respect

8    Ms. Schoenefeld this request to admit

9    would protect you in terms of what you're

10    going to be confronted with when this

11    matter is presented to Judge Kahn.

12

13

14    MS. SCHOENEFELD:  Yes, your Honor.

15    May I have one clarification?

16    THE COURT:  Yes, ma'am.

17

18    MS. SCHOENEFELD:  Mrs. Roberts-Ryba

19    mentioned and in the case law, that case

20    law would that be publicly available?

21

22    MRS. ROBERTS-RYBA:  Yes.

23    MS. SCHOENEFELD:  Unpublished opinions

24    I don't have access to because some

25    opinions are unpublised.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      THE COURT:  I would think that would

2      be fair to the extent -- well let me just

3      say this in terms of unpublished opinions.

4      If there was another motion forthcoming,

5      all unpublished opinions have to be

6      attached onto the papers.  So, for you to

7      receive them ahead of time, I don't think

8      it would be overly burdensome.  I don't

9      know if Mrs. Ryba has them, but I don't

10     think Mrs. Ryba is objecting to give you

11     any unpublished opinions. Mrs. Ryba, would

12     you object to that?

13     MRS. ROBERTS-RYBA:  If I file my brief

14     and I have unpublished opinions I would

15     file the unpublished case law.  It's

16     available on Westlaw.  Westlaw cases

17     sometimes they're unpublished.  As

18     required by the local rules, I would file

19     the case law with my memorandum.

20     THE COURT:  Right.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MS. SCHOENEFELD:  I understand but I

2  guess I didn't express myself clearly

3  enough.  I was concerned that there might

4  be some unpublished opinion that --

5

6    THE COURT:  That's not on Westlaw?

7    MS. SCHOENEFELD:  No, no that says

8  some different rational other than in the

9

10  legislative history.  There maybe some

11  unpublished opinion that would be

12  upholding the statute based on something

13

14  else other than the legislative history.

15    MRS. ROBERTS-RYBA:  I don't understand

16  the question.

17

18    THE COURT:  Yes, I think -- maybe Ms.

19  Schoenefeld can correct me -- I think what

20  she's saying is that she's done the

21  research in Westlaw and she's seen some of

22

23  the discussions with regards to the

24  constitutionality of the statute,

25  presuming those to setforth the rational

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    basis of the statute.  I think what she's

2    concerned about is are there any other

3    unpublished opinions out there in which

4    she has not seen what the discussion is

5    and hopefully not be surprised by that

6    discussion.  My view, quite frankly -- and

7    hear from you -- my view is that a Court

8    doesn't create the rational basis.  The

9    Court can only respond to the rational

10   basis that are given to the Court by the

11   parties or the lack of rational basis.

12   So, it's the parties that raise it, it's

13   not the Court.  The Court can't make it

14   out of -- it has to be some basis there

15   and the parties provide that basis. Do you

16   understand Ms. Schoenefeld?

17        MS. SCHOENEFELD:  Yes, I do, your

18   Honor.

19        THE COURT:  Again, to the extent that

20   Mrs. Ryba may have relied upon some

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1  unpublished opinion that's not setforth in

2  Lexis or Westlaw she's obligated to attach

3  those to her memorandum of law.  I guess

4  what I was somewhat urgent or not prepared

5  to direct is maybe if she has some

6

7  unpublished opinion, some stiff opinions

8  from a court somewhere in the state that

9  it would just seem fair to me just to

10

11 provide her with copies of that.

12      MRS. ROBERTS-RYBA:  I don't have any

13 of those opinions, but if I do find some I

14

15 will make sure that I forward them to Ms.

16 Schoenefeld; if they exist.

17

18      THE COURT:  If they exist and you're

19 not obligated to go out and look for them

20 either.  Ms. Schoenefeld, you're going to

21

22 receive the legislative history and we're

23 going to do a couple of request to admit.

24

25 I'm not going to allow the depositions to

go forward here.  Now, considering all

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1        your other demands for interrogatories,

2        documents and requests to admit, is there

3        any particular ones we should discuss in

4        which this court can move on?

5

6            MS. SCHOENEFELD:  Well, can Mrs.

7        Roberts-Ryba just simply -- if she fells

8        it's irrelevant or it's objectionable --

9        can she (indiscernible) as opposed to

10       moving to quash just because she feels

11

12       it's not relevant or they don't have

13       knowledge?

14

15           THE COURT:  Alright, well I'm trying

16       to save you time here.  We only have two

17       or three weeks and I'm making the rulings

18

19       right now.  The Court is prepared to issue

20       an order to that affect with regards to

21       the depositions.  If you would like her to

22

23       provide you with responses consistent with

24       our discussion today, it could be helpful.

25       Mrs. Roberts-Ryba?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MRS. ROBERTS-RYBA:  My clients object

2    to each question based on relevance and if

3    she would like me to do, I can do that and

4    mail them out to her.

5    

6    THE COURT:  I think that's what she's

7    trying to do.  By getting those responses,

8    but actually my role is somewhat directing

9    the direction you should go.  I'm going to

10   give you an example.  I'm looking at

11   request for admission number one and it

12   seems to be directed at all the parties.

13   It says, "Admit that nonresident attorneys

14   who pass the New York State Bar Exam and

15   are in compliance with all our

16   requirements for practicing law in New

17   York except for the office requirement

18   Section 470 are precluded from practicing

19   law in New York by Section 470."  I think

20   there could be a response to that and

21   either you agree or disagree.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1          MRS. ROBERTS-RYBA:  It's a question of

2     law.

3          THE COURT:  You have a request to it?

4          MRS. ROBERTS-RYBA:  I would refer her

5

6     to Section 470.  It's a question of law.

7          THE COURT:  Yes, but here we're trying

8

9     to reduce your burdensome argument.  Why

10    haven't you respond to all of these things

11    by reducing some of these requests to

12    admit?  You're saying that you're

13

14    obligated to enforce, so I would think the

15    response would be yes without any

16    hesitation.

17

18         MRS. ROBERTS-RYBA:  Isn't there a

19    provision that allows nonresidents to

20    practice on a per case basis?

21

22         THE COURT:  That is true and wouldn't

23    that be apart of your response?

24         MS. SCHOENEFELD:  Excuse me; are you

25    talking about (indiscernible) admission?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1        MRS. ROBERTS-RYBA:  I didn't

2  understand your question.

3        THE COURT:  Ms. Schoenefeld, I didn't

4  understand it either.

5

6        MS. SCHOENEFELD:  I didn't quite

7  understand that comment that there is a

8  provision of exception that nonresident

9

10  attorneys can practice law in New York.

11  What is that exception?

12        THE COURT:  It's pro hac vice.

13

14        MS. SCHOENEFELD:  Pro hac vice,

15  there's an occasion where an attorney was

16  precluded from practicing pro hac vice

17

18  because she was licensed in New York.  Its

19  catch 22, I cannot practice in New York

20  because I don't have a license and I

21  cannot practice pro hac vice because I'm

22

23  licensed in New York.

24        THE COURT:  Mrs. Roberts-Ryba, do you

25  understand what she's saying?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    MRS. ROBERTS-RYBA:  I do.

2    THE COURT:  So, then actually I think

3    there could be a response to this to admit

4    precluded from practicing law in New York

5    by Section 470.  With a request to admit

6

7    you either agree or disagree to an extent

8    that you can provide any response that

9    make clarity to the admission, you can do

10   so.  I think that's a very simple request

11   to respond to.

12

13

14   MS. SCHOENEFELD:  Your Honor, if I may

15   say something.  For example, the case I'm

16   talking about (indiscernible) Bryne, B-Y-

17   R-N-E and I'm not sure if spelled that

18   correctly.  I did not see it in Lexis.  I

19   don't have access to Westlaw, but I did

20   see from the article that was part of my

21

22   exhibits that I submitted in a response to

23   (indiscernible) to Judge Kahn.  So, the

24   case does exist.  I don't have the case

25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   and that was part of the reason for my

2   request to produce unpublished opinions

3   because some of the opinions I know they

4   exist, but I don't have them.

5

6        THE COURT:  I don't understand where

7   you're going with this.

8

9        MS. SCHOENEFELD:  So, I'm trying to

10  explain why I was asking for opinions.

11  Other than from discovery how can I get

12  the opinions that I know exist, but are

13  not available in the attorney database?

14

15       THE COURT:  Aren't you asking now for

16  the defendants to do your legal research

17  as opposed to factual discovery?  If

18  you're looking for opinions, legal

19

20  opinions, that's your obligation.

21  Responses to interrogatories and responses

22  to admit they don't have to answer purely

23

24  matters law.  They are obligated to

25  response to contentions of how issues of

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    law and facts may apply to a particular

2    case.  That's not what you're seeking

3    here.

4    MS. SCHOENEFELD:  I understand and I

5    do my work looking for whatever I can get

6    publicly available.  I was just thinking

7    that there maybe something that is not

8    publicly available, but obviously whatever

9    is available I will do that and I'm doing

10   that.

11   THE COURT:  Yes, but I thought we had

12   somewhat of an understanding to the extent

13   that it may come in Mrs. Ryba's possession

14   of unpublished opinions that she would

15   disclose those to you.

16   MS. SCHOENEFELD:  Yes, the ones she's

17   going to use.  Okay, we're going to start

18   with the second admission.  I also don't

19   see Mrs. Roberts-Ryba of its irrelevance

20   and the same goes with number three.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    THE COURT:  I'm just reading those,

2  hold on please.  Well, here's my concern

3  with number two.  You're seeking kind of a

4  blanket statement that all of the cases

5  that are filed are being dismissed because

6

7  of the nonresidence of the attorney and I

8  know that not to be true because I've seen

9  case law.  I just saw a case where the

10

11  complaint wasn't dismissed.  So, I don't

12  know how Mrs. Ryba could even respond to

13  that for the very same reason that you're

14  concerned about all of these decisions out

15

16  there.  Her admission would be based upon

17  the extent and degree of her research in

18  order to provide it to her clients for

19

20  them to make that admission and that one

21  is more troubling than the first one.

22

23    MS. SCHOENEFELD:  Okay, I agree, your

24  Honor. If I would rephrase it differently,

25  let's say could be dismissed instead of

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    (indiscernible) because I understand

2    there's a fair number of nonresident

3    attorneys that practice in state courts

4

5    and they get through without being harmed,

6    I guess.

7         THE COURT:  Two seems to rely upon the

8

9    research of the attorney not on what the

10   parties may know.  So two, I think is very

11   troubling.

12

13        MS. SCHOENEFELD:  Okay.

14        THE COURT:  Here is one that I think

15   can be responded by the Committee of

16   Professional Standards.  The overall

17

18   relevancy, I'm not really sure of because

19   we're talking about a facial challenge as

20   opposed to an applied challenge, but

21

22   they'll admit that the (indiscernible)

23   Committee of Professional Standards has

24   brought charges of professional misconduct

25   against nonresident attorneys for

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1   violating Section 470.  I would think that

2   the committee would be able to research

3   its records real quickly and give a

4   response to that.

5

6       MRS. ROBERTS-RYBA:  That seems fair,

7   your Honor.

8       THE COURT:  Your thoughts on that.

9

10      MRS. ROBERTS-RYBA:  I think that's

11  fair.  I think that my defendants can

12  respond to number three.

13

14      THE COURT:  Number four; admit that

15  the justice and appellant division uphold

16  the charges of professional misconduct.  I

17  think that's just completely superfluous

18  based upon the answer to one and three.  I

19  don't think you need a response to number

20  four.  Number five, that's total

21  speculation.  I don't see how anybody can

22

23  respond to that.

24

25      MS. SCHOENEFELD:  Okay.  If I was to

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    rephrase it saying it that must decline

2    based in complying with the law.

3         THE COURT:  You're asking what each

4    attorney is going to do in order to meet

5    470.  I don't know what they're going to

6    do.  They may not decline, the may is

7    total speculation.  I don't know how

8    anybody can respond to number five.

9         MRS. ROBERTS-RYBA, I'm looking at six.

10   I don't know whether any of your clients

11

12   could respond to it.  It may seem to be a

13   proper request, nonetheless, where it

14

15   says, "A nonresident attorney who do not

16   meet Section 470 requirements, they may

17

18   not ethically advertise himself as

19   practicing law in New York."  I don't know

20

21   whether or not your clients from the

22   Committee of Professional Standards would

23

24   be able to respond to that.

25        MRS. ROBERTS-RYBA:  I don't think they

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

can because it's asking a broad question

to each and I don't believe they can

speculate.  It's a compound question and I

don't think that's something they can

answer.

    THE COURT:  What's your problem with

it?

    MRS. ROBERTS-RYBA:  I believe that the

question is asking the committee to make a

statement as to everything of an attorney

based upon their opinion as to compliance.

I think that's beyond the scope of the

underlined action and I don't think it's a

question that they can answer.

    THE COURT:  Ms. Schoenefeld?

    MS. SCHOENEFELD:  Your Honor, I

disagree because it's the State's

position, the State defendant's position

that the statute is constitutional.

Therefore, how can an attorney who

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    otherwise complied accept that same

2    position?  It may be ethical, but

3    basically violating the law.  I don't

4    understand why the Committee of

5    Professional Standards may not answer this

6

7    question.

8        THE COURT:  There maybe other basis in

9    which they could advertise for practicing

10   the law in New York.  They may not be

11   excluded by 470.  I think that's what Mrs.

12

13   Roberts-Ryba is trying to get at.  I guess

14   the bigger question is what's the

15   materiality of this because they already

16   gave you the admission that the State

17

18   enforces Section 470?  I think that would

19   cover all breaches that would fall under

20   the purview of 470, but it's advertisement

21

22   for something else.  I think you would

23   have it covered by providing response to

24   that admission.  Maybe we can move away

25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    from these more immaterial issues.  I

2    think what you were trying to establish

3    there is there is in fact some injury.

4         MS. SCHOENEFELD:  Yes, your Honor.

5         THE COURT:  As I understand what the

6    defense is prepared to do by saying that

7    they're enforcing the statute, the in fact

8    injury is there.  So, there's no need to

9    go into all of these somewhat finite

10   issues, advertisement or decline in

11   representation and things of that nature.

12        MS. SCHOENEFELD:  Your Honor, the

13   reason for that request because the

14   defendants maintained through this action

15   that there hasn't been much

16   (indiscernible) and again Mrs. Roberts-

17   Ryba wanted at some point in taking my

18   deposition and finding out exactly how

19   many cases I've declined.  My problem is

20   that its not material how many cases I

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    declined, whether it's three, five or

2    thirty-five or fifty because the problem

3    is that those cases have come by occasion

4    just by people knowing that I'm licensed.

5    The problem is that I cannot even actually

6

7    state my website I practice in state court

8    in New York and therefore, the bigger

9

10   problem for me is not the clients whom

11   I've already declined, but the clients

12   whom I cannot even try to solicit.

13

14       THE COURT:  Ms. Roberts-Ryba, are you

15   taking the position that she can't even

16   make a challenge to the Constitution of

17   the statute through a declaratory

18   injunctive relief as opposed to any other

19

20   type of relief?  She's going to have to in

21   fact show injury in fact?

22

23       MRS. ROBERTS-RYBA:  Well, Judge Kahn

24   stated that she doesn't have to show

25   injury in fact.  So, basically that's not

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1       an issue. I'm not doing a deposition of

2       the plaintiff because I don't believe that

3       information is relevant, this is a facial

4       challenge.  She can practice in the state

5       of New York if she associates with a

6       

7       resident attorney.

8           THE COURT:  You're not going to

9       challenge her words on her complaint?

10      

11          MRS. ROBERTS-RYBA:  My (indiscernible)

12      was denied.  So, I'm going to base my idea

13      on the legislative history and state why I

14      

15      think the statute is constitutional and

16      then I believe she's going to file briefs

17      saying that it's not constitutional based

18      on her interpretation of the legislative

19      

20      history and the case law.  That's what I

21      plan to do and I think that's really what

22      

23      the case is about.

24          THE COURT:  Ms. Schoenefeld, as I

25      heard from Mrs. Roberts-Ryba and by my

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    assessment of the case, the injurying fact

2    is not an element here.  If it was, it

3    would be directed at the application of

4

5    the statute and here we only have a

6    challenge to the face of the statute, a

7    constitutional challenge.  So, I would

8

9    agree with her that injury in fact is not

10    and will not be a concern for either one

11    of you.  It's whether or not the statute

12

13    has a rational basis here.

14        MS. SCHOENEFELD:  Okay, your Honor.  I

15    just remember hearing in the beginning of

16

17    this conference and Mrs. Roberts-Ryba's

18    argument about my lack standing or

19    something like that.

20

21        THE COURT:  I remember that being

22    raised at the motion to dismiss phase, but

23    we're past that.  Judge Kahn rule stated a

24

25    plausable privilege and immunity challenge

    to the statute.  He didn't with regards to

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    the (indiscernible) and he didn't with

2    regards to equal protection so that seems

3    to be the issue and the only issue before

4    the Court, whether or not the statute is

5    unconstitutional on its face.  You're

6

7    going to receive the legislative history

8    and some responses to admissions here of

9

10   unpublished opinions to the extent that

11   Mrs. Roberts-Ryba may have those if, they

12   exist identifying maybe one or two other

13   requests to admit that I think would be

14   requests to admit that I think would be

15   sufficient and helpful to you in preparing

16   for the next stage in this litigation.

17

18        MS. SCHOENEFELD:  Okay, your Honor.  I

19   have a question though.  Mrs. Roberts-Ryba

20   maintains that I can practice by

21   associating myself with a local counselor.

22

23   I didn't see mention of the case where it

24   was not the case.  So, it seems in New

25   York State courts where some courts, some

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    judges allow pro hac vice and others don't

2    allow.  How can I obtain some kind of

3    definitive answer to that question?

4

5        THE COURT:  So, what are seeking a

6    definitive answer on?

7        MS. SCHOENEFELD:  I'm trying to figure

8

9    out how to understand and basically how

10    the statute is being (indiscernible) in

11    terms of basically can I practice pro hac

12

13    vice or can I not?  As I see it goes both

14    ways depending on which court system or

15    judge I would be facing.

16

17        THE COURT:  I thought that you had

18    provided the answer and the answer was

19    unless you were admitted -- maybe I

20    misunderstood you but -- you have to be

21    admitted to practice in New York.  It has

22    always been my understanding, but I can be

23

24    wrong on this, that you can make an

25    application to the Court for a pro hac

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    vice to come in for a particular case.

2    Are you asking whether or not that pro hac

3    vice is contrary to Section 470 and if you

4    were to seek that there might possibly be

5

6    a displinary action brought against you

7    under 470, is that what you're asking?

8

9         MS. SCHOENEFELD:  No.  My question is

10   whether I can practice pro hac vice or not

11   because I saw a case where it wasn't

12   allowed because pro hac vice is basically

13

14   reserved for the attorneys who are not

15   licensed to practice law in the state but

16   would like to come on occasional basis,

17

18   once in a while to practice law.

19        THE COURT:  Mrs. Roberts-Ryba, it's

20   probably outside of what has been already

21   asked, but is there any legislative

22

23   discussion or even Attorney General's

24   advisory opinion with regards to the issue

25   of not withstanding 470 that a person can

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    practice in New York under pro hac vice or

2    that they're precluded?

3         MRS. ROBERTS-RYBA:  I haven't come

4    across a case that discusses the pro hac

5

6    vice in the context of 470, but I

7    understand that 470 allows a nonresident

8    to practice law if they associated with a

9

10   firm within New York State and have a

11   relationship with that firm, but without

12   pro hac vice, I don't know.

13

14        THE COURT:  So, in terms of you

15   gaining an understanding, did you gain

16   that from the legislative history or is

17

18   there any other advisory opinion or

19   interpretation that your clients maybe

20   following?  I think that's what Ms.

21   Schoenefeld wants to make sure that she

22

23   has those discussions.

24        MRS. ROBERTS-RYBA:  If I gained it

25

     from the legislative history and the case

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     law that I reviewed when I file my

2     (indiscernible) motion.  So, it's just

3     from the public record of the legislative

4
      history alone and the case law that I
5
6     found when I did my research.

7          THE COURT:  Mrs. Roberts-Ryba, you're

8
      not relying any extent and nor do you know
9
10    whether or not any of your clients have a

11    pined rule or issued regulations with

12    regards to that?
13
14         MRS. ROBERTS-RYBA:  That's correct.  I

15    am not relying upon it.

16         THE COURT:  Now, would you have any
17
18    aversion responding to arequest to admit

19    so that Ms. Schoenefeld knows that your

20    support of the statute is not going to
21
22    come from another direction?  I understand

23    from the last hour of us talking that her

24
      real concern is that, yes we know the
25
      statute is 1905.  We know there's been an

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    amendment, but has there been any further

2    interpretations along the line that would

3    support the substantial objectives in

4    interest of enforcing the statute.  I

5    think what she's trying to do is follow

6    that thread all the way through.  As I

7    understand what you're saying there isn't

8    any.  I guess again it comes down to trust

9    to verify, she wants to verify that.  So,

10   would you have any problems responding to

11   a request to admit?

12        MRS. ROBERTS-RYBA:  A request to admit

13   that there has been no additional

14   discussion of law upholding the

15   legislative history?

16        THE COURT:  That's correct, what your

17   clients are relying upon in terms of

18   enforcing the provisions of the statute?

19        MRS. ROBERTS-RYBA:  I have no problem

20   with responding to that.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      THE COURT:  So, Ms. Schoenefeld do you

2   understand what the Court is asking the

3   defendants to provide?

4      MS. SCHOENEFELD:  To my understanding

5   that they would not be relying on anything

6

7   other than whatever legislative history

8   and that there is no following

9

10  interpretations that would extend it?

11     THE COURT:  That's correct.

12     MRS. ROBERTS-RYBA:  So, your Honor

13

14  does that mean number six is out, the

15  question to request admissions?  I think

16  that's the last question we were on.

17

18     MS. SCHOENEFELD:  It's not the last

19  one, but I think its out.

20     THE COURT:  I just turned the pages,

21

22  but we could go back to that.  I am not

23  directing a response to number six.  I

24  think we can tailor another admission in

25  lue of it with regards to any reliance on

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    any other acknowledges, interpretation

2    with regards to the enforcement of Section

3    470.  The Court will take the time to

4    draft the admission to present to you.

5

6         MRS. ROBERTS-RYBA:  Okay.

7         THE COURT:  In terms of the others, I

8    think they're just duplicative and we

9    found that the request to admit will

10

11   satisfy Ms. Schoenefeld's concerns.

12        MRS. ROBERTS-RYBA:  Okay.

13

14        THE COURT:  With that being said Ms.

15   Schoenefeld, do you still feel that you

16   want Mrs. Roberts-Ryba to at least respond

17

18   to these interrogatories and basically

19   tell you that she finds them to be not

20   relevant to subject matter.  However, her

21   response to the request to admit and

22

23   providing the legislative history, will

24   her five be relevant discussions for you

25   or you still want her to respond to those?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      MS. SCHOENEFELD:  I'm looking for my

2      (untelligible) just to see.  Yes, your

3      Honor I would like to have answers even if

4      it says it's irrelevant or if they say the

5      defendants have no knowledge that's fine

6      too because I do think that the same --

7      yes, I would like Mrs. Roberts-Ryba to

8      state her objection on the record,

9      appropriate objection if she has one and

10     if she can provide an answer that would

11     fine for too.

12           MS. RORBERTS-RYBA:  I'm objecting to

13     all of the responses based on the

14     conference today and based on the fact

15     that it's a facial challenge.  Question

16     number nine which asks for all of the

17     nonresident attorneys where disciplinarian

18     actions were opposed since 1985, that's

19     irrelevant.  So, basically you're going to

20     get objections to each question.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      THE COURT:  I think that's what she's

2  seeking.  Again, it would probably give

3  proper verification.  It's also saying to

4  the Court what sanctioned those responses.

5

6      MRS. ROBERTS-RYBA:  Your Honor, I have

7  a question.  I will provide objections to

8  her interrogatories and her documents

9  commands.  I will provide the legislative

10

11  history.  With regard to her subpoena to

12  produce documents in New York City, I'm

13

14  objecting to the fact that New York is not

15  the jurisdiction and again she's asking

16  for public records.  Nevertheless, I am

17

18  providing her the legislative history when

19  I receive it.

20

21      THE COURT:  I have to apologize, I

22  don't have the subpoena and the documents

23  that she's seeking so I don't know what

24  she's requesting.  Is she serving these on

25

nonparties?

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1          MRS. ROBERTS-RYBA:  She served it on

2      the Committee on Public Standards.

3          THE COURT:  Why would she do that if

4      you're representing and they're a party?

5      You wouldn't service subpoena on them.

6

7          MS. SCHOENEFELD:  No, your Honor

8      originally it was dismissed it was found

9      immune.

10

11          MRS. ROBERTS-RYBA:  Thomas Emerson, a

12      defendant of Committee of Professional

13      Standards was dismissed.

14

15          THE COURT:  I see.  I don't know what

16      those document commands are.

17

18          MRS. ROBERTS-RYBA:  She's asking for

19      all documents supporting, evidencing,

20      constituting, referring or relating to the

21      State claim of substantial interest or

22      objectives serviced by Section 470.  She

23

24      wants all documents supporting,

25      evidencing, constituting, referring or

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1       relating to any alleged substantial

2       relationship between the State's claim for

3       substantial interest or objective and the

4       physical requirements of Section 470.  She

5

6       wants all documents constituting,

7       referring or relating to the disciplinary

8       actions of any taken against nonresident

9

10      from 1985 through the present.

11          THE COURT:  Okay, so it's the same

12      thing that's being asked of the current

13

14      defendants?

15          MRS. ROBERTS-RYBA:  Yes, your Honor.

16          MS. SCHOENEFELD:  Your Honor, the

17

18      objection based on being overly burdensome

19      would be correct, but what I was expecting

20      was perhaps Mrs. Roberts-Ryba would in

21

22      objecting would agree to provide summary.

23      I'm not expecting boxes documents with all

24      the files and that is not public

25

        information.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    THE COURT:  I think the other issue

2    that Mrs. Roberts-Ryba is raising is that

3    it's not really relevant to a facial

4    challenge in the statute and that

5    relevancy is just as important as it is in

6    discovery.  So, I don't know what you

7    would be getting from the Committee of

8    Professional Standards that you wouldn't

9    get from Mr. Emerson.

10    MS. SCHOENEFELD:  So, Mr. Emerson is

11    going to provide documents?

12    THE COURT:  What documents, I mean why

13    do you need it?  You don't have to

14    establish an injury in fact.  All of those

15    requests come into injury in fact.  You're

16    going to get a request to admit that it's

17    not really an issue.  You have to prove

18    injury in fact.

19    MS. SCHOENEFELD:  My concern also is

20    that there might be some argument later --

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    well correct that -- I don't established

2    injury in fact for myself, but my actions

3    could be found mute even if the statute

4    existed, but never has been enforced or

5    just then enforced.  There's no real risk

6
7    that it's going to be enforced and I might

8    not have standing either.

9
10        THE COURT:  Yes, but the standing

11   issue has already been decided.  You have

12   standing.  Do you intend on raising

13
14   muteness as an admission here Mrs.

15   Roberts-Ryba?

16
17        MRS. ROBERTS-RYBA:  I raised it and it

18   was denied.

19        THE COURT:  Yes, that's what I

20   thought.

21
22        MS. ROBERTS-RYBA:  So, she's asking

23   for these documents and it's not relevant.

24
25   I don't believe it's proper for me to have

     to provide a spreadsheet and go through

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    cases from 1985.

2         THE COURT:  Well, I think the subpeona

3    is in the same context of discovery demand

4    and to that extent it's just not relevant.

5    I will respond to that too.

6

7         MS. ROBERTS-RYBA:  Thank you, your

8    Honor.

9

10        THE COURT:  So, here's what I'm going

11   to do I'm going to issue an order.  The

12   order is going to respond where objectives

13   can be laid and the most proper answer

14   that defendants can give, which quite

15   frankly is that they're relying upon the

16   legislative history.  The legislative

17   history will be provided.  There will be

18

19   solo requests to admit.  I will identify

20   those and ask the defendants to respond to

21

22   those.  I am going to deny the depositions

23   of the parties under either Rule 30B6 or

24

25   otherwise I am going to quash the subpeona

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1     to the Committee for Professional

2     Standards.  We will include any discussion

3     of any other published opinions or rules

4     or regulations from any other

5

6     interpretations in which the defendants

7     may use in support of the

8     constitutionality of the statute will be

9

10    disclosed.  The Court does understand what

11    Ms. Schoenefeld is trying to seek and my

12    order will make sure that that's all

13

14    covered.  With all of that being said, Ms.

15    Schoenefeld is there anything else we need

16    to discuss?

17

18         MS. SCHOENEFELD:  No, that's it your

19    Honor.

20         THE COURT:  Okay, Mrs. Roberts-Ryba

21

22    anything else we need to discuss?

23         MRS. ROBERTS-RYBA:  No, I just believe

24    that because of this conference I'd like

25

      to have just a bit of an extension to

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1    provide these reponses to the plaintiff.

2    So, instead of September 1, I can have --

3        THE COURT:  How about until the end of

4    the month, would that be sufficient?

5

6        MRS. ROBERTS-RYBA:  That would be

7    sufficient.

8

9        THE COURT:  Okay and then I would just

10   move out the final day to file responsive

11   motions.  Ms. Schoenefeld, anything else

12   we need to discuss?

13

14       MS. SCHOENEFELD:  No, that's it.  So,

15   discovery deadline will be moved by a

16   month?

17

18       THE COURT:  I'm going to move it 30

19   days.

20

21       MS. SCHOENEFELD:  So, what would be

22   the new date for disclosure motions?

23       THE COURT:  I'll move the final date

24   to file responsive motions 30 days, as

25   well.

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

1      MS. SCHOENEFELD:  Okay.

2      THE COURT:  Okay, thank you very much

and I'll try to get his out within the

next day or so, so that you have some

quidance.

7      MRS. ROBERTS-RYBA:  Thank you, your

Honor.

10      MS. SCHOENEFELD:  Thank you, your

Honor.

12      THE COURT:  Thank you very much.

We're now off the record.

(Conference concluded, 11:25:19 a.m.)

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

CERTIFICATION

1

2

3        I, CAMILLE DONATO-LECLAIR, Registered

4

5     Professional Reporter, the assigned

6     digital transcriber, do hereby certify

7     that the foregoing transcript of

8

9     proceedings is prepared to the best of my

10     ability and verbatim synchronization with

11     the audio recording as set forth for

12

13     transcription, and is a true and accurate

14     transcript of the proceedings as recorded.

15

16

   *Camille Donato-LeClair, RPR*

17

18     Camille Donato-LeClair, RPR

19     Camelion Group, Ltd./Dig-e-Script

20

21

22

23     Dated:  November 29, 2010

24

25

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-7553

(COURT NOTES)

CAMELION GROUP, LTD. / VOICEVIEW
CAMILLE DONATO-LECLAIR, RPR
34 South 11th Street
Fifth Floor - Suite 540
Philadelphia, Pennsylvania  19107
(215) 686-2986

**Exhibit D**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EKATERINA SCHOENFELD,

                              Plaintiff,

              - v -                                          Civ. No. 1:09-CV-504
                                                                      (LEK/RFT)

STATE OF NEW YORK, *et al.*,

                              Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DISCOVERY ORDER

This is a case wherein the Plaintiff challenges the constitutionality of New York

Judiciary Law § 470 and seeks equitable relief.[1]  Dkt. No. 4 Am. Compl., dated Apr. 30,

2009.  The only surviving cause of action is Plaintiff's claim that the statute violates her

rights under the United States Constitution, Art. IV, § 2 ("Privileges and Immunities

Clause").  Dkt. No. 32, Mem.-Dec. & Order, dated Feb. 8, 2010, at pp. 7-10 & 12.  On March

15, 2010, a Uniform Pretrial Scheduling Order was issued setting, *inter alia*, an abbreviated

discovery deadline of September 1, 2010.  Dkt. No. 41.  On or about July 29, 2010, Plaintiff

served three discrete sets of Demands for Interrogatories, Demands to Produce, Notice of

---

[1] The pertinent statute states that

[a] person, regularly admitted to practice as an attorney and counselor, in the
courts of record of this state, whose office for the transaction of law business is
within the state, may practice as such attorney or counselor, although he resides in
an adjoining state.

N.Y. JUD. LAW. § 470.

Deposition, and Request for Admissions upon the Defendants, to which the Defendants object on the grounds of relevancy and unduly burdensome. The parties' attempt to resolve the issues failed. In this respect, Defendants filed a Letter Motion seeking a discovery conference regarding these discovery disputes. Dkt. No. 42, Defs.' Lt.-Mot., dated Aug. 10, 2010. The Plaintiff responded to Defendants' Letter Motion. Dkt. No. 47, Pl.'s Lt.-Br., dated Apr. 12, 2010.

A Discovery Conference, on the record, was held on August 17, 2010, to expeditiously resolves these issues. During that Conference the Court rendered several Rulings which are incorporated by reference into this Discovery Order. Those Rulings are summarized as follows:

The Court generally agrees with the Defendants that the three discrete sets of Discovery Demands are unduly burdensome and in many respects irrelevant.[2] The thrust of this litigation is a facial challenge to the constitutionality of Section 470 as opposed to an as-applied constitutional challenge. In this respect, the scope of discovery should be substantially tailored to the legislative history of the statute and any other related legislative or agency interpretation(s) that would support the constitutional basis of the statute. Essentially, many of the Plaintiff's Demands are seeking nothing more than speculation from

---

[2] Sets of Discovery Demands were directed to the Appellate Division Judge Defendants collectively, Attorney General Andrew M. Cuomo individually, and Thomas C. Emerson, Chairperson of the Committee on Professional Standards, individually. Since the Committee on Professional Standards is not a party to this action, the Plaintiff recently served a subpoena upon the Committee directing it to produce the same types of records that are being sought from the named Defendants.

the Defendants as to the substantial objectives or interests promoted, advanced, and protected by the enforcement of the statute. The difficulty in proving a satisfactory, non-speculative answer is that, at best, this inquiry could be answered by stating that the Legislative History speaks for itself or it is a pure matter of law. Although a party may ask for responses that involve an opinion or contention which may relate to the facts and the corresponding application of the law, such permission does not extend to an inquiring party seeking answers of pure law. FED. R. CIV. P. 33(c); *Trueman v. New York State Canal Corp.*, 2010 WL 681341, at \*3 (N.D.N.Y. Feb. 24, 2010) (citing, *inter alia*, *United States v. Renault Inc.*, 27 F.R.D 23, 29 (S.D.N.Y. 1960) & *Kendrick v. Sullivan*, 125 F.R.D. 1, 2 & 4 (D.D.C. 1989)); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE at ¶¶ 33.78 & 33.79 (3d ed. 2009). On the other hand, the Court wants to ensure that the Plaintiff is not blind-sided by the presentation of either facts or relevant opinions that are outside the scope of the legislative history, which may be relevant to the statutory construction and this constitutional discussion. In this vein, the Court's Rulings attempted to balance these two objectives.

The Defendants are directed to respond to each set of Discovery Demands, noting their objections and, to the extent possible, providing an answer that may add further clarification, i.e., that the substantial objectives and interest of the statute may be found in the legislative history. Each discrete Defendant shall verify its or his own responses. In terms of the Appellate Division Judges, the Plaintiff agrees to accept one judge's verification on behalf of them all.

In terms of document production, the Defendants shall provide the Plaintiff with the

entire legislative history and any other document, whether an advisory opinion from the Attorney General's Office, memorandum, rule, regulation, or the like that may reveal the rational basis or substantial objectives of Section 470. Further, the Defendants shall provide "unpublished court opinions" - those opinions not found on Westlaw, Lexis, or LoisLaw - that they intend to rely upon in support of the constitutionality of the statute.

As to the Notice of Depositions served upon the Defendants and other third-parties, those Notices are quashed and the Defendants and third-parties are granted a protective order. The probable testimony that any deponent may give would be highly speculative as to the legislative intent of the statute in question, which was enacted in 1909 and amended in 1945. Hence, no relevant information that may lead to admissible evidence may be unearthed through depositions.

The subpoena served upon the Committee for Professional Standards is quashed and the Committee is granted a protective order.

To protect the Plaintiff, as well as narrowing the issues, the Court grants several Requests for Admission. To facilitate our objectives, the Court has modified previous Requests. The permitted Requests for Admission, which each discrete group of Defendants shall answer, are listed below:

1. Admit that non-resident attorneys who passed the New York State bar exam and are in compliance with all requirements for practicing law in New York - except for the office requirement of Section - are precluded from practicing law in New York by Section 470.

2. Admit that a substantial objective of Section 470 is to preclude non-resident attorneys

*-4-*

who do not have an office within the State of New York from practicing within the State.

3.  Admit that the Defendants are directed to enforce the provisions of Section 470 against non-resident attorneys who do not have an office for the transaction of law business within the State.

4.  Admit that the Defendants intend to rely solely upon Section 470's Legislative History to support its constitutionality, exclusive, of course, of any court decisions that may have ruled upon the constitutionality of the Statute.

5.  Admit that the Defendants, other than their reliance upon Section 470's Legislative History and court precedents, are not relying upon any other memorandum, advisory opinion, rule or regulation to support the Statute's constitutionality.

6.  Admit that the Defendants do not intend to rely upon facts independent of the Legislative History of Section 470 to support the Statute's constitutionality.

7.  Admit that the Defendants, including Third Department's Committee on Professional Standards, have brought and/or upheld charges of professional misconduct against non-resident attorneys for violating Section 470.

8.  Admit that, for purposes of continuing this litigation, Plaintiff does not have to establish or prove an injury-in-fact or standing.

The Defendants shall serve their responses consistent with this Order on or before **September 30, 2010.**  All other provisions of the Scheduling Order, Dkt. No. 41, remain in effect.

**IT IS SO ORDERED**.

August 17, 2010
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

# Exhibit E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EKATERINA SCHOENEFELD,

*Plaintiff,*

-against-

STATE OF NEW YORK; ANDREW M CUOMO, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL; NEW
YORK SUPREME COURT, APPELLATE DIV, THIRD
JUDICIAL DEPT; ALL JUSTICES OF NY SUPREME
COURT; MICHAEL J. NOVACK, IN HIS OFFICIAL
CAPACITY AS CLERK OF NY SUPREME,

*Defendants.*

**DEFENDANTS'
RESPONSE TO
PLAINTIFF'S REQUEST
FOR FIRST SET OF
ADMISSIONS**

09-CV-0504

LEK/RFT

_____

Defendant, John Stevens in his official capacity as Chairman of the Committee on

Professional Standards (hereinafter "Chairman"), responds to plaintiff's request for admissions that

were modified by the court on August 17, 2010, as follows:

1. Admit that non-resident attorneys who passed the New York State bar exam and are in
compliance with all requirements for practicing law in New York - except for the office
requirement of Section - are precluded from practicing law in New York by Section 470.

**Response:**     Objection the question is overlybroad and as written cannot be answered.
Notwithstanding said objection and without waiving same, with regard to whether and to what
extent the practice of law by non-resident attorneys who do not maintain an office in New York
is restricted, the Chairman refers to Exhibit A, which includes some legislative history materials
related to Judicial Law Section 470. However, the Chairman is not the official repository for the
legislative history materials related to Judicial Law Section 470. Therefore, the Chairman lacks
knowledge or information regarding the completeness of Exhibit A. The Chairman also refers to
case law which has not been included in Exhibit A.

2. Admit that a substantial objective of Section 470 is to preclude non-resident attorneys
who do not have an office within the State of New York from practicing within the State.

**Response:**     Objection. Question calls for a legal conclusion. Notwithstanding said objection and without waiving same, the Chairman refers to Exhibit A, which contains legislative history materials. However, the Chairman is not the official repository for the legislative history materials related to Judicial Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

3. Admit that the Defendants are directed to enforce the provisions of Section 470 against non-resident attorneys who do not have an office for the transaction of law business within the State.

**Response:**     Objection as to form. The question calls for a legal conclusion. In addition, the question is overly-vague as it does not state who is "directing" the Chairman to enforce the provisions of section 470. Notwithstanding said objection and without waiving same, the Chairman refers to 22 NYCRR 806.3 and 806.4 as a description of his duties as the Chairman of the Committee on Professional Standards.

4. Admit that the Defendants intend to rely solely upon Section 470's Legislative History to support its constitutionality, exclusive, of course, of any court decisions that may have ruled upon the constitutionality of the Statute.

**Response:**     Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this time to  rely upon Section 470's legislative history, and any relevant case law to support it constitutionality argument.

5. Admit that the Defendants, other than their reliance upon Section 470's Legislative History and court precedents, are not relying upon any other memorandum, advisory opinion, rule or regulation to support the Statute's constitutionality.

**Response:**     Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this time to rely upon Section 470's legislative history, and any relevant case law to support it constitutionality argument.

6. Admit that the Defendants do not intend to rely upon facts independent of the Legislative History of Section 470 to support the Statute's constitutionality.

**Response:**     Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this

2

time to rely upon Section 470's legislative history, and any case law to support it constitutionality argument.

7. Admit that the Defendants, including Third Department's Committee on Professional Standards, have brought and/or upheld charges of professional misconduct against nonresident attorneys for violating Section 470.

**Response:**     Objection.  Question is overly broad and lacks specificity. Notwithstanding said objection and without waiving same, the justices refer to relevant case law.

8. Admit that, for purposes of continuing this litigation, Plaintiff does not have to establish or prove an injury-in-fact or standing.

**Response:**     Deny but Admit that Judge Kahn has ruled on plaintiff's standing in this case and refer to Judge Kahn's Decision/Order as the best representation of it's contents.

DATED:     Albany, New York
           September 29, 2010

                    ANDREW M. CUOMO
                    Attorney General of the State of New York
                    Attorney for Defendants State of New York, Andrew
                          M.   Cuomo,   NYS   Office   of   Court
                          Administration, Michael J. Novack and John
                          Stevens
                    The Capitol
                    Albany, New York  12224-0341

                    By: *s/ Christina L. Roberts-Ryba*
                    Christina L. Roberts-Ryba
                    Assistant Attorney General, of Counsel
                    Bar Roll No.  105818
                    Telephone: (518) 486-9717
                    Fax:  (518) 473-1572 (Not for service of papers.)
                    Email: Christina.roberts@ag.ny.gov.

TO:     Ekaterina Schoenefeld
        3371 US Highway 1
        Suite 105
        Lawrenceville, NJ  08648

# Exhibit F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EKATERINA SCHOENEFELD,

                                        *Plaintiff*,

-against-

STATE OF NEW YORK; ANDREW M CUOMO, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL; NEW
YORK SUPREME COURT, APPELLATE DIV, THIRD
JUDICIAL DEPT; ALL JUSTICES OF NY SUPREME
COURT; MICHAEL J. NOVACK, IN HIS OFFICIAL
CAPACITY AS CLERK OF NY SUPREME,

                                        *Defendants*.

_____

**DEFENDANTS'
RESPONSE TO
PLAINTIFF'S FIRST SET
DOCUMENT REQUESTS**

09-CV-0504

LEK/RFT

Defendant John Stevens, Chairman of the Committee on Professional Standards (hereinafter

"Chairman"), by his attorney, Andrew M. Cuomo, Attorney General of the State of New York,

respond to plaintiff's request for production of documents, dated July 24, 2010, as follows:

## Preliminary Statement

These documents are produced by Defendant John Stevens in his official capacity as

Chairman of the Committee on Professional Standards. The production of these documents does not

mean that Defendant Stevens has any personal knowledge of these documents, or that Defendant

Stevens has knowledge of these documents in their personal capacity. John Stevens has no personal

familiarity with or knowledge of any or some of these documents.

Defendant Stevens understands that a good faith effort has been made to gather the

documents requested by plaintiff, but since Defendant Stevens does not have custody of such

documents, they cannot be held responsible, if through inadvertence or oversight a document requested is not produced.

1.      All documents constituting, referring or relating to the enactment of Section 470 and its predecessors.

**Response**:      Objection. Question is overly broad, unduly burdensome and calls for defendant to conduct plaintiff's legal research. Notwithstanding said objection and without waiving same, defendant refers to Exhibit A which contains some legislative history materials related to Section 470. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

2.      All documents supporting, evidencing, constituting, referring or relating to the State's claimed substantial interests or objectives furthered by Section 470.

**Response**:      Objection. Question is overly broad, unduly burdensome and calls for defendant to conduct plaintiff's legal research. Notwithstanding said objection and without waiving same, defendant refers to Exhibit A which contains some legislative history materials related to Section 470. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

3.      All documents supporting, evidencing, constituting, referring or relating to any alleged substantial relationship between the State's claimed substantial interests or objectives and the physical office requirement of Section 470.

2

**Response**: Objection. Question is overly broad, unduly burdensome and calls for defendant to conduct plaintiff's legal research. Notwithstanding said objection and without waiving same, defendant refers to Exhibit A which contains some legislative history materials related to Section 470. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

4.     All documents evidencing, constituting, referring or relating to all charges of professional misconduct brought against non-resident attorneys for violating Section 470 from January 1, 1985 through the present.

**Response**: Objection. Question is overly broad, unduly burdensome and calls for defendant to conduct plaintiff's legal research. Notwithstanding said objection and without waiving same, defendant refers to Exhibit A which contains some legislative history materials related to Section 470. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

5.     All documents evidencing, constituting, referring or relating to all disciplinary actions of any kind (e.g., reprimand, suspension, etc.) taken against non-resident attorneys for violating Section 470 from January 1, 1985 through the present.

**Response**: Objection. This question is overly broad, unduly burdensome and requests information that is not relevant plaintiff's facial challenge of Section 470.

3

6. All documents evidencing, constituting, referring or relating to lawsuits brought by non-resident attorneys in the state courts of New York that were subsequently dismissed due to the non-resident attorney's failure to maintain an office as required by Section 470.

**Response**: Objection. This question is overly broad, unduly burdensome and requests information that is not relevant plaintiff's facial challenge of Section 470.

7. All documents evidencing, constituting, referring or relating to any other occurrences or instances, in which Section 470 has been applied to non-resident attorneys.

**Response**: Objection. This question is overly broad, unduly burdensome and requests information that is not relevant plaintiff's facial challenge of Section 470.

8. All documents identified in response to interrogatories propounded by the plaintiff or used in preparing responses to interrogatories propounded by the plaintiff.

**Response**: Objection. This question is overly broad and seeks information protected by the attorney/client privilege. Notwithstanding said objection, defendant refers to Exhibit A. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

9. All documents identified in response to requests for admissions propounded by the plaintiff or used in preparing responses to requests for admissions propounded by the plaintiff.

**Response**: Objection. This question is overly broad and seeks information protected by the attorney/client privilege. Notwithstanding said objection, defendant refers to Exhibit A. However, the Chairman is not the official repository for the legislative history materials

4

related to Judiciary Law Section 470. Therefore, the Chairman lack knowledge or information regarding the completeness of Exhibit A.

10.     All documents that you intend to use or rely upon at trial.

**Response**:     Objection. This question is overly broad and seeks information protected by the attorney/client privilege. Notwithstanding said objection and without waiving same, defendant refers to Exhibit A. However, the Chairman is not the official repository for the legislative history materials related to Judiciary Law Section 470. Therefore, the Chairman lacks knowledge or information regarding the completeness of Exhibit A.

Dated: Albany, New York
        September 29, 2010

> ANDREW M. CUOMO
> Attorney General of the State of New York
> Attorney for Defendants
> The Capitol
> Albany, New York 12224-0341
>
> By: s/ Christina L. Roberts-Ryba
>
> Christina L. Roberts-Ryba
> Assistant Attorney General, of Counsel
> Bar Roll No. 105818
> Telephone:     (518) 486-9717
> Fax:     (518) 473-1572 (Not for service of papers)
> Email: Christina.roberts.@ag.ny.gov.

TO:     Ekaterina Schoenefeld
        3371 US Highway 1
        Suite 105
        Lawrenceville, NJ 08648

5

# Exhibit A

# LAWS

OF THE

# STATE OF NEW YORK,

PASSED AT THE

## EIGHTY-FIFTH SESSION

OF THE

## LEGISLATURE,

BEGUN JANUARY SEVENTH, AND ENDED APRIL TWENTY-THIRD, 1862, IN THE
CITY OF ALBANY.



ALBANY:
WRIGHTSON & CO., PRINTERS.
1862.

nt fiscal year, and the interest and in-
nded debt falling due within the same

oneys borrowed pursuant to the first
ct the, said common council is hereby
ie bonds or certificates of indebtedness
under the seal of said city, and signed
d chamberlain, in sums of five hundred
able on the first days of March in each
with interest semi-annually on the first
ad September, but if there be any frac-
han five hundred dollars of the amount
ke bond or certificate, drawing interest
above, shall be issued therefor payable
e last of the others issued for the same
due.

oneys borrowed pursuant to the second
act, the said common council is hereby
e bonds or certificates of indebtedness in
der the seal of the said city, and signed
d chamberlain, in sums of one thousand
yable one on the first day of March in
fter, with interest semi-annually on the
ch and September : but for the fractional
undred and ninety-seven dollars and
art of the last said moneys so borrowed,
certificate shall be issued payable one
st of the others issued for the same pur-
ie.

ision by tax shall be made in each year
nmon council for the payment of the in-
ipal falling due on all said bonds or cer-
the next ensuing fiscal year, and such
icipal shall be assessed, levied and raised
ner as any other public or general tax of
n conjunction with the general taxes of

shall take effect immediately.

# Chap. 43.

AN ACT to authorize attorneys of the Supreme
Court of this State residing in adjoining States, to
practice in the Courts of this State.

Passed March 22, 1862.

*The People of the State of New York, represented in
Senate and Assembly, do enact as follows :*

Section 1. Any regularly admitted and licensed at-
torney of the Supreme Court of this State, and whose
profession is the transaction of law business is within
... such attorney in any of the
... notwithstanding he may reside in a
... the State of New York, provided that
... to practice in the Courts of this **To extend only to at-
torneys who
have hereto-**
... out of the State of New York, and **been admit-
ted to prac-**
... upon which might according to the **tice in this state.**
... Courts of this State, be made upon said
... residence, if the same were within the
... York shall be sufficient if made upon him
... the same in the post office in the city or
... said office is located, directed to said
... the office, and paying the postage thereon ;
... shall be equivalent to personal service
... of such attorney.
... shall take effect immediately.

# STATUTES AT LARGE

OF THE

# STATE OF NEW YORK,

CONTAINING

THE GENERAL STATUTES PASSED IN THE YEARS

1863, 1864, 1865 & 1866,

WITH A

REFERENCE TO ALL THE DECISIONS UPON THEM.

EDITED BY

## JOHN W. EDMONDS.

VOLUME VI.

SECOND EDITION.

PUBLISHED BY
WEED, PARSONS & COMPANY,
ALBANY, N. Y.
1869.

shall be given in such manner as the court or judge making the same shall in the order direct.

§ 3. All persons summoned or bound by recognizance, or otherwise required to give their attendance at such court, shall attend at the place so fixed for the holding of such court, or to which such court shall be adjourned, and for **Effect thereof.** default shall be liable to the same extent and in the same manner as if the place of holding such court had not been changed and they had failed to attend thereat; and all notices of trial, hearing or argument, and orders to show cause for the place originally appointed for the holding of such court, shall be held to apply to the place to which such court shall be removed or adjourned.

**Proceedings at such place valid.** § 4. All proceedings had at such other place shall be as valid and effectual as if had and transacted at the usual place of holding such court.

# CHAP. 175.

AN ACT to authorize attorneys and counselors of the Supreme Court of this State residing in adjoining States, to practice in the courts of this State.

PASSED March 16, 1866.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

**When attorneys of other states may practice in this.** § 1. Any regularly admitted or licensed attorney or counselor of the supreme court of this state, and whose office for the transaction of law business is within this state, may practice as such attorney or counselor in any of the courts of this state, notwithstanding he may reside in a state adjoining the State of New York; provided, that service of papers, which might, according to the practice of the courts of this state, be made upon said attorney at his residence, if the same were within the State of New York, shall be sufficient, if made upon him by depositing the same in the post-office in the city or town wherein his said office is located, directed to said attorney at his office, and paying the postage thereon, and such service shall be equivalent to personal service at the office of such attorney.

§ 2. The act of the legislature of the State of New York, passed March twenty-second, eighteen hundred and sixty-two, entitled "An act to authorize attorneys of the supreme court of this state residing in adjoining states, to practice in the courts of this state," is hereby repealed.

Ante, vol. 4, p. 603.

§ 3. This act shall take effect immediately.



THE NEW REVISION OF THE STATUTES

OF THE STATE OF NEW YORK.

# THE CODE OF CIVIL PROCEDURE

(FIRST ENACTED AS L. 1876, CH. 448, AND AMENDED IN 1877.)

### ACCORDING TO THE STANDARD TEXT,

PREPARED, CERTIFIED, AND DEPOSITED IN THE OFFICE OF THE SECRETARY
OF STATE, PURSUANT TO LAW, BY THE COMMISSIONERS
TO REVISE THE STATUTES.

WITH THE

## NEW MARGINAL NOTES,

AND AN

### INTRODUCTION,

PREPARED BY THE COMMISSIONERS AND ACCOMPANYING THE STANDARD TEXT.

ALSO,

## FULL EXPLANATORY NOTES

BY

### MONTGOMERY H. THROOP,
ONE OF THE COMMISSIONERS;

TOGETHER WITH

ALL THE PROVISIONS OF THE FORMER CODE OF PROCEDURE
WHICH HAVE NOT BEEN REPEALED;

ALSO

### A TABLE,

SHOWING THE CORRESPONDENCE OF THE REPEALED SECTIONS OF THE
LATTER TO THOSE OF THE PRESENT CODE,
AND OTHER USEFUL MATTERS.

ALBANY:
WEED, PARSONS AND COMPANY, PRINTERS.
1877.

Case 1:09-cv-00504-LEK -RFT   Document 64-3   Filed 12/15/10   Page 136 of 245



[substituted for that part of § 9 of the same statute, as amended by L. 1872, ch. 260 (9 Edm., 845), which provides that it shall not affect the provisions of certain statutes, requiring the courts to admit to practice the graduates of the law schools named in the text, upon production of their diplomas. It is believed that sound policy requires that the courts should not be compelled, as they were by the former laws, to admit those graduates, unconditionally. The effect of this section is merely to refer the entire matter to the court of appeals, in the confidence that that high tribunal will establish such rules as will most effectually promote the true interests of the law schools, as well as of the legal profession and the people, generally.]

**Attorney's oath of office, and certificate of admission.**

**§ 59.** Each person, admitted as prescribed in the last three sections, must, upon his admission, take the constitutional oath of office in open court, and subscribe the same in a roll or book, to be kept in the supreme court for that purpose. The clerk, upon the payment of the fees allowed by law, must deliver to the person admitted, a certificate under his hand and official seal, stating that such person has been so admitted, and that he has taken and subscribed the constitutional oath of office, as prescribed in this section.

[2 R. S., 287, Part 3, ch. 3, tit. 2, § 66 (3 R. S., 5th ed., 477 ; 2 Edm., 298). The last sentence has been added.]

**§ 60.** A person, regularly admitted to practice as attorney and counsellor, in the courts of record of the State, whose office for the transaction of law business is within the State, may practice as such attorney or counsellor, although he resides in an adjoining state. But service of a paper, which might be made upon him at his residence, if he was a resident of the State, may be made upon him, by depositing the paper in a post-office in the city or town where his office is located, properly inclosed in a postpaid wrapper, directed to him at his office. A service thus made is equivalent to personal service upon him.

[L. 1866, ch. 175, § 1 (6 Edm., 706).]

**Clerks, etc., not to practice.**

**§ 61.** The clerk, deputy-clerk, or special deputy-clerk of a court shall not, during his continuance in office, practice as attorney or counsellor in that court.

[1 R. S., 109, Part 1, ch. 5, tit. 4, § 26 (1 R. S., 5th ed., 401 ; 1 Edm., 99). The words, "register, assistant-register or deputy-register" have been omitted ; as they have no longer the meaning, which they had when the R. S. were enacted.]

26 ·

CHAI

§ (
stable
contir
court.
[Id.,

§ 6:
comper
county
ness to
unless h
counsell.
[L. 18

§ 64
meanor,
not exce
dollars,
fine and
city and
ingly pe
regularl
guilty o
section.
a persor
[Id.;

§ 65
became
no furtl
for whe
another
in such
[2 R.
Edm., §

§ 66
vices, is
restrain
[Co. ]

# BOARD OF STATUTORY

## CONSOLIDATION

1908

y amended by adding
ticle to be known as

**'H**

## Wills

*his state.*

**in this state.** The
a citizen of the United
band previously shall
citizen, who shall have
ed or resident within
Ireland, or any of its
within this state and
such foreign jurisdic-
e admitted to probate
any property affected
rogate of such county,
ill and testament, cer-
general of the United
diction, together with
ent, made and accepted
in like manner; and
testament shall be is-
executors and trustees,
, prior to the issuance
duly acknowledged or
ball not have renounced
ovided, that before any
ny county of this state,
surrogate's court of the
on the proof of the last
ate who shall have died
upon such probate pro-
such will.

s of sections of the code
read as follows:

in this act, are enumer-
nce of the judiciary law.

---

**§ 34. Trial of causes at adjourned term.** [Any term [See n. to 27,]
of a court of record may be adjourned from day to day or to a
specified future day, by an entry in the minutes. Jurors may be
drawn for and notified to attend a term so adjourned, and]
Causes may be noticed for trial [thereat] for any term of a court
of record adjourned as provided in section seven of the judiciary
law, as if it was held by original appointment. [Any judge of the
court may so adjourn a term thereof, in the absence of a sufficient
number of judges to hold the term.]

[Code Civil Procedure § 34. For remainder of section *see*
Judiciary Law §§ 7, 534, 540.]

**§ 41. Adjournment of term to another place when** [See note 25]
**parties so stipulate.** [If, during the actual session of a term
of a court of record, the judge, or a majority of the judges, holding
the same, deem it inexpedient, by reason of war, pestilence or other
public calamity or the danger thereof, or for want of suitable
accommodation, that the term should be continued at the place
where it is then being held, the court may, by order, adjourn the
term, to be held at any other time and place within its district.
The] A court of record may [also,] in its discretion, where the
parties to an action file a stipulation that the same be tried at a
place within the county where said action is triable, other than
the court-house, adjourn the term to such place for the trial of
said action. Notice of such an adjournment must be given as
the court directs by the order.

[Code Civil Procedure § 41. For remainder of section *see*
Judiciary Law § 10.]

§ 60. Service of paper upon attorney residing in [See note 26]
**adjoining state.** [A person, regularly admitted to practice as
attorney and counsellor, in the courts of record of the state, whose
office for the transaction of law business is within the state, may
practice as such attorney or counsellor, although he resides in
an adjoining state. But] Service of a paper, which might be
made upon him at his residence, if he was a resident of the state,
may be made upon [him] a person regularly admitted to practice
as an attorney and counsellor, in the courts of record of this
state, whose office for the transaction of law business is within
the state, but who resides in an adjoining state, by depositing the
paper in a post-office in the city or town where his office is located,
properly inclosed in a postpaid wrapper, directed to him at his

18                    CONSOLIDATED LAWS

office.  A service thus made is equivalent to personal service upon
him.

[Code Civil Procedure § 60.  For remainder of section see
Judiciary Law § 470.]

[See note 30] **§ 110. Prisoner, how kept; support of.**  A person ar-
rested, by virtue of an order of arrest, in an action or special pro-
ceeding brought in a court of record; or of an execution issued
upon a judgment rendered in a court of record; or surrendered in
exoneration of his bail; must be safely kept in custody, in the
manner prescribed by law, and, except as otherwise prescribed in
the next **[two]** section**[s]**, and in subdivision nineteen of section
two hundred and forty of the county law, at his own expense, until
he satisfies the judgment rendered against him, or is discharged
according to law.

[Code Civil Procedure § 110.]

[See note 31] **§ 127. Issue of new execution when sick prisoner
escapes.**  **[If** the physician to a jail, or, in case of a vacancy,
a physician acting as such, and the warden or jailor, certify in
writing, that a prisoner confined in the jail in a civil cause, is
in such a state of bodily health that his life will be endangered
unless he is removed to a hospital for treatment, the county judge,
or, in the city and county of New York, one of the justices of the
supreme court, must, upon application, make an order, directing
the removal of the prisoner to a hospital within the county desig-
nated by the judge; or, if there is none, to such nearest hospital
as the judge directs; that the prisoner be kept in the custody of the
chief officer of the hospital until he has sufficiently recovered
from his illness, to be safely returned to the jail; that the chief
officer of the hospital then notify the warden or jailor, and that
the latter thereupon resume custody of the prisoner.**]**  If **[the]**
a prisoner actually escapes, while going to, remaining at, or
returning from **[the]** a hospital to which he has been ordered
removed pursuant to section three hundred and fifty-five of the
prison law, a new execution may be issued against his person, if
he was in custody by virtue of an execution; or, if he was in cus-
tody by virtue of an order of arrest, a new order of arrest may be
granted, upon proof by affidavit of the facts specified in this
section, without other proof, and without an undertaking.

[Code Civil Procedure § 127.  For remainder of section see
Prison Law § 355.]

**§ 138. Prisone**
**other jail desig**
the liberties of the j
tion is made pursu
the prison law, be
liberties; but he ma
given bond for the
narced, and confined
remains idle to the j
[Code Civil Proce

**§ 140. Idem; t**
fined in or removed
as prescribed in **[t]**
fences entitled to the
must admit him to
arrested by that she
[Code Civil Proce

**§ 141. When d**
is erected for the co
to section three hun
made, or its jail is
prisoners, or the re
place has otherwise
be revoked, as prese
and fifty-two of the
[Code Civil Proce

**§ 220. Jurisdic**
ers of justices t
January, eighteen
appellate division o
partment hereby er
first department an
departments.   Fi
quorum, and the co
decision.  No more
all the justices elect
designate those who
department, and he
who shall act as suc
resident of the depar
for terms of five year

:e incorporated by
s made applicable.
d to the Judiciary
the section related
has been placed in
Procedure relating
to remain isolated
:. This statement
lly to other similar

.rted in this section
such " and the in-
ependent section of
ncorporated in the
iich has been con-
od. 7 of § 2509.
n this statute are
e statute into the
" all jurors," and
· application of the
special proceeding
wise expressly pre-
statute to apply as
; the limitation of
igs. ·

L. 1894, Ch. 731)
· Code of Civil Pro-
ry of foreign wills
Procedure. It has
tion of chapter 18,
gn Wills; ancillary
: own which differs
ing a foreign will.
iply in any respect
statute is a matter
anticipated if the
ts can then say to
o the provisions of
same as if the new
If the statute was
ship would be dis-
ited, for throughout
l proceedings pre-
vides that the pro-
powers, duties and

liabilities of an executor or administrator apply to a person to whom ancillary letters are granted " as prescribed in this article," etc.

**26. § 1.** The reference in this section to " the next two " sections has been changed to sections " two and three of the judiciary law " because Code Civil Procedure, §§ 1, 2, are now contained in Judiciary Law, §§ 2, 3.

**27. § 34.** The bracketed matter in this section has been removed to other consolidated laws, as indicated by the footnote. Some alterations in phraseology were made necessary in the portion of the section retained in the Code of Civil Procedure. Such changes are indicated by brackets and underscoring and are not intended to change the present law in any way. The provisions removed from this section relate to the adjournment of a term of court which is something apart from the actual trial of a cause and to the drawing and notifying of jurors for an adjourned term which precedes the actual drawing of the jury for the trial of a cause.

**28. § 41.** The bracketed matter has been removed to the Judiciary Law (§ 10). The provision thus removed from the Code of Civil Procedure relates to the adjournment of a term of a court of record because of certain conditions, such adjournment resting in the discretion of the court. The provision that has been allowed to remain in the Code of Civil Procedure has been retained because it is a matter of practice. The words " of record " have been inserted in the portion of the section retained in the Code of Civil Procedure because the preceding portion of the section which has been removed to the Judiciary Law (§ 10) made the section applicable to a court of record.

**29. § 60.** The part bracketed has been removed to the Judiciary Law (§ 470), because it relates to the right of an attorney and counselor to practice in the courts of record of the state although a resident of an adjoining state. The balance of the section which has been retained relates to the service of a paper upon him which is a practice provision and therefore has been retained in the Code of Civil Procedure. The underscored words in the portion retained in the Code of Civil Procedure are made necessary by reason of the removal of the first portion of the section and are merely a repetition of the necessary part of the portion of the section removed.

**30. § 110.** Section 110 of the Code of Civil Procedure refers to the " next two sections." Of these two sections, § 111 remains in the Code of Civil Procedure and § 112 has become § 240, subd. 19, of the County Law. Hence the change made in this section.

**31. § 127.** Section 127 of the Code of Civil Procedure contains in its first sentence substantive matter and in its second

# ANNOTATED

# CONSOLIDATED LAWS

#### OF THE

## STATE OF NEW YORK

### AS AMENDED TO JANUARY 1, 1910

CONTAINING ALSO

### THE FEDERAL AND STATE CONSTITUTIONS

WITH

NOTES OF BOARD OF STATUTORY CONSOLIDATION,
TABLES OF LAWS AND INDEX

EDITED BY

CLARENCE F. BIRDSEYE, ROBERT C. CUMMING
AND FRANK B. GILBERT

## VOL. III

THE BANKS LAW PUBLISHING COMPANY
BAKER, VOORHIS & CO.
NEW YORK
MATTHEW BENDER & CO.
ALBANY, N. Y.
1909

the provisions of laws of eighteen hundred and ninety-eight, chapter one hundred sixty-five, as amended, before July first, eighteen hundred and ninety-nine, has failed to do so, the special term of the supreme court of the judicial district where such attorney-at-law or attorney or counsellor-at-law resides, may, upon proof by affidavit showing reasonable grounds therefor, grant an order permitting the applicant to make and file the oath or affirmation required herein, with the same effect as if the same had been made and filed within the time above stated, and relieving him from penalties and prosecutions by reason of failure to make and file such oath or affirmation within the time required.

Every person filing with the clerk of the court of appeals the oath or affirmation hereinbefore provided shall pay to the said clerk at the time of such filing the sum of twenty-five cents to defray the necessary disbursements incurred by him in carrying out the provisions of this article.

A person who practices any fraud or deceit or knowingly makes any false statement in the oath or affirmation in and by this section required to be made and filed is guilty of felony.

Source.—L. 1898, ch. 165, § 1, as amended by L. 1899, ch. 225, § 1; L. 1898, ch. 165, § 2; L. 1898, ch. 165, § 5, as amended by L. 1906, ch. 154, § 1.

Consolidators' note.—L. 1898, ch. 165, relates to the registration of attorneys before beginning practice. The temporary references in the section have been omitted. The last sentence is covered by Penal Law.

§ 469. Official register of attorneys to be kept by clerk of court of appeals.—It shall be the duty of the clerk of the court of appeals to file in his office the said oaths or affirmations aforesaid, and to compile the statements contained therein, and to enter therefrom in a bound book or volume to be kept by him for that purpose, which shall be known and designated as and is hereby made the "official register of attorneys and counsellors-at-law in the state of New York," in the alphabetical order of the first letter of their surnames, the names and residences and the title of the court and the time and place where admitted, and the date the oath or affirmation aforesaid was filed, of all persons who have filed in his said office the oath or affirmation as aforesaid, which said "official register of attorneys and counsellors-at-law in the state of New York," is hereby declared to be a public record and presumptive evidence that the individuals therein named are duly registered to practice as attorneys and counsellors-at-law in the courts of record of this state or in any court in the counties of New York and Kings.

Source.—L. 1898, ch. 165, § 3.

§ 470. Attorneys having offices in this state may reside in adjoining state.—A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of the state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state.

2818     JUDICIARY LAW.

§§ 471–474.     Attorneys and counsellors.     L. 1909, ch. 35.

Source.—Code Civ. Pro. § 60; originally revised from L. 1866, ch. 175, § 1. For remainder of section, see Code Civ. Pro. § 60.

§ 471. Attorney who is judge's partner or clerk prohibited from practicing before him or in his court.—The law partner or clerk of a judge shall not practice before him, as attorney or counsellor in any cause, or be employed in any cause which originated before him. A law partner of, or person connected in law business with a judge, shall not practice or act as an attorney or counsellor, in a court, of which the judge is, or is entitled to act as a member, or in a cause originating in that court; except where the latter is a member of a court, ex officio, and does not officiate or take part, as a member of that court, in any of the proceedings therein.

Source.—Code Civ. Pro. § 49; originally revised from R. S., pt. 3, ch. 3, tit. 1, §§ 4, 5, pt.; L. 1839, ch. 303, as amended by L. 1841, ch. 272; L. 1841, ch. 346; L. 1847, ch. 280, §§ 2, pt.; L. 1847, ch. 470, §§ 48, 50, 51, pt. For remainder of section, see Judiciary Law, §§ 17, 21. Code Civ. Pro. § 50, as amended by L. 1877, ch. 416; originally revised from L. 1847, ch. 470, § 51, pt. 52. For remainder of section, see Judiciary Law, § 18.

Application to surrogates.—Provision has been held inapplicable to surrogates. Cullen v. Miller, 9 N. Y. Leg. Obs. 62 (1851).

Application to justices' courts.—The provision as to attorney and clerk does not apply to justices' courts. Fox v. Jackson, 8 Barb. 355 (1850). As to justices' courts in the city of New York, see Porter v. Brownson, 19 Abb. Pr. 236 (1865).

§ 472. Attorney who is surrogate's father or son prohibited from practicing before him.—A surrogate's father or son shall not practice or be employed as attorney or counsel, in any case, in which his partner or clerk is prohibited by law from so practicing, or being employed.

Source.—Code Civ. Pro. § 2529; originally revised from L. 1844, ch. 300, § 4.

Brother of surrogate.—The inhibition of this section does not extend to. Matter of Van Wagonen, 69 Hun 365, 23 N. Y. Supp. 636 (1893).

§ 473. Sheriffs, constables, coroners, criers and attendants prohibited from practicing during term of office.—A sheriff, under sheriff, deputy-sheriff, sheriff's clerk, constable, coroner, crier, or attendant of a court, shall not, during his continuance in office, practice as an attorney or counsellor in any court.

Source.—Code Civ. Pro. § 62; originally revised from R. S., pt. 1, ch. 5, tit. 4, § 27.

Application.—This provision does not apply to a justices' court, and the words "attorney, solicitor or counsel," are only applicable to courts of record. Fox v. Jackson, 8 Barb. 355 (1850).

§ 474. Compensation of attorney or counsellor.—The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law.

Source.—Code Civ. Pro. § 66, as amended by L. 1879, ch. 542, and L. 1899, ch. 61; originally revised from Code' Pro. § 303. For remainder of section, see Judiciary Law, § 475.

Compensation of attorney.—An attorney is entitled to compensation from time to time for services rendered during the progress of a long litigation. Sessions v. Palmeter, 75 Hun 268, 26 N. Y. Supp. 1076 (1894); Tenny v. Berger, 93 N. Y. 524, 529 (1883).

# THE CONSOLIDATED LAWS
### OF
# NEW YORK
## ANNOTATED

## Book 29
## Judiciary Law

With
Annotations From State and Federal Courts

Kept to Date by Cumulative Annual Pocket Parts



Brooklyn, N. Y.
EDWARD THOMPSON COMPANY.



Continuation in office. Laws 1948, c. 601, § 3, eff. March 30, 1948, provides: "All persons heretofore appointed and still holding office as attorney and counsellor at law commissioned to have and exercise the powers ·of a notary public under the provisions of section four hundred sixty-nine of the judiciary law, as added by chapter six hundred ninety-three of the laws of nineteen hundred forty and as renumbered by chapter six hundred forty-nine of the laws of nineteen hundred forty-five, shall continue in such office after the effective date of this act, with the same powers and duties as heretofore possessed by them until the expiration of the term for which they were appointed."

§ 469-a. Renumbered 469. L.1945, c. 649, § 212, eff. April 9, 1945

§ 470. Attorneys having offices in this state may reside in adjoining state

A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state. As amended L.1945, c. 649, § 213, eff. April 9, 1945.

#### Historical Note

Section derived from Code of Civil Procedure, § 60; originally revised from L.1866, c. 175, § 1.

#### Cross References

Service of paper upon attorney residing in adjoining state, see Rules of Civil Practice, Rule 20, subd. 4.

§ 471. Attorney who is judge's partner or clerk prohibited from practicing before him or in his court

The law partner or clerk of a judge shall not practice before him, as attorney or counsellor in any cause, or be employed in any cause which originated before him. A law partner of, or person connected in law business with a judge, shall not practice or act as an attorney or counsellor, in a court, of which the judge is, or is entitled to act as a member, or in a cause originating in that court, except where the latter is a member of a court, ex officio, and does not officiate or take part, as a member of that court, in any of the proceedings therein.

#### Historical Note

Section derived from Code of Civil Procedure, §§ 49, 50. Said section 49 originally revised from R.S., pt. 3, c. 3, tit. 1, §§ 4, 5, pt.; L.1839, c. 303, as amended by L.1841, cc. 272 and 346; L.1847, c. 280, § 2, pt.; L.1847, c. 470, §§ 4, 8, 50, 51, pt. Said section 50 amended by L.1877, c. 416; originally revised from L.1847, c. 470, § 51, pt. and 52.

Attorneys forbidden to
partners or formerly by t
Clerk of court not to p
Disqualification of judg
14.
Use of attorney's name

Courts not of record 1
Surrogate's court 2

1. Courts not of record
Analogous provisions of
court, but merely to court
In speaking of the form
City Court of the city of
a court of record for all pu
courts strictly courts of
by statute." Porter v. B:

2. Surrogate's court
Neither surrogate nor h
rogate's court of which s
will drawn by him and a
him and such partner as
issued to them by clerk
819, 29 N.Y.S.2d 833.
Special Surrogate, in ex
sign decrees in a Surroga
firm and partner were act
qualification. July 14, 19

§ 472. Attorney who
practicing be
A surrogate's father
attorney or counsel, in
prohibited by law from

Section derived from Co
from L.1844, c. 300, § 4.

Disqualification of judge
14.

1. Guardian, appointment
A surrogate was not dis
of the fact that he had ap
fant. "Whatever may be s
of a near kinsman to a p
think that this appointmen
ian of an infant litigant in
29 McKINNEY LAWS—2

-ilities of municipal agencies
lce and such local office may
agencies or by members of
1ance and operation of a city
f maintenance and operation
urge.
of section thirty-six of such
four hundred twelve of the
hereby amended to read as

ame, during the continuance
t to be in the public interest.
1cy of the state to lease or
he may deem necessary to
t the interests of the state,
te, making an adequate and
state for any actual costs of
depreciation and waste, or
nployment of personnel of
other branch of the armed
(2) to any other agency of
g functions directly related
on subsidized or authorized
ites of America to perform
o the war effort,⁷ provided,
1 naval affairs of the execu-
1ant to this section to lease
·sonal property under its
other branch of the armed
'or military purposes with-
state for depreciation and
or lease heretofore made
aph or to the provisions of
· laws of nineteen hundred
apter by this act shall be
1 as amended.
as added by chapter five
teen hundred forty-two, is

regulations governing the
les and materials essential
standing any inconsistent
, and during the existing
th regulations as may be
er of correction and the
chase, equipment, goods.⁸

for word "manufacture",
rted.

articles and materials essential for the prosecution of the war may be manufactured, processed, reprocessed, altered or repaired¹⁰ in any prison, reformatory, penitentiary or jail in the state with the labor of prisoners therein and¹¹ distributed or sold in accordance with such regulations. Such regulations may be amended or repealed from time to time but no such regulation or amendment or repeal thereof shall become effective until approved by the state council. All of the provisions of article seven of the correction law, not inconsistent with the provisions of this section or inconsistent with the regulations adopted pursuant to this section, shall be applicable to the work performed and actions taken under the provisions of this section.

§ 8. Section one hundred nineteen of such chapter, as last amended by chapter four hundred twelve of the laws of nineteen hundred forty-four, is hereby amended to read as follows:

§ 119. Duration of act. The provisions of this act shall continue in full force and effect only until July first, nineteen hundred forty-six.¹²

§ 9. This act shall take effect immediately.

## CHAPTER 649*

### AN ACT to amend the judiciary law generally

Became a law April 9, 1945, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision six of section two of chapter thirty-five of the laws of nineteen hundred nine, entitled "An act in relation to the administration of justice, constituting chapter thirty of the consolidated laws," such section having been last amended by chapter fifty-three of the laws of nineteen hundred thirty-eight, is hereby amended to read as follows:

6. The county court in each county except the county ·f¹ New York.

§ 2. Section three of such chapter, as added by chapter two hundred fifty-one of the laws of nineteen hundred forty, is hereby amended to read as follows:

§ 3. Use of term "court" prohibited. No person, firm, association or corporation shall hereafter use or employ the term "court" as part of or in connection with the name of any body, board,

*[side notes: Judiciary Law. § 2, subd. 6, amended. § 3, amended.]*

¹⁰ Words "processed, reprocessed, altered or repaired" new matter inserted.
¹¹ Words "such articles and materials may be" omitted.
¹² Word "forty-six" new matter substituted for word "forty-five".
* This amendment is recommended by the Judicial Council. It is almost exclusively a corrective revision of the Judiciary Law. For a detailed explanation, see Tenth Annual Report of the Judicial Council, p. 38 and particularly pp. 173-237; see also Eleventh Annual Report of the Judicial Council, p. 28.
¹ Words "the county of" new matter inserted.

1422        LAWS OF NEW YORK, 1945        [CHAP.

§ 470,
amended.

§ 213. Section four hundred seventy of such chapter is hereby amended to read as follows:

§ 470. **Attorneys having offices in this state may reside in adjoining state.** A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state.

§ 476,
repealed.

§ 214. Section four hundred seventy-six of such chapter, as last amended by chapter two hundred ninety of the laws of nineteen hundred forty-one, is hereby repealed.

§§ 477,
478,
repealed.

§ 215. Sections four hundred seventy-seven and four hundred seventy-eight of such chapter are hereby repealed.

§§ 479,
480,
renumbered
§§ 476,
477.

§ 216. Section four hundred seventy-nine of such chapter is hereby renumbered to be section four hundred seventy-six.

§ 217. Section four hundred eighty of such chapter, as added by chapter six hundred three of the laws of nineteen hundred thirteen, is hereby renumbered to be section four hundred seventy-seven.

§ 791,
amended.

§ 218. Section seven hundred ninety-one of such chapter is hereby amended to read as follows:

§ 791. **Issue and contents of warrant.** The clerk must immediately issue a warrant, under the seal of the court, directed to the sheriff of the county and commanding him to collect from each of the persons named in the schedule annexed to the warrant, the sum therein set opposite that person's name; and to pay over the sum collected to the treasurer of the county. The clerk must include in the said annexed schedule the name of each person who has been fined, prior to the issuer thereof, and whose fine remains then wholly or partly unpaid, and not remitted by the court. The warrant is the process of the court, by which the fines were imposed. If a delinquent resides in another county, a separate warrant, for the collection of the fine imposed upon him, and an appropriate schedule annexed thereto, must be issued, in like manner, to the sheriff of the county where he resides.

§ 795,
repealed.

§ 219. Section seven hundred and ninety-five of such chapter is hereby repealed.

§§ 796,
797,
renumbered
§§ 795,
796.

§ 220. Sections seven hundred ninety-six and seven hundred ninety-seven of such chapter are hereby renumbered to be sections seven hundred ninety-five and seven hundred ninety-six respectively.

§ 221. This act shall not be deemed to affect any law which may be enacted at the same session of the legislature and which is inconsistent with any of its provisions.

§ 222. This act shall take effect immediately.

649]        LAWS OF N
          DISTRIB

**Article 2 — Courts and Judges Generally**

Sections:

| Section | |
|---|---|
| 2 | Formal corrections |
| 3 | Amended |
| 4 | Amended |
| 6 | Renumbered 7 |
| 7 | Renumbered 6 |
| 8 | Formal correction |
| 9 | Formal corrections |
| 11 | Formal corrections |
| 14 | Renumbered 15 |
| 15 | Renumbered 14 and amended |
| 16 | Renumbered 15 and amended |
| 17 | Renumbered 16 and amended |
| 18 | Renumbered 17 and amended |
| 19 | Renumbered 18 and amended |
| 20 | Renumbered 19 and amended |
| 21 | Renumbered 20 |
| 22 | Renumbered 21 |
| 23 | Renumbered 22 and amended |
| 25 | New section |
| 24 | Renumbered 25 and amended |
| 25 | Renumbered 24 |
| 25-a | Renumbered 25 |
| 28 | Renumbered 29 |
| 29 | Renumbered 30 |
| 30 | Renumbered 31 |
| 31 | Renumbered 32 |
| 32 | Renumbered 33 |

**Article 3 — Court of Appeals**

Sections:

| Section | |
|---|---|
| 51 | Amended |
| 52 | Amended |
| 53 | Amended |
| 54 | Formal corrections |
| 56 | Interchanged with § 401 |
| 57 | Amended |
| 58 | Amended |
| 59 | Amended and merged with |
| 62 | Renumbered 59. |

**Article 4 — Appellate Division**

Sections:

| Section | |
|---|---|
| 70 | Amended |
| 71 | Repealed |
| 72 | Renumbered 71 and amend |
| 73 | Renumbered 72 |
| 75 | Renumbered 73 |
| 76 | Renumbered 74 |
| 77 | Renumbered 75 |
| 77-a | Renumbered 77 |
| 78 | Renumbered 76 and amen |
| 79 | Merged with § 79 |
| 80 | New section |
| 80 | Renumbered 81 |
| 81 | Renumbered 82 |
| 82 | Renumbered 83 |
| 83 | Renumbered 85 |
| 84 | Renumbered 86 and amen |
| 85 | Repealed |
| 86 | Renumbered 88 |
| 87 | Renumbered 89. Formal corrections |
| 88 | Renumbered 90 at 1 amen |

Article 5 — Continued
Sections:
274    Renumbered 269 and amended
276    Renumbered 271. Formal corrections
278    Renumbered 272 and amended
279    Renumbered 273. Formal corrections
280    Renumbered 274 and amended
281    Renumbered 275 Formal corrections
282    Repealed Covered by new § 275
283    Renumbered 279. Formal corrections
284    Renumbered 280. Formal corrections
285    Renumbered 281 and amended
285-a    Merged with 281
286    Renumbered 276. Formal corrections
287    Renumbered 277. Formal corrections
288    Repealed

ticle 9 — Stenographers
ctions:
291    Formal correction
296    Repealed
297    Renumbered 296. Formal corrections
298    Renumbered 297. Formal corrections
299    Renumbered 298
00    Renumbered 299
01    Renumbered 300
02    Renumbered 301
03    Renumbered 302
04    Renumbered 303. Formal correction
05    Renumbered 304
06    Renumbered 305 and amended
07    Renumbered 306 and amended
08    Renumbered 307 and amended
09    Renumbered 308. Formal corrections
0    Renumbered 309. Formal corrections
1    Renumbered 310. Formal corrections
2    Renumbered 311. Formal corrections
3    Renumbered 312. Formal corrections
     Renumbered 313 Formal corrections
     Renumbered 314
     Renumbered 315. Formal corrections
     Renumbered 316. Formal corrections
     Renumbered 317. Formal corrections

Article 9 — Continued
Sections:
319    Renumbered 318. Formal corrections

Article 10 — Attendants, Officers and Messengers
Sections:
340    Repealed
341    Renumbered 340 and amended
342    Renumbered 341
343    Renumbered 344
347    Renumbered 345 and amended
348    Renumbered 346
348-a    Renumbered 347 and amended
349    Renumbered 342 and amended
350    Renumbered 343
351    Renumbered 348
352    Renumbered 349
352    New section
354    Renumbered 350
355    Renumbered 351. Formal corrections

Article 11 — Criers
Sections:
360    Amended
364    Renumbered 362. Formal corrections
365    Renumbered 363. Formal corrections
366    Renumbered 364. Formal corrections
367    Renumbered 354 and amended

Article 12 — Interpreters
Sections:
380    Repealed
380-a    Renumbered 380
381    Repealed
382    Renumbered 381 and amended
383    Merged with 381
384    Renumbered 382. Formal corrections
385    Merged with 381
386    Renumbered 384 and amended
386-a    Renumbered 385

Article 12 — Continued
Sections:
387    Renumbered 386
388    Renumbered 387
389    Renumbered 388
390    Renumbered 385
391    Renumbered 389. Formal corrections

Article 13 — Sheriffs and Constables
Sections:
403    Amended
404    Formal corrections
408    Repealed
409    Renumbered 408 and amended
410    Renumbered 170. Formal corrections
411    Renumbered 409. Formal corrections
413    Renumbered 410. Formal corrections

Article 15 — Attorneys and Counsellors
Sections:
460    Amended
461    Interchanged with § 56
462    Renumbered 463
463    Renumbered 464
464    Renumbered 462
467    Merged with 480
468    Renumbered 467 and amended
469    Renumbered 468 and amended
469-a    Renumbered 469
470    Formal corrections
476    Merged with § 90
477    Merged with § 90
478    Merged with § 90
479    Renumbered 476
480    Renumbered 477

Article 20 — Collection of Fines
Sections:
791    Amended
795    Merged with § 791
796    Renumbered 795
797    Renumbered 796

2 Parts

Year **1945**

Chapter **649**

Part I

# The New York State Library
## Legislative Reference Section
### Albany, N. Y.

# Bill Jacket Collection

# State of New York
## In Senate

MAR 12 1945

*Ordered, That the Clerk deliver the bill entitled:*

G. O. 387          Nos. 1187, 1728          Int. 1114

## AN ACT

To amend the public baby law generally

*to the Assembly and request its concurrence in the same.*

By order

William S. King,

Clerk



IN ASSEMBLY

MAR 23 1945

Passed without amendments
By order of Assembly

Ausley B Borkowski

CLERK

$5/11/4$ down
Ch 647

The Association of the Bar of the City of New York
Committee on State Legislation

No.

S., Pr. 1187, Int. 1114—Mr. Williamson.

"An Act to amend the Judiciary Law generally."

This is an omnibus bill recommended by the Judicial Council which would make extensive corrections and revisions of the Judiciary Law. The bill would affect all of the Articles of the Judiciary Law, except Article 14 relating to law reporting, Article 16-18B relating to jurors and Article 19 relating to contempts.

A similar bill was passed by the Legislature of 1944 (S. Pr. 1968, Int. 88) but was vetoed by the Governor, because, according to his memorandum, he wished to avoid possible conflict with intervening amendments to the Judiciary Law enacted during the thirty day period following the close of the 1944 session.

The Eleventh Annual Report of the Judicial Council, p. 48, states that the bill is again offered this year in accordance with the recommendations of the Judicial Council in its Tenth Annual Report, pp. 173 to 237, with appropriate safeguards to protect the validity of intervening amendments.

We approved last year's bill (No. 176, 1944). As we pointed out in last year's report, every amendment made by the bill is corrective in nature. The bill follows out the study of the Judicial Council and collects matters germane to each other in the same Article, eliminates

469

3

The Association of the Bar of the City of New York
Committee on State Legislation

errors and inconsistencies, and obsolete and unnecessary matter now in the Judiciary Law, and harmonizes the Judiciary Law with the Judiciary Article of the Constitution and with amendments to other consolidated laws.

There is only one important change of substance in the proposed bill. This change is the proposed enactment of a new Section 23 in Article 2 of the Judiciary Law. The new section would impose an age limit of seventy years on the terms of all judges in the State, except Justices of the Peace or Police Justices. The new section would specifically exempt from its application any judge or justice elected prior to the effective date of the bill.

As we pointed out in last year's report, it would be impractical for this Committee to make a detailed analysis of all the minor corrective changes which would be made by the proposed bill. The bill consists of 100 pages and the distribution table showing amendments, corrections and renumbering of sections consists of 3 pages of fine type.

As we stated in last year's report, there has been no general revision of the Judiciary Law since its enactment in 1909.

We believe that the corrective general revision of the Judiciary Law which follows the exhaustive study of the problem made by the Judicial Council is necessary and helpful. The bill would take effect immediately.

The bill is approved.

470

# THE JUDICIAL COUNCIL OF THE STATE OF NEW YORK

IRVING LEHMAN, NEW YORK, *Chairman*
JAMES P. HILL, NORWICH, *Vice-Chairman*
WILLIAM T. ANDREWS, NEW YORK
HERMAN S. BACHRACH, BROOKLYN
WILLIAM T. BYRNE, LOUDONVILLE
FREDERICK P. CLOSE, BRONXVILLE
FREDERICK E. CRANE, GARDEN CITY
HARLEY N. CROSBY, FALCONER
BENJAMIN B. CUNNINGHAM, ROCHESTER
LAZARUS JOSEPH, NEW YORK
EDWARD LAZANSKY, BROOKLYN

HENRY G. LEACH, NEW YORK
FRANCIS MARTIN, NEW YORK
CRANDALL MELVIN, SYRACUSE
HARRY D. NIMS, NEW YORK
HARRY A. REOUX, WARRENSBURG
CHARLES B. SEARS, BUFFALO
HARRY D. SUITOR, NIAGARA FALLS
MARSH N. TAYLOR, ROCHESTER
PLINY W. WILLIAMSON, SCARSDALE
FRED A. YOUNG, LOWVILLE

LEONARD S. SAXE, *Executive Secretary*



80 CENTRE STREET, *New York 13, N. Y.*

March 1, 1945.

Memorandum Explanatory of Senate Int. 1114, Print 1728
by Mr. Williamson

This bill is recommended by the Judicial Council and almost all of the bracketed and new matter contained therein is explained in detail on pages 173-237 of the Tenth Annual Report of the Judicial Council. The bill is summarized at pages 38-39 of that Report and at page 28 of the Eleventh Annual Report, which summaries show the Council's approach and that the bill does not attempt substantive amendments in the Judiciary Law.

In brief, the bill is, as stated, almost exclusively a corrective revision of the Judiciary Law and constitutes a corrective re-codification. As stated in the Council's Report, the only changes of substance which the bill makes are (1) to provide that all statutory judges, except justices of the peace of towns and police justices of villages, other than those presently sitting, shall retire at the end of the year in which they reach seventy years of age, this being a provision now applicable to constitutional judges (see sections 11 and 12 of the bill on pages 7-8); and (2) that surrogates or former surrogates shall not act as counsel in matters upon which they sat as surrogates (see section 18 of the Judiciary Law, re-numbered 17, on page 6 of the bill).

This bill passed the 1944 Legislature but had to be vetoed by Governor Dewey because it was to take effect September first and would have conflicted with thirty-day bills that had been enacted into law and which were inconsistent therewith. The Governor suggested a saving clause which has been inserted in the present bill as section 881 of the bill on page 101, reading:

"§ 881. This act shall not be deemed to affect any law which may be enacted at the same session of the Legislature and which is inconsistent with any of the provisions."

-2-

The changes in the bill as it now stands from the form in which it was printed and explained in detail in the Supporting Study in the Tenth Annual Report of the Judicial Council (pages 173-237), with the exception of changes caused by the enactment of laws of 1944 which are self-explanatory and not referred to, are as follows:

1. Pages 7 and 8 of the bill:  In sections 22 and 23 of the Law, the words "justice of the peace" have had added thereto the words "of a town" and the words "police justice" have had added thereto the words "of a village." These are clarifying changes, particularly needed because there are some justices of the peace serving in cities to which section 23 is intended to apply, whereas justices of the peace of towns are not affected since in some towns they perform legislative and executive duties.

2. Page 9 of the bill, line 19:  The reference to the state paper has been corrected to read "state bulletin" and not "state advertising bulletin," because of the change of name effected by an amendment to Executive Law, sec. 82, in 1944.

3. Page 12 of the bill.  By section 26 of the bill, section 62 of the Law is merely re-numbered and not amended as it was in the Tenth Annual Report.  Assistant Counsel to the Governor felt that the change in punctuation might change the substance of the section and it was deleted.

4. Page 13 of the bill, line 6:  In the Council's Report the wording was "for service only during such absence or inability to act."  The word "only" has been deleted at the suggestion of Assistant Counsel to the Governor in order that no question should be raised that a justice temporarily assigned to the Appellate Division might complete his work even though the justice regularly assigned had returned to his post.

5. Page 24 of the bill, line 13:  The state paper is given its present name of "state bulletin" as pursuant to the amendment to Executive Law, sec. 82, in 1944.

6. Page 25 of the bill, line 20:  The former reference to the "Second Judicial District" has been changed to "second and tenth judicial districts."  In setting up the Tenth Judicial District this change was inadvertently omitted.  I have brought it to the attention of Assemblyman Barrett, who finds the change proper.

7. Page 26 of the bill, line 3:  The words "second judicial district" have been changed to "second and tenth judicial districts respectively" for the same reason as immediately above set forth.

6

-3-

8.   Page 27 of the bill:  By section 50 of the bill,
present section 98 is not amended but merely re-numbered.

9.   Page 28 of the bill:  Instead of attempting to
combine present sections 101-a and 102-a of the Judiciary
Law into one section, as set forth in the Tenth Annual
Report, section 54 of the present bill merely re-numbers
section 101-a to be section 95; and section 55 of the bill
re-numbers section 102-a to be new section 95-a, amending
it to conform to the present provisions of the State Finance
Law as to the method of payment of salaries.

10.   Page 40 of the bill:  In section 79 of the bill,
section 154 of the Judiciary Law, re-numbered section 150,
has been amended to retain the residual power in the Supreme
Court in the Second Judioial District to print calendars,
provided the Appellate Division of the Second Department
under present section 102-b, re-numbered to be section 92,
subd. 2, does not continue to publish the calendars in the
New York Law Journal.

11.   Page 55 of the bill, lines 22-23:  The salary of the
law clerk of the Court of Appeals has been changed to $5,000
per year as contained in the 1944 Supplemental Budget.

With respect to salaries, it should be emphasized that no
1944 State Budget salaries are believed to have been changed in the
bill.  If, however, any inadvertent change should happen to have
been made, it will not be of any consequence because the bill will
not be signed by the Governor until after April first and under the
saving clause the 1945 budget figures will control.

12.   Page 55 of the bill:  By section 129 of the bill, sec-
tion 267 of the Law is re-numbered to be section 265-a.  This
was necessitated by the fact that in 1944 a new section 265
was added to the Judiciary Law.

13.   Page 62 of the bill, lines 12-13:  The salary was
changed from $2,500 to $3,000 to conform to the 1944
budget (see note above).

14.   Page 70 and pages 89-90 of the bill:  Section 145
of the bill (page 70) and section 184 of the bill (pages
89-90), with respect to the Court of General Sessions of
the County of New York, section 184 of the bill has been
changed to refer to later and superseding statutory pro-
visions contained in the Code of Criminal Procedure in
relation to officers and employees of that court (see
particularly sections 55 and 938 of that Code).  These
sections of the Code of Criminal Procedure set forth the
present law.  This change in section 367 of the Judiciary

-4-

Law, contained in section 134 of the bill, was suggested by the judges of the Court of General Sessions and has been checked and found satisfactory by the legislative representative of the city of New York prior to the amendment.

15. Page 73 of the bill: In section 155 of the bill, the section heading of section 307 of the Law was not amended, as recommended in the Tenth Annual Report.

16. Page 101 of the bill: The saving clause (section 221 of the bill) has been referred to above and will protect against any budgetary change or changes made by laws of 1945, which are inconsistent with the re-codification.

17. Page 101 of the bill, section 222: The act although stated to take effect immediately will not be signed by the Governor until after April first to avoid budgetary conflicts, as stated above.

All of the foregoing changes have resulted in conforming changes to the section references in the Distribution Table on pages 102-104 of the bill.

Respectfully submitted,

*Leonard S. Say*

Executive Secretary.

LSS:MK

8

$5114$

# NEW YORK STATE BAR ASSOCIATION

HENRY S. FRASER, *Legislative Reporter*

*90 State Street, Albany, New York*

**CIRCULAR NO. 104**          **March 6, 1945**

### Bills Recommended by Judicial Council

*Revision of Judiciary Law*

Last year the Governor vetoed the bill to revise the Judiciary Law, recommended by the Judicial Council, in order to avoid a possible conflict with intervening amendments to the Judiciary Law passed at the same session. The Council has therefore resubmitted its comprehensive bill amending the Judiciary Law generally. The Council states that the bill is almost exclusively a corrective revision. The caveat is added that the bill does not necessarily represent the views of the Council as to the desirability of all provisions of the Judiciary Law as amended, which Law is continuing to receive the Council's study. (S. Int. 1114, Pr. 1187, Williamson; A. Int. 1258, Pr. 1354, Reoux.)

### *Courts of Special Sessions Outside New York City*

The Judicial Council holds that outside of New York City the "lack of uniformity in the jurisdiction of the inferior criminal courts of this state has become a source of vexation for courts and parties alike. It has created jurisdictional conflicts, delayed the disposition of cases on the merits and occasionally has led to a miscarriage of justice." The Council points out that these courts derive their power from a great number of general and special, consolidated and unconsolidated laws, diffused throughout the statute books.

Says the Council, "The situation is further complicated by the fact that a great many judges of varied qualifications preside over these courts. The great majority of these judges are justices of the peace of towns who particularly in rural sections, are frequently laymen." The Council states that this condition makes it often desirable, either from the prosecutor's or the defendant's point of view, to remove a case to a higher tribunal. But "there is no uniformity with respect to the type of offenses which may be removed upon application of the defendant." Moreover, while the prosecutor can

361

**9**

362

divest any such court of its jurisdiction in a misdemeanor case by procuring, if he can, a grand jury indictment, the defendant, under some statutes, cannot remove.

The Council accordingly makes two proposals: One is to set up a uniform system of jurisdiction over misdemeanors throughout the State, outside of New York City where "a fairly integrated system exists," by vesting all courts of inferior criminal jurisdiction sitting in any town, village, or city with jurisdiction to hear and determine charges of any misdemeanor; the other proposal is to extend the defendant's right to apply to a Justice of the Supreme Court or to a County Judge for a removal certificate, thus making all charges of misdemeanor removable to a higher tribunal." (S. Int. 250, Pr. 250, Warner; A. Int. 412, Pr. 1842 Reoux; S. Int. 251, Pr. 251, Warner; A. Int. 413, Pr. 414, Reoux)

### Property Exempt from Execution

The Judicial Council maintains that the existing provisions of law relating to the classes of property exempt from levy under execution do not appear to have been examined or revised in their entirety since 1876. "In fact many of these provisions antedate the Code of Civil Procedure and refer to obsolete and antiquated items, the exemption of which affords little, if any, protection to modern judgment debtors, especially to those living in urban communities." The Council also points out that the male non-householder "is the one person who is given no exemptions at all and, theoretically, at least, even the tools necessary to his profession or calling are subject to levy."

The bill to modernize the present statute exempts for the male non-householder virtually the same type of articles protected in the case of a householder. In respect of both groups of debtors the exemptions are not to apply where the judgment was recovered for work performed by a domestic, or by a laboring person or mechanic, or where the judgment was for the purchase price of one or more of the articles described as exempt. (S. Int. 237, Pr. 1149, Warner; A. Int. 400, Pr. 401, Reoux.)

### Abolition of Blue Ribbon Jury

The previous recommendation of the Council to abolish blue-ribbon juries, which exist at present in the counties of New York, Bronx, Kings, and Queens, is renewed. The Council says that it is

10

· 363

"undisputed that the revised jury system for New York City recommended by the Judicial Council and in operation since 1940 has succeeded in improving the quality of jurors generally by applying to all jurors the high standards which formerly were required only of special jurors." Thus, claims the Council, there is no longer any necessity for special jurors. (See Eleventh Annual Report of Judicial Council, pp. 49-50.)

### Permitting Lay Witness to State Conclusion

Again the Council urges that a new Section 345-a be added to the Civil Practice Act whereby a lay witness could state his conclusions under the following circumstances:

> "§ 345-a. Statement of inference or opinion permitted. A non-expert witness may in the discretion of the court give testimony in the nature of an inference or opinion, provided that the facts upon which such inference or opinion is based have been personally observed by the witness and are stated by him, if in the opinion of the court they are capable of being stated, and provided further that no special knowledge, skill, experience or training is required to draw such inference or to state such opinion." (S. Int. 415, Pr. 416. Warner: A. Int. 415, Pr. 416, Reoux.)

### Jurisdiction of Police Justices in First Class Villages

By Chapter 408 of the Laws of 1942 the civil jurisdiction of police justices in the 34 first-class villages of the State was increased from $500 to $1000. Now the Judicial Council proposes to cut back the jurisdiction to $200. (S. Int. 234, Pr. 1150. Warner: A. Int. 397, Pr. 398, Reoux.)

### Garnishee Execution

The recommendation is renewed by the Council whereby a property execution would not have to be returned unsatisfied in order to obtain a garnishee execution. The Council notes the opposition of the Sheriff's Association, but the Council "feels confident that its [the Council's] statements represent the views of the bar." The requirement, appearing in the Council's previous recommendation, for five days' notice to the judgment debtor is dropped, unless the debtor has not appeared in the action in person or by attorney. (S. Int. 239, Pr. 239, Warner; A. Int. 402, Pr. 403, Reoux.)

10

## Uniform Jury System Outside New York City

The Judicial Council renews its recommendation, originally made in 1941, for a unified jury system for all but the smaller upstate counties. The Council points to the 1940 revision in New York City and urges an analogous revision in all counties of more than 48,000 population. ((S. Int. 676, Pr. 683, Williamson; A. Int. 810, Pr. 837, Reoux)

## Service of Summons by Publication

Certain amendments to the statute pertaining to service by publication are described by the Judicial Council as follows:

1. In actions against New York residents, a prior attachment would not be a prerequisite. A plaintiff will still be permitted but not required to attach in such cases.

2. Personal service outside the State would be made possible without an order, pursuant to § 235, Civil Practice Act, in any type of action in which an order for publication is obtainable under § 232. "This would take advantage of the decision of *Milliken* v *Meyer* (311 U. S. 457 [1940], re-hearing denied, 312 U. S. 712 [1941]), which held that personal service outside the State upon an absent domiciled defendant without any prior attachment constituted valid acquisition of jurisdiction *in personam* and that such judgment is enforceable in a sister state under the full faith and credit clause of the federal constitution."

3. The period of continuing absence from New York which authorizes service by publication on an adult resident is proposed to be reduced from six to three months. (S. Int. 241, Pr. 241; Warner; A. Int. 404, Pr. 405, Reoux)

## Council Bills Distributed

The bills recommended by the Judicial Council, with one or two exceptions, were distributed by us by mail some time ago to the chairmen of the legislative committees of all local and county bar associations in the State. Our office will be glad to receive reports of action thereon and will transmit the same immediately to the Legislature as in the past.

(Opinions expressed above are those of the Legislative Reporter unless the context indicates otherwise.)

11

Case 1:09-cv-00504-LEK -RFT   Document 64-3   Filed 12/15/10   Page 162 of 245

# THE JUDICIAL COUNCIL OF THE STATE OF NEW YORK

IRVING LEHMAN, NEW YORK, *Chairman*
JAMES P. HILL, NORWICH, *Vice-Chairman*
WILLIAM T. ANDREWS, NEW YORK
HERMAN S. BACHRACH, BROOKLYN
WILLIAM T. BYRNE, LOUDONVILLE
FREDERICK P. CLOSE, BRONXVILLE
FREDERICK E. CRANE, GARDEN CITY
HARLEY N. CROSBY, FALCONER
BENJAMIN B. CUNNINGHAM, ROCHESTER
LAZARUS JOSEPH, NEW YORK
EDWARD LAZANSKY, BROOKLYN

HENRY G. LEACH, NEW YORK
FRANCIS MARTIN, NEW YORK
CRANDALL MELVIN, SYRACUSE
HARRY D. NIMS, NEW YORK
HARRY A. REOUX, WARRENSBURG
CHARLES B. SEARS, BUFFALO
HARRY D. SUITOR, NIAGARA FALLS
MARSH N. TAYLOR, ROCHESTER
PLINY W. WILLIAMSON, SCARSDALE
FRED A. YOUNG, LOWVILLE

LEONARD S. SAXE, *Executive Secretary*



80 CENTRE STREET, *New York 13, N. Y.*

March 8, 1945.

Hon. Charles D. Breitel,
Counsel to the Governor,
Executive Chamber, The Capitol,
Albany, N. Y.

Dear Charlie:

Re: Senate Int. 1114, Print 1728

As per our recent conversation, please be
reminded that if and when Senate Int. 1114, Print No. 1728,
by Mr. Williamson, re-codifying the Judiciary Law, comes before
the Governor, it should not receive the Governor's approval
until after April first.

If perchance, although I doubt it, some
state budget salary is erroneously fixed in the re-codification
bill, such error, if any, will be of no effect whatsoever
because the 1945-46 budget, which by then will be law, will
control.

I enclose herewith a memorandum, dated
March 1, 1945, explanatory of all changes in the bill from
the specific recommendations contained in the Tenth Annual
Report of the Judicial Council.

Sincerely yours,

Leonard S. Saxe

Executive Secretary.

LSS:MK
Enc.

OFFICERS

PRESIDENT
IGNATIUS M. WILKINSON

VICE-PRESIDENTS
JOSEPH M. PROSKAUER
BASIL O'CONNOR
JOHN KIRKLAND CLARK

SECRETARY
TERENCE J. McMANUS

TREASURER
RUTH LEWINSON

ASSISTANT SECRETARY
CHARLES E. J. BOYD

ASSISTANT TREASURER
MARTHA A. BERGMAN



VESEY STREET · FACING ST. PAUL'S
NEW YORK 7, N. Y.

COMMITTEE ON STATE LEGISLATION
LEONARD S. SAXE, CHAIRMAN
80 CENTRE STREET
NEW YORK 13, N. Y.

March 17, 1945.

Hon. Thomas E. Dewey,

.Executive Chamber,

Albany, N.Y.

My dear Sir:

    The Committee on State Legislation of the

New York County Lawyers' Association has approved

the following bill and believes that it should

become law:

    S. Int. 1114 Pr. 1728

    A copy of a report recommending approval

is enclosed,

            Very truly yours,

                LEONARD S. SAXE,

                    Chairman.

INTRODUCED BY SENATOR WILLIAMSON

March 14, 1945          Report No. 291      S. Int. 1114 Pr. 1728

NEW YORK COUNTY LAWYERS' ASSOCIATION
Committee on State Legislation
14 Vesey Street - New York 7

Report of Committee on State Legislation on Senate Bill Int. 1114 Pr. 1728, which seeks to amend the Judiciary Law generally.

RECOMMENDATION: APPROVAL

This is substantially the same bill on which we reported in our Report No. 18 for 1944, and a copy of which Report is attached. The bill on which we so reported last year was passed by the Legislature but vetoed by the Governor on the ground that the bill did not make provision for any inconsistent laws enacted in 1944. Accordingly this year's bill contains a new Section at the end thereof that it does not "affect any law which may be enacted at the same session of the legislature and which is inconsistent with any of its provisions".

For the reasons set forth in our Report No. 18 for 1944, we repeat the approval of this bill set forth in such Report.

Respectfully submitted,

COMMITTEE ON STATE LEGISLATION,

Leonard S. Saxe, Chairman.

Report prepared for
the Committee by
MR. WALTER W. GROSS.

14

INTRODUCED BY SENATOR WARNER
INTRODUCED BY ASSEMBLYMAN REOUX

January 31, 1944        Report No. 18        S. Int. 38  Pr. 38
                                             Same as A. Int. 71

NEW YORK COUNTY LAWYERS' ASSOCIATION
Committee on State Legislation
14 Vesey Street.

Report of Committee on State Legislation on Senate Bill Int. 38
Pr. 38, same as Assembly Bill Int. 71, which seeks to amend the
Judiciary Law generally.

RECOMMENDATION:  APPROVAL

This bill is recommended by the Judicial Council. The changes
effected by this bill are analyzed in detail at pages 161-220 of
the Ninth Annual Report of the Judicial Council. At pages 44-45
of such Report this bill is summarized as follows:

"The Judiciary Law was enacted as Chapter 30 of the
Consolidated Laws in 1909 upon recommendation of the Board
of Statutory Consolidation. It was an attempt to organize
and place in one group the scattered statutes, not deemed
purely procedural, dealing with the organization of the
courts and the powers and duties of the members and officers
thereof. However, except for integration, no attempt ap-
pears to have been made by the Board to make any changes
in the statutes so consolidated.

"Since 1909 many new or amendatory laws have been enacted
relating to the judiciary and the judicial system and many
of the original sections of the Judiciary Law have been re-
pealed. The Articles dealing with the state reporter system
and with the jury system within the city of New York
(Articles 14 and 17) have been comprehensively revised upon
recommendation of the Judicial Council, but there has been
no over-all revision, either to bring up to date the old
unamended sections, some of which stem directly and without
change from the Revised Statutes by way of the Code of
Civil Procedure, or to integrate into the general scheme
of amended or new sections which often seem to have been
thrown in haphazardly from time to time.

"Accordingly, the Judicial Council has made a thorough
study of each section as an entity as well as in relation
to the whole Judiciary Law and as a result of its study
recommends a corrective revision of the Judiciary Law. See
Supporting Study, infra, pages 159 to 223. In addition to
correcting the errors, inconsistencies, archaisms, anachro-
nisms, obsolete and unnecessary matter, an attempt has been
made to coordinate the Judiciary Law by consolidating sections
and by transposing and renumbering sections for a more

Page 2 - Report No. 18

logical arrangement and to conform to the gaps in numbering
due to the many sections which)had been repealed heretofore.

"Although a great many corrective changes are thus recom-
mended, the Council recognizes that much more remains to be
done, since generally only changes believed to be clearly
corrective and non-controversial have been suggested.  No
change has been recommended in the salaries received by
court employees.  All changes in that respect except section
340, which is proposed to be repealed as unnecessarily
detailed, have been made to conform the out-dated amounts
of salaries set forth in the Judiciary Law to those provided
in the State budget.

"Two changes in substance - as distinguished from matters
purely corrective - have been included in the recommended
changes.  They are clearly noted in the comments to the
sections concerned, namely, section 18, renumbered 17, and
proposed new section 23.

"Many matters of substance in the Judiciary Law call for
study and these will have the attention of the Council.

"In recommending the revision of the Judiciary Law to
the Legislature, the Judicial Council wishes it to be
clearly understood that the fact that certain portions of
the law are proposed to be retained without change or with
amendment does not necessarily reflect the Council's ap-
proval of their substance.  As already stated, the Judiciary
Law is continuing to receive the study of the Council."

We have carefully examined the bill and we find that it is en-
tirely in accordance with the said summary.

We approve the various corrective provisions of this bill.

As pointed out in the fourth paragraph of the said summary,
the salaries of many employees of various state courts, as set
forth in various present sections of the Judiciary Law, are con-
siderably less than is provided for in the State budget.  By this
bill such salaries are changed to the amounts now respectively
provided in the State budget.  It seems to us that, if and when
such salaries are again changed in the State budget (which, as we
understand it, is controlling), then the applicable sections will
again be outmoded.  This is a detail to which we suggest the
Judicial Council give attention in connection with its future
study of the Judiciary Law.

The said summary refers to two changes in substance, as dis-
tinguished from changes purely corrective, which are contained
in Section 18, renumbered 17, and Section 23 of this bill.  These
two changes are as follows:

16

Page 3 - Report No. 18

(1)   Section 18 is renumbered 17 and as amended reads as follows:

"17.  Judge prohibited from practicing in cause which has been before him.  A judge or surrogate or former judge or surrogate shall not as attorney or counsellor in any action, claim, matter, motion or (special) proceeding, which has been before him in his official character."  (New matter underlined; eliminated matter in parenthesis).

This proposed new Section 17 is discussed at length at Pages 163-165 of the Ninth Annual Report of the Judicial Council. Decisions are cited showing that there is some doubt whether the section as it presently reads is applicable to surrogates.  In our opinion any such doubt should be cleared up by specific language.  The inclusion in the section of "a former judge or surrogate" is also clearly desirable and, as pointed out by the Judicial Council in its said discussion, will overcome the decision in In Re Wheelock's Will, 205 App. Div. 654 (1923) that the present section does not apply to a former surrogate.

(2)   Section 23 extends to all of the courts in the state, except justices of the peace and police justices, the existing constitutional seventy year age limitation which now applies only to judges of constitutional courts.

In our opinion such extension is a proper one.

The preparation of this bill required a great amount of research and effort and careful draftsmanship.  In our opinion a very able and thorough job has been done and we have no hesitancy in recommending the approval of this bill.

Respectfully submitted,

COMMITTEE ON STATE LEGISLATION,

Leonard S. Saxe, Chairman.

Report prepared for
the Committee by
MR. WALTER W. GROSS,
MR. JOHN A. BELL, and
MR. NATHAN A. SMYTH.



# NEW YORK STATE BAR ASSOCIATION
ORGANIZED 1876
HEADQUARTERS
90 STATE STREET
ALBANY, N. Y.

PHONE 4-9969

COMMITTEE ON LEGISLATIVE REPORTER
WILLIAM J. DARCH, CHAIRMAN
· 206 EAST MAIN STREET, BATAVIA
HENRY S. FRASER, LEGISLATIVE REPORTER

LEWIS C. RYAN, PRESIDENT
HILLS BUILDING, SYRACUSE
CHARLES W. WALTON, SECRETARY
90 STATE STREET, ALBANY
ROBERT C. POSKANZER, TREASURER
90 STATE STREET, ALBANY

March 19, 1945

S. Int. 1114, Pr. 1728  (Williamson)
A. Int. 1258, Pr. 1354  (Reoux)

## Amending Judiciary Law generally.

## APPROVED

## CHEMUNG COUNTY BAR ASSOCIATION

### (Legislative Committee)

To:  Williamson
     Reoux
     Breitel

it bidder, at which auction
lay bid.  Upon the requisi-
invironmental conservation,
; payment of such [amounts]
's appropriated and availa-
of environmental conserva-
 acquire, or after the ex-
of the certified statement
county may dispose· [of the
 four of section ten hun-
ls which the department of
ire.
irst day of September next
>me a law.

# STATE OF NEW YORK

8336

# IN SENATE

March 31, 1986

Introduced by.Sen. DUNNE -- (at request of the Office of Court Adminis-
    tration) -- read twice and ordered printed, and when printed to be
    committed to the Committee on Judiciary

AN ACT to amend the judiciary law, in relation to nonresident attorney
    appearing as attorney of record

The People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:

1     Section 1.  Section four hundred seventy of the judiciary law, as
2  amended by chapter six hundred forty-nine of the laws of nineteen hun-
3  dred forty-five, is amended to read as follows:
4     § 470.  [Attorneys having offices] Nonresident attorney not having an
5  office in this state [may reside in  adjoining state] not to appear  in
6  court as attorney of record.  A person[, regularly] admitted to practice
7  as an attorney and [counsellor,] counsellor-at-law  in  [the  courts  of
8  record of] this state, [whose office for the transaction of law business
9  is within the state, may practice as such attorney  or  counsellor,  al-
10 though  he resides in an adjoining] who is not a resident of this state,
11 may not appear, other than on his or her own behalf, as the attorney  of
12 record  for  any  party  to an action or proceeding in any court in this
13 state, unless he or she has an office for the practice of  law  in  this
14 state.
15    § 2.  This act shall take effect immediately.

EXPLANATION--Matter in italics (underscored) is new; matter in brackets
                    [ ] is old law to be omitted.

LBD13662-03-6



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
(OFFICE OF COURT ADMINISTRATION)
AGENCY BLDG. 4 - 20TH FLOOR
EMPIRE STATE PLAZA
ALBANY, NEW YORK 12223
(518) 474-7469

OCA 86-78

JOSEPH W. BELLACOSA
Chief Administrative Judge

MICHAEL COLODNER
Counsel

IN SUPPORT OF

S.

A.

AN ACT to amend the judiciary law, in relation to
nonresident attorney appearing as attorney of record

This measure is being introduced at the request of
the Office of Court Administration and the Committee to
Regularize Bar Admission Procedures.[1]

This measure would amend section 470 of the Judiciary
Law to clarify the circumstances under which a person
residing outside New York State but admitted to the Bar here
may practice law in our courts.

Section 470 now provides that a person admitted to
the New York Bar, who resides in a State adjoining New York,
may practice law in the State so long as his or her law
office is situated here. It was enacted at a time when
there was no recognized limitation on a State's right to
confine admission to its Bar and the privilege of practicing
law in its courts to its residents alone. Its effect was to
carve a narrow exception to the general New York rule, then
operative although not statutorily-stated, that lawyers who
were regularly admitted to the Bar but who subsequently
discontinued their residence in the State would lose the
right to practice law here. Matter of Tang, 39 AD 2d 357,
359 (1st Dept., 1972).

Recent decisions of the New York Court of Appeals and
the United States Supreme Court effectively have removed any

---

[1] This Committee, established in 1972 by the
Administrative Board of the Judicial Conference, includes
the following members: Arthur Karger (Chairman), Hon.
Lawrence J. Bracken, Hon. M. Delores Denman, Hon. Richard
Simons, Hon. John T. Casey, Robert E. Keegan, Carmen S.
Leone, Hon. Robert G. Main, Michael J. Novack, Donald M.
Sheraw, Hon. Joseph P. Sullivan, and Bartholomew M.
Verdirame.

right New York may have had to exclude nonresidents from the practice of law here. In 1979, the Court of Appeals handed down Matter of Gordon (48 NY 2d 266), in which it invalidated, on constitutional grounds, statutory requirements that applicants for admission to the New York Bar be State residents.[2] Last year, the United States Supreme Court struck down similar residency requirements on the same grounds in Supreme Court of New Hampshire v. Piper (53 U.S.L.W. 4238, 105 S.Ct. 1274 (1985)).

Neither the Gordon Court nor the Piper Court expressly addressed the question whether a State may impose a continuing residency requirement upon already-admitted members of its Bar. In each of these cases, however, the reviewing court's discomfort with State residency requirements for Bar admission focused about a concern that such requirements curtail an individual's ability to pursue his or her occupation free from discriminatory interference. Matter of Gordon, 48 NY 2d at pp 271-272; Piper, 53 U.S.L.W. at 4240. Seeing this analytical approach, we are drawn to the conclusion that, although the precise issue was not before them, Gordon and Piper nonetheless command elimination of residency requirements as a condition upon the right to practice law.[3] Thus, we believe that amendment of section 470 of the Judiciary Law, the narrow exception to New York's residency as a condition of practice rule, is now in order.

In both Gordon and Piper, it was held that while a State could not limit membership in its Bar to residents, it could act to insure the quality of its Bar by adopting reasonable measures that would have special regulatory effect on nonresident attorneys. The amendment to section 470, proposed here, is such a measure. It would mandate that a nonresident attorney have a law office in this State before appearing as an attorney of record in any action or proceeding in a court here. Such a requirement: (1) insures that there will be a local office upon which service affecting the nonresident attorney can be made; (2) reduces the possibility of delay where a court hearing involving such nonresident attorney must be held on short notice; (3)

---

[2] In the wake of this decision, the Legislature amended the Consolidated Laws to strike the offending residency requirements. L. 1985, c. 226.

[3] Accord, White River Paper Co., Ltd. v. Ashmont Tissue, Inc. 110 Misc 2d 373 (New York City Civ.Ct., 1981). "If there is no need to be a resident to be admitted, there can be no such requirement in order to practice." Id., at 376.

enhances the likelihood that the nonresident attorney who uses New York's courts will be disposed to engage in pro bono and other volunteer work; and (4) increases the likelihood that the nonresident attorney will be available for disciplinary action, where necessary. At the same time, the nonresident attorney is not unduly burdened; even if unwilling or unable to maintain a law office in New York, the nonresident may yet practice here so long as local counsel can be found to appear as attorney of record. See, Piper, 53 U.S.L.W. at 4241.

This measure would take effect immediately and would have no fiscal impact on the State.

OCA 86-78

AN ACT to amend the judiciary law, in relation to
nonresident attorney appearing as attorney of record

The People of the State of New York, represented in
Senate and Assembly, do enact as follows:

Section 1. Section four hundred seventy of the
judiciary law, as amended by chapter six hundred forty-nine
of the laws of nineteen hundred forty-five, is amended to
read as follows:

§470. [Attorneys having offices] Nonresident
attorney not having an office in this state [may reside in
adjoining state] not to appear in court as attorney of
record. A person[, regularly] admitted to practice as an
attorney and counsellor[,]-at-law in [the courts of record
of] this state, [whose office for the transaction of law
business is within the state, may practice as such attorney
or counsellor, although he resides in an adjoining state]
who is not a resident of this state, may not appear, other
than on his or her own behalf, as the attorney of record for
any party to an action or proceeding in any court in this
state, unless he or she has an office for the practice of
law in this state.

§2. This act shall take effect immediately.

# Exhibit G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EKATERINA SCHOENEFELD,

                                                *Plaintiff*,

-against-

STATE OF NEW YORK; ANDREW M CUOMO, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL; NEW
YORK SUPREME COURT, APPELLATE DIV, THIRD
JUDICIAL DEPT; ALL JUSTICES OF NY SUPREME
COURT; MICHAEL J. NOVACK, IN HIS OFFICIAL
CAPACITY AS CLERK OF NY SUPREME,

                                                *Defendants*.

_____

**DEFENDANTS'
RESPONSE TO
PLAINTIFF'S REQUEST
FOR FIRST SET OF
ADMISSIONS**

09-CV-0504

LEK/RFT

Defendants, Justices of the Appellate Division, Third Department, respond to plaintiff's

request for admissions that were modified by the court on August 17, 2010, as follows:

1. Admit that non-resident attorneys who passed the New York State bar exam and are in
compliance with all requirements for practicing law in New York - except for the office
requirement of Section - are precluded from practicing law in New York by Section 470.

**Response:**      Objection. The question is overly broad and as written cannot be
answered. Notwithstanding said objection and without waiving same, with regard to whether and
to what extent the practice of law by non-resident attorneys who do not maintain an office in
New York is restricted, the Justices refer to Exhibit A, which includes some legislative history
materials related to Judicial Law Section 470. However, the Justices are not the official
repository for the legislative history materials related to Judicial Law Section 470. Therefore, the
Justices lack knowledge or information regarding the completeness of Exhibit A. The justices
also refer to case law which has not been included in exhibit A.

2. Admit that a substantial objective of Section 470 is to preclude non-resident attorneys
who do not have an office within the State of New York from practicing within the State.

**Response:**    Objection. Question calls for a legal conclusion. Notwithstanding said objection and without waiving same, the Justices refer to Exhibit A, which contains legislative history materials. However, the Justices are not the official repository for the legislative history materials related to Judicial Law Section 470. Therefore, the Justices lack knowledge or information regarding the completeness of Exhibit A.

3. Admit that the Defendants are directed to enforce the provisions of Section 470 against non-resident attorneys who do not have an office for the transaction of law business within the State.

**Response:**    Objection as to form. The question calls for a legal conclusion. In addition, the question is overly vague as it does not state who is "directing" the Justices to enforce the provisions of section 470. Notwithstanding said objections, and without waiving same, the Justices refer to Judiciary Law § 90.

4. Admit that the Defendants intend to rely solely upon Section 470's Legislative History to support its constitutionality, exclusive, of course, of any court decisions that may have ruled upon the constitutionality of the Statute.

**Response:**    Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this time to rely upon Section 470's legislative history, and any relevant case law to support it's constitutionality argument.

5. Admit that the Defendants, other than their reliance upon Section 470's Legislative History and court precedents, are not relying upon any other memorandum, advisory opinion, rule or regulation to support the Statute's constitutionality.

**Response:**    Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this time to rely upon Section 470's legislative history, and any relevant case law to support it's constitutionality argument.

6. Admit that the Defendants do not intend to rely upon facts independent of the Legislative History of Section 470 to support the Statute's constitutionality.

**Response:**    Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendants intend at this time to rely upon Section 470's legislative history, and any case law to support it's constitutionality argument.

7. Admit that the Defendants, including Third Department's Committee on Professional Standards, have brought and/or upheld charges of professional misconduct against nonresident

attorneys for violating Section 470.

**Response:**     Objection.  Question is overly broad and lacks specificity.
Notwithstanding said objection and without waiving same, the justices refer to relevant case law.

8. Admit that, for purposes of continuing this litigation, Plaintiff does not have to
establish or prove an injury-in-fact or standing.

**Response:**     Deny but Admit that Judge Kahn has ruled on plaintiff's standing in this
case and refer to Judge Kahn's Decision/Order as the best representation of it's contents.

Dated: Albany, New York
       September 29, 2010

                          ANDREW M. CUOMO
                          Attorney General of the State of New York
                          Attorney for Defendants
                          The Capitol
                          Albany, New York  12224-0341


                          By: s/ Christina L. Roberts-Ryba

                          Christina L. Roberts-Ryba
                          Assistant Attorney General, of Counsel
                          Bar Roll No.  105818
                          Telephone: (518) 486-9717
                          Fax:  (518) 473-1572 (Not for service of papers.)
                          Email: Christina.roberts@ag.ny.gov.

TO:    Ekaterina Schoenefeld
       3371 US Highway 1
       Suite 105
       Lawrenceville, NJ  08648

3

# Exhibit H

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EKATERINA SCHOENEFELD,

|  |  |
|---|---|
| *Plaintiff,* | **DEFENDANTS'** |
|  | **RESPONSE TO** |
| -against- | **PLAINTIFF'S REQUEST** |
|  | **FOR FIRST SET OF** |
| STATE OF NEW YORK; ANDREW M CUOMO, IN HIS | **ADMISSIONS** |
| OFFICIAL CAPACITY AS ATTORNEY GENERAL; NEW |  |
| YORK SUPREME COURT, APPELLATE DIV, THIRD | 09-CV-0504 |
| JUDICIAL DEPT; ALL JUSTICES OF NY SUPREME |  |
| COURT; MICHAEL J. NOVACK, IN HIS OFFICIAL | LEK/RFT |
| CAPACITY AS CLERK OF NY SUPREME, |  |

*Defendants*.

_____

Defendant, Office of the Attorney General of the State of New York (hereinafter "OAG"),

responds to plaintiff's request for admissions that were modified by the court on August 17, 2010, as

follows:

1. Admit that non-resident attorneys who passed the New York State bar exam and are in
compliance with all requirements for practicing law in New York - except for the office
requirement of Section - are precluded from practicing law in New York by Section 470.

**Response:**     Objection. The question is overly broad, calls for a legal conclusion and as
written cannot be answered. Notwithstanding said objection and without waiving same, with
regard to whether and to what extent the practice of law by non-resident attorneys who do not
maintain an office in New York is restricted, the OAG refers to Exhibit A, which includes some
legislative history materials on Judiciary Law Section 470. However, the OAG is not the official
repository for the legislative history materials related to Judicial Law Section 470. Therefore, the
OAG lacks knowledge or information regarding the completeness of Exhibit A.

2. Admit that a substantial objective of Section 470 is to preclude non-resident attorneys
who do not have an office within the State of New York from practicing within the State.

**Response:**     Objection. Question calls for a legal conclusion. Notwithstanding said objection and without waiving same, the OAG refers to Exhibit A. However, the OAG is not the official repository for the legislative history materials related to Judicial Law Section 470. Therefore, the OAG lacks knowledge or information regarding the completeness of Exhibit A.

3. Admit that the Defendants are directed to enforce the provisions of Section 470 against non-resident attorneys who do not have an office for the transaction of law business within the State.

**Response:**     Objection as to form. The question is overly-broad as applied to the OAG and does not state who is "directing" the OAG to enforce the provisions of section 470. Notwithstanding said objection, and without waiving same, the OAG refers to Judiciary Law § 90.

4. Admit that the Defendants intend to rely solely upon Section 470's Legislative History to support its constitutionality, exclusive, of course, of any court decisions that may have ruled upon the constitutionality of the Statute.

**Response:**     Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendant intends at this time to rely upon Section 470's legislative history, and any relevant case law to support it's constitutionality argument.

5. Admit that the Defendants, other than their reliance upon Section 470's Legislative History and court precedents, are not relying upon any other memorandum, advisory opinion, rule or regulation to support the Statute's constitutionality.

**Response:**     Objection. Question inappropriately calls for defendant to divulge trial strategy. Notwithstanding said objection, and without waiving same, defendant intends at this time to rely upon Section 470's legislative history, and any relevant case law to support it constitutionality argument.

6. Admit that the Defendants do not intend to rely upon facts independent of the Legislative History of Section 470 to support the Statute's constitutionality.

**Response:**     Objection. Question inappropriately calls for defendants to divulge trial strategy. Notwithstanding said objection, and without waiving, defendants intend at this time to rely upon Section 470's legislative history, and any relevant case law to support it constitutionality argument

7. Admit that the Defendants, including Third Department's Committee on Professional Standards, have brought and/or upheld charges of professional misconduct against nonresident attorneys for violating Section 470.

2

**Response:**    Objection.  Question is overly broad and lacks specificity.
Notwithstanding said objection and without waiving same, the OAG refers to relevant case law.

8. Admit that, for purposes of continuing this litigation, Plaintiff does not have to
establish or prove an injury-in-fact or standing.

**Response:**    Deny but Admit that Judge Kahn has ruled on the issue of plaintiff's
standing in this case and refer to Judge Kahn's Decision/Order as the best representation of it's
contents.

DATED:    Albany, New York
          September 30, 2010

                              ANDREW M. CUOMO
                              Attorney General of the State of New York
                              Attorney for Defendants State of New York, Andrew
                                   M.   Cuomo,   NYS   Office   of   Court
                                   Administration,  Michael  J.  Novack  and
                                   Thomas C. Emerson
                              The Capitol
                              Albany, New York  12224-0341


                              By: ___s/Christina Roberts-Ryba___
                              Christina L. Roberts-Ryba
                              Assistant Attorney General, of Counsel
                              Bar Roll No.  105818
                              Telephone: (518) 486-9717
                              Fax:  (518) 473-1572 (Not for service of papers.)
                              Email: Christina.roberts@ag.ny.gov.

TO:   Ekaterina Schoenefeld
      3371 US Highway 1
      Suite 105
      Lawrenceville, NJ  08648

                                    3

# Exhibit I

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EKATERINA SCHOENFELD,

                                    Plaintiff,

         - v -                                          Civ. No. 1:09-CV-504
                                                             (LEK/RFT)

STATE OF NEW YORK, *et al.*,

                                    Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DISCOVERY ORDER

On August 17, 2010, this Court issued an Order which, *inter alia*, directed the Defendants to provide certain disclosures and permitted eight (8) requests for admission. Dkt. No. 48. Upon receiving Defendants' Responses, the Plaintiff filed a Letter-Motion challenging the Defendants' responses thereto and seeking a conference with the Court. Dkt. No. 53. Pursuant to the Court's directions, Defendants filed a Letter Brief in response to Plaintiff's Letter Motion. Dkt. No. 55. A telephonic Discovery Hearing was held on the record on November 2, 2010. During that Hearing the Court rendered several rulings which are incorporated by reference into this Order and summarized hereinbelow.

As to Requests for Admissions numbered 1, 3, 4, 6, and 7 and the single court-ordered demand to produce, the Court ruled as to how the Responses should be modified in order to be deemed legally responsive and adequate. Those Rulings were

specifically directed to Defendant John Stevens, the Chairman of the Committee on Professional Standards, who has the duty and responsibility of enforcing New York Judiciary Law § 470, and not so much as to the other discrete group of Defendants - Andrew M. Cuomo, Attorney General for the State of New York, and all of the Judges and the Clerk of the Court of New York Supreme Court, Appellate Division, Third Judicial Department. As to Defendant Cuomo, the Court opined that since he is not responsible for the actual enforcement of § 470, but rather is obligated to defend the statute's constitutionality, he should not have to respond to these Requests for Admission, to which Plaintiff concurred. Regarding the Judges and Clerk of the Court for the Appellate Division Third Department, whose independent roles as to this litigation are not completely aligned with the Chair of the Committee, the Court envisions that their responses would not be similar nor in sync with the Chair's amended responses. Moreover, the Court believes that their responses would be more complex in nature than the Chairperson's, thus the Court's rulings would not be applicable. Nonetheless, this Court directed the Defendants' Counsel to at least advise the Judges and the Clerk of the Court as to the nature of the modified responses so that they can consider whether their responses should be modified as well.

To clarify the court ordered Demand to Produce, Defendant Stevens, in responding to the Demand, is required to produce documents, memoranda, and the

like that he has in his possession or in his files and Defendants' Counsel does not have to conduct any research on behalf of the Plaintiff nor produce that research to the Plaintiff.

With the exception of Defendant Cuomo, the Defendants shall serve their amended responses to the Requests for Admission and to the court ordered Demand to Produce on or before **November 22, 2010.**

**IT IS SO ORDERED**.

November 2, 2010
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-3-*

# Exhibit J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EKATERINA SCHOENEFELD,

*Plaintiff,*

-against-

STATE OF NEW YORK; ANDREW M CUOMO, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL; NEW
YORK SUPREME COURT, APPELLATE DIV, THIRD
JUDICIAL DEPT; ALL JUSTICES OF NY SUPREME
COURT; MICHAEL J. NOVACK, IN HIS OFFICIAL
CAPACITY AS CLERK OF NY SUPREME,

*Defendants.*

---

**DEFENDANTS'
RESPONSE TO
PLAINTIFF'S REQUEST
FOR FIRST SET OF
ADMISSIONS**

09-CV-0504

LEK/RFT

Defendant, John Stevens in his official capacity as Chairman of the Committee on Professional Standards (hereinafter "Chairman"), responds to plaintiff's request for admissions that were modified by the court on August 17, 2010, as follows:

1. Admit that non-resident attorneys who passed the New York State bar exam and are in compliance with all requirements for practicing law in New York - except for the office requirement of Section - are precluded from practicing law in New York by Section 470.

**Response:**   Cannot Admit or Deny.  Upon information and belief, Section 470 has only been enforced against non-resident attorneys of record.

3. Admit that the Defendants are directed to enforce the provisions of Section 470 against non-resident attorneys who do not have an office for the transaction of law business within the State.

**Response:**   Cannot Admit or Deny.  Upon information and belief, Section 470 has only been enforced against non-resident attorneys of record. The Chairman refers to 22 NYCRR 806.3 and 806.4 as a description of his duties as the Chairman of the Committee on Professional Standards.

4. Admit that the Defendants intend to rely solely upon Section 470's Legislative History to support its constitutionality, exclusive, of course, of any court decisions that may have ruled upon the constitutionality of the Statute.

**Response:**   Defendants intend at this time to rely upon Section 470's legislative history and any relevant case law to support it constitutionality argument in their motion for summary judgment.

6. Admit that the Defendants do not intend to rely upon facts independent of the Legislative History of Section 470 to support the Statute's constitutionality.

**Response:**   Defendants intend at this time to rely upon Section 470's legislative history and any relevant case law to support their constitutionality argument in their motion for summary judgment. If defendants refer to any unpublished opinions, they will be filed with defendants' motion for summary judgment as required by the Local Rules.

7. Admit that the Defendants, including Third Department's Committee on Professional Standards, have brought and/or upheld charges of professional misconduct against nonresident attorneys for violating Section 470.

**Response:**   Defendant Admits that the Committee on Professional Standards has enforced section 470 against attorneys of record which is evidenced by relevant case law.

DATED:      Albany, New York
              November 17, 2010

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants State of New York, Andrew
    M.  Cuomo,  NYS  Office  of  Court
    Administration, Michael J. Novack and John
    Stevens
The Capitol
Albany, New York  12224-0341

By: s/ *Christina L. Roberts-Ryba*
Christina L. Roberts-Ryba
Assistant Attorney General, of Counsel
Bar Roll No.  105818
Telephone: (518) 486-9717
Fax:  (518) 473-1572 (Not for service of papers.)

Email: Christina.roberts@ag.ny.gov.

TO:   Ekaterina Schoenefeld
      32 Chambers Street, suite 2
      Princeton, New Jersey 08542

# Exhibit K

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**

Peter V. Coffey
Chairperson

*Third District*

Theodore Draw
Monticello

Joyce M. Galante
Troy

Amparo Acosta Gazzera
Hudson

Nan Goldsberry
Troy

Joseph D. Hill
Kingston

Jeanne M. Kane
Cobleskill

George J. Pulver
Catskill

Mary Anne Tommaney
Albany

Thomas J. Walsh
Albany

*Fourth District*

Carmel J. Greco
Johnstown

Jennifer A. Jensen
Glens Falls

Imas J. McNamara
Ballston Spa

Charles J. Nicastro
Saranac Lake

Dana D. Peck
Plattsburgh

*Sixth District*

John V. Moore
Elmira

Edward S. Nelson
Norwich

N. Theodore Sommer
Binghamton

Walter L. Terry III
Oneonta

Grant Van Sant
Cortland

Robert I. Williamson
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Kenneth H. P. Bryk
Susan R. Katzoff
John J. McAlary
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

Susan F. Evans
Auditor

THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22nd FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NEW YORK 12225-0013
(518) 474-8816
FAX (518) 474-0389



**CONFIDENTIAL**

December 8, 1995



Re:  **Inquiry of** ███████████████████

Dear ███████

The Committee on Professional Standards, Third Judicial Department, has completed its investigation regarding the inquiry of ████████████████████████

Based upon the inquiry, your replies thereto and investigation by the Committee staff, the Committee has determined your professional conduct was improper in the following respects:

You filed a notice of appearance ████████████ ████████████ as attorney for the defendant in the ████████████████. In the notice of appearance, you recited your law office address as ████████████████████████, New York. You did not maintain a law office at that address on that date having previously discontinued same.

You attempted to mislead this Committee during its investigation by advising that you maintained a law office at the aforesaid address.

In your representation of ████████, you failed to appear before the Honorable ████████████ resulting in your being sanctioned $500. To date, you have failed to pay this sanction.

You failed to cooperate with this Committee in its investigation of this matter with follow-up requests for information required before responses were forthcoming.



**Page Two**

Such conduct is violative of Disciplinary Rules 1-102(A)(4,5) of the Code of Professional Responsibility and Judiciary Law §470, copies of which are enclosed.

Your attention is also directed to <u>Matter of Timothy Kove</u>, 103 AD 2d 968 (3rd Dep't 1984) where the Court stated "It is well established that an attorney is obligated to cooperate with [The Committee on Professional Standards] in its investigation of alleged misconduct and the failure to do so constitutes misconduct."

You were advised by letter of October 11 , 1995 of the intention of the Committee to admonish you for the foregoing misconduct. Since you have failed to show cause why such admonition should not issue pursuant to Section 806.4(c) of the Rules of the Appellate Division, Third Department, you are hereby admonished for the foregoing acts of professional misconduct.

I enclose for your information a copy of the letter sent to Judge Altman advising that we are closing our file in this matter.

Please note, your conduct as noted above may be brought to the attention of the Committee or the Court should subsequent acts of professional misconduct be reviewed by the Committee.

Very truly yours,

Peter V. Coffey, Chairperson
Committee on Professional Standards
Third Judicial Department
PVC/MSO/ch
Enclosures

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**

THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22nd FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NEW YORK 12225-0013
(518) 474-8816
FAX (518) 474-0389



Peter V. Coffey
Chairperson

*Third District*

Theodore Drew
Monticello

Joyce M. Galante
Troy

Amparo Acosta Gazzera
Hudson

Nan Goldsberry
Troy

Joseph D. Hill
Kingston

Jeanne M. Kane
Cobleskill

George J. Pulver
Catskill

Mary Anne Tommaney
Albany

Thomas J. Walsh
Albany

*Fourth District*

Carmel J. Greco
Johnstown

Jenn.    . Jenson
Glens Falls

Thomas J. McNamara
Ballston Spa

Charles J. Nicastro
Saranac Lake

Dana D. Peck
Plattsburgh

*Sixth District*

John V. Moore
Elmira

Edward S. Nelson
Norwich

Theodore Sommer
Binghamton

Walter L. Terry III
Oneonta

Grant Van Sant
Cortland

bert I. Williamson
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Kenneth H. P. Bryk
Susan R. Katzoff
John J. McAlary
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

Susan F. Evans
Auditor

**CONFIDENTIAL**

February 2, 1996

████████████████████████████
████████████████████████

RE:   **NOTICE OF DISCIPLINARY ACTION**

Dear ████████████

The Committee on Professional Standards has completed its investigation arising out of the inquiry of ████████████ ██████████ and has determined:

You were retained to represent the estate ████████ ████████████████ as the named executrix. In your letter ████████████████████████ you misled and deceived ████████████ as to your entitlement to attorney's fees.

You received funds on behalf of the estate which you deposited into your Florida trust account. The account did not comply with 22 NYCRR part 1300. You did not obtain ████████████ prior written approval, specifying the name and address of the office or branch of the banking institution where such funds were to be maintained.

Although you are registered as an attorney and practice law in the State of New York, you do not maintain a bona fide office in this State as required by Judiciary Law Section 470.

You prepared and forwarded documents to ████████ ████████ Insurance Company wherein you were cited as a trustee of a ████████ insurance trust. This was not true. ████████████ Insurance forwarded a $137,460.18 check to you made payable to ████████

Page 2

You or someone at your direction endorsed the names of ██████ cannot recall giving you authorization to sign his name to said check. ██████ did not authorize you to sign her name to said check.

In your billings to ██████ you cited that interest would be charged on overdue sums. While no interest was actually charged, there was no prior agreement at the time of retainer to your charging interest on overdue sums.

The Committee sends this formal letter of caution pursuant to Section 806.4(c) of the Rules of the Appellate Division, Third Judicial Department, a copy of which is enclosed, to advise you it has determined that your conduct violates Disciplinary Rules 9-102(B), 1-102(A)(4) and (5), of the Code of Professional Responsibility, Judiciary Law Section 470, 22 NYCRR Part 1300, and New York State Bar Association Ethics Opinion 399, copies of which are enclosed.

I enclose for your information a copy of the letter sent to ██████ advising we are closing our file in this matter.

This letter constitutes an official finding of professional misconduct, will be maintained in the records of the Appellate Division, Third Department and this Committee and may be considered in the event of subsequent misconduct.

Very truly yours,

Peter V. Coffey, Chairperson
Committee on Professional Standards
Third Judicial Department
PVC/MP/cms

Encs.

Certified Mail - Return Receipt Requested
Z 166 560 236

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**
THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22nd FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NY 12225-0013
(518) 474-8816
FAX (518) 474-0389

Jeanne M. Kane
Chairperson

**Third District**

Bernard F. Ashe
Delmar

Eli B. Basch
Kingston

Joyce M. Galante
Troy

Amparo Acosta Gazzera
Hudson

Joseph H. Pond
Grahamsville

Peter M. Saidel
Albany

Charles H. Schaefer
Catskill

Thomas J. Walsh
Albany

**Fourth District**

Carmel J. Greco
Johnstown

Jennifer A. Jensen
Glens Falls

Charles J. Nicastro
Saranac Lake

Kevin L. Peryer
Plattsburgh

Mark M. Rider
Ballston Spa

Richard D. Wickerham
Schenectady

**Sixth District**

David M. Gouldin
Binghamton

James A. Haynes
Norwich

Cynthia S. Hutchinson
Elmira

Dennis K. McDermott
Oneida

Nelson E. Roth
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Kenneth H.P. Bryk
John J. McAlary
Judith I. Ratner
Michael K. Creaser
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

**CONFIDENTIAL**

May 4, 1998



RE:   Inquiry of ████████████

Dear ████████████

The Committee on Professional Standards considered the above-mentioned inquiry at its April 23, 1998 meeting and determined there was insufficient evidence of professional misconduct on which to base any disciplinary action pursuant to the Rules of the Appellate Division, Third Judicial Department governing the conduct of attorneys.

However, the Committee took cognizance of the fact that you engaged in the practice of law within the state of New York by representing ████████████████████ while you did not maintain a law office in the state as required by Judiciary Law §470. As a result, the third party complaint which you filed on behalf of your clients was declared a nullity by Supreme Court. This necessitated your clients having to retain new counsel.

During the course of your representation of ████████████ ████████ you billed them ██████ and received payments of ████████ towards your fees. The Committee has determined

**Page 2**

that since you were not entitled to practice law in the
state you were not entitled to charge or collect a fee.

The Committee directs that you refund the entire amount of
your fee to ██████████████████ **within thirty days
from the date hereof,** with written confirmation of same to
this office.  If you fail to do so this matter will be
reconsidered by the Committee.

Pursuant to Rule 806.4(c)(1)(iv) through this letter of
education we call your attention to Disciplinary Rules 1-
102(A)(5), 2-110, and 3-101(B) of the Code of Professional
Responsibility as well as Judiciary Law §470, copies of
which are enclosed for your benefit.

This letter of education remains a part of this Committee's
records and may be considered in the event of future
investigation by this Committee.

We enclose for your information a copy of the letter sent
to ██████████████████ advising that we are closing
our file in this matter.  Please be advised, this file is
now closed.

Very truly yours,

Jeanne M. Kane

Jeanne M. Kane, Chairperson
Committee on Professional Standards
Third Judicial Department
JMK/JJM/ss - Enclosures
Certified Mail - Return Receipt Requested Z 171 320 938

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**
THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22nd FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NY 12225-0013
(518) 474-8816
FAX (518) 474-0389

Carmel J. Greco
Chairperson

*Third District*

Eli B. Basch
Kingston

Joyce M. Galante
Troy

Amparo Acosta Gazzera
Hudson

Jeanne M. Kane
Cobleskill

Joseph H. Pond
Grahamsville

Louis-Jack Pozner
Albany

Peter M. Saidel
Albany

Charles H. Schaefer
Catskill

Thomas J. Walsh
Albany

*Fourth District*

Jennifer A. Jensen
Glens Falls

Charles J. Nicastro
Saranac Lake

Kevin L. Peryer
Plattsburgh

Mark M. Rider
Ballston Spa

Richard D. Wickerham
Schenectady

*Sixth District*

Paul F. Eaton, Jr.
Sidney

David M. Gouldin
Binghamton

James A. Haynes
Norwich

Cynthia S. Hutchinson
Elmira

Dennis K. McDermott
Oneida

Nelson E. Roth
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

**CONFIDENTIAL**

December 3, 1999

Re:   **Notice of Disciplinary Action**

Dear ▮▮▮▮▮

The Committee on Professional Standards, Third Judicial Department, has completed its investigation regarding the inquiry of ▮▮▮▮▮▮▮▮

Based upon the inquiry, your replies thereto and investigation by the Committee staff, the Committee has determined your professional conduct was improper in the following respects:

You appeared as co-counsel on behalf of ▮▮▮▮▮▮▮ when you should have refused employment as his attorney due to the fact your personal interests impaired your independent professional judgement.

You failed to withdraw as ▮▮▮▮ attorney when it became clear that you were a fact/alibi witness in this case.

Prior to commencement of ▮▮▮▮ trial, a motion was made to allow you to act as co-counsel despite also being a fact witness. That motion was withdrawn prior to trial with the understanding you were not participating in his defense. During your cross-examination you stated, under oath, that you were still ▮▮▮▮ attorney.



Page Two ~

You failed to maintain an office in New York State during the course of
your representation of ██████ ~

Such conduct is violative of Disciplinary Rules 1-102(A)(5), 5-101, and 5-102 of the
Code of Professional Responsibility and Judiciary Law §470, copies of which are
enclosed.  ·

You were advised by letter of November 1, 1999 of the intention of the Committee to
admonish you for the foregoing misconduct.  Since you have failed to show cause why
such admonition should not issue pursuant to Section 806.4(c) of the Rules of the
Appellate Division, Third Department, you are hereby admonished for the foregoing acts
of professional misconduct.

Enclosed for your information is a copy of the letter sent to ████████████
████-advising that we are closing our file in this matter.

Please note, your conduct as noted above may be brought to the attention of the
Committee or the Court should subsequent acts of professional misconduct be reviewed
by the Committee.

Very truly yours,

Carmel J. Greco, Chairperson
Committee on Professional Standards
Third Judicial Department
CJG/MGG/js
Enclosures

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**
THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22nd FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NY 12225-0013
(518) 474-8816
FAX (518) 474-0389

Dennis K. McDermott
*Chairperson*

**Third District**

Eli B. Basch
Kingston

Kathleen K. Cioonan
Kingston

Anne R. Copps
Albany

Bertram W. Eisenberg
Liberty

John M. Keefe
Troy

Louis-Jack Pozner
Albany

Peter M. Saidel
Albany

Charles H. Schaefer
Catskill

Thomas J. Walsh
Albany

**Fourth District**

Carmel J. Greco
Johnstown

Trinidad M. Martin
Whitehall

Charles J. Nicastro
Saranac Lake

Kevin L. Peryer
Plattsburgh

Mark M. Rider
Ballston Spa

Richard D. Wickerham
Schenectady

**Sixth District**

Paul F. Eaton, Jr.
Sidney

David M. Gouldin
Binghamton

James A. Haynes
Norwich

Cynthia S. Hutchinson
Elmira

Nelson E. Roth
Ithaca

Mark S. Ochs
*Chief Attorney*

Michael Philip, Jr.
*Deputy Chief Attorney*

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
*Staff Attorneys*

Joseph L. Legnard
Vincent M. Tepedino
*Investigators*



**CONFIDENTIAL**

August 9, 2000

Re:  **Notice of Disciplinary Action**

Dear ▆▆▆▆▆▆

The Committee on Professional Standards has completed its investigation arising out of the inquiries of ▆▆▆▆▆▆▆▆▆▆▆▆ and has determined:

In the ▆▆▆ inquiry, ▆▆▆▆▆ client was caught stealing ▆ ▆▆▆▆▆▆. Your client, ▆▆▆▆▆ forwarded two letters to the "Parent/Guardian of ▆▆▆▆▆" demanding $245 in damages. Thereafter, ▆▆▆▆▆▆▆ 1999, you forwarded a written demand and proposed complaint ▆▆▆. The two letters you forwarded to ▆▆▆ client made specific reference to your intention to seek a "final judgement of damages, attorney's fees and court costs in excess of $2,000". General Obligations Law §11-105, entitled you to seek only $245 in damages.

In the ▆▆▆ inquiry, ▆▆▆▆▆▆▆▆▆ was caught attempting to steal ▆▆▆ worth of merchandise. You forwarded a demand letter to ▆▆▆▆▆▆ requesting ▆▆▆▆ on behalf of your client ▆▆▆▆. On ▆▆▆▆▆▆, you forwarded another letter to ▆▆ ▆▆▆ demanding ▆▆▆▆ in damages. In that same letter you state, "If successful in any litigation, we estimate that we would

▬▬▬▬▬▬▬▬

Page Two
August 9, 2000

be seeking a final judgement of damages, attorney's fees and court costs in excess of $2,000." General Obligations Law §11-105, entitled you to seek only $132.50 in damages.

Between 3/18/99 to 2/22/00, you collected $8,947.63, in excess of what General Obligations Law §11-105 allows.

You failed to maintain an office for the practice of law in New York State as required by Judiciary Law §470.

The Committee sends this formal letter of caution pursuant to Section 806.4(c) of the Rules of the Appellate Division, Third Judicial Department, a copy of which is enclosed, to advise you it has determined your conduct violates Disciplinary Rules 1-102(A)(4)&(5), and 7-102 of the Code of Professional Responsibility, and Judiciary Law §470, copies of which are enclosed.

This letter constitutes an official finding of professional misconduct, and will be maintained in the records of the Appellate Division, Third Department and this Committee and may be considered in the event of any subsequent misconduct.

Copies of the letter sent to ▬▬▬▬▬▬▬▬▬▬▬▬▬ are enclosed for your information.

Very truly yours,

Dennis K. McDermott, Chairperson
Committee on Professional Standards
Third Judicial Department
DKM/MGG/js
Enclosures
Regular & Certified Mail - RRR 7099 3400 0007 2969-2166

**STATE OF NEW YORK**
**COMMITTEE ON PROFESSIONAL STANDARDS**
THIRD JUDICIAL DEPARTMENT
A.E. SMITH OFFICE BUILDING, 22ND FLOOR
P.O. BOX 7013, CAPITOL STATION ANNEX
ALBANY, NY 12225-0013
(518) 474-8816
FAX (518) 474-0389

Richard D. Wickerham
Chairperson

*Third District*

Eli B. Basch
Kingston

Kathleen K. Cloonan
Kingston

Anne R. Copps
Albany

Bertram W. Eisenberg
Liberty

John M. Keefe
Troy

Louis-Jack Pozner
Albany

Peter M. Saidel
Albany

Charles H. Schaefer
Catskill

*Fourth District*

Trinidad M. Martin
Whitehall

Kevin L. Peryer
Plattsburgh

*Sixth District*

Paul F. Eaton, Jr.
Sidney

David M. Gouldin
Binghamton

James A. Haynes
Norwich

Cynthia S. Hutchinson
Elmira

Nelson E. Roth
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators



CONFIDENTIAL

May 31, 2001



Re:   <u>Inquiry of</u> ▮▮▮▮▮▮

Dear ▮▮▮▮▮▮

The Committee on Professional Standards considered the above-mentioned inquiry at its May 25, 2001 meeting and determined there was insufficient evidence of professional misconduct on which to base any disciplinary action pursuant to the Rules of the Appellate Division, Third Judicial Department, governing the conduct of attorneys.

However, the Committee took cognizance of the fact that you are engaged in a legal matter and practicing law in the State of New York without maintaining a physical office within the state.

Pursuant to Rule 806.4(c)(1)(iv) through this letter of education we call your attention to <u>Matter of Marin</u>, 250 A.D.2d 997 (3d Dep't 1998), Judiciary Law §470 and Disciplinary Rule 1-102(A)(5) of the Code of Professional Responsibility, copies of which are enclosed for your benefit.

This letter of education remains a part of this Committee's records and may be considered in the event of future investigation by this Committee.

Page 2
May 31, 2001

We enclose for your information a copy of the letter sent to ████████████ advising that
we are closing our file in this matter.  Please be advised, this file is now closed.

Very truly yours,

*Richard D. Wickerham*

Richard D. Wickerham, Chairperson
Committee on Professional Standards
Third Judicial Department
RDW/GEM/ss - Enclosures
Regular and Certified Mail- Return Receipt Requested
7000 0600 0022 2039 3187

**State of New York**
Supreme Court, Appellate Division
Third Judicial Department
Committee on Professional Standards
40 Steuben Street, Suite 502
Albany, NY 12207-2109

*http://www.nycourts.gov/ad3/cops*



**CONFIDENTIAL**

(518) 285-8350
FAX (518) 474-0389
ad3cops@courts.state.ny.us

Philip S. Caponera
Chairperson

*Third District*

John R. Casey
Albany

William J. Kenlry
Albany

Alfred B. Mainetti
Kingston

Peter E. Platt
Colonie

*Fourth District*

Vincent Capasso, Jr.
Schenectady

Joseph M. Curtin
Saratoga Springs

John F. Niles
Plattsburgh

Edgar G. Purcell
Glens Falls

Ri        D. Wickerham
Schenectady

*Sixth District*

James L. Chivers
Binghamton

Ellen L. Coccoma
Oneonta

Thomas C. Emerson
Norwich

Leonard A. Govern
Walton

Peter W. Mitchell
Cazenovia

John J. Ryan, Jr.
Elmira

John A. Stevens
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

April 2, 2007



Re: **Inquiry of** ████████████

Dear ████████████

The Committee on Professional Standards considered the above-mentioned inquiry at its March 23, 2007 meeting and determined there was insufficient evidence of professional misconduct on which to base any disciplinary action pursuant to the Rules of the Appellate Division, Third Judicial Department governing the conduct of attorneys.

However, the Committee took cognizance of the fact that in connection with your representation of ████████████ in Westchester County Family Court regarding a family offense proceeding, you failed to enter into a written retainer agreement, did not provide ████████████ with a Statement of Client's Rights and Responsibilities or bill him at least every sixty days. Further, you collected a fee in the absence of a signed written retainer agreement.

By fax dated January 26, 2007 you forwarded a copy of an amended written retainer agreement intended to be used when representing clients pursuant to 22 NYCRR 1400.1. On January 30, 2007 staff from the Committee called you to discuss deficiencies in the written retainer agreement. You failed to respond.

Page 2
April 2, 2007

You failed to maintain an office for the practice of law in New York State as required by
Judiciary Law §470.

This letter of education is issued to you pursuant to Section 806.4(c) of the rules of the
Appellate Division, Third Department, for the purpose of calling your attention to
Disciplinary Rules 1-102(A)(5), 2-106(C)(2)(b) and 2-106(F) of the Code of Professional
Responsibility, 22 NYCRR Part 1400, Judiciary Law §470 and New York State Bar
Association Ethics Opinion #348, copies of which are enclosed. This letter remains a
part of this Committee's records and may be considered in the event of future
investigation by the Committee.

An attorney is required by decisional law to cooperate in an investigation by the
Committee. Your attention is directed to Matter of Timothy Kove, 103 AD2d 968 (3rd
Dept. 1984) where the Court stated: "It is well-established that an attorney is obligated
to cooperate with [The Committee on Professional Standards] in its investigation of
alleged misconduct and the failure to do so constitutes misconduct."

We enclose for your information a copy of the letter sent to Ms. Bernstein advising that
we are closing our file in this matter.

Very truly yours,

Philip S. Caponera, Chairperson
Committee on Professional Standards
Third Judicial Department
PSC/MGG/cma - Enclosures
Reg. & Cert. Mail - RRR

**State of New York**
Supreme Court, Appellate Division
Third Judicial Department
Committee on Professional Standards
40 Steuben Street, Suite 502
Albany, NY 12207-2109

*http://www.nycourts.gov/ad3/cops*

Philip S. Caponera
Chairperson

*Third District*

John R. Casey
Albany

William J. Keniry
Albany

Alfred B. Mainetti
Kingston

Peter E. Platt
Colonie

*Fourth District*

Vincent Capasso, Jr.
Schenectady

Joseph M. Curtin
Saratoga Springs

John F. Niles
Plattsburgh

Edgar G. Purcell
Glens Falls

Ric̲ ̲ d D. Wickerham
Schenectady

*Sixth District*

James L. Chivers
Binghamton

Ellen L. Coccoma
Oneonta

Thomas C. Emerson
Norwich

Leonard A. Govern
Walton

Peter W. Mitchell
Cazenovia

John J. Ryan, Jr.
Elmira

John A. Stevens
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

**CONFIDENTIAL**

(518) 285-8350
FAX (518) 474-0389
ad3cops@courts.state.ny.us

May 4, 2007



Re:  **Notice of Disciplinary Action**

Dear ▮▮▮▮▮▮

The Committee on Professional Standards, Third Judicial Department, has completed its investigation regarding the inquiry of ▮▮▮▮▮▮ Esq.

Based upon the inquiry, your replies thereto and investigation by the Committee staff, the Committee has determined your professional conduct was improper in the following respects:

You were the attorney of record for ▮▮▮▮▮▮ in litigation commenced in New York.  For your efforts you received a fee of five percent of the sum collected which totaled ▮▮▮▮▮

When questioned whether you maintained a law office in New York for the ▮▮▮ litigation, you initially asserted that you opened a post office box in New York and made arrangements with your brother-in-law to use a room in his building if necessary to meet with clients.  Upon further questioning you acknowledged that your law office address was a mailbox in a UPS store, the telephone number on your pleadings automatically connected to ▮▮▮▮▮▮ in the State of ▮▮▮ and your brother-in-law's building was a car wash.



Page Two

In 50 to 100 cases you permitted your husband, who is not admitted to practice law in the New York, to sign your name to pleadings and the certification required by 22 NYCRR 130-1.1-a. On other occasions a pdf of your signature was inserted into documents. In none of these cases did you inform the court that you had not signed the original attorney certification.

Of the ████ lawsuits your commenced on behalf of ████ in New York, you stated you reviewed the electronic file prepared by ████ to verify that the data accurately conformed to the information in the summons and complaint. You only disapproved four of these matters, with those disapprovals occurring on the last day you worked on ████ files. A random sampling of you approval process disclosed the following review efforts:

> 5/21/05 - 38 files in 26 minutes
> 5/23/05 - 62 files in 27 minutes
> 7/04/05 - 55 files in 26 minutes.

While you signed a consent to change attorneys on May 24, 2006, pursuant to which a ████ firm became attorney of record in all ████ matters, a representative of the client did not sign the consent.

Such conduct is violative of Disciplinary Rule 1-102(A)(4)(5) and (7) of the Code of Professional Responsibility, Judiciary Law §470 and 22 NYCRR 130-1.1(a), copies of which are enclosed.

You were advised by letter of April 30, 2007 of the intention of the Committee to admonish you for the foregoing misconduct. Since you have failed to show cause why such admonition should not issue pursuant to Section 806.4(c) of the Rules of the Appellate Division, Third Department, you are hereby admonished for the foregoing acts of professional misconduct.

You may file a motion for review of this letter of admonition with the Appellate Division, on notice to the chief attorney, within 30 days of the date of mailing of the Committee's determination.



Page Three

Enclosed for your information is a copy of the letter sent to ██████ advising that we are closing our file in this matter.

Please note, your conduct as noted above may be brought to the attention of the Committee or the Court should subsequent acts of professional misconduct be reviewed by the Committee.

The Committee takes note of your statement that you are prepared to resign as an attorney in the State of New York immediately upon conclusion of this investigation, assuming it does not result in a disciplinary proceeding. This file is being disposed of by the within admonition based upon that understanding and this entire matter will be re-opened and consideration will be given to the commencement of a disciplinary proceeding if you do not proceed accordingly before the Appellate Division Second Department within 30 days of the date hereof. A copy of your resignation application is to be provided to this committee.

Very truly yours,

Philip S. Capofera, Chairperson
Committee on Professional Standards
Third Judicial Department
PSC/MSO/ch
Enclosures
Certified Mail Return Receipt Requested
and Regular Mail

**State of New York**
Supreme Court, Appellate Division
Third Judicial Department
Committee on Professional Standards
40 Steuben Street, Suite 502
Albany, NY 12207-2109

*http://www.nycourts.gov/ad3/cops*



**CONFIDENTIAL**

(518) 285-8350
FAX (518) 474-0389
ad3cops@courts.state.ny.us

October 11, 2007

Philip S. Caponera
Chairperson

*Third District*

John R. Casey
Albany

William J. Keniry
Albany

Alfred B. Malnetti
Kingston

Peter E. Platt
Colonie

Gail B. Rubenfeld
Monticello

*Fourth District*

Vincent Capasso, Jr.
Schenectady

Joseph M. Curtin
Saratoga Springs

John F. Niles
Plattsburgh

ar G. Purcell
Glena Falls

Richard D. Wickerham
Schenectady

*Sixth District*

James L. Chivers
Binghamton

Ellen L. Coccoma
Oneonta

Thomas C. Emerson
Norwich

Leonard A. Govern
Walton

Peter W. Mitchell
Cazenovia

John J. Ryan, Jr.
Elmira

John A. Stevens
Ithaca

Mark S. Ochs
Chief Attorney

Michael Philip, Jr.
Deputy Chief Attorney

Geoffrey E. Major
Michael K. Creaser
Michael G. Gaynor
Steven D. Zayas
Staff Attorneys

Joseph L. Legnard
Vincent M. Tepedino
Investigators

Re:   **Inquiry of** ███████████████

Dear ██████████

The Committee on Professional Standards considered the above-mentioned inquiry at its September 21, 2007 meeting and determined there was insufficient evidence of professional misconduct on which to base any disciplinary action pursuant to the Rules of the Appellate Division, Third Judicial Department governing the conduct of attorneys.

However, the Committee took cognizance of the fact that you have no partners in New York but you practice law in this state as a PLLC filed under the name ███████████. Prior to that, you practiced under the name ███████████ listed on your letterhead and were incorporated as ███████████████ is the surname of your ██████ law partner, who is not licensed to practice in New York. ███████████████ are also not licensed to practice in New York.

You do not lease office space or meet with clients in New York. You have permission to use an office in the ██████████ Building leased by ██████████ but you have no desk or telephone in that office and do not regularly receive correspondence at that address.

This letter of education is issued to you pursuant to Section 806.4(c) of the rules of the Appellate Division, Third Department, for the purpose of calling your attention to

Page 2
October 11, 2007

Disciplinary Rules 1-102(A)(5) and 2-102(B),(C) of the Code of Professional Responsibility, Judiciary Law §470 and Matter of Marin, 250 A.D.2d 997 (3d Dep't 1998), copies of which are enclosed. This letter remains a part of this Committee's records and may be considered in the event of future investigation by the Committee.

We enclose for your information a copy of the letter sent to ▓▓▓▓▓▓ advising that we are closing our file in this matter.

Very truly yours,

Philip S. Caponera, Chairperson
Committee on Professional Standards
Third Judicial Department
PSC/GEM/ss - Enclosures
Regular and Certified Mail- Return Receipt Requested

# Exhibit L

# ANNUAL REPORT

OF THE

# ATTORNEY GENERAL

OF THE

## STATE OF NEW YORK

## For the Year Ending December 31, 1917

MERTON E. LEWIS
Attorney General

TRANSMITTED TO THE LEGISLATURE JANUARY 9, 1918

## 65548

ALBANY
J. B. LYON COMPANY, PRINTERS
1918

thereof be within the State of New York, and be performed by the Federal food board for this State.

Dated, Albany, N. Y., December 8, 1917.

MERTON E. LEWIS,
*Attorney-General.*

TO THE NEW YORK STATE FOOD COMMISSION.

---

ATTORNEY-AT-LAW — LOSS OF RIGHT TO PRACTICE THROUGH ALIENAGE BY
MARRIAGE — JUDICIARY LAW, SECTIONS 466, 468, 470 — RULES OF THE
COURT OF APPEALS — CONSTITUTION, ARTICLE III, SECTION 1.

An attorney admitted to practice in New York State who becomes an
alien by marriage, thereby loses her right to practice in the courts of
this State.

## OPINION

There can be no controversy over the fact that an American woman by marrying an alien thereby takes the nationality of her husband and loses her United States citizenship (34 U. S. Stat. 1228; Mackenzie v. Hare, 239 U. S. 299). It has been similarly by statute provided and by the courts judicially determined that American citizenship is a prerequisite to admission to the practice of the law in New York State. For instance, rule III of the Court of Appeals for the Admission of Attorneys and Counsellors at Law requires that persons to be admitted to the Bar by examination must prove by affidavit their United States citizenship. While rule II of the Court of Appeals does permit the admission to practice in this State " of a person admitted to practice and who has practiced five years in another country whose jurisprudence is based on the principles of the English common law ", such a person must however possess " all other qualifications required by these rules " among which, we have seen, is citizenship in the United States required by rule III. That is to say, experience at a foreign Bar does not alone make a person eligible to admission to our courts, but such person must before admission have become an American citizen (Matter of O'Neill, 90 N. Y. 584; Matter of Maggio, 27 A. D. 129, 130). Furthermore the legislature has by statute established the conclusion above stated by requiring in § 468 of the Judiciary Law that a person

admitted to the Bar by the Appellate Division must, prior to entering upon the practice of the law, register with the Court of Appeals and file an oath in which he states he is " a citizen of the United States."

All the qualifications for the office of attorney at law in this State are continuing qualifications, and if a person after admission to practice lose one of the essential qualifications his right to practice is gone. Upon admission an attorney takes the constitutional oath of office which is a continuing obligation and binds the attorney at all times " to support the Constitution of the United States and the Constitution of the State of New York " (Constitution, art. XIII, § 1; § 468, Judiciary Law.) This the lady in question can no longer do owing to her newly assumed allegience to a foreign country. She cannot hold the office of attorney at law in this State except she hold the same subject to all the duties prescribed for that office, and she has now voluntarily placed it beyond her power to uphold the Constitution of the United States and the Constitution of the State of New York.

An analagous qualification, that of residence within the State of New York, is likewise a continuing qualification, and an attorney at law for New York State acquiring a residence in another State *ipso facto* loses his right to practice here (Richardson v. Brooklyn City R. R. Co., 22 How. Pr. 368). A legislative interpretation to the same effect is found in § 470 of the Judiciary Law which permits attorneys admitted to practice in New York State to reside in an adjoining State, thereby connoting that except for the specific legislative permission such attorneys would have lost their right to practice in New York.

Both residence within the State and United States citizenship are fundamental qualifications for admission to the practice of the law and for the continuation of such practice in the State of New York. A motion before the Appellate Division to strike the lady's name from the rolls would be quite proper in order that the records be correctly preserved.

Dated, December 10, 1917.

MERTON E. LEWIS,
*Attorney-General.*

To D. J. PIOSELLI, *New York City.*

**Exhibit M**

DANIEL C. BRENNAN*

Albany

# Repeal Judiciary Law § 470**

To appear as attorney of record in the courts of New York State, a nonresident attorney admitted to the New York State Bar must maintain an office for the practice of law in New York State, according to Judiciary Law § 470 and relevant caselaw. This office requirement has come under increasing scrutiny in recent years because of the increasing numbers of nonresident attorneys being admitted to the New York State Bar, successful attacks on residency requirements for admission to State Bars (requirements often justified on grounds similar to justifications that might be proffered in support of § 470), and ambiguities in the statute's purpose and wording. This article examines the continuing utility of § 470 and whether it should be amended or repealed. Judiciary Law § 470 states, in full:

A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office

for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state.

## Legislative History

The first predecessor to Judiciary Law § 470 was enacted in 1862 (Chapter 43). The language at that time read as follows:

Any regularly admitted and licensed attorney of the Supreme Court of this State, and whose only office for the transaction of law business is within this state, may practice as such attorney in any of the courts of this State notwithstanding he may reside in a state adjoining the state of New York, provided that this act shall extend only to attorneys who have been heretofore admitted to practice in the Courts of this State, and who reside out of the State of New York, and that service of

---

* The author is a staff attorney with the Appellate Division, Third Department.
**The views expressed in this article are those of the author only and are not to be attributed to the Supreme Court, Appellate Division.

papers which might according to the practice of the Courts of this State, be made upon said attorney at his residence, if the same were within the state of New York, shall be sufficient if made upon him by depositing the same in the post office in the city or town wherein his said office is located, directed to said attorney at his office, and paying the postage theron; and such service shall be equivalent to personal service at the office of such attorney.

The primary purpose of chapter 43 was to carve out an exception to the general rule that an attorney could not practice in the New York State courts unless he was a resident of New York State.[1] The immediate cause of its enactment appears to have been the case of *Richardson v. Brooklyn City and Newton Railroad Company*[2] decided by Brooklyn Special Term in February, 1862, just one month prior to the enactment of chapter 43. In *Richardson,* an attorney who had been admitted to practice in New York State but thereafter moved to New Jersey was not permitted to appear on behalf of the defendants in the matter pending before Special Term. While Special Term was applying the general rule of residency as a prerequisite for practice in New York State courts, it went out of its way to express a rationale for the residency requirement, specifically to insure that attorneys could not evade the service of papers or court supervision over their conduct through attachment or contempt of court. Special Term's reasoning is instructive:

An attorney does not therefore, cease to be an attorney of the court, or forfeit his right to appear and practice therein by removing from the state.

But the court has always required that an attorney should reside within the state. The second rule requires that an applicant for admission to the bar should reside within the district in which he applies. Rule 5 requires the attorney to add his place of residence to his name on all process or papers, and if he neglects to do so, authorizes service upon him by mail, according to the best information which can be obtained as to his residence. Section 409 of the Code regulates the manner of

serving papers. It provides that service may be made upon an attorney at his office, by leaving the paper with the person in charge; or if there be no person in the office, by leaving it in a conspicuous place in the office; and if the office be not opened to admit of such service, by leaving it at the attorney's residence with some person of suitable age and discretion. These various provisions, and especially the latter, would be rendered nugatory if attorneys who resided out of the state were permitted to practice. An attorney might keep his office closed and empty, and, if he had no residence within the state, might entirely evade the service of papers, and baffle his adversary and the court.

Attorneys are liable to attachment, and to punishment for contempt of the court, for the commission of various acts of misconduct. Those remedies may also be evaded, if they are non-residents.

If an attorney may have a residence out of the state, and still practice in its courts, he may also dispense with an office, since there is no more positive requirement that he should keep an office, than there is that he should have a residence within the state. An attorney might thus, as I have intimated, completely baffle his opponents, and evade the control of the court; and, though guilty of malpractice and misconduct, be a constant fugitive from justice.
• • •

The attorney who served notice of appearance, and an answer for the defendants, has not ceased to be an attorney by removing from the state, but he has ceased to have the right to practice, as long as his non-residence continues; and it makes no difference, nor can we create a distinction between a residence in New Jersey and one in the most remote part of the Union. Either is out of the jurisdiction of the court, and defeats the objects of its rules and practice.

Viewed against the *Richardson* case, the genesis of chapter 43's language and purpose becomes clear. It can be viewed, essentially, as an accommodation of "commuters," New York State lawyers who move to New Jersey (or another adjoining state) but still maintain their office for the practice of law in New York State. Its narrowness is evidenced by its application only to attorneys admitted to the New York State Bar prior to its enactment, only to attorneys who resided in adjoining States rather than any State, and only to attorneys whose only

office for the transaction of law business was within New York State. Also, the statute, by speaking to only "practice...in any of the courts of this State" does not seem concerned with attorneys practicing generally, but rather with attorneys appearing as attorneys of record in litigated matters. Finally, by allowing service by mail at the attorney's in-State office, the statute answers the problem of a closed office raised in the *Richardson* case.

The adjoining State phrase was given effect soon after the enactment of chapter 43 when, in the 1865 case of *Hommedieu v. Stowell.*[3] Special Term specifically disallowed the name of a member of the New York State Bar resident in Wisconsin from being used as plaintiff's attorney in enforcing a judgment. Special Term distinguished the adjoining State situation.

In 1866, chapter 175 re-enacted chapter 43 with some cosmetic and some substantive changes. Substantively, the scope of the exception carved out by chapter 43 was broadened to include not only attorneys who had their "only" law office in New York State but also attorneys "whose office" was in New York State, presumably to encompass the situation where an attorney might have offices in New Jersey and New York. Also, that portion of chapter 43 which restricted its application only to attorneys admitted before its enactment was deleted; thus, chapter 175 applied to all attorneys, regardless of their date of admission. Cosmetically, chapter 175 changed the term "attorney" to "attorney or counselor."

In 1876, chapter 175 was re-enacted as § 60 of the new Code of Civil Procedure with the wording slightly changed but with little, if

---

[1] See, *Rosenberg v. Johns-Manville Sales Corp.,* 99 Misc. 2d 554 (Supreme Court, New York County, 1979); Opinions of the Attorney General, 1917, page 364.

[2] 22 How Prac 368.

[3] 18 Abb Prac 336.

any, substantive effect; it was re-enacted again in 1877 without change.

In 1909, when the Judiciary Law was first enacted, the Code of Civil Procedure § 60 was split in two. That portion of it dealing with service of paper upon an attorney residing in an adjoining state continued as § 60. However, the remainder became Judiciary Law § 470: it consisted of the first sentence of § 60 as enacted in 1876 and read exactly as Judiciary Law § 470 reads today. Thus, Judiciary Law § 470 has remained unchanged since 1909 (including through a 1945 re-enactment). However, in the 1920 revision of the Code of Civil Procedure resulting in enactment of the Civil Practice Act, the provision dealing with service of paper upon an attorney residing in an adjoining State (CCP § 60) was deleted.

## Interpretation

Since 1909, relatively few cases have been decided under Judiciary Law § 470.[4] With respect to the word "office" it has been held that the office can only be established by a firm with a partner, rather than an associate, admitted to the New York State Bar.[5] Also, the residence of one partner in New York may not relieve the firm of the office requirement if that partner is not the firm attorney involved in the pending litigation in New York.[6] The "minimum facility" acceptable as an office has also been the subject of litigation. In *Estate of Neufeld*,[7] a case litigated in the Bronx, the "office" of the nonresident counsel was a single converted bedroom in a rural house in Herkimer County in Northern New York State on a working farm; the telephone and number of the "office" were shared with the residents of the house, the counsel's mother, brother and sister (and her husband and children). The counsel's firm paid $100 a month to the counsel's mother as rent and for a portion of the telephone bill. The firm also employed the counsel's



sister at a salary of approximately $25,000 a year for keeping the firm's books and overseeing the Herkimer County office. The counsel testified she spent about 75 to 100 days a year at the New York office. The Surrogate did not actually decide the issue but did note: "***the totality of the proof clearly indicates that the facility in Herkimer County, although more than a post office box, is less than a classic law office. It is equally clear that it is no less than what numerous New York lawyers utilize as the locale from which they practice law. However, it is not clear that, while less than a classic operating law office, that is does not comply with the minimal language of the statute." The Surrogate also noted the many definitional questions the office requirement of Judiciary Law § 470 raises, such as: does desk space in an office suite and a name on a door satisfy the statute? How much time should an attorney have to spend in his New

York office if he also has an office in an adjacent State? Must the office have a full time secretary or other employee to oversee the office when the attorney is in court or elsewhere? and, is a lawyer domiciled in another State who has a secondary residence in New York still required to maintain an office to be eligible for practice in New York State? The "minimal facility" question was also recently addressed in another but similar context by the Supreme Court of Iowa in *Matter of Arthur*.[8] In Iowa, a requirement for admis-

---

[4] *See.* e.g., *Park Lane Commercial Corp. v. Travelers Ind. Co.*, 50 Misc. 2d 231 (1966).

[5] *Rosenberg v. Johns-Manville Sales Corp., supra.*

[6] *See. Estate of Neufeld.* Surrogate's Court, Bronx County, published at page 15, New York Law Journal, December 18, 1986.

[7] *Supra.*

[8] 415 NW 2d 168 (November, 1987). See, also, *Austria v. Shaw* (New York County Supreme Court, published in New York Law Journal, July 3, 1989, page 24): the following

sion to practice is demonstration of a bona fide intention to open an office for the practice of law in Iowa. The Iowa Supreme Court stated that such an office must be more than a mail drop and should be a place where an attorney practices, by being there personally a substantial and scheduled portion of time.

In *White Riv. Paper Co. v. Ashmont Tissue*,[9] two other interpretative questions were addressed. First, that court found that Judiciary Law § 470 should require an office for the practice of law for *all* nonresident members of the New York State Bar, not just nonresidents in "adjoining" states; it further held that if the office requirement was not applicable to residents of non-adjoining States it is unconstitutional. Second, the court clearly held § 470 applicable to nonresident attorneys who wished to act as "attorney of record" but specifically left open what other legal practice such a nonresident member of the New York State Bar might engage in before running afoul of the office requirement.

A recent example of the kind of "catch-22" situation application of Judiciary Law § 470 can result in is demonstrated by the September, 1987, unpublished decision in *United States Ice Cream v. Carvel* (Westchester County Supreme Court). In that case, former New Jersey Governor Brendan T. Byrne, who had been admitted to the New York State Bar in 1983, and who sought to represent the defendant was disqualified because he did not have a New York office; further, he was denied permission to represent the defendant *pro hac vice* because he was a member of the New York State Bar. This result seems somewhat at variance with the statement in *Estate of Neufeld*[10] that the entire office issue "could have been avoided had counsel simply represented herself as an attorney licensed to practice in New York with an office in Englewood, New Jersey, who seeks leave of court to represent her

client in [the] matter."

The uncertainties of interpretation under Judiciary Law § 470 are also reflected in a response from the Admissions Office of the Third Judicial Department to an inquiry about its effect from a New Jersey nonresident member of the New York State Bar. The reply, drafted to conform with discussion of the issue by the Advisory Committee on Admission of Attorneys,[11] simply referred the New Jersey attorney to the wording of § 470 and cases construing it and further stated: . .

> On the office requirement in general, it is the present policy of [the Appellate Divisions] that a nonresident attorney who is admitted to practice in [New York] State may not appear [in New York State] as an *attorney of record* for a party unless he or she maintains an office for the practice of law in New York State.

## Constitutionality

The constitutionality of Judiciary Law § 470 was upheld in 1981 in *White Riv. Paper Co. v. Ashmont Tissue*[12] on the grounds that "the local office requirement for nonresidents does not result in disparate treatment and the fact that litigation can be more effectively resolved without a trial if there is a local presence justifies such a mandate."

Since *White River* was decided, however, the United States Supreme Court has handed down a series of decisions striking down as unconstitutional various residency requirements for admission to the State Bar.[13] Prior to the United States Supreme Court decisions, the New York State Court of Appeals, in 1979, in *Matter of Gordon*[14] had declared unconstitutional New York's residency requirement for admission. The import of the Supreme Court and Court of Appeals decisions on the instant discussion is three-fold. First, they provide a framework for analyzing the constitutionality of Judiciary Law § 470. Second, they remove one of the presumptions existing at the time §

470 was enacted, namely that residency was a prerequisite to membership in the New York State Bar. Third, the rationales proffered to justify a residency requirement for admission to the Bar parallel the rationales which would probably be offered in support of § 470.

The analytical framework provided by *Matter of Gordon* and the Supreme Court cases begins with the proposition that the practice of law is an activity protected under the Privileges and Immunities Clause of the United States Constitution (Art. 4, § 2, cl. 1). In general, the clause " 'guarantees to citizens of State A' " the privilege " 'of doing business in State B on terms of substantial equality with

was found to constitute an office under Judiciary Law § 470; payment of a small monthly rent to a Manhattan attorney in exchange for desk space in the attorney's office, use of the attorney's secretarial staff to take telephone messages, listing of the renting attorney's name on the door of the office and on the office attorney's stationery as "of counsel." It should also be noted that this decision does not explicitly distinguish between the practice of law in New York and appearing as attorney of record in the courts in New York as do decisions such as *White Riv. Paper Co. v. Ashmont Tissue* (110 Misc. 2d 373).

[9] 110 Misc. 2d 373 (Civil Court of the City of New York, Special Term, Bronx County, 1981).

[10] *Supra.*

[11] "Formerly the Committee to Regularize Bar Admission Procedures; established in 1972 by the Administrative Board of the Judicial Conference; consists of the chairman of the State Board of Law Examiners, one judge from the Court of Appeals, and one justice and relevant admissions office personnel from each of the four Appellate Divisions.

[12] *Supra.*

[13] *See, Barnard v. Thorstenn,* ____ US ____, 57 USLW 4316 (March 6, 1989); *Supreme Court of Virginia v. Friedman,* ____ US ____, 108 S. Ct. 2260 (June 20, 1988); *Frazier v. Heebe,* ____ US ____, 107 S. Ct. 2607 (June 19, 1987); *Supreme Court of New Hampshire v. Piper,* 470 US 274 (March 4, 1985); *see also,* Withered, Jerome L., "The Future of Reciprocity Requirements: What's Left After *Friedman*?", 57 The Bar Examiner 4 (August, 1988).

[14] 48 NY 2d 266.

the citizens of that State.' "[15] The clause does not preclude discrimination against nonresidents where (1) there is a substantial reason for the difference in treatment and (2) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.[16] In deciding whether the substantial relationship exists, the court may consider whether less restrictive alternatives are available.[17]

Other than in *White River,* the constitutionality of § 470 or similar statutes has not been squarely addressed, except peripherally. For example, in a concurring opinion in *Supreme Court of New Hampshire v. Piper,*[18] Justice White stated that he would postpone to another day whether a State may "constitutionally condition membership" in a State Bar "upon maintaining an office for the practice of law" in the State.[19] In *Frazier v. Heebe,*[20] the Court, in exercising its supervisory powers over the Federal District Courts (as opposed to a Constitutionally-based decision), and in declaring invalid a residency and in-State office requirement for membership in the District Court bar, found an in-State office requirement "unnecessary and irrational" because (1) it was not imposed on resident attorneys, who might have their only office out of the State; (2) maintenance of an office does not warrant the assumption that an attorney is more competent or knowledgeable than an out-of-State member of a Bar; and (3) an in-State office requirement does not guarantee geographical proximity of an attorney of record (for example, in New York State, an office might be in Buffalo while the litigated matter might be in New York City). However, in the later case of *Supreme Court of Virginia v. Friedman,*[21] in which the Supreme Court declared unconstitutional Virginia's residency requirement for admission without examination, the Court seems, in *dicta,* favorably disposed towards an office requirement.

First, the Court stated that Virginia's requirement that nonresident attorneys who are admitted on motion to the Virginia Bar show their intention to maintain an office and a regular practice in the State is an adequate incentive (as opposed to a residency or bar examination requirement) to ensure that such attorneys have a substantial stake in the practice of law in Virginia and that they will keep abreast of changes in the law and fulfill their "civic duties."[22] Second, the Court stated that the office requirement is a less restrictive alternative to the unconstitutional residency requirement to insure compliance with Virginia's full-time practice requirement.

## Rationales for an In-State Office

### I. Attorney Availability

One of the most often-cited rationales for a residency or office requirement, either for admission to a Bar or practice within a State, is the geographical availability of an attorney for trial practice, especially for such things as urgent motion calls, pretrial conferences, meeting trial calendars, settlement conferences and meetings.[23] As Justice Rehnquist stated, in dissent, in *Supreme Court of New Hampshire v. Piper:*[24]

> The Court admits that even in the ordinary course of litigation a trial judge will want trial lawyers to be available on short notice; the uncertainties of managing a trial docket are such that lawyers rarely are given a single date on which a trial will begin; they may be required to "stand by" — or whatever the local terminology is — for days at a time, and then be expected to be ready in a matter of hours, with witnesses, when the case in front of them suddenly settles. A State reasonably can decide that a trial court should not have added to its present scheduling difficulties the uncertainties and added delays fostered by counsel who might reside 1,000 miles from [the State].

To date, "availability" has not sufficed as a rationale for upholding

residency as an admissions prerequisite and seems less than persuasive as a rationale for an office practice requirement. First, modern fast, efficient transportation and communication systems lessen the need for geographical proximity.[1] Second, as noted by the Supreme Court in *Supreme Court of New Hampshire v. Piper:*[26] "The trial court, by rule or as an exercise of discretion, may require any lawyer who resides at a great distance to retain a local attorney who will be available for unscheduled meetings and hearings." Of course, use of local counsel may have a downside as well: it could result in duplication of some efforts and drive up litigation costs.[27] Third, an office requirement does not necessarily insure geographical proximity; the nonresident attorney living in New Jersey may establish an office in New York City but wish to appear as attorney of record in litigation in Buffalo. Thus, the use of State boundaries to insure geographical proximity seems somewhat arbitrary; it should be noted, though, that the court in *White River* specifically stated that the "use of State borders to satisfy a requirement of local presence is not

---

[15] *Supreme Court of New Hampshire v. Piper, supra,* at 280, quoting *Toomer v. Witsell,* 334 US 385, 396.

[16] *Supreme Court of New Hampshire v. Piper, supra,* at 284.

[17] *Id.; see also, Matter of Gordon, supra,* at 274.

[18] *Supra.*

[19] *Id., at 289.*

[20] *Supra.*

[21] *Supra.*

[22] *Id.,* at 2266.

[23] *See, Aronson v. Ambrose,* 479 F. 2d 75 (Third Circuit, May 1973); *White Rio. Paper Co. v. Ashmont Tissue,* 110 Misc. 2d 373, *supra.*

[24] *Supra,* at 296.

[25] *Frazier v. Heebe, supra,* at 2613.

[26] *Supra,* at 287.

[27] *See, Frazier v. Heebe, supra,* at 2614, n. 12; *but see, Barnard v. Thorstenn, supra,* at 4318, 4319.

24

improper as it is obviously not an arbitrary determination."[28] Fourth, sanctions rather than geographical proximity can be used to insure promptness.[29]

Geographical proximity can also insure that attorneys will appear on short notice as court-appointed counsel for criminal defendants. On the other hand, in *Barnard*, the Supreme Court noted that, "Petitioners offer no persuasive reason why the strong interests in securing representation for indigent criminal defendants cannot be protected by allowing an appointed nonresident attorney to substitute a colleague in the event he is unable to attend a particular appearance."[30] Also, although the Supreme Court has recognized "that a State can require nonresidents to share in the burden of representing indigent criminal defendants as a condition for practice before the Bar" in *Barnard* it is also noted that forcing an attorney to represent such defendants, irrespective of his expertise, may be counterproductive.[31]

## II. Service of Process on Attorneys

Another often cited rationale for an office requirement is to insure that attorneys can be served with process, whether in their role as attorney for a party in a litigated matter or in disciplinary/malpractice matters.[32] It clearly was one of the most important rationales prompting the enactment of Judiciary Law § 470 in its orginal form.

An office in the State of New York may not be necessary to insure service of process. Attorneys representing clients in pending litigation in New York may be served with papers by mail at an address designated by the attorney for that purpose or at his or her last known address.[33] Presumably, such "addresses" will be in New York because (1) most members of the New York State Bar either reside or have an office in New York State and (2) if the attorney is a nonresident he

must have an office in New York State to appear as attorney of record, pursuant to § 470. Other than because of § 470, however, it is not clear that an attorney should not be allowed to, in general, designate an out-of-state office or residence for receipt of service of mailed papers. Whether papers, for example, mailed in New York City, are received at an attorney's office in Buffalo or Hawaii would not seem to affect the issue of whether they have been properly served.

Requiring a nonresident attorney to maintain an office in New York State can facilitate service of papers on short notice, i.e., where reliance on the mail might be too slow. However, because of provisions such as CPLR 2214(d) which confers broad authority on a court "in a proper case" to permit service of motion papers on short notice, by order to show cause, and to specify the "manner" of such service (such as overnight mail, telegraph, telephone, FAX or some combination thereof), the office requirement probably cannot stand solely on the ground of facilitation of service of papers on short notice.

An office requirement can also facilitate service of papers (and summonses) on attorneys accused of malpractice, or whom a court wishes to hold in contempt, or for the institution of disciplinary proceedings. However, since every applicant for admission to the New York State Bar who neither resides nor is employed full-time in New York State must designate the Clerk of the Appellate Division admitting him or her as agent for service of process "in any action or proceeding thereafter brought against the applicant and arising out of or based upon any legal services rendered or offered to be rendered by the applicant within the State"[34] an effective alternative to an office seems to exists.[35,36]

### III. Ethical Supervision

Another possible rationale (for

requiring nonresident attorneys to maintain an office in New York State to appear as an attorney of record might be to enhance the ethical behavior and supervision of such attorneys. However, because all attorneys admitted to practice in the State of New York are under the disciplinary jurisdiction of at least the Appellate Division which admitted them[37] and nonresidents must also designate the Clerks as agents for service of process in such matters, an in-State office is hardly necessary to supervise the ethical behavior of nonresident attorneys. Further, as noted in *Supreme Court of New Hampshire v. Piper*: "...there is no reason to believe that a nonresident lawyer will conduct his practice in a dishonest manner. The nonresident lawyer's professional duty and interest in his reputation should provide the same incentive to maintain high ethical standards as they do for resident lawyers.[38]

## IV. Familiarity With Local Rules and Procedures

In *Supreme Court of Virginia v. Friedman*,[39] the Supreme Court stated that Virginia's requirement

---

[28] *Supra*, at 378.

[29] *Frazier v. Heebe*, *supra*, at 2613.

[30] *Barnard v. Thorstenn*, *supra*, at 4319.

[31] *Id.*

[32] *See*, e.g., *Matter of Fordan*, 5 Misc. 2d 372 (1956).

[33] *See*, CPLR 2103(b)(2).

[34] Section 520.9(a) of the Rules of New York Court of Appeals on Admissions of Attorneys.

[35] *See also, Matter of Gordon, supra*, at 274.

[36] It should be noted that such a designation of agent may be revoked by the applicant if he becomes employed full-time in or becomes a resident of New York but that the rules of the Court of Appeals do not seem to address the situation where such an attorney ceases his residence and employment in New York after an effective revocation.

[37] 22 NYCRR 603.1, 691.1, 806.1, 1022.1.

[38] *Supreme Court of New Hampshire v. Piper, supra*, at 285-286.

[39] *Supra*.

that nonresident attorneys admitted on motion in that State show their intention to maintain an office and a regular practice in the State goes a long way towards insuring that such attorneys will have adequate incentives to remain abreast of changes in the local law. On the other hand, in the previous case of *Frazier v. Heebe*,[40] the Court stated that it was unwilling to assume that a nonresident lawyer — any more than a resident — would disserve his clients by failing to familiarize himself or herself with local rules. Further, while maintenance of an in-State office may be an economic incentive to keep abreast of local law, the office required under § 470 as thus far interpreted may be so minimal as to vitiate the economic incentive aspect. Also, there are other less burdensome alternatives available to achieve this goal, such as mandatory CLE, cited favorably in both *Frazier* and *Friedman*.

### V. Pro Bono Work

An in-state office for nonresident attorneys might also encourage them to engage in their fair share of pro bono activity. However, it would seem that a more direct route to this goal would be to mandate pro bono work for all lawyers in New York State, a route the Supreme Court has favorably noted in *Supreme Court of New Hampshire v. Piper*[41] and *Supreme Court of Virginia v. Friedman*.[42]

### VI. Economic Justification

In *White Riv. Paper Co. v. Ashmont Tissue*,[43] the court offered an economic justification for burdening nonresident attorneys with an office requirement by speculating that, if no office or New York locus was mandated, the nonresident attorney might have an advantage over the resident attorney through avoidance of local New York taxes and the costs of a New York office (as opposed to an office in a possibly less costly state). On the other hand, if

New York is going to continue to advocate a liberal admissions policy, it might be economically counterproductive to require lawyers to maintain offices in New York as well as the attorney's "home" State. The economic factor might also prevent clients from retaining a member of the New York Bar particularly suited to represent that client merely because the attorney could not afford to establish or maintain more than one office.

### Past Efforts to Amend § 470

There have been previous proposals to amend or repeal § 470, largely initiated by the Advisory Committee on Admission of Attorneys. S 8336 (1986), for example, would simply have clarified but reenacted the office requirement. Repeal of § 470 or its replacement with a positive statement that no office should be required for a nonresident attorney to appear as an attorney of record have also had their advocates. Adoption of court rules to replace § 470's office requirement with simply a "local address for service" has also been informally proposed.[44]

The need for legislative review of § 470 has been noted in a number of court decisions, including *Rosenberg v. Johns-Manville Sales Corp.*,[45] *White Riv. Paper Co. v. Ashmont Tissue*,[46] and *Estate of Adolph Neufeld*.[47]

### Conclusion

It is submitted that Judiciary Law § 470 should be repealed. First, its legislative history reveals that it is an anachronistic vestige of an era when only residents could be admitted to the New York State Bar. Since nonresidents are now freely admitted from around the world, it is submitted that, at a minimum, the office requirement, being a geographical restriction, runs counter to a liberal admissions policy. Second, § 470 is somewhat unclear on its face: What is the extent of the office re-

quired? does it restrict practice generally or only appearances by nonresidents as attorney of record? Legislative clarification seems to be warranted. Third, recent United States Supreme Court decisions striking down residency requirements for admission to a Bar as unconstitutional bring into question the constitutionality of an office requirement for practice when the requirement is applied solely to nonresidents. Finally, it is submitted that the various rationales that can be offered in support of retaining Judiciary Law § 470's office requirement in its present form are less than persuasive.

[40] *Supra.*

[41] *Supra,* at 1280.

[42] *Supra,* at 2267.

[43] *Supra.*

[44] *See, e.g.,* Southern District of New York, Bankruptcy Rule 4(a).

[45] *Supra.*

[46] *Supra.*

[47] *Supra.*

# Exhibit N

**NEW YORK STATE BAR ASSOCIATION**
Professional Ethics Committee Opinion

### OPINION

In N.Y. State 92 (1968), this committee laid down guidelines for signs.  DR 2-102 (A)(3) provides that a lawyer shall not use office signs except a dignified sign on or near the door of the office and in the building directory identifying the law office. This committee affirms N.Y. State 92 as applicable under the Code of Professional Responsibility.

The only justified function of a sign is to make it possible for clients and prospective clients to locate easily a previously selected lawyer.  The propriety of a sign and its location depend upon the circumstances of each case.

Where a lawyer's office is easily located through its street address, a dignified sign on the building is sufficient.  If a sign near the street is not necessary for locating the lawyer, its only purpose is advertising.  Under some limited circumstances, a dignified sign near the street is proper.  See N.Y. State 92 (1968) relating to rural areas.  In a proper case a lawyer's name could appear on an office directory sign which includes substantially all of the occupants of a multi-office building.

Where a sign is properly situated near the street, it would not be proper to have a second sign on the building. See N.Y. State 92.

Opinion #175 - 3/1/71 (26-70)

Topic:  Firm Name;
Out-of-State Members

Digest:  Whether the name of out-of-state members may be included in the firm name depends upon the facts of each case.

Code*:  DR 2-102(D)
EC 2-11, 3-9

### QUESTION

May a multi-state law firm use for its New York office a name composed of one or more partners who are not admitted to practice in the State of New York?

### OPINION

DR 2-102(D) provides:

"A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction."

**NEW YORK STATE BAR ASSOCIATION**
**Professional Ethics Committee Opinion**

Partnerships may properly be formed among lawyers admitted to prac-
tice in different states, but the name used by such a firm must not
be misleading.  N.Y. State 144 (1970); N.Y. City 684 (1946); N.Y. City
700 (1946); ABA 316 (1967).  Prior to the adoption of the Code it
had been repeatedly held that the inclusion in the firm name of one
never admitted to practice in New York would be improper.  N.Y. City
684 (1946); N.Y. City 698 (1946); N.Y. City 700 (1946); N.Y. City 749
(1950); N.Y. City 786 (1954); N.Y. County 182 (1920); N.Y. County 426
(1954); ABA Inf. 830 (1965); ABA Inf. 1059 (1968); ABA 318 (1967); cf.
N.Y. City 721 (1946).  One reason for this rule was stated in Drinker,

Legal Ethics 205 (1953) as follows:

"The partnership name may not include that of one
not locally admitted, despite explanatory statements on
the letterhead, shingle, etc., since the name used where
no such explanation accompanies it, would imply that all
the named partners were locally admitted."

In view of the language of DR 2-102(D), it is the Committee's
opinion that a multi-state law firm practicing in New York may use
the same name as in other states provided the circumstances are not
such as to cause local use of the name to be misleading. Cf. EC 2-11.

At the same time, a multi-state law firm should not be allowed
to grant local lawyers the right to use the firm name on a basis
analogous to a franchise.  A law firm may not license its name.  Also,
if there is no true partnership relationship with the local lawyer
with a real sharing of profits, liabilities and professional responsi-
bility, use of an out-of-state lawyer's name in the firm name would
be misleading.

To avoid the danger of franchising and the risk of misleading the
public, the Committee is of the opinion that a multi-state law firm
may not use in New York a name composed of one or more lawyers not
admitted to practice in New York unless the local lawyer is a true
partner with a real share in the over-all profits, liabilities and
professional responsibilities of the entire firm.

Opinion #176 - 3/1/71 (62-70)        Topic: Conflicting Interests
                                            Involving Former Attorney
                                            for School District.

                                     Digest: Former attorney for school
                                             district may not represent
                                             citizens group opposed to
                                             policies of newly-constituted
                                             school board.

                                     Code*: DR 9-101(B)
                                            EC 4-5, 9-3

# Exhibit O

**NEW YORK STATE BAR ASSOCIATION**
ONE ELK STREET                    ALBANY NEW YORK 12207

# Committee on Professional Ethics                    NYSBA

Opinion #495 - 10/12/78 (46-78)      Topic:   Firm name; professional
                                              corporation; branch
                                              office.

                                     Digest:  Lawyers operating as
                                              professional corporation
                                              may not maintain branch
                                              office in associate's
                                              name.

                                     Code:    EC 1-5, 2-11, 2-13,
                                              6-6;
                                              DR 1-102(A)(4), 2-102(B),
                                              7-102(A)(8).


### QUESTION


    A group of lawyers are practicing as a professional corpora-
tion under the name "John Doe, P.C." and wish to open a branch
office in another part of town.  The branch will be staffed by
Richard Roe, a lawyer-employee of the corporation, having no
equity interest therein, who was at no time a partner of any pre-
decessor firm.

    Under the circumstances stated, may the corporation open a
branch office in the name "Law Firm of Richard Roe"?


### OPINION


    While it is not the function of this Committee to resolve
issues of law, an appropriate response to the question posed
requires us to observe initially that Section 1512 of the Busi-
ness Corporation Law forbids a professional corporation to use
any word in its title that could not be employed by a partner-
ship engaged in the profession which the corporation is author-
ized to practice.  Generally, conduct which is illegal is con-
sidered to be unethical.  See, EC 1-5, DR 1-102(A)(4) and DR 7-
102(A)(8); see also, N.Y. State 328 (1974).  Thus, if Section
1512 operates to forbid the use of the name Richard Roe as a
matter of law, its use would also be unethical.

    Even if the proposed firm name were not illegal, we believe
that under the circumstances stated, its use would be misleading
and therefore inconsistent with those provisions of the Code of
Professional Responsibility bearing upon firm names.  See, EC 2-11,
EC 2-13, and DR 2-102(B); see also, N.Y. State 445 (1976).

                                                          OVER ---

As explained in EC 2-11:

> "The use of a trade name or an assumed name
> could mislead non-lawyers concerning the
> identity, responsibility and status of those
> practicing thereunder.  Accordingly, a law-
> yer in private practice should practice only
> under a designation containing the lawyer's
> own name, the name of an employing lawyer,
> the name of one or more of the lawyers prac-
> ticing in a partnership, or, if permitted by
> law, in the name of a professional corpora-
> tion for the practice of law, which should
> be clearly distinguished as such ...."

To the same effect is DR 2-102(B) which provides in pertinent
part:

> "A lawyer in private practice shall not
> practice under a trade name, a name that
> is misleading as to the identity of the
> lawyer or lawyers practicing under such
> name, or a firm name containing names
> other than those of one or more of the
> lawyers in the firm, except that the
> name of such a professional corporation
> may contain 'P.C.' or such symbols
> permitted by law ...."

Although a law firm is not prohibited from establishing a
branch office (ABA Inf. 959 [1966]; ABA Inf. 1082 [1968]), its
existence cannot be used as a vehicle for deception.  If there
is no true relationship analogous to that of partners between
the firm's stockholders and the lawyer who is intended to staff
its branch office, the use of that lawyer's name for the branch
office would be misleading.  The relationship to be analogous
to that of a true partnership must include a genuine sharing of
profits, liabilities and professional obligations.  Cf., N.Y.
State 175 (1971) (explaining the elements of a genuine partner-
ship) with N.Y. State 231 (1972) and N.Y. State 344 (1974) (hold-
ing that a lawyer may be a partner of more than one firm under
certain conditions).

Richard Roe has never enjoyed a status analogous to that
of partner in John Doe, P.C. or in any predecessor firm.
Rather, his status is analogous to that of an associate or mere
lawyer-employee.  As such Richard Roe does not share in the pro-
fits, liabilities and professional obligations of the corporation

CONT'D ---

Opinion #495                                                        -3-


to the same extent as those persons who are actually directing
its practice and who in fact will have supervisory authority
and control over his actions.  Cf., EC 6-6 with Business
Corporation Law § 1505 ("professional relationships and liabilities").
Clearly, absent any considerations owing to the corporate form
in which his employers have elected to practice, Richard Roe's
name could not appear in the firm's title.  See, DR 2-102(B).
Notwithstanding the corporate context of the question posed,
we believe that Richard Roe's subordinate position is still of
critical importance and precludes the use of his name for the
firm's branch office.

        For the reasons stated, the question posed is answered in
the negative.


----------

# Exhibit P



LEXSEE



Cited
As of: Dec 15, 2010

[*1]  CA CONSTRUCTION, INC., Plaintiff, -against - 25 BROADWAY OFFICE PROPERTIES, LLC, SUPERIOR MAINTENANCE GROUP, "JOHN # 1" through "JOHN DOE No. # 10", said names being fictitious and intended to designate those persons or entities who have claims under the real property being foreclosed herein, Defendants.

Index No. 100728/09

SUPREME COURT OF NEW YORK, NEW YORK COUNTY

2010 NY Slip Op 30665U; 2010 N.Y. Misc. LEXIS 1591

March 15, 2010, Decided
March 18, 2010, Filed

NOTICE:   THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

CORE TERMS: space, law firm, firm's name, directory, registration, designated, letterhead, ongoing, website, lease, mail

JUDGES: [**1] Alice Schlesinger, J.S.C.

OPINION BY: Alice Schlesinger

OPINION

[*2] SCHLESINGER, J:

Before the Court are motions made by both defendants, 25 Broadway Office Properties, LLC ("25 Broadway") and Superior Maintenance Group ("Superior").

The plaintiff CA was a subcontractor on a project involving this property and is suing for money allegedly still owed to it. 25 Broadway is the owner of the property and Superior, the general contractor.

The motions, brought pursuant to § 470 of the Judiciary Law, asked the Court to dismiss the action claiming counsel for CA, a non-resident lawyer and law firm failed to have a sufficient legal presence in New York State. This statute has been interpreted in the First Judicial Department as requiring such attorney to at least maintain an office in this State for the practice of law. Further, in two cases, *Keenan v. Mitsubishi Estate*, 228 A.D.2d 330, 644 N.Y.S.2d 241, First Dept, 1996 and *Lichtenstein v. Emerson*, 251 AD2d 64, 674 N.Y.S.2d 298, First Dept, 1998, this Department while granting the defense motion in *Lichtenstein* and denying it in *Keenan*, emphasized that this is an inherently factual determination that must be resolved by the Court.

Upon review of the motion and opposition papers, I

Case 1:09-cv-00504-LEK -RFT   Document 64-3   Filed 12/15/10   Page 231 of 245

Page 2

2010 NY Slip Op 30665U, *2; 2010 N.Y. Misc. LEXIS 1591, **1

directed a hearing to  [**2] flesh out what the full facts were. The moving papers showed that the attorney of record, Alfred A. DiVincentis of the firm of Halloran & Sage, both residents of Connecticut, while admittedly a member of the New York Bar, seemed to have no other New York presence. Mr. DiVincentis responded by including a letter lease his firm had for space at 81 Main Street, Suite 450 in White Plains, New York with the law firm Briccetti, Calhoun & Lawrence. He stated that there was a specific person designated there to accept service and mail for the firm, that the firm's name was on the building directory, and that tax returns were filed with New York State and taxes were paid. Finally, there was also a (917) phone number wherein calls received in that office were routed to their Connecticut office.

But defense counsel pointed out all the court papers showed only the Connecticut address, i.e., the White Plains office was never given for service or any other purpose. Further, the letter lease was for a one year term ending in 2004. Nor did the White Plains address appear on the firm's letterhead, on its website or on DiVincentis' registration with the Office of Court Administration.

Also significantly,  [**3] there was no affidavit from DiVincentis indicating that he did have a presence in White Plains, regular or otherwise, or that he received calls there or met with clients and/or conducted legal business.

Thus I directed a hearing, which was held the day after oral argument, on March 11, 2010. Two witnesses appeared and gave testimony for counsel for the plaintiff, the aforementioned Alfred DiVincentis as well as another Halloran & Sage partner and Manager of its Westport office, also a member of the New York Bar, Stephen Fogerty.

The additional items that Mr. DiVincentis testified to were the following, the rental of the office space in White Plains was still ongoing, on a month to month basis, he acknowledged never personally being at that office, he acknowledged that all work on this case had been done in Connecticut; and he named one Janet Ryder, Office Manager for Briccetti and not a Halloran & Sage employee as the person in White Plains authorized to accept service for the firm. While he stated his firm was not looking for business in New York, he did mention the names of two New York companies they did represent here and estimated an amount in excess of $ 50,000 as revenue produced  [**4] from New York work.

Fogerty elaborated on this point and explained that the Halloran firm never wanted to solicit business in New York but maintained the White Plains office to better serve their clients. That is why the firm neither advertises nor has the office listed on its website. He also stated that neither he nor his associates had any problem communicating with New York attorneys, particularly because the calls were rerouted to the Connecticut office(s) and the mail was forwarded. However, he acknowledged that for New York cases, it would be better practice to list the White Plains Office on the papers.

Regarding that space, he had been there, though not very often. He recalls part of a day in 2009 and part of a day 2 years prior. He described the space as being in an A-1 office building and attested to the firm name appearing on the downstairs directory, the fourth floor directory, and the suite door.

Finally, he stated his belief that 6 lawyers with the firm were admitted to practice in New York and that he knew that others actually used the White Plains space for legal matters such as the conduct of depositions.

On balance, I find that plaintiff's counsel has withstood this  [**5] challenge. Similar to *Keenan*, (supra) they do have an ongoing agreement with a New York law firm that includes use of space, a desk, conference room when reserved, and other office accouterments. Also not only DiVincentis, but other members of Halloran and Sage are New York admitted attorneys, including Fogerty. And at least those two are registered with OCA.

The White Plains office, while having no Halloran and Sage employees does have a designated individual authorized to accept service for it. And the firm name is displayed at all the designed places where it is expected to be. This arrangement contrasts sharply with the facts as recited in *Lichtenstein* (supra).

In conclusion, while I believe there should be an appropriate registration of this space with OCA and that it should regularly be shown on the firm's letterhead and court papers, I do find that the firm has shown sufficient compliance with § 470, in maintaining an "office for the transaction of law business... within the state" to enable it to commence and maintain an action here.

Accordingly, the motions are denied. Counsel are

2010 NY Slip Op 30665U, *2; 2010 N.Y. Misc. LEXIS 1591, **5

directed to appear for a status conference in Room 222 on April 21, 2009 at 9:30 a.m.

This constitutes  [**6] the decision and order of this Court.

Dated: March 15, 2010

/s/ Alice Schlesinger

J.S.C.



LEXSEE



Analysis
As of: Dec 15, 2010

[*1]  **Kinder Morgan Energy Partners, LP, et al., Plaintiffs-Appellants, v Ace American Insurance Company, Defendant-Respondent.**

**3741 113387/06**

**SUPREME COURT OF NEW YORK, APPELLATE DIVISION, FIRST DEPARTMENT**

**2008 NY Slip Op 4767; 51 A.D.3d 580; 859 N.Y.S.2d 135; 2008 N.Y. App. Div. LEXIS 4499**

**May 29, 2008, Decided**
**May 29, 2008, Entered**

**NOTICE:**

    THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.     THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE OFFICIAL REPORTS.

**SUBSEQUENT HISTORY:** Related proceeding at Kinder Morgan Energy Partners, L.P. v. Ace Am. Ins. Co., 2008 N.Y. App. Div. LEXIS 8041 (N.Y. App. Div. 1st Dep't, Oct. 30, 2008)

**COUNSEL:** Phillips Nizer LLP, New York (Michael S. Fischman of counsel), for appellants.

O'Melveny & Myers LLP, New York (Gary Svirsky of counsel), for respondent.

**JUDGES:** Lippman, P.J., Tom, Gonzalez, Buckley, Renwick, JJ.

**OPINION**

    [**580]  [***135]  Order, Supreme Court, New York County (Debra A. James, J.), entered March 23, 2007, which, upon granting plaintiffs' motion for reargument, adhered to its prior order dismissing the complaint without prejudice, unanimously affirmed, without costs.

    Judiciary Law § 470, which recognizes a nonresident attorney's right to practice law in New York, has been interpreted in this Judicial Department as requiring such attorney at least to maintain an office in this state for such purpose (*Lichtenstein v Emerson*, 251 AD2d 64, 674 N.Y.S.2d 298 [1998]). Failure to maintain such a local office requires dismissal of an action commenced by such attorney, without prejudice to commencing anew (*Neal v Energy Transp. Group*, 296 AD2d 339, 744 N.Y.S.2d 672 [2002]).

    THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE

2008 NY Slip Op 4767, *1; 51 A.D.3d 580, **580;
859 N.Y.S.2d 135, ***135; 2008 N.Y. App. Div. LEXIS 4499

DIVISION, FIRST DEPARTMENT.                    ENTERED: MAY 29, 2008



LEXSEE

[*1]  **In the Matter of the Estate of Samuel A. Garrasi, Deceased, and The Samuel A. Garrasi and Mary H. Garrasi Family Trust U/D/T Dated September 7, 1991.**

**1400-017**

**SURROGATE'S COURT OF NEW YORK, SCHENECTADY COUNTY**

**2010 NY Slip Op 20372; 907 N.Y.S.2d 821; 2010 N.Y. Misc. LEXIS 4391**

**September 8, 2010, Decided**

**NOTICE:**

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION. THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED OFFICIAL REPORTS.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner client filed a motion to strike respondent law firm's amended answer and to dismiss its cross-petition for payment of outstanding legal fees with respect to the client's proceeding to determine the validity of its claim for legal services and to recover legal fees under SCPA 1809, 2103.

**OVERVIEW:** The client claimed that the law firm violated Judiciary Law § 470 when the attorney that represented the client's estate relocated to Michigan and failed to maintain a law office in New York while continuing to represent the client. The court found, inter alia, that § 470 clearly applied regardless of what stage or when the attorney's presence evaporated from the jurisdiction. The restrictions imposed by § 470 were constitutional and applied in the case. Despite his continued contact with his prior office after he moved to Michigan, the attorney failed to physically maintain an office in New York. Accordingly, the attorney, and by extension the law firm, fell out of strict compliance with the requirements of § 470. Nevertheless, because the client was not prejudiced thereby, he was not entitled to relief under §§ 1809, 2103. The additional claims offered by the client lacked merit.

**OUTCOME:** The client's motion to strike was granted, the law firm's cross-motion for summary judgment to dismiss the petition was granted, the court reserved decision as to the reasonableness of the fees charged by the law firm, and the client's motions for a protective order and for the posting of a bond were denied as academic.

**CORE TERMS:** Pierro Law Group, legal services, forfeiture, legal fees, law firm, practice of law, law office, retainer agreement, noncompliance, unauthorized, relocated, lawsuit, billed, public policy, relocation, designated, pendency, practice law, questions of law, service of process, services rendered, outstanding balance, protective order, account stated, constitutional challenge, restrictions imposed, physical presence, regulatory statute, personal gain, sound discretion

**LexisNexis(R) Headnotes**

2010 NY Slip Op 20372, *1; 907 N.Y.S.2d 821, **;
2010 N.Y. Misc. LEXIS 4391, ***

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN1] See Judiciary Law § 470.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN2] Nowhere do the courts, in applying Judiciary Law § 470, draw a distinction between an attorney's lack of presence in New York at the commencement of a lawsuit, and a lack of presence in New York occurring at some point after the commencement but before resolution of the lawsuit. Nor does the plain wording of § 470 make such a distinction or carve out an exception to its application in cases where the lack of presence in New York comes about during the pendency of the lawsuit.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN3] Clearly, Judiciary Law § 470 applies regardless of what stage or when an offending attorney's presence evaporates from the jurisdiction. In addition, there is no caveat written into the statute allowing for a waiver.

*Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation > General Overview*
*Constitutional Law > Relations Among Governments > Privileges & Immunities*
*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN4] The New York office requirement of Judiciary Law § 470 does not violate the Privileges and Immunities Clause of the United States Constitution and is, accordingly, constitutional.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN5] The State has legitimate interest in ensuring that a lawyer practicing within its boundaries is amenable to legal service and to contact by his or her client. The State may, therefore, reasonably require an attorney, as a condition of practicing within its jurisdiction, to maintain some genuine physical presence therein.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN6] The local office requirement in Judiciary Law §

470 for nonresidents does not result in disparate treatment. The fact that litigation can be more effectively resolved without a trial if there is a local presence justifies such a mandate.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN7] The establishment of an of counsel relationship with a New York attorney having an office in New York is sufficient to meet the requirements of Judiciary Law § 470.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
[HN8] Noncompliance with the requirements of Judiciary Law § 470 does not create a nullity or render all prior proceedings void per se.

*Legal Ethics > Unauthorized Practice of Law*
[HN9] A client will be held bound by acts taken on its behalf by its unauthorized attorney, unless it demonstrates at a hearing that it suffered prejudice as a result of being represented by an unauthorized attorney.

*Contracts Law > Negotiable Instruments > Enforcement > Defenses > Illegality*
[HN10] The violation of a statute that is merely malum prohibitum will not necessarily render a contract illegal and unenforceable.

*Contracts Law > Defenses > Public Policy Violations*
*Contracts Law > Negotiable Instruments > Enforcement > Defenses > Illegality*
[HN11] If a statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy, the right to recover will not be denied.

*Legal Ethics > Client Relations > Attorney Fees > General Overview*
[HN12] Attorney fee forfeitures are disfavored; such forfeitures may be particularly inappropriate where there are other regulatory sanctions for noncompliance.

*Contracts Law > Defenses > Public Policy Violations*

2010 NY Slip Op 20372, *1; 907 N.Y.S.2d 821, **;
2010 N.Y. Misc. LEXIS 4391, ***

[HN13] Courts are especially skeptical of efforts by clients or customers to use public policy as a sword for personal gain rather than a shield for the public good.

*Legal Ethics > General Overview*
*Legal Ethics > Practice Qualifications*
*Legal Ethics > Sanctions > General Overview*
[HN14] Judiciary Law § 470, like Judiciary Law § 468-a, is a regulatory statute that does not expressly provide for a fee forfeiture in the event of its violation. It is not punitive or remedial on its face, and the existence of other possible disciplinary sanctions for noncompliance militates against imposing a civil forfeiture by nullifying a bargained-for contractual obligation.

*Estate, Gift & Trust Law > Probate > Procedures in Probate > Costs & Expenses*
[HN15] The doctrines of account stated, voluntary payment, and equitable estoppel, while applicable and in some instances dispositive in an ordinary fee collection action, are not applicable to a determination by a surrogate of the attorneys' fees to be awarded in an estate proceeding.

*Estate, Gift & Trust Law > Probate > Procedures in Probate > Costs & Expenses*
[HN16] SCPA 2110(1) authorizes a court, at any time during the administration of an estate and irrespective of the pendency of a particular proceeding, to fix and determine the compensation of an attorney for services rendered to a fiduciary or to a devisee, legatee, distributee, or any person interested.

*Estate, Gift & Trust Law > Probate > Procedures in Probate > Costs & Expenses*
[HN17] A surrogate has the inherent power to supervise the fees attorneys charge for legal services, and has the authority to inquire into the reasonableness of counsel's fee even though agreed upon by the executor and assented to by the beneficiaries.

**COUNSEL:** [***1] Robert Garrasi, Self Represented Petitioner, Glenville, New York.

For Respondent and Cross-Petitioner Barris, Sott, Denn & Driker, PLLC: Englert, Coffey, McHugh & Fantauzzi, LLP, Peter V. Coffey, Esq., of counsel, Schenectady, New York.

For Sallie Hume Garrasi, William Hume and Lori Hume: McNamee, Lochner, Titus & Williams, P.C., Richard Cirincione, Esq., of counsel, Albany, New York.

Guardian ad Litem for Kevin Aggen: Martin Finn, Esq., Lavelle & Finn, Latham, New York.

**JUDGES:** Hon. Vincent W. Versaci, J.

**OPINION BY:** Vincent W. Versaci

**OPINION**

[**823] Vincent W. Versaci, J.

The Court has pending before it several motions that have been filed with respect to the proceeding to determine the validity of a claim for legal services pursuant to SCPA § 1809 and to recover legal fees pursuant to SCPA § 2103 commenced by the Executor and Trustee Robert Garrasi (hereinafter "Petitioner"). After issue was joined and following some earlier motion practice, Petitioner filed a Notice of Motion to Strike the Amended Answer of the Respondent Barris, Sott, Denn & Driker, PLLC, and to Dismiss the Cross-Petition. Respondent filed a Notice of Cross-Motion for Summary Judgment to dismiss the Petition and grant the Second Cross-Petition seeking [***2] payment of the outstanding balance of their legal fees. In addition, Petitioner filed two other motions relating to this proceeding: one for a protective order prohibiting Respondent from taking his deposition; and one ex parte motion for the posting of a bond as security for costs. These two motions are also still pending before this Court.

Petitioner bases his claim for disallowance of legal fees primarily on the alleged violation [*2] of Judiciary Law § 470 by the Respondent, specifically Attorney Douglas W. Stein. [1] Petitioner claims that Attorney [**824] Stein engaged in the unauthorized practice of law in New York State after he relocated to Michigan in 2003 and failed to maintain a law office in New York while continuing to represent the Petitioner in this matter. Petitioner claims that this alleged violation of Judiciary Law § 470 renders his retainer agreement with Attorney Stein illegal and void ab initio as against public policy, resulting in a forfeiture of all legal fees billed to the Petitioner for services performed after his relocation to Michigan.

Case 1:09-cv-00504-LEK -RFT   Document 64-3   Filed 12/15/10   Page 238 of 245

Page 4

2010 NY Slip Op 20372, *2; 907 N.Y.S.2d 821, **824;
2010 N.Y. Misc. LEXIS 4391, ***2

1   Petitioner's arguments that the Respondent violated other sections of the Judiciary Law will be discussed *infra*.

Although Respondent [***3] admits that Attorney Stein did not maintain an office for the practice of law in New York after he moved to Michigan in 2003, Respondent denies that Judiciary Law § 470 was violated or that it even applies given the facts and circumstances of this case. Further, Respondent questions the constitutionality of Judiciary Law § 470, and argues that a strict interpretation and application of the statute to this type of case is unprecedented. In addition, Respondent believes that the Petitioner's demand that the Respondent be ordered to forfeit all of its legal fees is unwarranted and this result, Respondent argues, would only serve to unjustly enrich the Petitioner.

Respondent also claims that the Petitioner is equitably estopped from seeking a refund of the legal fees that he voluntarily paid to the Respondent more than three (3) years ago for legal services actually performed to the Petitioner's satisfaction. Finally, Respondent claims that it is entitled to the outstanding balance of legal fees due and owing based on an Account Stated in the amount of $ 6,896.30.

Since the material facts relevant to a proper adjudication of the pending motions are not in dispute, the Court can dispense [***4] with the need for a hearing and will proceed to determine the remaining questions of law, beginning with the applicability of Judiciary Law § 470 to this case. 2  Judiciary Law § 470 reads as follows:

2   Petitioner initially argued that Supreme Court Justice and Acting Surrogate Vincent J. Reilly, Jr. previously determined that the Respondent had violated Judiciary Law § 470 by engaging in the unauthorized practice of law, when he denied the Respondent's motion for Attorney Stein to be admitted *pro hac vice nunc pro tunc* by Order dated April 26, 2010. Petitioner alleges that Judge Reilly's decision resolved this question of law, and is the law of the case.

This Court has reviewed the transcript of the proceedings held before Judge Reilly on March 12, 2010, which includes his bench decision denying the Respondent's *pro hac vice* motion. While Judge Reilly commented on the

ramifications of the illegal practice of law as alleged by Petitioner, he did not make a finding or ruling that the Respondent had engaged in such illegal practice. Accordingly, this issue is still ripe for the Court's review.

**[HN1] § 470. Attorneys having offices in this state may reside in adjoining state**

A person, regularly admitted [***5] to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state.

In support of its argument that this section of the Judiciary Law does not apply here, Respondent points to the fact that at the time that Attorney Stein began representing the Petitioner and entered into a retainer agreement with him, Attorney Stein was employed by Pierro & Associates, LLC a/k/a Pierro Law Group and maintained his law office at the firm's offices [*3] located in Albany, New York. He continued to practice law from that location [**825] until 2003 when he relocated his residence to Michigan and began working for the Respondent. At that time, despite his knowledge that Attorney Stein had separated from the Pierro Law Group, had relocated to Michigan and was working for a different law firm located in Michigan, Petitioner requested that Attorney Stein continue to represent him in this matter. Attorney Stein agreed, and continued to represent the Petitioner over the next four (4) years, or up until 2007.

Respondent argues that these facts distinguish [***6] this case from the reported cases that have applied Judiciary Law § 470. *See, e.g.*, *Tatko v. McCarthy, et al.*, 267 AD2d 583, 699 N.Y.S.2d 509; *Elm Management Corp. v. Sprung, et al.*, 33 AD3d 753, 823 N.Y.S.2d 187; *Lichtenstein v. Emerson*, 251 AD2d 64, 674 N.Y.S.2d 298; *Keenan v. Mitsubishi Estate, et al.*, 228 AD2d 330, 644 N.Y.S.2d 241. These cases involve situations where the out-of-state attorney did not have a New York presence at the time the lawsuit was commenced, nor ever had a New York presence. Respondent contends that Judiciary Law § 470 should not be extended to cases where, like the one presented here, a New York attorney commences an action, then moves out of state during the pendency of the action but continues to appear in the New York action at the request of the client and without opposition from any interested party. The Respondent

Case 1:09-cv-00504-LEK -RFT    Document 64-3    Filed 12/15/10    Page 239 of 245

Page 5
2010 NY Slip Op 20372, *3; 907 N.Y.S.2d 821, **825;
2010 N.Y. Misc. LEXIS 4391, ***6

states that allowing the attorney to appear in the New York litigation even after his relocation would ensure continuity of representation and permit the client to have the counsel of his choosing. Respondent further argues that the client, like the Petitioner in this case, who has demanded that the attorney continue to represent him despite having moved out of state, has essentially waived or opted out of the [***7] requirements of Judiciary Law § 470.

Respondent's attempt to distinguish this case from those cited above is flawed. [HN2] Nowhere in those cases do the courts, in applying Judiciary Law § 470, draw a distinction between an attorney's lack of presence in New York at the commencement of a lawsuit, and a lack of presence in New York occurring at some point after the commencement but before resolution of the lawsuit. Nor does the plain wording of Judiciary Law § 470 make such a distinction or carve out an exception to its application in cases where the lack of presence in New York comes about during the pendency of the lawsuit. Although there is no authority on point, the Court finds that Respondent's distinction is, in essence, a distinction without a difference, and should not matter in applying the unambiguous language of Judiciary Law § 470. [HN3] Clearly, the statute applies regardless of what stage or when the offending attorney's presence evaporates from the jurisdiction. This Court is also unpersuaded by Respondent's argument that the Petitioner opted out of the requirements of Judiciary Law § 470. While this is a novel argument and one certainly worthy of consideration, there is no caveat [***8] written into the statute allowing for such a waiver. Accordingly, the Court finds that the requirements of Judiciary Law § 470 do apply in this case.

To briefly address the Respondent's constitutional challenge to the restrictions imposed by Judiciary Law § 470, this Court is constrained to follow the First Department's decision in *Lichtenstein v. Emerson*, *supra*, finding that [HN4] "the New York office requirement of Judiciary Law § 470 does not violate the Privileges and Immunities Clause of the United States Constitution . . . and is, accordingly, constitutional." The First Department cited [HN5] the State's legitimate interest "in ensuring that a lawyer practicing within its [**826] boundaries is amenable to legal service and to contact by his or her client, . . . and a State may, therefore, reasonably require an attorney, as a condition of practicing within its jurisdiction, to maintain some genuine physical presence

therein" (internal citation omitted). *Id.* 3 While the Respondents cite to U.S. District Court Judge Kahn's decision in *Schoenefeld v. State of New York*, 09-CV-504, 2010 U.S. Dist. LEXIS 10639 (N.D.NY) in support of its challenge, this decision merely found that the "plaintiff's privileges and immunities claims can [***9] go forward", thus presenting no binding authority on this Court to endorse Respondent's challenge. Accordingly, [*4] Respondent's constitutional challenge to Judiciary Law § 470 is hereby rejected by this Court.

> 3    *See also White River Paper Co., Ltd. v. Ashmont Tissue, Inc.*, 110 Misc 2d 373, 378, 441 N.Y.S.2d 960 where the court found that [HN6] "the local office requirement for nonresidents does not result in disparate treatment and the fact that litigation can be more effectively resolved without a trial if there is a local presence justifies such a mandate."

Having found that the restrictions imposed by Judiciary Law § 470 are constitutional and do apply in this case, the Court must next decide whether these restrictions were violated by the Respondent, and more specifically Attorney Stein. Despite its admission that Attorney Stein did not maintain a law office in New York after he moved to Michigan in 2003, Respondent contends that during the years that Attorney Stein represented the Petitioner after his move to Michigan, he continued to maintain a connection with his former New York law firm, Pierro & Associates, LLC. This firm is where Attorney Stein was employed when he first began representing the Petitioner. [***10] In fact, Pierro & Associates, LLC a/k/a Pierro Law Group also continued to perform legal services for the Petitioner after Attorney Stein left the firm, and billed the Respondent for these services (*see* Exhibits "A" - "C" annexed to the Affidavit of Yuh Suhn Kim, sworn to on June 8, 2010, in support of Respondent's Cross-Motion for Summary Judgment). Respondent argues that this connection is enough to satisfy the requirements of Judiciary Law § 470.

This Court disagrees. Despite his continued contact with the Pierro Law Group after he moved to another state, the fact remains that Attorney Stein failed to physically maintain an "office for the transaction of law business in New York" within the plain meaning of Judiciary Law § 470. Similar to the facts in *Lichtenstein v. Emerson*, *supra*, at 64, there is no indication that Attorney Stein had a designated telephone number in

Case 1:09-cv-00504-LEK -RFT   Document 64-3   Filed 12/15/10   Page 240 of 245

Page 6
2010 NY Slip Op 20372, *4; 907 N.Y.S.2d 821, **826;
2010 N.Y. Misc. LEXIS 4391, ***10

New York, a New York address at which to receive service of process, or that he had designated the Pierro Law Group to accept telephone calls and service of process on his behalf. *See also In the Matter of Haas*, 237 AD2d 729, 730, 654 N.Y.S.2d 479.

Notably, Respondent's papers do not contain an affidavit from Louis W. Pierro, or any other [***11] member of his firm, to establish that Attorney Stein continued to maintain an office with the Pierro Law Group, or maintained an of counsel relationship with that firm or any other professional affiliation. *Cf. Tatko v. McCarthy, supra*, at 584 ([HN7] the establishment of an of counsel relationship with a New York attorney having an office in New York was sufficient to meet the requirements of Judiciary Law § 470); *Keenan v. Mitsubishi Estate, supra*, at 331 (requirements of Judiciary Law § 470 met by a reciprocal satellite office sharing agreement with a New York law firm); *CA Construction, Inc. v. 25 Broadway Office Properties*, [**827] *LLC, et al.*, 2010 NY Slip Op 30665U (court found compliance with Judiciary Law § 470 based on an ongoing agreement with a New York law firm that includes use of space, a desk, conference room, and a designated individual authorized to accept service for the Connecticut law firm). None of the indicia present in these cases are present in the instant case.

In fact, the billings annexed to Yuh Suhn Kim's Affidavit as Exhibits "A" - "C" referenced above indicate a relationship to the contrary. Attorney Stein's name does not appear anywhere on the letterhead of the Pierro [***12] Law Group. Furthermore, the billings themselves are a clear indication that Attorney Stein no longer maintained a physical presence here in New York or an affiliation with the Pierro Law Group, since Attorney Stein was actually billed by the Pierro Law Group for the work they performed for the Petitioner. The above-mentioned bills were sent to Attorney Stein at the Respondent's Michigan address where he was employed full time.

Accordingly, the Court finds that Attorney Stein, and by extension the Respondent, fell out of strict compliance with the requirements of Judiciary Law § 470 after he relocated to Michigan, thereby violating the statute. However, this violation does not render the parties' retainer agreement a nullity as alleged by the Petitioner. *See Elm Management Corp. v. Sprung, et al., supra*, at 754, where the Second Department found that [HN8]

"noncompliance with the requirements of Judiciary Law § 470 . . . does not create a 'nullity' or render all prior proceedings void per se", *citing Dunn v. Eickhoff*, 35 NY2d 698, 319 N.E.2d 709, 361 N.Y.S.2d 348; *Matter of Lackas*, 65 AD2d 800, 410 N.Y.S.2d 307. The court further found that [HN9] "the plaintiff will be held bound by acts taken on its behalf by its unauthorized attorney, unless it [***13] demonstrates at a hearing that it suffered prejudice as a result of being represented by an unauthorized attorney." *Id*.

Nowhere in the record before this Court is there any indication that the Petitioner suffered [*5] any prejudice as a direct result of Attorney Stein moving to Michigan and failing to maintain a law office here in New York. In fact, during oral argument the Petitioner admitted that he had benefitted from Attorney Stein's representation, and that he was satisfied with the quality of his services. He could not identify how he was damaged by Attorney Stein's relocation, other than speculating that "maybe" his move "could have" cost him money that he would have otherwise saved had he used the services of the Pierro Law Group instead of Attorney Stein.

Without a showing of prejudice, Petitioner remains bound by the retainer agreement and the legal services provided thereunder. Furthermore, there is ample authority to support the Respondent's position that the Petitioner is not entitled to a forfeiture of its fees due to a violation of Judiciary Law § 470. The Court of Appeals in *Benjamin v. Koeppel*, 85 NY2d 549, 650 N.E.2d 829, 626 N.Y.S.2d 982 addressed the issue of fee forfeitures when a similar statute, Judiciary Law § 468-a [***14] had been violated. In that case, the plaintiff attorney had failed to register as required by Judiciary Law § 468-a. Despite his violation of this statute, the court held that "an attorney who has not complied with Judiciary Law § 468-a's registration requirements may nonetheless recover payment for professional legal services rendered during the period of noncompliance." The court reasoned as follows: . . . [HN10] [T]he violation of a statute that is merely *malum prohibitum* will not necessarily render a contract illegal and unenforceable (*Lloyd Capital Corp. v.* [**828] *Pat Henchar, Inc.*, 80 NY2d 124, 127, 603 N.E.2d 246, 589 N.Y.S.2d 396). [HN11] "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy ... the right to recover will not be denied" (*Rosasco Creameries v. Cohen*, 276 NY

Case 1:09-cv-00504-LEK -RFT    Document 64-3    Filed 12/15/10    Page 241 of 245

Page 7
2010 NY Slip Op 20372, *5; 907 N.Y.S.2d 821, **828;
2010 N.Y. Misc. LEXIS 4391, ***14

274, 278, 11 N.E.2d 908).

The *Benjamin* Court went on to note the important legal tenet that [HN12] "fee forfeitures are disfavored and that such forfeitures may be particularly inappropriate where there are other regulatory sanctions for noncompliance" (*citing Lloyd Capital Corp. v. Pat Henchar, Inc.*, *supra*, at 128; *Charlebois v. Weller Assocs.*, 72 NY2d 587, 595, 531 N.E.2d 1288, 535 N.Y.S.2d 356; [***15] and *Rosasco Creameries v. Cohen*, *supra*, at 279-280). Quoting from the *Charlebois* decision, the court reiterated its view that [HN13] "courts are especially skeptical of efforts by clients or customers to use public policy as a sword for personal gain rather than a shield for the public good.'" *Charlebois v. Weller Assocs.*, *supra*, at 595.

The Court finds that these same principles apply to this case. [HN14] Judiciary Law § 470, like Judiciary Law § 468-a, is a regulatory statute that does not expressly provide for a fee forfeiture in the event of its violation. It is not punitive or remedial on its face, and the existence of other possible disciplinary sanctions for noncompliance "militates against imposing a civil forfeiture by nullifying a bargained-for contractual obligation." *Benjamin v. Koeppel*, *supra*, at 555. In this Court's opinion, Petitioner is using the Respondent's violation of Judiciary Law § 470 "as a sword for personal gain", which will not be countenanced. Furthermore, to impose the drastic remedy of a complete forfeiture of fees for legal services that the Petitioner accepted and has admitted were performed to his satisfaction, all because Attorney Stein technically violated a regulatory [***16] statute under circumstances that the Petitioner knew about and consented to, is not what the Legislature intended, is unwarranted, and would, as argued by the Respondent, result in the Petitioner being unjustly enriched.

To the extent that the Petitioner is claiming that Attorney Stein violated any other sections of the Judiciary Law, namely § 478, § 484 or § 485, these claims can be quickly dismissed as these sections clearly do not apply in this case. There is no question that at all times during his representation of the Petitioner, Attorney Stein was duly and regularly licensed and admitted to practice law in the courts of record of the State of New York. Therefore, Judiciary Law §§ 478 and 484 have clearly not been violated, and Judiciary Law § 485 does not include a violation of Judiciary Law § 470 in its list

of sections the violation of which constitutes a misdemeanor. Accordingly, these additional claims offered by the Petitioner are hereby dismissed for lack of merit.

[*6] Finally, Respondent's attempt to invoke [HN15] the doctrines of account stated, voluntary payment and equitable estoppel is unavailing. These principles, while applicable and in some instances dispositive in an ordinary [***17] fee collection action, are not applicable to a determination by the Surrogate of the attorneys' fees to be awarded in an estate proceeding. *See* [HN16] SCPA § 2110(1), which authorizes the court, "[a]t any time during the administration of an estate and irrespective of the pendency of a particular proceeding, . . . to fix and determine the compensation of an attorney for services rendered to a fiduciary or to a [**829] devisee, legatee, distributee or any person interested . . .". *See also Matter of Stortecky*, 85 NY2d 518, 525-526, 650 N.E.2d 391, 626 N.Y.S.2d 733, where the Court of Appeals held that [HN17] the Surrogate has the "inherent power to supervise the fees attorneys charge for legal services", and has "the authority to inquire into the reasonableness of counsel's fee even though agreed upon by the executor and assented to by the beneficiaries."

Thus, even if the Respondent can establish that an account has been stated to the Petitioner, and that Petitioner voluntarily paid the preponderance of the fees billed without protest, this Court still has the broad discretion to determine the fair and reasonable value of the legal services performed, applying the factors as enunciated in *Matter of Freeman*, 34 NY2d 1, 311 N.E.2d 480, 355 N.Y.S.2d 336, *citing Matter of Potts*, 241 NY 593, 150 N.E. 568, [***18] and *Matter of Von Hofe*, 145 AD2d 424, 535 N.Y.S.2d 391. At the present time, the Court does not have enough information to properly apply these factors, but will revisit the issue of attorneys' fees at the conclusion of the Final Accounting proceedings. At that time, the Court will, in its sound discretion, apply the requisite factors alluded to above, determine the fair and reasonable fee due and owing to the Respondent for the legal services it has performed in this matter, and decide from what source the fee should be paid.

Accordingly, based on all of the foregoing, Petitioner's Motion to Strike the Respondent's Amended Answer and Cross-Petition is hereby granted, and the Respondent's Cross-Motion for Summary Judgment to

2010 NY Slip Op 20372, *6; 907 N.Y.S.2d 821, **829;
2010 N.Y. Misc. LEXIS 4391, ***18

dismiss the Petition is hereby granted, thus concluding this claim proceeding. However, the Court reserves decision as to the reasonableness of the fees charged by the Respondent, which decision rests within the sound discretion of this Court, and will be addressed at the Final Accounting stage. In light of the above rulings, Petitioner's Motions for a Protective Order and for the Posting of a Bond are rendered academic and thus hereby denied.

The foregoing shall constitute the Decision [***19] and Order of this Court.

Signed at Schenectady, New York, this        day of September, 2010.

Hon. Vincent W. Versaci

Surrogate



LEXSEE

**[*1]  Maureen Webb, Plaintiff, against Christine Papaspiridakos, Defendant.**

**761/2008**

**SUPREME COURT OF NEW YORK, QUEENS COUNTY**

**2009 NY Slip Op 51152U; 23 Misc. 3d 1136A; 889 N.Y.S.2d 884; 2009 N.Y. Misc.
LEXIS 1435**

**June 9, 2009, Decided**

**NOTICE:**   THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**CORE TERMS:** dog, replevin, index number, pet, ownership, custody, new owner, notice of appearance, present action, failure to prosecute, consolidated, litigating, initiative, blueback, lawsuit, observes, notice, default judgment, veterinarian, delivery, default

**HEADNOTES**

[**1136A]  [***884]  Replevin--When Remedy Appropriate--Recovery of Dog. Attorney and Client--Misconduct by Attorney. Judiciary Law--§ 470 (Attorneys having offices in this state may reside in adjoining state).

**COUNSEL:** For Plaintiff: Claire Pare, Esq., Belle Harbor, NY; Spring Lake, NJ.

Defendant, Pro se.

**JUDGES:** Hon. Charles J. Markey, Justice.

**OPINION BY:** Charles J. Markey

**OPINION**

Charles J. Markey, J.

The motion by plaintiff Maureen Webb ("Webb") for a default judgment, in this replevin action, is granted.

The plaintiff has commenced this action, her third lawsuit, in order to recover her dog. Plaintiff has instituted at least three litigations, all in this Court, to recover her pet: *Webb v. Weinstein*, index number 23400/05, *Webb v. Papaspiridakos*, index number 2732/2006, and the instant action under index number 761/2008. These actions concern the ownership of "Precious," a Jack Russell terrier, originally purchased by the plaintiff and now in the custody of the defendant. The defendant submitted no papers in opposition to the plaintiff's motion for a default judgment. See plaintiff's affidavit and Ms. Pare's affirmation. Defendant Christine Papaspiridakos ("Papaspiridakos") filed a notice of appearance, on March 17, 2008, and later secured an extension of her time to answer to and including June 30, 2008. Papaspiridakos did not file an answer and is in default.

In this action, Webb has been litigating for four years to recover possession of Precious, born on July 7, 2001, according to the purchase papers. Plaintiff bought the pet whom she named "Precious," for the sum of $ 600.00 from a Brooklyn pet store on September 16, 2001.

For reasons still unclear, and alleged to be "due to Plaintiff's living situation," during February, 2005, the plaintiff was constrained to board the dog with the

2009 NY Slip Op 51152U, *1; 23 Misc. 3d 1136A, **1136A;
889 N.Y.S.2d 884, ***884; 2009 N.Y. Misc. LEXIS 1435

Howard Beach Animal Clinic ("HBAC") and its veterinarian, Dr. Steven Weinstein ("Weinstein"), in Queens County. While paying HBAC's bills in full for the boarding, plaintiff Webb, in June 2005, instructed HBAC to begin looking for a "new owner" and good home for her pet provided that she, Webb, gave final approval on the new owner. This condition is reflected in writing, on Precious's health records at HBAC. Plaintiff alleges that she would have conditioned her approval of the new owner on visitation rights.

[*2] Plaintiff further alleges that HBAC, its employee Lucy Abru, and veterinarian Weinstein transferred the dog to the custody of defendant Papaspiridakos's custody. Weinstein and HBAC, furthermore, allegedly did not secure Webb's consent before the transfer of custody to defendant and allegedly withheld any information from the plaintiff and her counsel concerning the person to whom Precious was given.

As an initial matter, this action for replevin is proper. Although the reported cases for replevin of a pet dog are few, in part because of the legal expense involved in maintaining such an action, the precedents are sufficient to sustain the present action for replevin. *See, e.g., Hotze v. Hotze*, 57 AD2d 85, 89, 394 N.Y.S.2d 753 [4th Dept. 1977]; *C.R.S. v. T.K.S.*, 192 Misc 2d 547, 550, 746 N.Y.S.2d 568 [Sup Ct NY County 2002] [spouses fought for ownership of dog in divorce proceeding; court stated that "the time and money expended litigating this issue could have been used to negotiate and fund a settlement."]; *Central Westchester Humane Society v. Hilleboe*, 202 Misc. 881, 116 N.Y.S.2d 403 [Sup Ct Westchester County 1952] [eloquent language extolling value of pets, especially dogs].

The Court has consulted the papers in the prior action between the parties and observes that, pursuant to a stipulation of discontinuance, all causes of action - - except that of replevin of the dog - - were dismissed with prejudice. Defendant has obviously been aware that this lawsuit has been an on-going affair and did not answer. *Webb v. Papaspiridakos*, under index number 2732/2006, by court order had been consolidated into *Webb v. Weinstein*, index number 23400/05. Justice Martin Ritholtz, in the Compliance Part, on the Court's own initiative, by order dated and entered on April 11, 2007, then dismissed the consolidated action for failure to prosecute. When a case is dismissed for failure to

prosecute, by order made of the Court's own motion or initiative, the plaintiff is not barred from instituting another action. *See, DeMarco-McCluskey v. DeMarco*, 11 Misc. 3d 1058A, 815 N.Y.S.2d 494, 2006 WL 481216, 2006 NY Slip Op 50268 [Sup Ct Queens County 2006]. Thus, the maintenance of the present action, under index number 761/2008, seeking replevin, is proper.

One possible impediment and procedural lapse remains. This Court observes that when it saw the "blueback" or the legal back of the present unopposed motion, red flags figuratively jumped out since the plaintiff's attorney, Christine Pare, Esq., sets forth a New Jersey address. Further research by the undersigned confirmed that the plaintiff's counsel, Christine Pare, Esq., is indeed admitted in New York and has been admitted for the past 25 years. Ms. Pare, however, listed only a New Jersey office address on her papers, both at the end of the notice of motion and the blueback. Plaintiff's counsel is thus unfamiliar with Judiciary law section 470 which requires attorneys practicing in New York State to list a New York State address on their papers.

Judiciary law section 470 has been treated so strictly that in the Appellate Division, First Department dismissal of the action, although without prejudice, is required for an attorney omitting a New York address. *See, Kinder Morgan Energy Partners, LP, v. Ace American Ins. Co.*, 51 AD3d 580, 859 N.Y.S.2d 135 [1st Dept. 2008]; *Neal v. Energy Transportation Group, Inc.*, 296 AD2d 339, 744 N.Y.S.2d 672 [1st Dept. 2002]. The Appellate Division, Second Department, fortunately for Webb, is not as strict about this requirement. *See, Elm Management Corp. v. Sprung*, 33 AD3d 753, 754, 823 N.Y.S.2d 187 [2d [*3] Dept. 2006]. The Court learned Ms. Pare's address in New York only because it was reflected in Papaspiridakos's notice of appearance, annexed as Exhibit H to the motion. In light of the Second Department's ruling, this Court will not dismiss this action and will not deny plaintiff ownership of the dog because of her counsel's failure to follow Judiciary Law section 470.

The Court is unsettled by the fact that defendant Papaspiridakos, although now acting pro se, has not opposed the present motion for a default judgment after having vigorously contested ownership of Precious over the past few years. The plaintiff, nevertheless, has made a prima facie and uncontested case for her ownership of

2009 NY Slip Op 51152U, *3; 23 Misc. 3d 1136A, **1136A;
889 N.Y.S.2d 884, ***884; 2009 N.Y. Misc. LEXIS 1435

Precious. The Court orders the delivery of Precious to the plaintiff Webb. Specifically, the Court orders that the plaintiff and her counsel Ms. Pare may seek enforcement of the present order for delivery of the dog to the plaintiff Webb by going to the defendant accompanied by either a Marshall or Sheriff of the City of New York or police officer[s] of the Police Department of the City of New York assigned by the local police precinct of the defendant's residence.

Plaintiff shall serve a copy of this order bearing the County Clerk's dated stamp, together with Notice of Entry, upon the defendant expeditiously.

The foregoing constitutes the decision, order, and opinion of the Court.

Hon. Charles J. Markey

Justice, Supreme Court, Queens County

Dated: June 9, 2009

Long Island City, New York