UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EKATERINA SCHOENEFELD,

                Plaintiff,

      -against-                                          1:09-CV-00504 (LEK/RFT)

STATE OF NEW YORK, *et al.*,

                Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.     INTRODUCTION

      Plaintiff Ekaterina Schoenefeld ("Plaintiff") filed this action for equitable relief pursuant to

42 U.S.C. § 1983 in the Southern District of New York on April 1, 2008.  See Complaint (Dkt. No.

1) ¶ 2.  Plaintiff alleges that New York Judiciary Law Section 470 (McKinney 2010) ("Section

470") is unconstitutional on its face and as applied because it violates Article IV, section 2 of the

United States Constitution ("Privileges and Immunities Clause"); the Equal Protection Clause of the

Fourteenth Amendment; and Article I, section 8 of the Constitution ("Commerce Clause").  See

Amended Complaint (Dkt. No. 4) ¶¶ 2, 23, 27, 29.  Plaintiff brought this action naming thirty-seven

Defendants, including the State of New York ("New York"); Andrew M. Cuomo in his official

capacity as Attorney General for the State of New York; the New York Supreme Court, Appellate

Division, Third Judicial Department ("Appellate Division, Third Department"); all Justices of the

Appellate Division, Third Department; Michael J. Novack in his official capacity as Clerk of the

Appellate Division, Third Department; the Committee on Professional Standards of New York

Supreme Court, Appellate Division ("Committee on Professional Standards"); the Third Judicial

Department and its Members; and John Stevens in his official capacity as Chairman of the

Committee on Professional Standards (collectively, "Defendants").  Am. Compl. ¶ 7.

On April 16, 2009, Defendants' Motion to transfer this action to the Northern District of New York under 28 U.S.C. § 1404(a) was granted for the convenience of Defendants.  See Memorandum and Order (Dkt. No. 17).  On June 16, 2009, Defendants filed a Motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction because the claims were not ripe for review.  See Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 20-2) ("Mem. Supp. Mot. to Dismiss").  On February 8, 2010, the Court found that Plaintiff's claims were ripe but granted the Motion to dismiss with respect to Defendants New York, Appellate Division, Third Department; and Committee on Professional Standards; and dismissed in their entirety Plaintiff's claims against all Defendants under the Fourteenth Amendment and the Commerce Clause.  Memorandum-Decision and Order (Dkt. No. 32) ("February 2010 Order") at 12.  The February 2010 Order did, however, permit Plaintiff to proceed with her claims against the remaining Defendants under the Privileges and Immunities Clause.  Id.

Now before the Court are Defendants' and Plaintiff's Motions for summary judgment, which were both filed on December 15, 2010.  Dkt. Nos. 62, 64.  On January 18, 2011, Defendants filed a Response to Plaintiff's motion for summary judgment ("Defendants' Response"); and Plaintiff filed a Response to Defendants' motion for summary judgment ("Plaintiff's Response").  Dkt. Nos. 65, 70.  On January 24, 2011, both Defendants and Plaintiff filed Reply Memoranda.  Dkt. Nos. 72, 73 ("Defendants' Reply" and "Plaintiff's Reply," respectively).  For the reasons discussed below, Defendants' Motion for summary judgment is denied, and Plaintiff's Motion for summary judgment is granted.

## II.    BACKGROUND

2

**A. Plaintiff's Claims and the Present Section 470**

Plaintiff is a 2005 graduate of Rutgers University School of Law-Newark and is licensed to practice law in the states of New York, New Jersey, and California.  See Am. Compl. ¶ 5; Defendants' Statement of Material Facts (Dkt. No. 62-1) ("Def. Stat. Mat. Facts") ¶ 1.  Plaintiff maintains her residence and law office in Princeton, New Jersey, which is an hourlong commute from the New York state line and New York City.  Id. ¶ 6; Def. Stat. Mat. Facts ¶ 1.  Plaintiff states that while attending a continuing legal education course, entitled Starting Your Own Practice, she learned that under Section 470, nonresident attorneys may not practice law in New York without maintaining an office located in New York.  See Am. Compl. ¶ 17.

Section 470, which does not apply to attorneys who reside in New York, provides: "A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state."  N.Y. JUDICIARY LAW § 470 (McKinney 2010).  Section 470 continues to be enforced by Defendants and by New York courts. See Plaintiff's Statement of Material Facts (Dkt. No. 64-1) ("Pl. Stat. Mat. Facts") ¶ 8; Schoenefeld Decl. (Dkt. No. 64-3), Exs. E, G, H (Def. Resp. Req. Admis. ¶¶ 3, 7).  Plaintiff is unable to practice law in New York, despite her full compliance with all requirements applicable to attorneys residing in New York, because she does not maintain an office in New York.  See Am. Compl. ¶ 19; Def. Stat. Mat. Facts ¶ 1; Answer (Dkt. No. 33) ¶ 4.  Section 470 has not yet been enforced against Plaintiff; however, Plaintiff claims that because she has no office in New York, the law has forced her to refrain from representing clients when doing so would require her to practice in New York courts.  See Plaintiff's Memorandum of law in support of Motion for Summary Judgment (Dkt. No.

64-2) ("Pl. Mem. Supp. S.J.") at 5.

**B. Legislative History of Section 470**

Chapter 43, the original version of Section 470, was first enacted on March 22, 1862. Schoenefeld Decl., Ex. F.  At that time, state law provided that only New York residents could be admitted to practice law in New York.[1]  Schoenefeld Decl., Ex. L.  Prior to the enactment of Chapter 43, this rule applied to New York attorneys who moved to another state; thus, a New York attorney who moved outside of the state automatically lost the right to practice law in New York. Id.  Chapter 43 provided a limited exception to the rule that only New York residents could be admitted to practice law in New York:

> Any regularly admitted and licensed attorney of . . . this State, and whose only office for the transaction of law business is within this state, may practice as such attorney in any of the courts of this State notwithstanding he may reside in a state adjoining the state of New York, provided that this act shall extend only to attorneys who have been . . . admitted to practice in the Courts of this State, and who reside out of the State of New York, and that service of papers which might according to the practice of the Courts of this State, be made upon said attorney at his residence, if the same were within the state of New York, shall be sufficient if made upon him . . . directed to said attorney at his office . . . and such service shall be equivalent to personal service at the office of such attorney.

Id.  Thus, Chapter 43 specifically allowed attorneys who were already licensed in New York to continue to practice in New York courts, so long as their only office for the practice of law was located in New York.  Id.

In 1866, Chapter 43 was reenacted as Chapter 173 to eliminate the requirement that a nonresident attorney's only office be in New York for that attorney to practice law in-state. Schoenefeld Decl., Ex. F (L. 1866, ch. 175, § 1 (6 Edm., 706)).  Chapter 173 stated:

---

[1] This requirement was later held unconstitutional by the New York Court of Appeals. Matter of Gordon, 48 N.Y.2d 266, 271 (1979) (citations omitted).

> Any regularly admitted or licensed attorney or counselor of . . . this state, and whose office for the transaction of law business is within this state, may practice as such attorney or counselor in any of the courts of this state, notwithstanding he may reside in a state adjoining the State of New York; provided, that service of papers, which might . . . be made upon him by depositing the same in the post-office . . . directed to said attorney at his office . . . and such service shall be equivalent to personal service at the office of such attorney.

Id.  In 1877, Chapter 173 was again reenacted as § 60 of the New Code of Civil Procedure, which provided that:

> A person, regularly admitted to practice as attorney and counselor, in the courts of record of the State, whose office for the transaction of law business is within the State, may practice as such attorney or counselor, although he resides in an adjoining state.  But service of a paper, which might be made upon him at his residence, if he was a resident of the State, may be made upon him, by depositing the paper in the city or town where his office is located, properly inclosed [sic] in a postpaid wrapper, directed to him at his office.  A service thus made is equivalent to personal service upon him.

Id. (Code Civ. P., § 60 (1877)).

The statute was later divided in 1908, by the Board of Statutory Compilation, and the first sentence of § 60 became Section 470, while the balance of the statute was retained in the Code of Civil Procedure.  See Board of Statutory Consolidation, cmt. 29 to § 60 (1908).  Section 470 was officially enacted in 1909, later reenacted in 1945, and remains in the same form today: "A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state."  Attorneys who reside in New York, by contrast, are permitted under New York law to have only offices located outside the state of New York if they so choose, or to maintain no office outside of the state in which they reside.

**III.     STANDARD OF REVIEW**

5

Summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is a genuine issue of material fact only if the evidence shows that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To decide a motion for summary judgment, all reasonable evidentiary inferences must be made in favor of the nonmoving party. See id. at 255; City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 45 (2d Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to show the existence of a genuine dispute for trial. See Anderson, 477 U.S. at 250. The nonmoving party must provide sufficient and specific facts demonstrating the genuine issues for trial, and may not rely on conclusory or speculative allegations to make such a showing. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288 (1968); Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV. DISCUSSION

The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2.

The purpose of the Privileges and Immunities Clause is to "fuse into one Nation a collection of independent, sovereign States." Toomer v. Witsell, 334 U.S. 385, 395 (1948).  The Supreme Court has traditionally interpreted the Privileges and Immunities Clause to prevent a state from imposing an unreasonable burden on citizens of other states to (1) conduct business, or pursue a common calling within the state; (2) to own private property within the state; and (3) to gain access to the courts of the states.  See Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. 371, 383 (1978) (citing Ward v. Maryland, 79 U.S. 418 (1871); Blake v. McClung, 172 U.S. 239 (1898); Canadian Northern R. Co. v. Eggen, 252 U.S. 553 (1920)).

The Privileges and Immunities Clause, however, is "not an absolute" – in other words, it does not wholly prohibit a state from using residency to distinguish between persons.  Toomer, 334 U.S. at 396.  "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." Baldwin, 436 U.S. at 383 (holding that the right to have a hunting license is not "fundamental" under the Privileges and Immunities Clause because access to elk hunting is not necessary to promote interstate harmony).  Therefore, the Privileges and Immunities Clause is implicated only if a state (1) infringes on a fundamental right or privilege, which promotes interstate harmony, and (2) the state infringes on that right on the basis of state residency.  See Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 284 (1985); Baldwin, 436 U.S. at 279.  If a state statute does not infringe on a fundamental right, or if the discrimination it effects is not based on residency within that state, a challenge to the statute under the Privileges and Immunities Clause must fail.  See Piper, 470 U.S. at 284.

A finding that a state deprives a nonresident of a fundamental privilege does not end the

7

inquiry.  Id.  Rather, the state is then afforded the opportunity to demonstrate (1) a substantial

interest for the discrimination, and (2) that the means used bear a close or substantial relation to that

interest.  See Piper, 470 U.S. at 284.  Additionally, in addressing the latter prong, the Court must

consider "the availability of less restrictive means" to advance that interest.  Id.

Plaintiff claims that Section 470 infringes on her right to practice law in New York in

violation of the Privileges and Immunities Clause.  Am. Compl. ¶ 23.  Plaintiff claims that Section

470 effectively imposes a residency requirement on nonresident attorneys because it conditions the

practice of law in New York on maintaining an office in New York.  See id. ¶ 21.  Plaintiff further

asserts that this requirement serves no substantial state interest and unnecessarily prevents her from

practicing law in New York, despite the fact that she meets all of the requirements imposed on

attorneys who are New York residents.  See id. ¶ 22.  Specifically, Plaintiff argues that Defendants

can offer no substantial reason for Section 470's discrimination against nonresident attorneys, that

state court decisions have shown no valid purpose for Section 470 and inconsistent interpretations

of the statute have resulted, and that Section 470 is an artificial trade barrier for nonresident

attorneys admitted to practice law in New York.  See Pl. Mem. Supp. S.J at 10-21.  Plaintiff seeks

the following declaratory and injunctive relief: 1) an order declaring Judiciary Law Section 470

unconstitutional; 2) an order permanently enjoining Defendants from enforcing the law; and 3) an

award of costs and reasonable attorneys' fees.  Id.

Defendants argue in their Motion for summary judgment that Section 470 does not impose a

residency requirement, and that therefore review under the Privileges and Immunities Clause is not

triggered.  Defendants' Memorandum of law in support of Motion for Summary Judgment ("Def.

Mem. Supp. S.J.") (Dkt.  No.  62-2) at 4-10.  In the alternative, Defendants argue that even if review

8

under the Privileges and Immunities Clause is triggered, (1) the state has a substantial interest in

ensuring that nonresident attorneys are amenable to in-state service of process and available for

court proceedings and contact by interested parties; and (2) Section 470 bears a substantial relation

to this state interest because it employs the least restrictive means of achieving this interest.  Id. at

11-13.

### A. Fundamental Right

In order to implicate the Privileges and Immunities Clause, Section 470 must deprive

nonresidents of a fundamental right or privilege.  See Baldwin, 436 U.S. at 388.  A fundamental

right within the meaning of the Privileges and Immunities Clause is one that promotes interstate

harmony.  See Piper, 470 U.S. at 284; Baldwin, 436 U.S. at 388.  The privilege at issue in the

present case is the right to practice law, which, Defendants argue, is not implicated by Section 470.

See Def. Mem. Supp. S.J. at 10.

"[O]ne of the privileges which the Clause guarantees to citizens of State A is that of doing

business in State B on terms of substantial equality with the citizens of that State."  Toomer, 334

U.S. at 396.  The Supreme Court has long held that "the pursuit of a common calling is one of the

most fundamental of those privileges protected by the Clause."  United Bldg. & Constr. Trades

Council of Camden Cnty. & Vicinity v. Mayor & Council of City of Camden, 464 U.S. 208, 219

(1984).  The practice of law has long been held to be a fundamental right within the meaning of the

Privileges and Immunities Clause because the profession has both a commercial and noncommercial

role in the United States.  See Barnard v. Thorstenn, 489 U.S. 546, 553 (1989); Piper, 470 U.S. at

281; cf. Parnell v. Supreme Court of Appeals of W. Va., 110 F.3d 1077, 1081-82 (4th Cir. 1997)

(holding that sponsoring applicants for *pro hac vice* admission to practice law is not a core

9

component of the fundamental right to practice law).

### B. Discrimination on the Basis of Residency

As the practice of law is plainly a fundamental right under the Privileges and Immunities Clause, the Court must now determine whether Section 470 impermissibly infringes upon that right on the basis of state residency.  Defendants argue that Section 470 does not trigger privileges and immunities review because it imposes an office requirement, not a residency requirement, on nonresident attorneys seeking to practice law in New York.  See Defs.' Reply at 5.  However, the Privileges and Immunities Clause has "consistently [been] interpreted to prevent a State from imposing discriminatory burdens on nonresidents, whether by means of artificial trade barriers in the form of unequal licensing fees, taxes imposed on out-of-State vendors, or employment preferences granted only to residents."  Matter of Gordon, 48 N.Y.2d at 271 (citations omitted).  Although Section 470 imposes an office requirement rather than a residency requirement on out-of-state attorneys, that does not necessitate failure of Plaintiff's claims under the Privileges and Immunities Clause.

The Supreme Court has found state statutes violative of the Privileges and Immunities Clause where such statutes either discriminated against nonresidents by placing an additional cost on conducting business in-state, or prevented nonresidents from obtaining employment in-state.  See Hicklin v. Orbeck, 437 U.S. 518 (finding Alaska statute unconstitutional because it contained a state resident hiring preference for all employment relating to development of the state's oil resources); Toomer, 334 U.S. at 385 (finding South Carolina statute unconstitutional where it required nonresident fishermen to pay a license fee of $2500 for each shrimp boat owned, while residents were required to pay $25 for each shrimp boat owned); Ward v. Maryland, 79 U.S. 418 (1871)

10

(finding Maryland statute unconstitutional where it required nonresidents to pay $300 per year for a license to trade in goods not manufactured in Maryland, while residents were only required to paid a fee within the range of $12 to $150).  See also United Bldg. & Constr., 465 U.S. at 208 (finding a city ordinance unconstitutional under the Privileges and Immunities Clause where it required at least forty percent of employees of contractors on city construction projects to be city residents).

Similarly, Section 470 places an additional threshold cost on all nonresidents wishing to practice law in New York – an additional threshold cost that resident attorneys are not required to incur.  A resident attorney of New York may operate an office for the practice of law out of his home or residence.  See Lichtenstein v. Emerson, 656 N.Y.S.2d 180, 182 (Sup. Ct. 1997).  Conversely, a nonresident attorney must maintain, at minimum, both her residence in another state and an office in New York.  See id.  A nonresident attorney may be required to pay property taxes and rent or mortgage payments on her home, on an office maintained in New York, and potentially on an office maintained in her home state, whereas a New York resident attorney may only be required to pay taxes on her home.  This imposes a financial burden far surpassing that imposed by either the licensing fee disparity of $2475 found unconstitutional in Toomer, or the $288 fee disparity found unconstitutional in Ward.  Cf. Toomer, 334 U.S. at 385; Ward, 79 U.S. at 418.  The additional costs that nonresident attorneys incur in order to practice law in New York impose a significant burden on those who wish to practice law in multiple states.  Cf. Matter of Gordon, 48 N.Y.2d at 272 (stating that attorneys who wished to practice law in multiple states were "foreclosed from doing so" by the now-unconstitutional New York residency requirement for admission).  Section 470 thus effectively precludes a number of nonresident attorneys from practicing law in New York, regardless of whether they have complied with all requirements imposed on residents to

11

practice law in New York.  All of these factors support a conclusion that Section 470 infringes on the right to practice law in New York on the basis of residency and is therefore discriminatory under the Privileges and Immunities Clause.

In Frazier v. Heebe, 482 U.S. 641, 654-55 (1987), the Supreme Court held, without addressing its constitutionality, that a similar office requirement imposed by a local Louisiana district court rule was "unnecessary and irrational."  482 U.S. at 646.  While Frazier involved a challenge pursuant to the supervisory authority of the Supreme Court over lower federal courts, rather than a challenge pursuant to the Privileges and Immunities Clause, the Supreme Court specifically found that the rule's in-state office requirement was improper because (1) it permitted resident lawyers to maintain their only offices outside the state, in spite of the fact that they were equally as unavailable to courts in Louisiana as were nonresident lawyers with out-of-state offices; and (2) "the mere fact that an attorney has an office in Louisiana surely does not warrant the assumption that he or she is more competent than an out-of-state member of the state."  Id. at 649. Similarly, the office requirement imposed by Section 470 allows resident lawyers to maintain their sole office outside New York, while nonresident attorneys who practice in their own states must also maintain an office in New York if they wish to practice law in New York.

Defendants cite Supreme Court of Va. v. Friedman, 487 U.S. 59, 70 (1988), in which the Supreme Court held unconstitutional a residency requirement for admission to the Virginia bar without examination. Defs.' Reply at 5.  The Friedman Court noted in dicta that an office requirement was a less restrictive means of pursuing a state's objectives than was a residency requirement.  Id.  However, Friedman addressed a constitutional challenge to the Virginia residency requirement alone; Friedman did not decide the constitutionality of the office requirement.  See

12

Friedman, 487 U.S. at 63, 70.  Furthermore, Friedman concerned attorneys who were admitted to the bar without examination and does not apply to the case at hand, where the affected class encompasses all nonresident attorneys, including those who have "shown commitment and familiarity with state law by passing the state bar and complying with all other state requirements." February 2010 Order at 9.  Finally, unlike in Friedman, where the office requirement applied to all attorneys practicing in Virginia, regardless of residency, the law at issue here applies to all nonresident attorneys but not to resident attorneys.  Friedman, 487 U.S. at 68-69.  Because the language relating to the office requirement in Friedman is dicta and because that case is distinguishable from the one at bar, Friedman does not control here.

Defendants also rely on Tolchin v. Supreme Court of the State of N.J., 111 F.3d 1099 (3d Cir. 1997), and on Parnell, 110 F.3d at 1080-81, in which the Third and Fourth Circuits respectively upheld in-state office requirements challenged under the Privileges and Immunities Clause.  Def. Mem. Supp. S.J. at 8-9; Defs.' Reply at 4-5.  Apart from the fact that neither case is binding on this Court, both cases are distinguishable from the present one.  Like the requirement in Friedman, the office requirement in Tolchin applied equally to nonresidents and residents.  See Tolchin, 111 F.3d at 1107.  Likewise, the office requirement in Parnell applied equally to any resident or nonresident attorneys who wished to sponsor other attorneys *pro hac vice*.  See Parnell, 110 F.3d at 1079.  By contrast, in the present case, Section 470's office requirement applies to all nonresident attorneys but not to resident attorneys.  See N.Y. JUDICIARY LAW § 470.  Unlike the office requirements at issue in the cases cited by Defendants, Section § 470 does place a discriminatory obstacle in the path of nonresidents wishing to practice law in New York.

Finally, Defendants argue that not only is Section 470 neutral in its treatment of nonresident

13

attorneys, but also that if it is <u>not</u> enforced, New York may discriminate in favor of nonresidents as

a result.  Defs.' Reply at 5-6.  As the primary basis for this argument, Defendants cite a New York

Supreme Court holding in <u>White River Paper Co. v. Ashmont Tissue, Inc.</u>, 441 N.Y.S.2d 960, 963

(Civ. Ct. 1981), stating as follows:

> It can be argued that to require an office in New York (which will necessitate
> concomitant expenses and tax ramifications) in order to appear as attorney of record
> would have the consequence of effectively economically barring many nonresidents
> from practicing in our courts.  As I see it, the answer to this is that the requirement of
> a New York location places the nonresident in no different position than a resident.
> The fact that the nonresident must also maintain a residence and/or office elsewhere
> does not mean he is being discriminated against in the State of New York.  On the
> contrary, if we were to permit him to avoid the expenses of a New York location
> including the payment of local taxes, we might be creating a discriminatory benefit in
> his favor.

However, as Plaintiff points out, absent the office requirement of Section 470, nonresident attorneys

would still be required to pay taxes on income derived from business activities conducted in New

York.  N.Y. Tax Law § 651(a)(3) (McKinney 2011).

Moreover, as noted above, Section 470 discriminates against nonresident attorneys by

requiring them to maintain offices in-state even though resident attorneys are not required to do the

same.  Most importantly, under Section 470, nonresident attorneys bear a significant competitive

cost that resident attorneys do not: whereas "New York resident attorneys may practice law out of

their basements," "nonresidents are required to rent offices in New York (no matters how few in

number their New York clients may be) in addition to maintaining offices and residences in their

home states."  Pl. Mem. Supp. S.J. at 14.  Based on this analysis, the Court concludes that Section

470's requirement that nonresident attorneys maintain an office in-state implicates the fundamental

right to practice law under the Privileges and Immunities Clause.

14

**C. Privileges and Immunities Clause Scrutiny**

Once the Privileges and Immunities Clause is implicated, the analysis is not at an end. Piper, 470 U.S. at 284; Toomer, 334 U.S. at 396.  A statute may withstand scrutiny under the Privileges and Immunities Clause if the state is able to show: (1) a substantial reason for the difference in treatment; and (2) that the discriminatory practice against nonresidents bears a substantial relationship to the state's objective.  See Piper, 470 U.S. at 284.  The Court must also consider the availability of less restrictive means of achieving the state's objective.   Id.

*1. Substantial State Interest*

Defendants contend that (1) the need for efficient and convenient service of process such that attorneys are readily available for court proceedings; (2) the ability to observe and discipline nonresident attorneys; and (3) the remedy of attachment, are all substantial state interests advanced by Section 470.  See Def. Mem. Supp. S.J. at 7.  A state has an interest in ensuring that its licensed attorneys are amenable to legal service of process and to contact by clients, opposing counsel, the courts, and other interested parties.  See Lechtenstein v. Emerson, 251 A.D.2d 64, 64-65 (N.Y. App. Div. 1998); see also Matter of Gordon, 48 N.Y.2d at 274.  Plaintiff counters that the legislative history of Section 470 does not reveal a valid state interest for the provision, but only shows that Section 470 is an exception to the original residency requirement that was held unconstitutional under the Privileges and Immunities Clause.  See Pl. Opp'n Def. S.J. at 5 (citing Matter of Gordon, 48 N.Y.2d at 273-74).

 The legislative history of Section 470, as summarized above, indicates that it was intended both as an exception to the original residency requirement and a means of ensuring effective service of process.  See Schoenfeld Decl., Ex. F.  This law originally operated as a limited exception to the

residency requirement that was later found unconstitutional.  See id.; N.Y. Op. Att'y Gen. 338, p.

363-64 (Dec. 10, 1917).  All versions of the statute, however, have allowed a nonresident attorney to

practice law in New York only so long as he maintained an in-state office.  See Schoenefeld Decl.

Ex. F (Chapter 43; L. 1866, ch. 175, § 1 (6 Edm., 706)) (Code Civ. P. § 60 (1877)); N.Y. JUDICIARY

LAW § 470.

      Defendants rely primarily on section 60 of the New Code of Civil Procedure to support their

argument that service of process was an underlying interest in the enactment of Section 470.  See

Def. Mem. Supp. S.J. at 6-7.  A review of section 60 and the earliest versions of the statute –

Chapter 43 and Chapter 175 – bolsters this argument.  These statutes specifically provided that a

nonresident was permitted to practice in New York so long as "service of paper" could be made at

his New York office.  See Schoenefeld Decl., Ex. F (Chapter 43) (L. 1866, ch. 175, § 1 (6 Edm.,

706)) (Code Civ. P. § 60 (1877)).  See id.  Section 470, by contrast, does not include any mention of

service of process, because in 1908 the Board of Statutory Compilation considered service of

process an element of "practice."  See Board of Statutory Consolidation, cmt. 29 to § 60 (1908).

The Board of Statutory Compilation therefore removed the first sentence of section 60 to create

Section 470, and the remainder of the provision, which referenced service of process, remained as

section 60 of the 1877 Code of Civil Procedure.  See id.  The lack of reference to service of process

in the text of Section 470, however, does not mean that effectuating service of process was not a

reason for that statute's enactment.  On the contrary, a review of the legislative history reveals that

the desire to facilitate service of process for any attorney practicing law within the state, whether

resident or nonresident, was a primary concern that led to the enactment of Section 470.

      However, to satisfy the requirements of the Privileges and Immunities Clause, the state

16

interest must not only be legitimate, but also substantial in order to justify the disparate treatment on

the basis of residency.  See Piper, 470 U.S. at 284.  In Piper, the Supreme Court invalidated a state

residency requirement for the practice of law in-state, finding that there was merit to the state's

assertion that nonresident attorneys would be unavailable for court proceedings throughout the

course of litigation, but that it did not give rise to a substantial interest sufficient to withstand

scrutiny under the Privileges and Immunities Clause.  See id. at 286-87.  The Piper Court reasoned

first that "a high percentage of nonresidents who took the trouble to take the state bar examination

and pay the annual dues would reside in a place convenient to New Hampshire," and that for

lawyers that resided a great distance from the State, the courts could still protect their legitimate

interest in ensuring effective service of process by requiring the nonresident attorney to retain a local

attorney to be available for unscheduled court proceedings.  Id. at 286-87; see also Barnard, 489

U.S. at 554 (holding that even the Virgin Islands, with its unreliable airline and telephone service,

could not support a substantial justification for a residency requirement based on the need for

attorneys to be available for unscheduled court proceedings); Frazier, 482 U.S. at 648-49 (holding

that a significant percentage of nonresident attorneys that take the state bar examination, and pay

annual dues to remain a member of the bar, will reside in locations convenient to that state).

Although Piper and Barnard addressed residency requirements rather than an office requirement, the

Supreme Court's analyses in those cases of whether an attorney's amenability to unscheduled in-

state court proceedings is a substantial state interest within the meaning of the Privileges and

Immunities Clause is instructive for the present case.

Furthermore, the Supreme Court in Frazier held that ensuring the availability of attorneys to

court proceedings and to contact by interested parties did not justify the in-state office requirement

17

imposed by the local district court rule in that case.  The <u>Frazier</u> Court held that if immediate

availability of attorneys to court proceedings is indeed a substantial state interest, an in-state office

requirement is not a well-crafted remedy.  482 U.S. at 650 (noting that an in-state office requirement

erroneously presumes a link between an in-state office and proximity to a courthouse); <u>see also</u>

<u>Tolchin</u>, 111 F.3d 1099 (noting that "[a] New Jersey resident may need to travel farther and longer

than someone in New York City" to get to a New Jersey courthouse).  Section 470 is similarly

ineffective at addressing the state interest advanced by Defendants here, as an attorney in New

Jersey may be better able to travel to a court proceeding in New York City than would an attorney in

Syracuse or Buffalo.  Based on the precedent set forth above, the Court concludes that ensuring

attorneys' ready availability for court proceedings and contact by interested parties is not a

sufficiently substantial interest to withstand scrutiny under the Privileges and Immunities Clause.

Defendants also cite as a substantial state interest the ability of bar admission authorities to

observe and evaluate an applicant's character, and the ability for a court to discipline nonresident

attorneys.  <u>See</u> Def. Mem. Supp. S.J. at 7 (citing <u>Matter of Gordon</u>, 48 N.Y.2d 267).  The Court

does not find this justification persuasive because, as the New York Court of Appeals observed in

<u>Matter of Gordon</u>, an applicant to the bar in New York is personally available to the Committee on

Character and Fitness, and is actually interviewed by one of its members before admission to the

bar.  48 N.Y.2d at 274 (noting that the ability and remedies available to safeguard against unethical

conduct by resident attorneys can "be applied with equal force" to nonresident attorneys); <u>see also</u>

<u>Piper</u>, 470 U.S. at 286 (dismissing a similar argument where "[t]he Supreme Court of New

Hampshire has the authority to discipline all members of the bar, regardless of where they reside.").

The Court finds, as a matter of law, that this justification does not constitute a substantial state

interest for Section 470 under the Privileges and Immunities Clause.

The final interest advanced by Defendants to justify Section 470 is the availability of the remedy of attachment against nonresident attorneys. <u>See</u> Def. Mem. Supp. S.J. at 7 (citing <u>Matter of Tang</u>, 39 A.D.2d 357 (App. Div. 1972); <u>Matter of Fordan</u>, 5 Misc. 2d 372 (Surrogates Ct. N.Y. Co. 1956)). The remedy of attachment is a disciplinary measure involving a seizure on a defendant's property in order to secure the enforcement of a money judgment. <u>See</u> N.Y. C.P.L.R. § 6201 (McKinney 2011). Under Section 470's current construction, however, an attorney need only maintain an "of counsel" relationship with an in-state office to satisfy the office requirement. <u>Austria v. Shaw</u>, 542 N.Y.S.2d 505 (N.Y. Sup. Ct. 1989) (holding that an out-of-state attorney paying rent for a desk in an attorney's in-state office had satisfied the office requirement). Based on this standard, the remedy of attachment would have little value to a plaintiff seeking a money judgment, because a nonresident attorney being sued for legal malpractice would have very little property to seize in-state if that attorney only maintained an "of counsel" relationship with a resident office. In any event, the majority of attorneys maintain some form of professional liability insurance to mitigate the cost of any potential money judgments awarded against them. <u>See</u> James C. Gallagher, <u>Should Lawyers Be Required to Disclose Whether They Have Malpractice Insurance?</u>, Vermont Bar Journal, Summer 2006, at 1-2. This is a more efficient means for potential plaintiffs to recover in malpractice against both nonresident and resident attorneys. The Court thus concludes that as a matter of law the remedy of attachment is not a substantial state interest justifying Section 470.

*2. Substantial Relation to the State Interest Advanced by the Statute*

Even if a state establishes a substantial interest for a statute, it must also show that the statute is substantially related to that interest.  See Piper, 470 U.S. at 284.  The Court can find no substantial relationship between Section 470 and the interests that Defendants claim it advances, and therefore concludes that Section 470 violates the Privileges and Immunities Clause.

In deciding whether a statute bears a close or substantial relationship to a substantial state interest, a court must consider the availability of less restrictive means to pursue the state interest in order to minimize the burden on the affected party.  See id. at 284.  Even assuming that Section 470 advances a substantial state interest, Defendants argue that it employs the least restrictive means available to do so because there are a number of different ways for nonresidents to satisfy the office requirement.  Defendants primarily rely on Austria, which held that a nonresident attorney paying rent for a desk in, and maintaining an "of counsel" relationship with, an office in New York satisfied the office requirement.  Def. Mot. Supp. S.J. at 8-9 (citing 542 N.Y.S.2d at 505).

This argument is unavailing.  The Court of Appeals held in Matter of Gordon that although a state has a legitimate interest in regulating the attorneys who practice law in their courts, there are less restrictive means of furthering that interest than denial of admission to the bar.  See Matter of Gordon, 48 N.Y.2d at 274.  Matter of Gordon suggested, for example, that one such method would be to enact "legislation requiring nonresident attorneys to appoint an agent for the service of proces within the State."  Id. at 274 (citing Hess v. Pawloski, 274 U.S. 352 (1927); Doherty & Co. v. Goodman, 294 U.S. 623 (1935)); see also MISS. CODE. ANN. § 73-3-369 (West 2011) (nonresident attorneys admitted to practice law within Mississippi are deemed to have appointed the director of the Mississippi bar as their agent for service of process in-state).  It well-established that New York allows licensed corporations to appoint an agent for service of process in-state if the corporation

maintains its principal place of business out-of-state or abroad.  See N.Y. C.P.L.R. § 318

(McKinney 2011); N.Y. Bus. Corp. Law §§ 304-306 (McKinney 2011).  Mandating that out-of-

state attorneys have an appointed agent for service of process in New York is a simple and less

restrictive means of ensuring that a nonresident attorney will be subject to personal jurisdiction in-

state and to contact by the court, clients, and opposing parties.

Similarly, the Supreme Court in Piper suggested that state courts may require a nonresident

lawyer who resides at a great distance from a particular state to retain a local attorney for the

duration of proceedings and to be available for any meetings on short notice.  Id. at 287; see, e.g.,

La. Rev. Stat. Ann. § 37:214 (West 2011); N.C. Gen. Stat. Ann. § 84-4.1 (West 2010); Va. Sup.

Ct. Rules 1A:4(2).  Such a requirement would be less restrictive than the current requirements

imposed by Section 470 for two reasons: first, it would affect only out-of-state attorneys who reside

a great distance from New York; and second, it would only require those attorneys to make

arrangements for the limited duration of a proceeding.  The Supreme Court also held in Frazier that

the problem of attorney unavailability to court proceedings may be significantly alleviated with the

use of "modern communication systems, including conference telephone arrangements."  482 U.S.

at 642.  Moreover, district courts may impose sanctions on attorneys that fail to appear on schedule.

Id. at 649; see also L.R. 1.1(d) (authorizing district courts in the Northern District of New York to

impose sanctions for violations of Federal and Local Rules as well as violations of court orders);

83.4(j) (requiring courts in the Northern District to enforce the New York Code of Professional

Responsibilities).  All of the above present less restrictive means of ensuring attorney availability

than does Section 470's burdensome requirement that all nonresident attorneys maintain offices or

full-time of-counsel relationships in New York.  See Austria, 542 N.Y.S. 2d at 50.  Because

Defendants have failed to establish either a substantial state interest advanced by Section 470, or a

substantial relationship between the statute and that interest, the Court concludes as a matter of law

that it infringes on nonresident attorneys' right to practice law in violation of the Privileges and

Immunities Clause.

**V.      CONCLUSION**

Accordingly, it is hereby:

**ORDERED,** that Defendants' Motion for summary judgment (Dkt. No. 62) is **DENIED**;

and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 64) is

**GRANTED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.


DATED:        September 07, 2011
              Albany, New York



                                        Lawrence E. Kahn
                                        U.S. District Judge

22